1   **Mark Antoine Foster, In Pro Per**
    **200 Corpus Cristie Road #A**
2   **Alameda, California 94502**
    **(415) 756-1611**
3   **(619) 646-3564**

FILED

FEB 2   2008

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8               **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10                      **OAKLAND DIVISION**

11

12                                      Case No.  **C-08-0733MHP**

    **MARK ANTOINE FOSTER,**              **DECLARATION OF MARK**
13                                         **ANTOINE FOSTER IN SUPPORT**
    **Plaintiff,**                        **THEREOF AND EXHIBITS 1 THRU**
14                                         **26 ATTACHED THERETO**
            **vs.**

15                                      **Date:  March 28, 2008**
    **ARAMARK SPORTS and Entertainment,**  **Time:  9:00 a.m.**
16  **Ying Kee McVicker, an individual, Matthew**
    **Lee, an individual, and DOES 1**
17  **Through 51**
            **Defendants**

18  _____/

19          I MARK ANTOINE FOSTER declare that:

20          1.      I am the plaintiff in this action and have personal knowledge of each fact stated in

21                  the complaint filed against Aramark Sports L.L.C. (formerly known as Aramark

22                  Sports and Entertainment), Ying Kee McVicker, an individual, Matthew Lee as an

23                  individual, a parties to this action.

24

25  DECLARATION OF MARK ANTOINE FOSTER                                              1

                                                        C-08-0733JL

1    2.    Attached hereto as Exhibit 1 and incorporated herein by reference is Plaintiff's

2    original complaint and summons filed by plaintiff on March 9, 2007.

3    3.    Attached hereto as Exhibit 2 and incorporated herein by reference is Plaintiff's

4    right to sue letters against defendants.

5    4.    Attached hereto as Exhibit 3 and incorporated herein by reference are Plaintiff's

6    complaints of discrimination.

7    5.    Attached hereto as Exhibit 4 and incorporated herein by reference is Defendants'

8    answer to Plaintiff's complaint.

9    6.    Attached hereto as Exhibit 5 and incorporated herein by reference is Plaintiff's

10    demurrer to Defendants' answer.

11    7.    Attached hereto as Exhibit 6 and incorporated herein by reference is Defendants'

12    amended answer.

13    8.    Attached hereto as Exhibit 7 and incorporated herein by reference is Plaintiff's

14    reply to Defendants' in support of his demurrer to Defendant's answer.

15    9.    Attached hereto as Exhibit 8 and incorporated herein by reference is Plaintiff's

16    amended demurrer to Defendants' first amended answer.

17    10.    Attached hereto as Exhibit 9 and incorporated herein by reference is Defendants'

18    opposition to Plaintiff's amended demurrer.

19    11.    Attached hereto as Exhibit 10 and incorporated herein by reference is Plaintiff's

20    demurrer to Defendants' amended answer.

21    12.    Attached hereto as Exhibit 11 and incorporated herein by reference is Defendants'

22    opposition to Plaintiff's demurrer.

23    13.    Attached hereto as Exhibit 12 and incorporated herein by reference is Defendants'

24    case management conference statement.

25    DECLARATION OF MARK ANTOINE FOSTER

2

C-08-0733JL

14. Attached hereto as Exhibit 13 and incorporated herein by reference is the Superior Court's case management order continuing the case management conference.

15. Attached hereto as Exhibit 14 and incorporated herein by reference is Defendants' case management conference.

16. Attached hereto as Exhibit 15 and incorporated herein by reference is the Superior Court's case management order noticing trial and mandatory settlement conference.

17. Attached hereto as Exhibit 16 and incorporated herein by reference is Defendants' notice of objection to court commissioner and trial date.

18. Attached hereto as Exhibit 17 and incorporated herein by reference is Plaintiff's reply to Defendants' notice of objection.

19. Attached hereto as Exhibit 18 and incorporated herein by reference is the Superior Court's notice of reset trial a mandatory settlement conference.

20. Attached hereto as Exhibit 19 and incorporated herein by reference is the superior Court's notice of early settlement conference.

21. Attached hereto as Exhibit 20 and incorporated herein by reference is Defendants' request by letter to reset early settlement conference.

22. Attached hereto as Exhibit 21 and incorporated herein by reference is Plaintiff's notice of motion and motion for leave to file his amended complaint.

23. Attached hereto as Exhibit 22 and incorporated herein by reference is Plaintiff's proposed amended complaint and declaration.

24. Attached hereto as Exhibit 23 and incorporated herein by reference page 1 of Defendants' early settlement program settlement conference statement.

DECLARATION OF MARK ANTOINE FOSTER

3

C-08-0733JL

1     25.    Attached hereto as Exhibit 24 and incorporated herein by reference is Defendants'

2            letter refusing to respond to Plaintiff's discovery requests.

3     26.    Attached hereto as Exhibit 25 and incorporated herein by reference is the Superior

4            Court's order approving Plaintiff and Defendants' stipulation and proposed order

5            for leave to file amended complaint.

6     27.    Attached hereto as Exhibit 26 and incorporated herein by reference is Defendants'

7            notice of entry of order for leave to file amended complaint.

8     I declare under penalty under the laws of the state of California that the foregoing is true

9     and correct and that this declaration was executed this day on the 26th of February, 2008,

10    at San Francisco, California.

                                    Mark Antoine Foster, In Pro Per

# EXHIBIT 1

1    **Mark Antoine Foster, In Pro Per**
     **725 Ellis Street, Apt. 408**
2    **San Francisco, CA 94109**
     **(415) 756-1611**
3

4                           CASE MANAGEMENT CONFERENCE SET

5                           AUG 1 0 2007 ⋅9ᵒᵒAM

6                           DEPARTMENT 212

7

8                    **SUPERIOR COURT OF CALIFORNIA**

9                **IN AND FOR THE COUNTY OF SAN FRANCISCO**

10                    **CIVIL UNLIMITED JURISDICTION**

11                                           No.  CGC  07-46117

12   **MARK ANTOINE FOSTER,**                **COMPLAINT FOR CIVIL RIGHTS**
                                             **EMPLOYMENT DISCRIMINATION,**
13          **Plaintiff,**                    **PURSUANT TO FEHA SECTION**
                                             **12940 (j), (k) (h) (i)**
14          **vs.**

15   **ARAMARK CORPORATION,**
     **Ying Kee McVicker, an individual, Matthew**
16   **Lee, an individual, and DOES 1**
     **Through 51**
17          **Defendants**

18   _____/

19                           **INTRODUCTION**

20          This case is brought against defendants pursuant to FEHA section 12940, for

21   creating and maintaining an abusive and discriminatory work environment, failing to

22   properly investigate and take prompt, remedial or appropriate action to stop "Quid Pro

23   Quo" Harassment and workplace discrimination, and for retaliating against plaintiff in

24   response to his complaints about the abusive work environment, and threats to report the

25
     **COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**                    1

discriminatory acts of defendants to the EEOC and DFEH.

## PARTIES

1.  **Plaintiff Mark Antoine Foster, was an employee of Aramark Sports and Entertainment, a subsidiary of Aramark Corporation. He worked for the Carnelian Room located at 555 California Street, San Francisco, California.**

2.  **Defendants does 1 through 51, inclusive, are sued under fictitious names. Their true names and capacities are unknown to plaintiff. When their true names and capacities are ascertained, plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and such defendants caused plaintiff damages as herein alleged.**

3.  **Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned each and every defendant was the agent, servant, employee and/or representative of each other defendant and was, in doing the things complained of herein, acting within the scope of said agency, service, employment and or representation, and that each and every defendant herein is jointly and severally responsible and liable to plaintiff for the damages hereinafter alleged.**

## JURISDICTION AND VENUE

4.  **Jurisdiction is proper in this court as the acts complained of occurred in San Francisco, California.**

5.  **The amount in controversy exceeds limited jurisdiction.**

6.  **Plaintiff initially filed with the Department of Fair Employment and Housing on March 22, 2006. A right to sue letter against all defendants was issued on April 20, 2006. Plaintiff timely files this complaint.**

**COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**

2

7.    Plaintiff will amend this complaint to allege those causes of action once defendants respond to the claim.

### FIRST CAUSE OF ACTION
### HARASSMENT AND CONSTRUCTIVE DISCHARGE RESULTING FROM HARASSMENT
### CAL. GOV. CODE 12940 (j), (k) FEHA

8.    Plaintiff realleges and incorporates herein by reference every allegation stated herein.

9.    Defendants Aramark and Defendant's supervisors(s) Ying Kee McVicker and Matthew Lee engaged in the following actions with the intent to discriminate and retaliate against plaintiff on the account of 1) his sexual relationship with defendant McVicker, and 2) plaintiff's complaints of "Quid Pro Quo" sexual harassment, workplace harassment, discrimination and retaliation to management, and 3) plaintiff's threats of reporting the harassment to the EEOC, and thereafter reporting the discrimination and retaliation to the EEOC and DFEH.

10.    Plaintiff and defendant McVicker were in a consensual, sexual relationship approximately nine (9) months prior to plaintiff beginning his employment at the Carnelian Room, and approximately four months after the date of plaintiff's hire. Plaintiff considered himself and defendant McVicker companions in a deep, loving relationship and had talked of living together, having children and eventually getting married.

11.    Defendant McVicker began her employment at the Carnelian Room as the a.m. sous chef, approximately two months prior to plaintiffs hire date. Defendant McVicker asked and encouraged plaintiff to come and work for her at the Carnelian Room, and informed plaintiff that she would be his immediate supervisor, and that he and she would be working the same shift together. Defendant McVicker highly recommended plaintiff to the Executive Chef for the job as a.m. banquet cook, as he was hired upon her recommendation.

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION

3

1

      12.     On or around February 1, 2006, defendant McVicker ended her relationship

2

with plaintiff due to plaintiff' discovery of defendant McVicker's substance abuse

3

problems. Defendant McVicker became very angry and hostile towards plaintiff when

4

plaintiff discovered and approached her about her alcohol and cocaine addictions.

5

Defendant McVicker became infuriated with plaintiff, when he offered defendant

6

McVicker constructive criticism in regards to her substance abuse additions. Plaintiff then

7

withdrew his attention and affection for Defendant McVicker. This also angered Defendant

8

McVicker, and caused her to resent plaintiff. Thereafter, she did not desire plaintiff in the

9

workplace any longer, and initiated discriminatory acts against plaintiff, in an attempt to

10

cause plaintiff to quit. Defendant McVicker also became worried and insecure thinking

11

that plaintiff would expose her substance abuse problems to management to ruin her

12

reputation, and cause her to lose her job.

13

      13.     Thereafter, between February 3, 2006 and March 28, 2006, plaintiff alleges

14

that defendant McVicker then initiated a course of retaliation against plaintiff, with the

15

intent to intimidate and coerce plaintiff from the workplace, and/or with the purpose to

16

interfere with plaintiff's workflow, to the point where he could not perform his duties.

17

Defendant McVicker wanted plaintiff to become frustrated enough to want to quit.

18

Specifically, plaintiff alleges that defendant McVicker caused detrimental conditions to his

19

employment, constituting 'Quid Pro Quo" harassment. Defendant McVicker: (1)

20

completely stopped communicating with plaintiff regarding their shared work assignments

21

and stopped providing "team work efforts" to complete the work assignments with

22

plaintiff, and the other kitchen employees, as she normally would, as it was her

23

responsibility to do so. Plaintiff was the a.m. head banquet cook, primarily responsible for

24

all the banquet orders on his shift, and was dependant on defendant McVicker's

25

support, instruction and combined unified effort to complete the work assignments.

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION      4

1  Defendant McVicker was the a.m. sous chef in charge of kitchen operations, and the

2  supervision of the kitchen employees, and was plaintiff's immediate supervisor responsible

3  for assuring plaintiff's work assignments were completed successfully. Defendant

4  McVicker ceased in her efforts to accomplish these goals, and so neglected her duties to do

5  so, because of her anger, resentment and hostility towards plaintiff, and 2) defendant

6  McVicker attempted to sabotage plaintiff's work in an attempt to discredit him among his

7  peers and management. This happened on several occasions when defendant McVicker

8  deliberately concealed information from plaintiff that was pertinent to plaintiff completing

9  his work assignments. On two occasions, defendant McVicker caused plaintiff to prepare

10  food that was already prepared, by deliberately not telling plaintiff the food was already

11  prepared.  Defendant McVicker knew plaintiff was preparing the food that was already

12  prepared. On the first occasion, defendant McVicker concealed from plaintiff, that food he

13  was preparing for a banquet order was already prepared, and in the refrigerator. On the

14  second occasion, defendant McVicker caused plaintiff to prepare the employee meal  that

15  he normally prepares unnecessarily, concealing  the fact she was  preparing  the  employee

16  meal  that  day  herself,  doing  this  for  the purpose  of  making  plaintiff  prepare  the

17  employee  meal  unnecessarily,  just  to  anger  him  and  waste  his  production  time, when

18  plaintiff could  have  been  doing  another  project.  Defendant McVicker knew plaintiff was

19  preparing the employee meal for that day and time, as it was his primary daily

20  responsibility.  Defendant McVicker also attempted to sabotage plaintiff's work on several

21  other occasions by, (a) not ordering enough food inventory to complete plaintiff's food

22  orders and by, (b) by taking raw food materials from plaintiff's food inventory that was

23  specifically ordered for plaintiff's food orders , and deliberately concealing the fact she

24  took it from plaintiff, and/or not informing plaintiff she took the raw food materials until it

25  was too late, disrupting the  timing  and efficiency of plaintiff's catering orders that day

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    5

1  and (c) and  on another occasion, she intentionally  did not insure that a food order that

2  plaintiff prepared a day in advance for a client, was not properly completed to the client's

3  satisfaction before it was delivered to the client.  Plaintiff alleges that all the above actions

4  were done to discredit plaintiff, and make plaintiff's working conditions intolerable, and

5  (3) defendant McVicker took a complete  turn-around and stopped helping plaintiff in the

6  method she normally would, specifically not helping plaintiff dish-up catering food orders,

7  and (4) defendant McVicker interrupted the workflow with some of the other kitchen

8  employees as  well, because she involved them by asking them to verbally communicate

9  with plaintiff, because she chose not to not verbally speak to plaintiff directly regarding

10  work projects, using the employees, in the process, to express her disdain and anger

11  towards plaintiff, thus creating an abusive work environment with other kitchen

12  employees, and (5) defendant McVicker's deliberate and intentional infliction of emotional

13  stress upon plaintiff in the workplace, in that, her having the knowledge that plaintiff truly

14  loved and cared for her, and she knew,  that at the particular time,  he was very

15  vulnerable and susceptible to emotional pain. Defendant McVicker intentionally deceived

16  plaintiff into believing she was having a close, intimate relationship with her immediate

17  supervisor Defendant Matthew Lee, two to three days after a breakup of a thirteen month

18  relationship with plaintiff. Plaintiff alleges that defendant McVicker did this to

19  intentionally hurt plaintiff emotionally and make him jealous and feel intimidated, all for

20  the purpose and intent to help drive plaintiff away from the workplace, and/or to make his

21  working conditions intolerable, and (6) Defendant McVicker also purposely intended to

22  make plaintiff feel jealously and emotional pain by flirting heavily with some of the other

23  male kitchen employees, thus using the elements in the workplace in this manner to

24  accomplish her goals.

25

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    6

14.     Plaintiff alleges that Defendant McVicker's actions were premeditated to inflict extreme emotional stress on him, her objective was to get plaintiff to resign by all means necessary, as she abused her position of authority to accomplish her goals.

15.     Plaintiff alleges that defendant McVicker "willfully" knew and deliberately concealed from management, the fact she was in a sexual relationship with plaintiff, and "willfully" knew bringing plaintiff in the work atmosphere in the method that she did, she would be in a position to manipulate plaintiff at work, while maintaining a sexual relationship with him, in and outside of the workplace.

16.     Plaintiff alleges that Defendant McVicker's actions were malicious and oppressive, in that, her intent was to destroy plaintiff's sense of well being, both emotionally and psychologically. Defendant McVicker's retaliatory actions against plaintiff (after she terminated her relationship with plaintiff) constitute Quid Pro Quo sexual harassment, because after plaintiff discovered her substance abuse problems, he withdrew her attentions and affections from her, and afterwards she demonstrated that she did not want plaintiff around her anymore. Thereafter, she initiated the above mentioned actions against plaintiff, which caused detriment to his employment position, and was done with the purpose and intent to get rid of him.

17.     Plaintiff alleges that Defendant McVicker also deceived plaintiff into believing she was having an intimate relationship with defendant Matthew Lee in an attempt to hurt and intimidate him. Thereafter, plaintiff perceived her as having an intimate relationship with Defendant Lee.

18.     Thereafter, plaintiff alleges that Defendant Lee showed signs of prejudice towards him, specifically regarding an incident with plaintiff's work schedule. Defendants Lee and McVicker were at the time responsible for preparing the employee work schedule. The defendants made an error in plaintiff's work schedule during the

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    7

week ending Tuesday, February 21, 2006, scheduling plaintiff off on Saturday the 18th, when he was needed to work. Plaintiff's schedule was posted on that previous Tuesday, but was changed about three days later without plaintiff knowing, as defendants did not inform plaintiff of the change. Plaintiff alleges that the defendants expected plaintiff to work on the days he was initially scheduled off, regardless of any plans plaintiff had made to do on his off days. Plaintiff noticed the change in his schedule on that Thursday the 16th, and informed defendant McVicker that he was not going to be able to work the following Saturday, defendant McVicker responded by saying nothing to plaintiff. The following day, Friday the 17th, plaintiff also informed defendant Lee that he was not going to be able to work on Saturday the eighth-teeth, because he already made plans on the off days he was initially given when the schedule was first posted. At that point, there was a verbal exchange between plaintiff and defendant Lee, which went as follows; Mark: "Matthew I can't work tomorrow", Matthew: "What do you mean you can't work tomorrow?", Mark: "I can't work because I already made plans, when the schedule was posted I was scheduled off Sat, Sun, Mon and Tues, I can't change my plans", Matthew: "Well you must don't value your job then", Mark: "I was scheduled off Matthew and I will not be here", Matthew: "I'll remember that!". Defendant Lee was quiet for about thirty seconds, and then stated, "I'm going to write you up for refusing to come to work tomorrow". Plaintiff responded by saying, "Go ahead, I'm not going to sign it. Defendant Lee proceeded to write the warning notice and gave it to defendant McVicker to give to plaintiff to sign it. The warning notice stated the following, "Mark is scheduled to work on Saturday 2/18/06 and refuses. He says he has other plans." When plaintiff read this he knew it was a blatant lie, because plaintiff was not initially scheduled to work Saturday the 18th. Plaintiff alleges that defendants Lee and McVicker hoped plaintiff did not notice that he was off on Saturday, and/or expected plaintiff to

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION

8

1  work regardless of his plans. Plaintiff alleges that defendant Lee verbally threatened his

2  job and created an intimidating and abusive work atmosphere for plaintiff. Plaintiff

3  became very uncomfortable and felt Defendant Lee was now "out to get him", and would

4  make things hard for him, and would eventually fire plaintiff, or cause him to lose his job.

5  Plaintiff also felt very  uncomfortable because he perceived Defendant Lee and McVicker

6  in a sexual relationship, and because Defendant Lee , at the time, was the acting Executive

7  Chef because the kitchen had recently lost their Executive Chef David Lawrence, who was

8  asked to resign due to his abusive attitude and treatment of kitchen employees.

9          19.    On or about March 28, 2006, plaintiff took a ten week psychological medical

10  leave from Aramark, due to the discrimination and retaliation causing plaintiff emotional

11  stress, and because plaintiff was subject to "quid pro quo" harassment and an abusive

12  work environment while working at the Carnelian Room. Defendant Aramark authorized

13  the medical leave, and plaintiff was certified by the Veteran's Administration Psychiatry

14  Hospital for Temporary State Disability Insurance payments.

15          20.    Plaintiff was entitled to a twelve week leave without losing his job, and  was

16  scheduled to return to work by  June 15, 2006, but did not return because he was not

17  mentally and emotionally well enough  to return to work, as it was necessary for plaintiff

18  to remain in therapy, and because plaintiff was afraid of further retaliation from

19  Aramark's Management staff, as well as being afraid of being fired  for reporting the

20  employer harassment to the  DFEH, and  also because defendant McVicker and Lee were

21  still employed there. Plaintiff's doctor agreed with plaintiff's decision not to return to work

22  for Aramark, as it would have been emotionally and mentally unhealthy for plaintiff if he

23  had returned to work there.

24          21.    Plaintiff remained in therapy for approximately an additional seven months

25  after June 15, 2006, and for a total of ten months up until January 31, 2007.

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                          9

22. The actions alleged in paragraphs above caused plaintiff to be constructively discharged from his employment, in that any reasonable person in plaintiff's position subject to those actions would have resigned or quit his employment, as plaintiff was compelled to do. Defendants had actual knowledge of the intolerable conditions caused by the acts of harassment alleged above, but failed to take any and/or all of the proper steps to end those conditions (for the purpose of causing plaintiff's resignation). Furthermore, defendants knew or should have known that plaintiff's resignation would result from its actions.

## SECOND CAUSE OF ACTION

## RETALIATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, CAL. GOV. CODE 12940(h)

23. Plaintiff realleges and incorporates herein by reference every allegation stated herein.

24. Between February 17, 2006 and March 28, 2006, defendants Aramark took the following actions against plaintiff: 1) plaintiff requested a raise and promotion, and defendant Aramark denied plaintiff the raise and promotion. Plaintiff was entitled to the raise and promotion, because plaintiff had not received a raise nor promotion since he began his employment there, and deserved both, and 2) defendant Aramark retaliated against plaintiff by taking no remedial action to promptly stop the harassing and/or retaliatory behavior of defendants McVicker and Lee against plaintiff, and allowed it to fester and get worse, not protecting plaintiff from the further abuse of their supervisors. Plaintiff's mental and emotional state was damaged due the harassment and retaliation from all of the defendants.

25. Defendants Aramark, McVicker and Lee's actions were caused by and were in retaliation for the protected activity of plaintiff set forth in paragraph 9 above. And

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION

10

1  in that defendants harassed and discriminated against plaintiff after plaintiff filed written

2  and verbal complaints regarding defendants McVicker and Lee's harassing behavior to

3  Aramark's Human Resources Department and Management Staff, and also after plaintiff

4  threatened to report the harassment and discrimination to the EEOC and DFEH, if the

5  matter was not resolved.

6      26.    Specifically, plaintiff first reported the harassing and retaliatory behavior of

7  defendant McVicker and Lee to Human Resources and management on or around

8  February 17, 2006, by both verbal communication via the employee hotline, and submitting

9  written documents to management at the Carnelian Room. Defendants, and all of them,

10  had reasonable time to stop the harassing and retaliatory behavior, but failed to take the

11  immediate and appropriate action to do so. Defendants had approximately six weeks

12  after plaintiff reported the harassing behavior, and another two and a half months to

13  remedy the situation while plaintiff was on medical leave. Plaintiff never got any

14  indication that the situation would have been rectified if he was to return to work.

15  Plaintiff alleges that he was actually terrified to return to work there, because of the abuse

16  he was subject to, and his emotional and psychological state of mind.

17      27.    Furthermore, plaintiff explained to defendant Aramark that, 1) he was

18  being harassed and retaliated against by defendant McVicker, that they were in a sexual

19  relationship that ended, and that she was his immediate supervisor, working the same

20  shift and hours as plaintiff, and 2) that defendant Lee was harassing plaintiff, and that he

21  was also plaintiff's immediate supervisor, working a majority of the same shift with

22  plaintiff.

23      28.    Defendants Aramark, McVicker and Lee knew or should have known, that

24  by not removing one or all of the parties involved from the workplace, the workplace would

25

**COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**

11

continue to be hostile, and become even more hostile, and would eventually cause plaintiff to quit.

29.    Defendants Aramark, McVicker and Lee knew or should have known that by failing to resolve the disputes between plaintiff and defendants, and allowing them to continue to work together on the same shift during the same time periods, that they would continue to feud, and become more hostile with each other in the workplace, and would eventually cause plaintiff to quit.

30.    Defendants Aramark knew or should have known that after plaintiff made them aware of the sexual relationship he had with Defendant McVicker, and the fact that she was his immediate supervisor discriminating against him in the workplace; and by not, at least, correcting this fundamental problem, they were being negligent in their duties to stop the discriminatory behavior.

31.    Plaintiff alleges that after he filed the complaints of discrimination to management and human resources and threatened to report the discrimination to DFEH and EEOC, Defendant Aramark retaliated by not taking the immediate and appropriate action to stop the discriminatory behavior of Defendants McVicker and Lee. Defendant Aramark became prejudiced toward plaintiff and Defendants McVicker and Lee's hostility got worse, and the discrimination never stopped.

32.    Plaintiff alleges that he also experienced retaliation and discrimination from two other members of the management staff he worked with in the workplace, the Assistant General Manager, but at the time, the acting General Manager, Phil Epps and Elizabeth Morgan, the catering manager for the Wharton School of Business Account. Specifically, after plaintiff reported the incidents to management and human resources and threatened to report, and reported the harassment to EEOC and DFEH, Defendant Aramark's Phil Epps and Elizabeth Morgan's attitude became unfavorable against

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION

plaintiff, being that Mr. Epps and Ms. Morgan turned a "blind eye" and/or seemed to deny or ignore the actions of Defendant's McVicker and Defendant Lee, and showed them favoritism, and seemed to side with them, and wanted to protect them, and not reprimand them for their actions (as they demonstrated this to plaintiff in his presence). Defendant Aramark's Managers Epps and Morgan made unfavorable remarks to plaintiff that showed signs of a retaliatory attitude towards plaintiff, looking for areas to criticize plaintiff's work, when before they praised his work.

33.    Defendants Aramark, McVicker and Lee knew or should have known that by failing to take prompt remedial action to correct or stop their discriminatory behavior, that plaintiff would eventually quit.

### THIRD CAUSE OF ACTION
### FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT
### California Government Code 12940(i)(k)

34.    Plaintiff realleges and incorporates herein by reference every allegation stated herein.

35.    Defendants failed to take all reasonable steps to prevent harassment and discrimination from occurring. Defendant's failure to take such action violated the FEHA, Cal. Gov. Code 12940(k).

36.    The FEHA requires employers to take all reasonable steps to prevent workplace harassment, including the institution by employer of policies, procedures and practices that include prompt and effective remedial procedures, and appropriate training, monitoring and disciplinary measures.

37.    Defendant's policies, procedures and practices were inadequate for prevention, monitoring and remediation of workplace harassment. If such policies, procedures and practices existed, employees, including supervisors, were insufficiently

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION

13

trained in or made aware of those policies and procedures for the policies and procedures to prevent workplace harassment from occurring.

38.    Once made aware of the hostile and abusive conduct toward plaintiff, defendants failed to take measures to prevent additional harassment.

39.    The above-described conduct of defendants in violation of the FEHA, caused plaintiff to suffer extreme emotional distress, physical suffering and economic loss. As a foreseeable result of this conduct, plaintiff has suffered and will continue to suffer damages as set forth above.

Wherefore, Plaintiff requests relief as set forth below.

### FORTH CAUSE OF ACTION
### WORKPLACE HARASSMENT AND DISCRIMINATION
### California Government Code 12940 et. Seq.

40.    Plaintiff realleges and incorporates each and every fact alleged herein.

41.    Plaintiff was subjected to continuous and/or severe hostile environment based on his sexual relationship with defendant McVicker. He was subject to quid pro quo sex based harassment and discrimination at his workplace which was perpetrated and tolerated by persons in positions of power as set forth herein.

42.    Plaintiff complained to Human Resources and Management about the harassment and discrimination to which he was subjected.

43.    The above described conduct of defendants in violation of the FEHA caused plaintiff to suffer extreme emotional distress, insomnia, physical suffering and economic damages. As a foreseeable result of this conduct, plaintiff has suffered and will continue to suffer damages as set forth below.

Wherefore, plaintiff seeks relief as set forth below.

### FIFTH CAUSE OF ACTION
### INTENTIONAL INFLICTTION OF EMOTIONAL DISTRESS

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION

14

1      44.    Plaintiff realleges and incorporates each and every fact alleged herein.

2      45.    On or about February 1, 2006 through March 28, 2006, Defendants

3   McVicker, Lee and Aramark harassed, discriminated, retaliated and constructively

4   discharged plaintiff because of his sexual relationship with Defendant McVicker and

5   because plaintiff filed complaints of the discrimination to Human Resources and DFEH,

6   and peaceably exercised his rights to a work in an environment free of discrimination.

7      46.    At all times plaintiff clearly rejected defendants' harassment, retaliation and

8   discrimination, making them aware, that the abuse will not be tolerated. Defendants

9   ignored plaintiff's objections. The actions of defendants were outrageous, intentional, and

10  malicious, and done with reckless disregard of the fact that they would certainly cause

11  plaintiff to suffer severe emotional and physical distress.

12     47.    As a proximate result of the acts of defendants, plaintiff suffered severe

13  emotional distress, in the form of fear, nervousness, anxiety, worry, insomnia and indignity.

14  Defendants' conduct created a work environment extremely detrimental to plaintiff's

15  emotional and physical health, and interfered with plaintiff's work performance. After the

16  above described actions, plaintiff was not able to work for approximately ten months, had

17  difficulty eating and sleeping. Plaintiff had also required psychological counseling for

18  approximately ten months as a result of defendants' conduct.

19     48.    As a proximate result of defendants' conduct, plaintiff has suffered general

20  damages in an amount to be determined by proof at trial.

21     49. As a further direct and proximate result of defendants conduct, plaintiff was

22  unable to work for a period of ten months, and accordingly, lost wages in an amount to be

23  determined by proof at trial.

24     50.    Defendants' conduct was done knowingly, willfully, and with malicious

25

**COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**                    15

1  intent, and plaintiff are entitled to punitive damages in an amount to be determined by

2  proof at trial.

3  <center>**REQUEST FOR RELIEF**</center>

4  Plaintiff hereby requests the following relief:

5  1.    Compensatory damages on all causes of action against defendants.

6  2.    Attorney's fees and costs pursuant to Government Code Section 12965 and

7         other applicable statute.

8  3.    Costs of suit.

9  4.    Any other relief that this court deems proper.

10

11  Dated: April 1, 2007                              **Mark Antoine Foster, In**

12  Pro Per

13

14

15

16

17

18

19

20

21

22

23

24

25

**COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**                    **16**

PLAINTIFF/PETITIONER: *MARK ANTOINE FOSTER*

DEFENDANT/RESPONDENT: *ARAMARK Corporation, Matthew Lee*

CASE NUMBER:

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)          ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)     ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)   ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)            ☐ 415.46 (occupant)
                                 ☐ other:

7. **Person who served papers**
  a. Name: *Thom McMullen*
  b. Address: *725 Ellis St #408  San Francisco, CA*
  c. Telephone number: *415-374-3911*
  d. **The fee for service was: $** *0*
  e. I am:
    (1) ☑ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and I certify that the foregoing is true and correct.**

Date: *MArch 9, 2007*

*Thom McMullen*
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

*Thom R McMull*
(SIGNATURE )

| PLAINTIFF/PETITIONER: *MARK ANTOINE Foster* | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: *APAMARK Corporation, Matthew Lee* | |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*     (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)    ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)    ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)    ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)    ☐ 415.46 (occupant)
        ☐ other:

7. **Person who served papers**
  a. Name: *Thom McMullen*
  b. Address: *725 Ellis St #408 San Francisco, CA*
  c. Telephone number: *415-374-3911*
  d. **The fee** for service was: $ *0*
  e. I am:
    (1) ☑ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: *MArch 9, 2007*

*Thom McMullen*           *Thom R McMull*
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)      (SIGNATURE )

**SUM-100**

# SUMMONS
## (CITACIÓN JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ARAMARK CORPORATION, DOES 1 TO 50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MARK ANTOINE FOSTER

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.    A letter or phone call will not protect you.  Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response.  You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may want to call an attorney referral service.  If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program.  You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SAN FRANCISCO SUPERIOR COURT<br>CIVIC CENTER COURT HOUSE<br>400 McAllister ST<br>SAN FRANCISCO CALIFORNIA 94102 | CASE NUMBER:<br>*(Número del Caso)*<br>C-07-461172 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

MARK ANTOINE FOSTER     415 756-1611
725 ELLIS ST   # 408
SAN FRANCISCO CA 94109

Deborah Steppe

DATE:                                                          Gordon Park-Li                   , Deputy
*(Fecha)*   MARCH 9, 2007                              *(Secretario)*          *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☑ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☑ by personal delivery on *(date):* MARCH 9, 2007

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>MARK ANTOINE FOSTER<br>725 Ellis St # 408<br>San Francisco, California 94109<br>TELEPHONE NO: 415-756-1611  FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | FOR COURT USE ONLY<br>**ENDORSED**<br>**F I L E D**<br>San Francisco County Superior Court<br><br>APR 2 5 2007<br><br>**GORDON PARK-LI, Clerk**<br>BY: <u>CAROLYN BALISTRERI</u><br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, California
BRANCH NAME: Civic Center Court house

| | |
|---|---|
| PLAINTIFF/PETITIONER: MARK Antoine Foster | CASE NUMBER |
| DEFENDANT/RESPONDENT: Aramark Corporation | CGC 07 461 178 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☐ other *(specify documents)*:

3. a. Party served *(specify name of party as shown on documents served)*: ARAMARK CORPORATION

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   James Cham, Authorized Agent, Human Resources

4. Address where the party was served: 555 California St, San Francisco, CA

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date)*: MARCH 9, 2007 (2) at *(time)*: 3:00 pm

   b. ☐ **by substituted service.** On *(date)*:           at *(time)*:           I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:           from *(city)*:           or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

PLAINTIFF/PETITIONER: *MARK ANTOINE FOSTER*

DEFENDANT/RESPONDENT: *ARAMARK CORPORATION*

CASE NUMBER:

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*           (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

      ☐ 416.10 (corporation)         ☐ 415.95 (business organization, form unknown)
      ☐ 416.20 (defunct corporation)    ☐ 416.60 (minor)
      ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
      ☐ 416.40 (association or partnership)  ☐ 416.90 (authorized person)
      ☐ 416.50 (public entity)        ☐ 415.46 (occupant)
                          ☐ other:

7. **Person who served papers**
  a. Name: *Thom Mc Mullen*
  b. Address: *725 Ellis St # 408, San Francisco CA*
  c. Telephone number: *415-374-8961*
  d. **The fee** for service was: $ *0*
  e. I am:
    (1) ☑ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal** and I certify that the foregoing is true and correct.

Date: *MARCH 9, 2007*

*Thom McMullen*
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

MARK ANTOINE FOSTER
725 ELLIS ST #408
SAN FRANCISCO, CALIFORNIA 94109

TELEPHONE NO.: 415-756-1611    FAX NO. (Optional):

E-MAIL ADDRESS (Optional):

ATTORNEY FOR (Name):

FOR COURT USE ONLY

**ENDORSED**
**F I L E D**
San Francisco County Superior Court

**APR 2 5 2007**

**GORDON PARK-LI, Clerk**
BY: **CAROLYN BALISTRERI**
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Francisco
STREET ADDRESS: 400 McAllister St
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, California
BRANCH NAME: Civic Center Court House

PLAINTIFF/PETITIONER: MARK ANTOINE FOSTER

DEFENDANT/RESPONDENT: Ying Kee McVicker, as an individual
ARAMARK Corporation,

CASE NUMBER: CGC 07 461178

Ref. No. or File No.

**PROOF OF SERVICE OF SUMMONS**

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☐ other *(specify documents):*

3. a. Party served *(specify name of party as shown on documents served):*  Ying Kee McVicker, as an individual

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   James Chann, Authorized Agent, Human Resources

4. Address where the party was served:  555 California St, San Francisco, CA

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):* March 9, 2007  (2) at *(time):*  3.00pm

   b. ☐ **by substituted service.** On *(date):*        at *(time):*        I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*        from *(city):*        or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
American LegalNet, Inc.
www.FormsWorkflow.com

PLAINTIFF/PETITIONER: _MARK ANTOINE FOSTER_
_ARAMARK CORPORATION_
DEFENDANT/RESPONDENT: _Ying Kee McVicker, As an individual_

CASE NUMBER

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*　　　　　　　　　　　　　(2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)　　　　　　　　☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)　　　　　☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)　☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)　　☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)　　　　　　　　☐ 415.46 (occupant)
    　　　　　　　　　　　　　　　　　　☐ other:

7. **Person who served papers**
  a. Name: _Thom Mc Mullen_
  b. Address: _725 ELLIS ST. #408 San Francisco, CA_
  c. Telephone number: _415-374-3911_
  d. **The fee** for service was: $ _0_
  e. I am:
    (1) ☑ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: _March 9, 2007_

_Thom Mc Mullen_
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _Thom McMull_
(SIGNATURE)

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>MARK ANTOINE FOSTER<br>725 ELLIS ST # 408<br>SAN FRANCISCO, CALIFORNIA 94109<br>TELEPHONE NO.: 415-756-1611   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* | FOR COURT USE ONLY<br><br>**ENDORSED**<br>**F I L E D**<br>*San Francisco County Superior Court*<br><br>APR 2 5 2007<br><br>**GORDON PARK-LI, Clerk**<br>BY: CAROLYN BALISTRERI<br>Deputy Clerk |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO<br>STREET ADDRESS: 400 Mc Allister<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: SAN FRANCISCO, CA<br>BRANCH NAME: Civic Center Courthouse | |
| PLAINTIFF/PETITIONER: MARK ANTOINE FOSTER<br>ARAMARK CORPORATION,<br>DEFENDANT/RESPONDENT: MATTHEW Lee, AS An Individual | CASE NUMBER:<br>CGC 07 461178 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No. |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☐ other *(specify documents):*

3. a. Party served *(specify name of party as shown on documents served):* MATTHEW Lee, AS an Individual

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   James Chan, Authorized Agent, Human Resources

4. Address where the party was served: 555 California ST. SAN FRANCISCO, CA

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* MARCH 9, 2007 (2) at *(time):* 3:00 PM
   b. ☐ **by substituted service.** On *(date):*   at *(time):*   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*   from *(city):*   **or** ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

EXHIBIT 2

STATE OF CALIFORNIA - STATE AND CONSUMER SERVIC    iENCY                                          ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2952
www.dfeh.ca.gov



April 20, 2006


MARK A. FOSTER
2300 Moonlight Terrace, #A
Alameda, CA 94502

RE:   E200506A1104-00-sb
      FOSTER/ARAMARK CORPORATION

Dear MARK A. FOSTER:

## NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint
that was filed with the Department of Fair Employment and Housing (DFEH) has
recommended that the case be closed on the basis of: An Administrative Decision.

Please be advised that this recommendation has been accepted and the case has
been closed effective March 22, 2006.

This letter is also the Right-To-Sue Notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint. The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

The Department of Fair Employment and Housing does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Herbert Yarbrough
District Administrator

cc:    Case File

Human Resources Manager
ARAMARK CORPORATION
555 California Street
San Francisco, CA  94105

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICE AGENCY                                                                    ARNOLD SCHWARZENEGGER, Governor

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2952
www.dfeh.ca.gov



April 20, 2006


MARK A. FOSTER
2300 Moonlight Terrace, #A
Alameda, CA 94502

RE:     E200506A1104-02-sb
        FOSTER/MCVICKER, YING KEE, As an individual

Dear MARK A. FOSTER:

### NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint that was filed with the Department of Fair Employment and Housing (DFEH) has recommended that the case be closed on the basis of: An Administrative Decision.

Please be advised that this recommendation has been accepted and the case has been closed effective March 22, 2006.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

The Department of Fair Employment and Housing does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Herbert Yarbrough
District Administrator

cc:    Case File

Ying Kee McVicker
Sous Chef/Manager
ARAMARK CORPORATION
555 California Street
San Francisco, CA  94105

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2952
www.dfeh.ca.gov



April 20, 2006


MARK A. FOSTER
2300 Moonlight Terrace, #A
Alameda, CA 94502

RE:    E200506A1104-01-sb
       FOSTER/LEE, MATTHEW, As an individual

Dear MARK A. FOSTER:

## NOTICE OF CASE CLOSURE


The consultant assigned to handle the above-referenced discrimination complaint
that was filed with the Department of Fair Employment and Housing (DFEH) has
recommended that the case be closed on the basis of: An Administrative Decision.

Please be advised that this recommendation has been accepted and the case has
been closed effective March 22, 2006.

This letter is also the Right-To-Sue Notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint. The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICE AGENCY                                                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA  94612
(510) 622-2973  TTY (800) 700-2320  Fax (510) 622-2952
www.dfeh.ca.gov



April 20, 2006


MARK A. FOSTER
2300 Moonlight Terrace, #A
Alameda, CA 94502

RE:    E200506A1104-01-sb
       FOSTER/LEE, MATTHEW, As an individual

Dear MARK A. FOSTER:

## NOTICE OF CASE CLOSURE


The consultant assigned to handle the above-referenced discrimination complaint
that was filed with the Department of Fair Employment and Housing (DFEH) has
recommended that the case be closed on the basis of: An Administrative Decision.

Please be advised that this recommendation has been accepted and the case has
been closed effective March 22, 2006.

This letter is also the Right-To-Sue Notice.  According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint.  The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

The Department of Fair Employment and Housing does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,


Herbert Yarbrough
District Administrator


cc:    Case File


Matthew Lee
Chef de Cuisino
ARAMARK CORPORATION
555 California Street
San Francisco, CA  94105

EXIHIBIT 3

# UNDER THE PROVISIONS OF THE CALIFORNIA
# FAIR EMPLOYMENT AND HOUSING ACT

DFEH #    E200506 A-1104-00-sb

| COMPLAINANT'S NAME (indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| Mr. Mark A. Foster | (415) 756-1611 |

ADDRESS
2300 Moonlight Terrace #A

| CITY | STATE | ZIP CODE | COUNTY |
|---|---|---|---|
| Alameda | CA. | 94502 | Alameda |

## NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME | CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX(ES) | |
|---|---|---|
| Aramark Corporation – Carnelian Room | ☐ RACE    ☐ RELIGION | ☐ NATIONAL ORIGIN/ANCESTRY |
| ADDRESS  555 California Street | ☐ COLOR    ☐ MARITAL STATUS | ☐ DENIAL OF FAMILY/MEDICAL LEAVE |

| CITY | STATE | ZIP CODE | COUNTY | ☒ SEX | ☐ DISABILITY | ☐ CANCER |
|---|---|---|---|---|---|---|
| San Francisco | CA. | 94105 | San Francisco | ☐ PREGNANCY ☐ SEXUAL ORIENTATION ☐ GENETIC CHARACTERISTICS |

| DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month/day/year): 3/17/2006 | NO. OF EMPLOYEES/ MEMBERS: 150 | ☐ AGE    X OTHER (SPECIFY) Harassment |
|---|---|---|

I believe that on or about

(date or dates)

Beginning February 3, 2006 and continuing through March 17, 2006

respondent Aramark Corporation, Ying Kee McVicker, Sous Chef/Manager Staff and

Matthew Lee, Chef de Cuisino subject me to harassment and hostile work environment.

(act or acts of harm)    because of my involvement in a consensual relationship and harassment of a sexual

nature.

(protected group status)

in violation of the California Fair Employment and Housing Act.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

**I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.**

Dated _March 22, 2006_

At _Oakland_  City

_Mark A. Foster_
COMPLAINANT'S SIGNATURE

COMPLAINANT'S SIGNATURE/GUARDIAN AD LITEM

DFEH-300-04 (07/01)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:    03/22/06    STATE OF CALIFORNIA

MAR 2 2 2006

UNDER THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT

COPY

DFEH # ~~NOT FOR SERVICE~~

COMPLAINANT'S NAME (indicate Mr. or Ms.)
Mr. Mark A. Foster

TELEPHONE NUMBER (INCLUDE AREA CODE)
(415) 756-1611

ADDRESS
2300 Moonlight Terrace #A

| CITY | STATE | ZIP CODE | COUNTY |
|------|-------|----------|--------|
| Alameda | CA. | 94502 | Alameda |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
Ying Kee McVicker, As an Individual

ADDRESS
555 California Street

| CITY | STATE | ZIP CODE | COUNTY |
|------|-------|----------|--------|
| San Francisco | CA. | 94105 | San Francisco |

DATE MOST RECENT OR CONTINUING DISCRIMINATION
TOOK PLACE (month/day/year):
3/17/2006

NO. OF EMPLOYEES/
MEMBERS:
150

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX(ES)

☐ RACE ☐ RELIGION ☐ NATIONAL ORIGIN/ANCESTRY
☐ COLOR ☐ MARITAL STATUS ☐ DENIAL OF FAMILY/MEDICAL LEAVE
✠ SEX ☐ DISABILITY ☐ CANCER
☐ PREGNANCY ☐ SEXUAL ORIENTATION ☐ GENETIC CHARACTERISTICS
☐ AGE X OTHER (SPECIFY) Harassment

I believe that on or about

(date or dates)

Beginning February 3, 2006 and continuing through March 17, 2006

respondent Aramark Corporation, Ying Kee McVicker, Sous Chef/Manager Staff and

Matthew Lee, Chef de Cuisino subject me to harassment and hostile work environment.

(act or acts of harm)

because of my involvement in a consensual relationship and harassment of a sexual

nature.

(protected group
status)

in violation of the California Fair Employment and Housing Act.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated March 22, 2006

Mark A. Foster
COMPLAINANT'S SIGNATURE

At Oakland
City

COMPLAINANT'S SIGNATURE/GUARDIAN AD LITEM

DFEH-300-04 (07/01)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:

MAR 3 1 2006

STATE OF CALIFORNIA

**UNDER THE PROVISIONS OF THE CALIFORNIA**
**FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # NOT FOR SERVICE

| COMPLAINANT'S NAME (indicate Mr. or Ms.) | | | | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|---|---|---|
| Mr. Mark A. Foster | | | | (415) 756-1611 |

ADDRESS
2300 Moonlight Terrace #A

| CITY | STATE | ZIP CODE | COUNTY |
|---|---|---|---|
| Alameda | CA. | 94502 | Alameda |

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME
Matthew Lee, As an Individual

ADDRESS
555 California Street

| CITY | STATE | ZIP CODE | COUNTY |
|---|---|---|---|
| San Francisco | CA. | 94105 | San Francisco |

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month/day/year):
3/17/2006

NO. OF EMPLOYEES/ MEMBERS:
150

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX(ES)

☐ RACE ☐ RELIGION ☐ NATIONAL ORIGIN/ANCESTRY
☐ COLOR ☐ MARITAL STATUS ☐ DENIAL OF FAMILY/MEDICAL LEAVE
✳ SEX ☐ DISABILITY ☐ CANCER
☐ PREGNANCY ☐ SEXUAL ORIENTATION ☐ GENETIC CHARACTERISTICS
☐ AGE X OTHER (SPECIFY) Harassment

I believe that on or about

(date or dates)

Beginning February 3, 2006 and continuing through March 17, 2006

respondent Aramark Corporation, Ying Kee McVicker, Sous Chef/Manager Staff and

Matthew Lee, Chef de Cuisino subject me to harassment and hostile work environment.

(act or acts of harm)

because of my involvement in a consensual relationship and harassment of a sexual

nature.

(protected group
status)

in violation of the California Fair Employment and Housing Act.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated _March 22, 2006_                     _Mark A. Foster_
                                              COMPLAINANT'S SIGNATURE

At _O AK Cand_
          City                              COMPLAINANT'S SIGNATURE/GUARDIAN AD LITEM

DFEH-300-04 (07/01)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:

STATE OF CALIFORNIA

RECEIVED

MAR 2 2 2006

'06 CALIFORNIA DEPT OF FE

EXHIBIT 4

EXHIBIT 4

FILED
SUPERIOR COURT
2007 APR 26 PM 4:07
GORDON PARK-LI, CLERK
BY: Mary Ann Mora
MARY ANN MORA

1  MORGAN, LEWIS & BOCKIUS LLP
   ERIC MECKLEY, State Bar No. 168181
2  One Market, Spear Street Tower
   San Francisco, CA 94105-1126
3  Tel: 415.442.1000
   Fax: 415.442.1001
4
   Attorney for Defendants
5  ARAMARK SPORTS, LLC (formerly known as
   "ARAMARK Sports, Inc."), YING KEE
6  MCVICKER, and MATTHEW LEE

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     COUNTY OF SAN FRANCISCO

10                      UNLIMITED JURISDICTION

11

12                                        Case No. CGC-07-461178
   MARK ANTOINE FOSTER,
13
              Plaintiff,                  **ANSWER OF DEFENDANTS ARAMARK**
14                                        **SPORTS, LLC, YING KEE, MCVICKER AND**
              vs.                         **MATTHEW LEE TO PLAINTIFF'S**
15                                        **UNVERIFIED COMPLAINT**
   ARAMARK SPORTS &
16 ENTERTAINMENT, Ying Kee McVicker,
   an individual, Matthew Lee, an individual,  Complaint filed:    March 9, 2007
17 and DOES 1 Through 51,                       Trial Date:         None

18              Defendant.

19

20         Defendants ARAMARK Sports, LLC (formerly known as "ARAMARK Sports, Inc.", and

21 incorrectly sued as "ARAMARK Sports & Entertainment"), Ying Kee McVicker, and Matthew

22 Lee ("Defendants") hereby answer and respond to the unverified Complaint of Plaintiff Mark

23 Antoine Foster ("Plaintiff"), as amended on April 18, 2007, as follows:

24         Pursuant to California Code of Civil Procedure §431.30(d), Defendants deny generally

25 each and every allegation contained in Plaintiff's unverified Complaint, and deny further that

26 Plaintiff has been injured in the amount or manner alleged or in any other manner whatsoever.

27         WHEREFORE, Defendants assert the following affirmative defenses and pray for

28 judgment as set forth below:
   1-SF/7527194.1                                    Case No. CGC-07-461178

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSWER OF DEFENDANTS ARAMARK SPORTS, LLC,
MCVICKER AND LEE TO PLAINTIFF'S UNVERIFIED COMPLAINT

1

2                        **FIRST AFFIRMATIVE DEFENSE**

3                          **(Failure to State a Cause of Action)**

4          1.       As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

5    of action therein, Defendants allege that Plaintiff has failed to state a cause of action upon which

6    relief can be granted.

7                        **SECOND AFFIRMATIVE DEFENSE**

8                            **(Failure to Mitigate Damages)**

9          2.       As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

10   of action therein, Defendants allege that if Plaintiff sustained damages by reason of the

11   allegations in the Complaint, which allegations are denied, then Plaintiff may not recover for such

12   damages because, by his own acts and omissions, Plaintiff has failed properly to mitigate those

13   damages.

14                        **THIRD AFFIRMATIVE DEFENSE**

15                            **(Statute of Limitations)**

16         3.       As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

17   of action therein, Defendants allege that Plaintiff's claims are barred by the applicable statutes of

18   limitations.

19                        **FOURTH AFFIRMATIVE DEFENSE**

20                            **(Waiver and Estoppel)**

21         4.       As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

22   of action therein, Defendants allege that Plaintiff has waived and is estopped from asserting, in

23   whole or in part, any causes of action upon which he seeks relief.

24                        **FIFTH AFFIRMATIVE DEFENSE**

25                            **(Unclean Hands)**

26         5.       As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

27   of action therein, Defendants allege that each cause of action is barred by the doctrine of unclean

28   hands.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7527194.1                              2                         Case No. CGC-07-461178
ANSWER OF DEFENDANTS ARAMARK SPORTS, LLC,
MCVICKER AND LEE TO PLAINTIFF'S UNVERIFIED COMPLAINT

1

## TENTH AFFIRMATIVE DEFENSE

2

### (Mixed Motive)

3       10.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

4    of action therein, Defendants allege that, to the extent that unlawful reasons were motivating

5    factors as to any action by Defendants alleged in the Complaint, which Defendants expressly

6    deny, legitimate non-discriminatory, non-retaliatory reasons, standing alone, would have induced

7    Defendants to make the same employment decisions.

8

## ELEVENTH AFFIRMATIVE DEFENSE

9

### (Absence of Malice)

10      11.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

11   of action therein, Defendants allege that at all times and places alleged in the Complaint,

12   Defendants acted without malice and with a good faith belief in the propriety of their conduct.

13

## TWELFTH AFFIRMATIVE DEFENSE

14

### (Punitive Damages)

15      12.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

16   of action therein, Defendants allege that Plaintiff's Complaint fails to state facts sufficient to

17   support any claim for punitive damages.

18

## THIRTEENTH AFFIRMATIVE DEFENSE

19

### (Constitutional Limit on Punitive Damages)

20      13.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

21   of action therein, Defendants allege that Plaintiff's claim for punitive damages is barred by the

22   Contract Clause (Article I, Section 10, Clause 1), the Due Process Clause (Fourteenth

23   Amendment, Section 1), and the Excessive Fines Clause (Eighth Amendment) of the United

24   States Constitution, and the corresponding provisions of the Constitution of the State of

25   California.

26   \\\

27   \\\

28   \\\

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7527194.1                                   4                      Case No. CGC-07-461178

ANSWER OF DEFENDANTS ARAMARK SPORTS, LLC,
MCVICKER AND LEE TO PLAINTIFF'S UNVERIFIED COMPLAINT

1

# FOURTEENTH AFFIRMATIVE DEFENSE

2

## (Business Necessity)

3    14.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

4  of action therein, Defendants allege that Plaintiff's claims are barred because Defendants' actions

5  about which Plaintiff complains were job-related and consistent with business necessity.

6    WHEREFORE, Defendants pray for the following:

7    1. That Plaintiff take nothing in this action;

8    2. That judgment be entered in favor of Defendants and against Plaintiff;

9    3. That costs of suit be awarded to Defendant;

10    4. That attorneys fees be awarded to Defendant; and

11    5. For such other and further relief in favor of Defendant as the Court deems just and

12       proper.

13

14  Dated: April 26, 2007                    MORGAN, LEWIS & BOCKIUS LLP
                                            ERIC MECKLEY
15

16                                          By

17                                             Eric Meckley
                                             Attorney for Defendants
18                                           ARAMARK SPORTS, LLC, YING KEE
                                             MCVICKER, and MATTHEW LEE
19

20

21

22

23

24

25

26

27

28

1-SF/7527194.1                    5                    Case No. CGC-07-461178

ANSWER OF DEFENDANTS ARAMARK SPORTS, LLC,
MCVICKER AND LEE TO PLAINTIFF'S UNVERIFIED COMPLAINT

1

## CERTIFICATE OF SERVICE

2          The undersigned hereby certifies that he/she/they served a copy of the foregoing

3    ANSWER OF DEFENDANT ARAMARK SPORTS, LLC, YING KEE MCVICKER AND

4    MATTHEW LEE to the following via U.S. Mail, postage prepaid, before the hour of 5:00 pm, on

5    April 26, 2007:

6          Mark Antoine Foster
           725 Ellis Street, Apt. 408
7          San Francisco, CA 94109

8

9

10                                          Melissa M. Estus

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 5

1 | Mark Antoine Foster, In Pro Per
725 Ellis Street, Apt. 408

ENDORSED
FILED
San Francisco County Superior Court

MAY 1 4 2007

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

2 | San Francisco, CA 94109
3 | (415) 756-1611

4

5

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SAN FRANCISCO

10                    CIVIL UNLIMITED JURISDICTION

11                                          No.  **CGC07461178**

12 | MARK ANTOINE FOSTER,            **DEMURRER TO DEFENDANTS'**
                                    **AWNSER TO PLAINTIFF'S**
13 |        Plaintiff,               **COMPLAINT**

14 |        vs.

15 | ARAMARK SPORTS and Entertainment,      Date: June 5, 2007
    Ying Kee McVicker, an individual, Matthew   Time: 9:30 am
16 | Lee, an individual, and DOES 1          Dept: 302
    Through 51
17 |        Defendants

18 | _____ /

19 |       Plaintiffs **MARK ANTOINE FOSTER** demurrer to defendants' answer in its entirety to

20 | plaintiff's complaint, as specifically set forth below:

21 |    **PLAINTIFF MARK ANTOINE FOSTER DEMURRER DEFENDANTS'AWNSER**

22 |                    **TO HIS COMPLAINT**

23 |       Plaintiff's demur to  defendants' answer in its  entirety pursuant to  California Code  of

24 | Civil Procedure  §430.10, on the grounds that plaintiff's said causes of action does state facts

25

**DEMURRER  TO DEFENDANTS' AWNSER  TO  PLAINTIFF'S  COMPLAINT**                    1

1   sufficient to constitute causes of action, and because defendants' have **NO AFFIRMATIVE**

2   **DEFENSE** to their actions in the complaint.

3          This demurrer is made and based upon this Notice, the records, pleadings and files

4   herein, the Memorandum of Points and Authorities attached hereto, and such oral and

5   documentary evidence as may be presented at the hearing of this demurrer.

6   .

7   **DATED: May 14, 2007**                    By: **Mark Antoine Foster, In Pro Per**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEMURRER TO DEFENDANTS' AWNSER TO PLAINTIFF'S COMPLAINT**            2

Mark Antoine Foster, In Pro Per
725 Ellis Street, Apt. 408
San Francisco, CA 94109
(415) 756-1611

ENDORSED
FILED
San Francisco County Superior Court

MAY 1 4 2007

GORDON PARK-LI, Clerk
BY: _____ MARIA RAMONER
Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

## CIVIL UNLIMITED JURISDICTION

No. **CGC07461178**

MARK ANTOINE FOSTER,

    Plaintiff,

    vs.

ARAMARK SPORTS and Entertainment
Ying Kee McVicker, an individual, Matthew
Lee, an individual, and DOES 1
Through 51
    Defendants

_____ /

**PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER TO
DEFENDANTS' ANWSER TO
PLAINTIFF'S COMPLAINT**

Date: June 5, 2007
Time: 9:30 am
Dept: 302

Plaintiff **MARK ANTOINE FOSTER** respectfully submits these Points and Authorities in

support of his demurrer to defendants' answer to plaintiff's complaint.

## I.    INTRODUCTION

This is a wrongful termination matter stemming from plaintiff's employment at ARAMARK

SPORTS, LLC, (sued as Aramark Sports and Entertainment), located at 555 California in San

Francisco.

Memorandum of Points & Authorities in Support of Plaintiff's Demurrer

1

1         Defendants claim that plaintiff's complaint is unverified, but do not explain the grounds

2    in which the complaint is unverified.

3         Also, plaintiff is inclined to believe that due to the correct or incorrect name of defendant

4    Aramark Sports and Entertainment, the true identity of defendant Aramark Sports and

5    Entertainment is in question.

6         Subsequent to the filing of this complaint, plaintiff discovered the true name of defendant

7    "Aramark Corporation" as "Aramark Sports and Entertainment". Defendants' council informed

8    plaintiff of the incorrect name on or about April 10, 2007. Plaintiff thereafter, filed an

9    amendment to the complaint addressing the name change. Attached to the request for judicial

10   notice is a true and correct copy of the amendment to the complaint filed in this court on or about

11   April 12, 2007.

12        Defendants, upon filing their answer to this complaint on April 26, 2007, state on line 20,

13   page 1 of their answer, "Defendants Aramark Sport's, LLC (formerly known as Aramark Sports,

14   Inc. and incorrectly sued as "Aramark Sports and Entertainment", Ying Kee McVicker, and

15   Matthew Lee ("Defendants") hereby answer and respond to the unverified complaint of Mark

16   Antoine Foster ("Plaintiff"), as amended on April 18, 2007, as follow:"

17        Plaintiff alleges that defendants have been misleading in revealing their true identities as

18   plaintiff was informed by defendants' council that the true name of Defendant "Aramark

19   Corporation" is "Aramark Sports and Entertainment", and should be sued as such. Defendants

20   now state that their true name is Aramark Sports, LLC. Defendants do not appear to know their

21   true name or identity.

22        Plaintiff will file another amendment to the complaint to address the name change.

23        Defendants deny that plaintiff has been injured in the amount or manner alleged or any

24   other manner whatsoever.

25

1        Plaintiff alleges that defendants are in denial and have no reason to believe that plaintiff

2  has not been injured in the manner alleged, given the defendants' conduct and the manner in

3  which the plaintiff was discharged

4  ## II. STATUTORY AUTHORITY FOR FILING A DEMURRER

5        When any ground for objection to a complaint appears on the face thereof, the objection

6  on that ground may be taken by a demurrer to the pleading. Code of Civil Procedure §430.30(a).

7        When a Complaint is successfully challenged by a general demurrer, the burden is on the

8  plaintiff to demonstrate how the complaint might be amended to cure it of the defect.

9  Association of Community Orgs.For Reform Now v. State Dept. of Indus. Rel., (1995) 41 Cal.

10  App. 4th 298, 302, 48 Cal. Rptr. 2d 486, 488.

11  ### III. Rebuttal Argument

12  **Defendants' FIRST AFFIRMATIVE DEFENSE (Failure to State a Cause of Action)**

13  *to each cause of action therein is groundless, due to:*

14  **PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO SHOW THAT HE WAS**

15  **CONSTRUCTIVELY DISCHARGED IN BREACH OF THE EMPLOYMENT**

16  **AGREEMENT [or IN VIOLATION OF PUBLIC POLICY] IN THAT THE EMPLOYER**

17  **CREATED  CONDITIONS  OF EMPLOYMENT THAT WERE SO INTOLERABLE**

18  **THAT A REASONABLE  PERSON  WOULD RESIGN.**

19  **A) CONSTRUCTIVE DISCHARGE LEGALLY REGARDED AS FIRING.**

20        Constructive Discharge occurs when the employer's conduct forces the employee to

21  resign. Although the employee resigns, the employment relationship is actually severed

22  involuntarily by the employer's acts, and against the employee's will. Thus, a constructive

23  discharge is legally considered a firing rather than a resignation (Turner v. Anheuser-Busch, Inc.

(1994) 7 Cal. 4th 1238, 1244-1245, 32Cal Rptr. 2d 223, 876 P.2d 1022).

24

25

1    In plaintiff's first cause of action for Harassment and Constructive Discharge resulting

2  from Harassment, plaintiff claims that Defendant Aramark Sports, LLC (formerly known as

3  "Aramark Sports, Inc", and its supervisors McVicker and Lee engaged in conduct that

4  constituted harassment and discrimination against plaintiff. Plaintiff explains a series of

5  incidents describing in detail the actions of the defendants, and how those actions established an

6  objectively hostile and or abusive work environment.

7    **B) CONSTRUCTIVE DISCHARGE AS BREACH OF PUBLIC POLICY**

8    The employer has no right terminate employment for a reason that contravenes public

9  policy. An actual or constructive discharge in violation of fundamental public policy gives rise to

10  a tort action in favor of the terminated employee (Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.

11  4th 1238, 1244-1245, 32Cal Rptr. 2d 223, 876 P.2d 1022).

12    Plaintiff also claimed in his first cause of action that he was subject to Quid Pro Quo

13  harassment, workplace harassment, and discrimination, and also retaliation from Aramark

14  Sports, LLC's management.

15    **C) SERIES OF SEPARATE INCIDENTS MAY CONSTITUTE CONSTRUCTIVE**

16    **DISCHARGE**

17    Although single, trivial, or isolated incidents ordinarily are insufficient to constitute a

18  constructive discharge, a series of separate incidents may establish a constructive discharge

19  through a continuous pattern of harassment of the employee, even if each incident considered

20  separately might be viewed as trivial (Thompson v. Tracor Flight Sys., Inc. (2001) 86 Cal. App.

21  4th 1156, 1171-1172, 104 Cal. Rptr. 2d 95).

22    Plaintiff claims in paragraph 22, on page 10 of his complaint that the actions of the

23  defendants caused him to be constructively discharged, and that a reasonable person in plaintiff's

  position subject to those actions would have resigned or quit their employment.

24

25

1    However, counsel may establish that a series of separate incidents constituted a

2  continuous pattern of intolerable conditions by showing that the incidents amounted to a

3  campaign of harassment against the employee (Thompson v. Tracor Flight Sys., Inc. (2001) 86

4  Cal. App. 4th 1156, 1171-1172, 104 Cal. Rptr. 2d 95).

5              **D) EMPLOYER CREATED INTOLERABLE OR AGGRAVATED WORKING**

6                                          **CONDITIONS**

7    Constructive Discharge is established when the employer either intentionally created or

8  knowingly permitted working conditions that were so intolerable or aggravated at the time of the

9  employee's resignation that a reasonable employer would realize that a reasonable person in the

10  employee's position would be compelled to resign (Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.

11  4th 1238, 1244-1245, 32Cal Rptr. 2d 223, 876 P.2d 1022).

12    Plaintiff claims in paragraph 24, on page 10 of his complaint, how Defendant Aramark

13  Sports, LLC retaliated against plaintiff, and how no remedial action to promptly stop the

14  harassment was taken once Defendant Aramark Sports, LLC knew of the harassment.

15    Plaintiff claims in paragraph 25, on page 10 and 11 of his complaint how Defendants, and

16  all of them, caused plaintiff to be constructively  discharged and how Defendants actions were

17  caused by and were in retaliation  for the protected  activity of plaintiff set forth in paragraph 9,

18  and how defendants continued to harass and discriminate against plaintiff, after plaintiff filed

19  written and verbal complaints regarding defendants McVicker and Lee's discriminatory behavior

20  to Aramark's Human Resource department and management staff, and also after plaintiff

21  threatened to report the harassment and discrimination to the  EEOC  and DFEH, if the matter

22  was not resolved.

23    Plaintiff claims in paragraph 26, on page 11 of his complaint how and when he reported

24  the harassment and discriminatory behavior of Defendants McVicker and Lee to Aramark's

25  Human Resource Department in Philadelphia, and the Management staff at the Carnelian

**Memorandum of Points & Authorities in Support of Plaintiff's Demurrer**                    5

1   Room, and how Defendant Aramark Sports, LLC failed to take the immediate and appropriate

2   action to stop the harassing and discriminatory behavior, once they knew about it.

3       Plaintiff claims in paragraph 31, on page 12 of his complaint how Defendant Aramark

4   Sports, LLC, became prejudiced toward plaintiff after he filed the complaints, and how

5   defendants McVicker and Lee's hostility got worse, and the discrimination never stopped.

6   **E) LEAVING JOB BECAUSE OF INTOLERABLE CONDITIONS CONSTITUTES**

7   **RESIGNATION**

8       To have a valid claim of constructive discharge, an employee need not have completely

9   resigned from the job. It is sufficient if the employee establishes that, because of intolerable

10  conditions , he or she needed to remove himself or herself from the job ( for example, by

11  electing to go on disability retirement)and thus was effectively constructively discharged (

12  Colores v. Board of Trs. of Cal. State Univ. (2003) 105 Cal App. 4th 1293, 1316-1318, 130 Cal.

13  Rptr. 2d 347).

14      Plaintiff claims in paragraph 19, on page 9 of his complaint, how he was forced to take a

15  medical leave due to the discrimination and retaliation of the defendants causing him emotional

16  stress.

17      Plaintiff claims in paragraph 20, on page 9 of his complaint, why he did not return to

18  work for the defendants, as he was not mentally and emotionally well enough to return to work,

19  and as it was necessary for plaintiff to remain in therapy.

20      Plaintiff claims in paragraph 21, on page 9 of his complaint, how it was necessary for him

21  to remain in therapy for approximately seven months after his due date of June 15, 2006 to return

22  to work, and how he was in therapy for a total of approximately ten months, until January 31,

23  2007.

24      Furthermore, Defendants have **NO AFFIRMATIVE DEFENSE** to the actions alleged in

25

1 the complaint, due to the plaintiff's employment resulting in a **CONSTRUCTIVE**

2 **DISCHARGE**, which constitutes a **"TANGIBLE EMPLOYMENT ACTION"**.

3     The Ellerth/Faragher rule is clear: no affirmative defense is available to the employer

4 when the supervisor's harassment culminates in a "tangible employment action". Odgen v.

5 WaxWorks, Inc. 214 F. 3d 999, 2000 U.S. App.

6     "The constructive discharge would constitute a tangible employment action and prevent

7 the Department from utilizing the affirmative defense" Jackson v. Arkansas Department of

8 Education 272 F. 3d 1020, 2002 U.S. App.

9     According to FEHA Govt. 12900-12966, an employer in a sexual harassment case

10 (whether quid pro quo or hostile environment) is strictly liable for it's agents or supervisor's acts

11 of sexual harassment, regardless of its own degree of knowledge about the harassment, and the

12 acts of other than an agent or supervisor if it knew or should have known of the harassment and

13 failed to take corrective action. Govt code 12940 (j) (1).

14     Plaintiff claims quid pro quo and workplace harassment and discrimination by

15 defendants. In paragraph 13, on page 4 of his complaint, he  SPECIFICALLY DESCRIBES

16 how defendant McVicker's actions interfered with his work flow.

17     The fact finder must consider the totality of the circumstances in deciding whether the

18 conduct was severe and pervasive enough to constitute hostile environment harassment. Such

19 circumstances  include: the frequency of the conduct ; the severity of the conduct; whether the

20 conduct was physically threatening or humiliating, or was a mere offensive utterance; whether

21 the conduct reasonably interfered with the plaintiff's work performance, although the plaintiff

22 need not show  that she or he could not perform the job. Harris v. Forklift System (1993) 510

23 U.S. 17, 126 L Ed 2d 295, 114 S. Ct. 367, Ellison v. Brady (9th cir 1991,824 F2d 872, 881.

24 **Plaintiff's Second Cause of Action, Retaliation in Violation of California Fair**

25 **Employment and Housing Act, does states facts sufficient to constitute a cause of action.**

1    The first, ninth and tenth circuits have all held that Title VII's protection against

2   retaliatory discrimination extends to adverse actions which fall short of ultimate employment

3   decisions. Wyatt v. City of Boston 35 F. 3d 13, 15-16 (1st cir stating that actions other than

4   discharge are covered by Title VII's anti-retaliation provision and listing as examples, "

5   employer activities such as demotions, disadvantages transfers or assignment, refusals to

6   promote, unwarranted negative job evaluations and toleration of harassment by other employees.

7    Plaintiff claims in paragraph 24, page 10 of his complaint how he requested a raise and

8   promotion and was denied, and how defendant Aramark Sports, LLC retaliated against plaintiff

9   by taking no remedial action to promptly stop the harassing behavior of defendants McVicker

10  and Lee and allowed it to fester and get worse.

11   To prove a cause of action for hostile work environment sexual harassment under federal

12  or state law, the plaintiff must show that she or he was subjected to unwelcome conduct that was

13  based on sex and was sufficiently severe or pervasive to alter the work environment and create

14  an abusive working environment. Gregory v Widnall (9th cir 1998) 153 F 3d 1071, 1077.  Stated

15  another way, the plaintiff must show that the unwelcome conduct was based on sex unreasonably

16  interfered with his or her job performance or created an intimidating, hostile, or offensive

17  working environment. See 29 CFR §1604.11(a) (3), Aguilar v. Avis Rent a Car Sys, Inc. (1994)

18  21 C 4th 121, 130, 87 CR 2d (California Supreme Court cited with approval federal law defining

19  hostile work environment).

20   Plaintiff claims in paragraph 25, on page 10 of his complaint that defendants' actions

21  were caused by and were in retaliation for the protected activity of plaintiff set forth in paragraph

22  9. In paragraph 9, on page 3 of plaintiff's complaint, plaintiff states, " Defendants Aramark, and

23  Defendant's supervisors Ying Kee McVicker and Matthew Lee  engaged in the following actions

24  with the intent to discriminate and retaliate against plaintiff on the account of 1) ) his sexual

25  relationship with defendant McVicker, and 2) plaintiff's complaints of "Quid Pro Quo" sexual

1   harassment, workplace harassment, discrimination and retaliation to management, and 3)

2   plaintiff's threats of reporting the harassment to the EEOC, and thereafter reporting the

3   discrimination and retaliation to the EEOC and DFEH".

4         Plaintiff claims in paragraph 26, on page 11 of his complaint, when and how he reported

5   the harassment to Aramark's Human Resource Department and the management staff at the

6   Carnelian Room, and how Defendants had enough time to end the harassment, but did not.

7         Attached to the request for judicial notice is a true and correct copy of the documents

8   plaintiff submitted to Aramark's Human Resource Department in Philadelphia and the

9   management staff at the Carnelian Room.

10         "Once the employer knows or should have known about the harassment, it has a duty to

11   take immediate and appropriate action to end it". Steiner v Showboat Operating Co. (9th Cir

12   1994) 25 F 3d 1454. Intleofer v. Turnage (9th Cir 1992) 973 F. 2d 773. Ellison v. Brady (9th Cir

13   1991, 824F 2d 872, 881.

14         "The employer's response must be reasonably calculated to end the harassment". Ellison

15   v. Brady (9th Cir 1991, 824F 2d 872, 881.

16   **Plaintiff's Third Cause of Action, <u>Failure to Prevent Discrimination and</u>**

17   **<u>Harassment</u>, does states facts sufficient to constitute a cause of action.**

18         Plaintiff claims in paragraph 35, on page 13 of his complaint that "Defendants failed to

19   take all reasonable steps to prevent harassment and discrimination from occurring. Defendant's

20   failure to take such action violated the FEHA, Cal. Gov. Code 12940(k)".

21         Plaintiff also states in paragraph 37, on page 13 of his complaint that "Defendant's

22   policies, procedures and practices were inadequate for prevention, monitoring and remediation of

23   workplace harassment. If such policies, procedures and practices existed, employees, including

24   supervisors, were insufficiently trained in or made aware of those policies and procedures for the

    policies and procedures to prevent workplace harassment from occurring".

25

1    Plaintiff alleges that defendant Aramark Sports, LLC has posted and made aware their

2  sexual harassment and workplace harassment policies, but have failed to adhere to those policies.

3  **Plaintiff's Fourth Cause of Action, <u>Workplace Harassment and Discrimination</u>,**

4  *does states facts sufficient to constitute a cause of action.*

5    Plaintiff claims in paragraph 41, on page 14 of his complaint that he was subjected to

6  continuous and/or severe hostile environment based on his sexual relationship with defendant

7  McVicker. He was subject to quid pro quo sex based harassment and discrimination at his

8  workplace which was perpetrated and tolerated by persons in positions of power as set forth

9  herein, violating California Government Code12940 et. Seq.

10   **Plaintiff's Fifth Cause of Action, <u>Intentional Infliction of Emotional Stress</u> does**

11  **states facts sufficient to constitute a cause of action.**

12   In California, the intentional infliction of severe emotional distress, without physical

13  *impact, based on "outrageous" conduct, is a separate tort. The elements of the cause of action;*

14  (1) outrageous conduct by the defendant, (2) the defendant's intention of causing, or the reckless

15  disregard of the probability of causing, emotional distress, (3) the plaintiff's actual suffering of

16  severe or extreme emotional stress, and (4) actual and proximate causation of emotional

17  distress by the defendants outrageous conduct.

18   (Nally v. Grace Community Church 1988) 47 C. 3d 2787, 300, 253 Cal Rptr. 97, 763 P.

19  2d 948; Cole v. Fair Oaks Fire Protection District (1987) 43 C. 3d 148, 233 Cal. Rptr. 308.

20   Plaintiff states in paragraph 46, on page 15 of his complaint, "At all times plaintiff clearly

21  rejected defendants' harassment, retaliation and discrimination, making them aware, that the

22  abuse will not be tolerated. Defendants ignored plaintiff's objections. The actions of defendants

23  were outrageous, intentional, and malicious, and done with reckless disregard of the fact that

24  they would certainly cause plaintiff to suffer severe emotional and physical distress".

25

1      Plaintiff claims that defendants intended to cause plaintiff emotional stress due to:

2   allowing their anger and resentment towards plaintiff motivate their actions, which resulted in or

3   rose to the level of "outrageous conduct", and caused them to "recklessly disregard" plaintiff's

4   rights. Defendants Aramark Sports, LLC, McVicker and Lee were supervisors and/or managers

5   and executive managers supposedly trained in preventing workplace harassment, and knew or

6   should have known that their actions would certainly cause plaintiff to suffer severe emotional

7   and physical distress. Defendants' actions were vengeful and vindictive.

8      "On appeal, the judgment was affirmed. The Court of Appeal held that defendants'

9   threatened and actual bad faith refusal to make payments under the disability policy, maliciously

10   employed in concert with false and threatening communications directed to plaintiff for the

11   purpose of causing him to surrender his policy or to disadvantageously settle a nonexistent

12   dispute, was essentially tortious in nature and was conduct that could legally be the basis for an

13   action for damages for intentional infliction of emotional distress. U.L. Fletcher v. National Life

14   Insurance CO. 10 Cal. App. 3d 376; 89 Cal. Rptr. 78; 1970 Cal. App.

15      Plaintiff alleges that defendant Aramark Sports, LLC intentionally did not want to end the

16   harassment of defendants McVicker and Lee, once they knew about it, and purposely denied

17   plaintiff a raise, and skipped over him for a promotion. Defendants, and all of them, became

18   prejudiced against plaintiff because (1) he reported the harassment to Aramark Corporation's

19   Human Resources Department in Philadelphia (which defied the management staff at the

20   Carnelian Room), (2) he reported the harassment to the Management staff at the Carnelian

21   Room, (3) he threatened to report the harassment to the EEOC and DEFH, and (4) thereafter, he

22   filed the complaints to the DEFH. Defendants were managers and executive managers, and knew

23   or should have known that their actions were outrageous or that they were acting in reckless

24   disregard of plaintiff right to be free from a workplace environment perpetuated with

     discrimination, but, they just did not care.

25

**Memorandum of Points & Authorities in Support of Plaintiff's Demurrer**

11

1        Plaintiff claims on lines 12  through 24, page 6 of his complaint how Defendant

2   McVicker's intentional infliction of emotional stress upon him in the workplace was deliberate,

3   and how her having the knowledge  that plaintiff truly loved her, and, she knew that at that

4   particular time that plaintiff was vulnerable and  susceptible to emotional pain.

5        Plaintiff alleges that defendant Lee knew or should have known that by threatening

6   plaintiff's job and creating an intimidating and abusive work atmosphere for plaintiff, that his

7   actions would certainly cause plaintiff to suffer severe emotional and physical distress.

8        Furthermore, to address defendant's claim that plaintiff  has  not been injured in the

9   manner alleged or in any other manner whatsoever, as long as plaintiff proves that his work

10  environment would reasonably be perceived as hostile or abusive, there is no need for it also to

11  be psychologically injurious for him to make a claim for damages.

12        "The court found that psychological harm could be taken into account, but was not

13  required by statute". Harris v. Forklift Systems, Inc. 510 U.S. 17: 114 S. Ct 367.

14        Although, plaintiff alleges he was injured psychologically in this case.

15        Attached to the request for judicial notice is a true and correct copy of plaintiff's medical

16  records from the Veteran's Administration Psychology Department.

17        Plaintiff claims throughout the report that specific statements were made by plaintiff's

18  doctors that indicate and verify the injuries plaintiff sustained, and the treatment he received for

19  those injuries.

20        Attached to the request for judicial notice is a true and correct copy of plaintiff's first

21  doctor's certification approving plaintiff for Temporary State Disability Insurance.

22        Attached to the request for judicial notice is a true and correct copy of plaintiff's SDI

23  payments from April 2006 thru January 31, 2007.

24        Attached to the request for judicial notice is a true and correct copy of a letter from

25

1   plaintiff's doctor to the EDD regarding the possible denial of plaintiff's Unemployment

2   insurance benefits by defendants.

3          Attached to the request for judicial notice a true and correct copy of the minutes from a

4   deposition regarding a pending worker's compensation case plaintiff filed against defendants.

5   Plaintiff alleges under oath how his injuries were sustained by the defendants.

6          Attached to the request for judicial notice is a true and correct copy of Administrative

7   Law Judge Peter Wercinski's ruling regarding plaintiff's claim filed with EDD regarding his UI

8   benefits. Defendants denied his UI benefits, as EDD stated he resigned from the defendant's

9   employment with out "good cause".

10         Judge Wercinski's ruling explains how plaintiff was constructively discharged, and how

11  he was injured psychologically by defendants. Judge Wercenski stated, "The evidence admitted

12  at the hearing established that the claimant's conditions of employment became so onerous as to

13  constitute a threat to his mental well being."

14         Attached to the request for judicial notice is a true and correct copy of plaintiff's

15  employment records from the Carnelian Room, specifically take notice to the Incident/Accident

16  report showing the injury reported to the HR manager at the Carnelian Room.

17         Attached to the request for judicial notice is a true and correct copy of the "notice to

18  employer of State Disability Claim Filed, showing defendant's approval of SDI benefits for

19  plaintiff because of the injury.

20         **Defendants' Second Affirmative Defense (Failure to Mitigate Damages) is**

21  **groundless, due to plaintiff being on disability for ten months and not being able to work.**

22         **Defendants' Third Affirmative Defense (Statute of Limitations) is groundless, due to**

23  **plaintiff filing his complaint with the DFEH in a timely manner, and acquiring "rights to**

24  **sue" letters, and then thereafter filing this complaint in this court prior to April 22, 2007.**

25

1    Attached to the request for judicial notice is a true and correct copy of plaintiff's letters

2  for "rights to sue".

3    **Defendants' Fourth Affirmative Defense (Waiver and Estoppel) is groundless, due**

4  **to the fact that plaintiff has not waived his rights and is not estopped from asserting his**

5  **rights to bring his claim for damages.**

6    **Defendants' Fifth Affirmative Defense (Unclean Hands) is groundless, due to the**

7  **fact that it is not the plaintiff who is barred by unclean hands it is the defendants who are**

8  **with unclean hands. Plaintiff is the injured party, not the defendants.**

9    **Defendants' Six Affirmative Defense (Privilege/Justification) is groundless, due to**

10  **defendants' conduct not being a just and proper exercise of managerial discretion, nor was**

11  **their conduct undertaken for fair and honest reasons.**

12    Plaintiff alleges defendants' conduct constitute a misuse of authority as defendants

13  abused their managerial positions by constructively discharging plaintiff.

14    **Defendants Seventh Affirmative Defense (Worker's Compensation Exclusive**

15  **Remedy) is groundless and without merit, due to plaintiff's wrongful discharge claim being**

16  **a violation of public policy by defendants, and therefore plaintiff's emotional distress claim**

17  **is not preempted by California Worker's Compensation Act.**

18    "Employee's emotional distress claim against employer is not preempted by California

19  Worker's Compensation Act where alleged wrongful discharge on which claim is based violates

20  fundamental policy. Kirton v Summit Medical Center, N.D. Cal. 1997, 982 F. Supp. 1381.

21  Worker' Compensation 2088.

22    "Under California law, allegations of employer misconduct involving sexual or racial

23  discrimination are actionable in tort notwithstanding Worker's compensation Act's broad

24  preemption. Kirton v Summit Medical Center, N.D. Cal. 1997, 982 F. Supp. 1381. Worker'

25  Compensation 2088. See also Gant v. Sentry Ins, 1 Cal 4th 1083

1    **Defendants' Eighth Affirmative Defense (Failure To Exhaust Administrative**

2    **Remedies) is groundless and without merit, due to the fact that plaintiff first reported the**

3    **harassment of defendants McVicker and Lee to Aramark's Human Resources Department**

4    **in Philadelphia on or around February 17, 2006 via the employee hotline, as the**

5    **harassment started around February 3, 2006 and progressed and continued throughout**

6    **March 28, 2006.**

7        Defendants claim that plaintiff failed timely or properly to exhaust his administrative

8    remedies.

9        Plaintiff reported the harassment immediately because he wanted it to end, as he reported

10    the harassment of defendant McVicker within ten days after it began. Defendant Lee's

11    harassment was reported within a few days after it began.

12        Defendants McVicker and Lee's harassment was reported again on or about February

13    23, 2006 to Aramark' Human Resources Department in Philadelphia and to the management

14    staff at the Carnelian Room, as plaintiff submitted two written documents to Phil Epps the

15    General Manager at the Carnelian Room, who then faxed the documents to Human Resources.

16        Plaintiff claims that he did not fail to timely or properly exhaust his administrative

17    remedies.

18    **Defendants Ninth Affirmative Defense (Avoidable Consequences) is groundless and**

19    **without merit, due to defendants' negligence and failure to prevent and properly correct**

20    **their discriminatory, harassing and retaliatory conduct. Plaintiff did not fail to take**

21    **advantage of the preventive and corrective opportunities provided by defendants.**

22        Plaintiff claims that after he reported the harassment and discrimination of defendants

23    McVicker and Lee to Aramark Sports, LLC, thereafter, Aramark Sports, LLC initiated an

24    investigation that was insufficient, incomplete and inadequate, as it failed to take measures that

25

1   were reasonably calculated to end the harassment. Aramark Sports, LLC failed to properly

2   investigate and end the harassment.

3        Plaintiff claims that on or about February 24, 2006, he met with Phil Epps regarding the

4   complaints. Epps informed Plaintiff that he would fax the written documents to Aramark's

5   Human Resource Department in Philadelphia. Epps told plaintiff that he was sorry that this was

6   happening and he had sympathy for him because his daughter had recently broke-up with her

7   fiancée. He told plaintiff that if he ever wanted to go outside to get some air he could if it would

8   make him feel better.

9        Thereafter, on or about February 27, 2006, Epps informed Plaintiff that someone from

10  Human Resources would be there to interview him that day. Plaintiff noticed that defendant

11  McVicker was also there to be interviewed, and believed that defendant Lee would be there to be

12  interviewed as well.

13       Plaintiff was called to be interviewed by Mr. Jerry McCarthy, an Aramark General

14  Manager from the Santa Clara Convention Center. He said he was just gathering facts about the

15  situation. During the interview he asked plaintiff some basic questions regarding his position and

16  responsibilities. He stated that he had the documents plaintiff submitted to HR in front of him,

17  but he wanted plaintiff to explain to him verbally what happened. Plaintiff proceeded to do so.

18       After the interview was over, McCarthy informed Plaintiff to give him about a week to

19  get back to him  regarding the matter and that Aramark has a non-retaliation policy, and if

20  Plaintiff had any problems don't hesitate to call. He then gave plaintiff his card and said call

21  anytime.

22       Plaintiff contacted McCarthy on or about March 6, 2006, frustrated that the harassment

23  was still going on. Plaintiff left a message for McCarthy and McCarthy returned his call a day or

24  two later. McCarthy told plaintiff that he had forwarded his findings to a manager in Human

25

1 | Resources and they would be contacting plaintiff in the near future. Plaintiff became upset

2 | because he felt Aramark Sports, LLC was reacting slowly in ending the harassment.

3 | On or about March 15, 2006, Plaintiff called Executive Sous chef Tim Miller to inform

4 | him that he would not be in to work on March 16, 2006 because he had to go to the doctor.

5 | On or about March 17, 2006, when plaintiff returned to work, he met with Senior

6 | Executive Chef Jesus and Executive Sous Chef Tim Miller in regards to his complaints against

7 | Defendants McVicker and Lee. Plaintiff was informed that Vicki, the regional director of HR

8 | was there to interview him and defendant McVicker on the 16th the day before, but because

9 | plaintiff was not there, he missed the opportunity to speak to her. He was also informed that

10 | defendant McVicker also was not interviewed, because plaintiff was not there. At this point

11 | plaintiff felt that he should have least received a phone call to let him know the regional director

12 | was there to speak with him. Plaintiff had waited a considerable amount of time to meet with

13 | someone regarding his complaints and was frustrated because the harassment was still going on,

14 | and that nothing appeared to be concluded.

15 | Chef Jesus stated that he felt that plaintiff and defendant McVicker were having

16 | personality conflicts and this was the core of their problems. Plaintiff told Chef Jesus that this

17 | was not the situation at all. He explained that when defendant McVicker ended the relationship

18 | with him he gave her some constructive criticism about herself and she became infuriated with

19 | him. Plaintiff stated he did not threaten her or call her any names, and that her anger turned into

20 | hatred and hostility towards him and she brought it to the workplace and made plaintiff's job

21 | hard for him. Plaintiff also stated that he could accept the break-up but he will not tolerate the

22 | harassment. Both chefs seemed to be receptive and said if she did this she is wrong. Plaintiff said

23 | that he had many examples of how she made things hard for him and how it affected production.

24 | Plaintiff was told that they were asked to or had considered splitting them up on different

25 |

1  shifts, but because they did not know what would be fair they did not. Chef Jesus stated "I think

2  we can work this out ourselves; I'm asking you as your boss, don't do this harassment thing". He

3  said HR wanted to know what they could do to solve the problem. Plaintiff informed them he

4  could not answer that question because he did want his answer to be considered bias or unfair.

5      At the commencement of the meeting, plaintiff was told that McVicker still going to be

6  working with him, but for now she was instructed to not supervise him and nothing was ever

7  mentioned regarding defendant Lee.

8      At this point, plaintiff felt even more insecure working at the Carnelian Room and felt

9  that nothing was going to be done to stop the harassment, and that he just had to accept it and

10 move on.

11     "Once the employer knows or should have known about the harassment, it has a duty to

12 take immediate and appropriate action to end it.

13 Steiner v Showboat Operating Co. (9th Cir 1994) 25 F 3d 1454, 1464. Intleofer v Turnage (9th cir

14 1992) 973 F 2d 773. Ellison v Brady (9th Cir 1991, 824 F2d 872, 881

15     "The employer's response must be reasonably calculated to end the harassment". Ellison

16 v Brady.

17 The law requires: "Although the necessary response varies with each case, typically an employer

18 should:

19     • Take the complaint seriously
       • Do nothing that penalizes or stigmatizes  the complainant
20     • Investigate the complaint
       • Interview the complainant, the alleged harasser  and any necessary witnesses;
21     • Communicate with the complainant as to the progress and conclusions of the
         investigation
22

23 Aramark's investigation failed, because 1) although Foster, McVicker and Lee were

24 interviewed, other pertinent witnesses were not interviewed, and 2) by not immediately ending

25

1    the harassment, Foster was stigmatized and 3) the complaint was not taken seriously, and 4)

2    there was no communication with Foster regarding the progress and conclusions of the

3    investigation.

4        Tayborn v City of County of San Francisco (9th cir 2003) 341 F 3d 957, "employer's internal

5    investigation was incomplete because employer failed to interview some employees and

6    managers involved in the alleged incidents, this and other evidence created triable issue of fact

7    over whether defendant took prompt and adequate remedial measures on learning of alleged

8    harassment".

9        Swenson v. Potter (9th cir 2001) 271 F 3d 1184, 1198 (when employer took prompt steps to

10    end harassment, liability could not be premised or "perceived inadequacies in the investigation.

11    "Employer decision to return harasser to plaintiff's workplace created hostile environment".

12    Ellison v Brady

13        Aramark never removed defendant McVicker from plaintiff's workplace, they allowed her to

14    continue to work with him on the same shift, as she continued to harass and/or retaliate against

15    him.

16        The simple fact that Aramark Sports, LLC allowed defendant McVicker to continue to work

17    with plaintiff in a supervisor capacity on the same shift two days after he reported the

18    harassment to management shows that their investigation was not reasonably calculated to end

19    the harassment.

20        "A single, isolated response, whether in the form of a rebuke, counseling or demotion, is

21    insufficient to immunize an employer from liability if the response does not put an end to the

22    abusive behavior.

23    Intlekoter v Turnage

24        After plaintiff reported the harassment and retaliation, it did not only continue, it got

25

1  worse.

2  Casenas v Fujisawa USA, Inc. (1997) 58 CA 4th 101 (in "text book" response to sexual

3  harassment complaint, employer sent letter to complainant summarizing investigation, finding

4  and specifying disciplinary action taken and proposed to be taken if conduct continued) Such

5  communication lets the complainant know that she or he is being protected and that the employer

6  takes the complaint seriously, on privacy actions in general:  see chapter 6. t

7  Employers should:

8  1) Make the complainant whole if harassment is found, 2) Take steps to prevent future

9  harassment; and 3) Take steps to ensure that there is no retaliation against the complainant.

10  Aramark Sports, LLC failed in all these areas. Plaintiff never got any documentation

11  written or verbal similar to the "textbook" response mentioned above, during the time of the

12  harassment and/or before he took his medical leave on March 28, 2006, nor before his

13  resignation on June 15, 2006, as his  employee  records contain no supporting documents

14  reflecting this.

15  Plaintiff perceived that his complaint was heard but nothing was going to be done about

16  it, and he was going to have to continue working with defendants McVicker and Lee in the same

17  capacity.

18  "By focusing much of its investigation on the most personal and private aspects of the

19  plaintiff's life, rather than the alleged harasser and harassment the employer does not act

20  appropriately."

21  Sarro v City of Sacramento (ED Cal 1999) 78 F Supp 2d 1057, 1064

22  Plaintiff alleges that statements made by General Manager Phil Epps nd Senior Executive

23  Chef Jesus indicate that they were focusing more on Foster's personal and private life rather than

24  on defendant McVicker and her harassment.

25

1       "By investigating the plaintiff's allegations, instructing the alleged harasser to stay away

2   from the plaintiff during the investigation, and terminating the harasser's employment when the

3   investigation was over, the employer acted appropriately."

4   Ulrich v Kmart Corp (D Kan 1994) 858 F supp 1087

5       "In this circuit, an employer's remedial obligations are defined by Ellison v. Brady. Here,

6   as in other circuits, "remedies should be 'reasonably calculated to end the harassment." Id at 822

7   (quoting Katz v. Dole, 709 F. 2d 251, 256 (4th Cir. 1983)). Ellison lays out a two-part test that

8   goes beyond short term results: In essence, then, we think that the reasonableness of an

9   employer's remedy will depend on its ability to stop the harassment by the person who

10  engaged in the harassment. In evaluating the adequacy of the remedy, the court may take into

11  account the remedy's ability to persuade potential harassers from unlawful conduct. Fuller v.

12  City of Oakland, California, 47 F. 3d 1522, 1995 U.S. App.

13      Attached to the request for judicial notice is a true and correct copy of documents

14  plaintiff composed describing in detail the actions of the defendants and their conduct after

15  plaintiff reported the harassment, and how the discrimination and harassment continued, as the

16  dates of the incidents show that the conduct occurred after plaintiff filed his complaints.

17      "However, this analysis omits a critical step. The fact that harassment stops is only a test

18  for measuring the efficacy of a remedy, not a way of excusing the obligation to remedy.

19      "That obligation will not be discharged until action-prompt, effective action-has been

20  taken. Effectiveness will be measured by the twin purposes of ending the current harassment

21  and deterring future harassment- by the same offender or others. Ellison, 924 F. 2dat 882. If 1)

22  no remedy is [*1529] undertaken, or 2) the remedy attempted is ineffectual, liability will attach."

23  Fuller v. City of Oakland, California, 47 F. 3d 1522, 1995 U.S. App.

24      Plaintiff claims that he requested his employee records from Aramark, LLC in February

25

1   showing of the required malice or reckless indifference on the part of certain individuals; the

2   plaintiff must impute liability for punitive damages to the employer, that is where an employee

3   serving in a managerial capacity committed the wrong while acting in the scope of

4   employment. Odgen v. Wax Works, Inc. 214 F. 3d 999; 2000 U.S. App.

5        Plaintiff alleges that Defendants Aramark Sports, LLC, and defendants McVicker and

6   Lee are individuals serving in managerial capacities and committed the wrong while acting in the

7   scope of their employment.

8        Kolstad v. American Dental Asc., 527 U.S. 526 (1999) continues to be the focus of cases

9   addressing the liability of punitive damages in vicarious liability cases. The courts note its

10  inapplicability in direct liability cases. Delineation of direct and vicarious liability is not precise.

11  Similarly, who is a managerial agent, who is in top management and which actor essentially is

12  the defendant, are yet to be uniformly developed. It is quite clear, however, that defendant, in

13  large measure, proves much of plaintiff's punitive damages case when proving its affirmative

14  defense.

15       Defendants and all of them have no affirmative defense for their actions.

16       In Anderson v. G.D.C. Inc., 281 F. 3d452 (4th Cir. 2002), the court held that the district

17  court abused its discretion in denying a sex discrimination plaintiff's motion for a new trial on

18  punitive damages. The court found, first, that a reasonable jury could conclude that the general

19  manager of G.D.C. engaged in harassing conduct despite knowing that his conduct might

20  violate federal law. As evidence, the court noted that an EEOC poster regarding sexual

21  harassment hung in the dispatch trailer at the worksite. Second, the general manager "was

22  unquestionably a managerial employee, as shown by his authority to hire and fire drivers and to

23  impose lesser forms of discipline, including docking a driver's wages." Third, the manager

24  committed the discrimination while in the course of his employment. This third requirement can

25

1    "By investigating the plaintiff's allegations, instructing the alleged harasser to stay away

2    from the plaintiff during the investigation, and terminating the harasser's employment when the

3    investigation was over, the employer acted appropriately."

4    Ulrich v Kmart Corp (D Kan 1994) 858 F supp 1087

5    "In this circuit, an employer's remedial obligations are defined by Ellison v. Brady. Here,

6    as in other circuits, "remedies should be 'reasonably calculated to end the harassment." Id at 822

7    (quoting Katz v. Dole, 709 F. 2d 251, 256 (4th Cir. 1983)). Ellison lays out a two-part test that

8    goes beyond short term results: In essence, then, we think that the reasonableness of an

9    employer's remedy will depend on its ability to stop the harassment by the person who

10    engaged in the harassment. In evaluating the adequacy of the remedy, the court may take into

11    account the remedy's ability to persuade potential harassers from unlawful conduct. Fuller v.

12    City of Oakland, California, 47 F. 3d 1522, 1995 U.S. App.

13    Attached to the request for judicial notice is a true and correct copy of documents

14    plaintiff composed describing in detail the actions of the defendants and their conduct after

15    plaintiff reported the harassment, and how the discrimination and harassment continued, as the

16    dates of the incidents show that the conduct occurred after plaintiff filed his complaints.

17    "However, this analysis omits a critical step. The fact that harassment stops is only a test

18    for measuring the efficacy of a remedy, not a way of excusing the obligation to remedy.

19    "That obligation will not be discharged until action-prompt, effective action-has been

20    taken. Effectiveness will be measured by the twin purposes of ending the current harassment

21    and deterring future harassment- by the same offender or others. Ellison, 924 F. 2dat 882. If 1)

22    no remedy is [*1529] undertaken, or 2) the remedy attempted is ineffectual, liability will attach."

23    Fuller v. City of Oakland, California, 47 F. 3d 1522, 1995 U.S. App.

24    Plaintiff claims that he requested his employee records from Aramark, LLC in February

25

Memorandum of Points & Authorities in Support of Plaintiff's Demurrer                    21

1  2006 prior to filing this complaint. Although the records show the reporting of the accident or

2  injury to James Chan, Aramark, LLC's in house Human Resource Manager on March 28, 2006,

3  and the filing of the claim for SDI, the records do not show any documentation regarding the

4  investigation and its results.

5      Plaintiff claims that the his employee records also show that Aramark Sports, LLC

6  solution to remedy the problem was to separate plaintiff and defendant McVicker's work shifts

7  upon plaintiff's return from disability leave, as this remedy to be initiated was substantially too

8  late to promptly stop the harassment, or should have been initiated prior to plaintiff taking his

9  disability leave, as it may have helped prevent plaintiff from taking the disability leave.

10     "Title VII does not permit employers to stand idly by once they learn that sexual

11 harassment has occurred. To do so amounts to a ratification of the prior harassment. ." Fuller v.

12 City of Oakland, California, 47 F. 3d 1522, 1995 U.S. App.

13     "Employee was subjected to sexual harassment by her supervisor for a period of four

14 months. Once employee reported the harassment to a higher supervisor, the supervisor was

15 terminated within one month". Phillips v. Taco Bell Corporation, a California Corporation, 156

16 F. 3d. 884; 1998 U.S.App

17     In Phillips, plaintiff was given a two week paid vacation while supervisor was being

18 investigated. The supervisor was first interviewed and then suspended pending the investigation.

19 After the investigator took statements from other Taco Bell employees, the harassing supervisor

20 was terminated. The court held that the evidence presented by the employee did not support a

21 finding of constructive discharge.

22     Plaintiff felt compelled to take a disability leave on March 28, 2006, due to the

23 discrimination and harassment and retaliation of the defendants.

24     Attached to the request for judicial notice is a true and correct copy of Jerry

25

1   D.McCarthy's business card plaintiff received from McCarthy at the commencement of the

2   meeting.

3           Attached to the request for judicial notice is a true and correct copy of the "Complaints of

4   Discrimination" received from the DFEH on March 22, 2006, showing approximately when the

5   harassment started.

6           **Defendants' Tenth Affirmative Defense (Mixed Motive), is groundless, due to**

7   **plaintiff showing credible evidence that defendants actions were discriminatory and**

8   **retaliatory.**

9           **Defendants' Eleventh Affirmative Defense (Absence of Malice) is groundless, due to**

10  **plaintiff showing and describing the malicious acts of the defendants, and the fact the**

11  *defendants have no affirmative defense to their actions, because plaintiff's employment*

12  **resulted in a constructive discharge.**

13          **Defendant's Twelfth Affirmative Defense (Punitive Damages) is groundless, due to**

14  **the fact that plaintiff's complaint has stated facts sufficient to support claims for punitive**

15  **damages.**

16          "A plaintiff must prove malice or recklessness for purposes of an award of punitive

17  damages under 42 U.S.C.S. §1981a (b) (1). Under the terms of §1981a (b) (1) punitive damages

18  are available in claims under Title VII Civil Rights Act of 1964, 42 U.S.C.S. §2000e et seq.,

19  where the employer has engaged in intentional discrimination and has done so with malice or

20  with reckless indifference to the federally protected rights of an aggrieved individual. The terms

21  malice or reckless indifference pertain to the employers knowledge that it may be acting in

22  violation of federal law, not its awareness that it is engaging in discrimination". Odgen v. Wax

23  Works, Inc. 214 F. 3d 999; 2000 U.S. App.

24          The punitive damages inquiry  under 42 U.S.C.S. §1981a(b)(1)  does not end  with a

25

1 showing of the required malice or reckless indifference on the part of certain individuals; the

2 plaintiff must impute liability for punitive damages to the employer, that is where an employee

3 serving in a managerial capacity committed the wrong while acting in the scope of

4 employment. Odgen v. Wax Works, Inc. 214 F. 3d 999; 2000 U.S. App.

5      Plaintiff alleges that Defendants Aramark Sports, LLC, and defendants McVicker and

6 Lee are individuals serving in managerial capacities and committed the wrong while acting in the

7 scope of their employment.

8      Kolstad v. American Dental Asc., 527 U.S. 526 (1999) continues to be the focus of cases

9 addressing the liability of punitive damages in vicarious liability cases. The courts note its

10 inapplicability in direct liability cases. Delineation of direct and vicarious liability is not precise.

11 Similarly, who is a managerial agent, who is in top management and which actor essentially is

12 the defendant, are yet to be uniformly developed. It is quite clear, however, that defendant, in

13 large measure, proves much of plaintiff's punitive damages case when proving its affirmative

14 defense.

15      Defendants and all of them have no affirmative defense for their actions.

16      In Anderson v. G.D.C. Inc., 281 F. 3d452 (4th Cir. 2002), the court held that the district

17 court abused its discretion in denying a sex discrimination plaintiff's motion for a new trial on

18 punitive damages. The court found, first, that a reasonable jury could conclude that the general

19 manager of G.D.C. engaged in harassing conduct despite knowing that his conduct might

20 violate federal law. As evidence, the court noted that an EEOC poster regarding sexual

21 harassment hung in the dispatch trailer at the worksite. Second, the general manager "was

22 unquestionably a managerial employee, as shown by his authority to hire and fire drivers and to

23 impose lesser forms of discipline, including docking a driver's wages." Third, the manager

24 committed the discrimination while in the course of his employment. This third requirement can

25

1    be satisfied, as in this case, when "a supervisor with immediate(or successively higher)

2    authority over the [victimized] employee creates "an actionable hostile environment".

3        Plaintiff alleges that defendants, and all of them, engaged in harassing conduct despite

4    knowing that their conduct might violate federal law.

5        Attached to the request for judicial notice is a true and correct copy of plaintiff's

6    employee records, revealing Defendant's sexual harassment and workplace harassment policies,

7    as defendants are aware of those policies, but have failed to adhere to them.

8        **Defendants Thirteenth Affirmative Defense (Constitutional Limit on Punitive**

9    **Damages), is irrelevant, due to plaintiff not having any contract with defendants, as**

10   **plaintiff claims constructive discharge as a breach of public policy, not by breach of**

11   **employment agreement, therefore he is not barred by the contract clause. Furthermore,**

12   **pertaining to the Due Process Clause, plaintiff has not yet stated an anticipated punitive**

13   ***damage award amount, and/or plaintiff has shown that he is entitled to punitive damages.***

14   **Defendants claiming violation of Due Process is premature at this stage of the case, as**

15   **plaintiff claims the same argument for Excessive Fines Clause, as it is also premature at**

16   **this stage of the case.**

17       **Defendant's Fourteenth Affirmative Defense (Business Necessity), is groundless, due**

18   **to plaintiffs claims being valid and the fact that constructively discharging plaintiff is not**

19   **consistent with business necessity.**

                                        **IV. CONCLUSION**

20       **Based upon the foregoing, plaintiff's demurrer to defendants' answer, in its entirety,**

21   ***should be sustained without leave to amend.***

22       Wherefore, Plaintiff prays for the following:

23   1.    Compensatory damages on all causes of action against defendants.

24   2.    Punitive damages where applicable.

25

1   3.  Attorney's fees and costs pursuant to Government Code Section 12965 and other

2      applicable statute.

3   4.  Costs of suit.

4   5.  Any other relief that this court deems proper.

5

6 Dated: May 14, 2007         Mark Antoine Foster, In Pro Per

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 6

1   MORGAN, LEWIS & BOCKIUS LLP
    ERIC MECKLEY, State Bar No. 168181
2   One Market, Spear Street Tower
    San Francisco, CA 94105-1126
3   Tel: 415.442.1000
    Fax: 415.442.1001



**FILED**

San Francisco County Superior Court

MAY 2 2 2007

GUHHUN PARK-LI, Clerk

BY: _____ , AB

4
    Attorney for Defendants
5   ARAMARK SPORTS, LLC, (formerly known as
    "ARAMARK Sports & Entertainment Services,
6   Inc."), YING KEE MCVICKER, and MATTHEW
    LEE
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF SAN FRANCISCO

10                        UNLIMITED JURISDICTION

11

12   MARK ANTOINE FOSTER,                    Case No. CGC-07-461178

13                  Plaintiff,
                                            FIRST AMENDED ANSWER OF
14          vs.                             DEFENDANTS ARAMARK SPORTS, LLC,
                                            YING KEE MCVICKER AND MATTHEW
15   ARAMARK SPORTS &                       LEE TO PLAINTIFF'S UNVERIFIED
     ENTERTAINMENT, Ying Kee McVicker,      COMPLAINT
16   an individual, Matthew Lee, an individual,
17   and DOES 1 Through 51,                 Complaint filed:    March 9, 2007
                                            Trial Date:         None
18                  Defendant.

19

20          Pursuant to California Code of Civil Procedure Section 472, Defendants ARAMARK

21   Sports, LLC (formerly known as "ARAMARK Sports, Inc." and incorrectly sued as

22   "ARAMARK Sports & Entertainment"), Ying Kee McVicker, and Matthew Lee ("Defendants")

23   submit their First Amended Answer and hereby answer and respond to the unverified Complaint

24   of Plaintiff Mark Antoine Foster ("Plaintiff") originally filed on March 9, 2007, as amended on

25   April 18, 2007, as follows:

26          Pursuant to California Code of Civil Procedure §431.30(d), Defendants generally deny

27   each and every allegation contained in Plaintiff's unverified Complaint, and deny further that

28   Plaintiff has been injured in the amount or manner alleged or in any other manner whatsoever.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7553645.1                                             Case No. CGC-07-461178

1    WHEREFORE, pursuant to Civil Code of Procedure Sections 431.30(b)(2) and (g),

2    Defendants assert the following affirmative defenses and pray for judgment as set forth below:

3    ## FIRST AFFIRMATIVE DEFENSE

4    ### (Failure to State a Cause of Action)

5    1.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

6    of action therein, Defendants allege that Plaintiff has failed to state a cause of action upon which

7    relief can be granted.

8    ## SECOND AFFIRMATIVE DEFENSE

9    ### (Failure to Mitigate Damages)

10    2.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

11    of action therein, Defendants allege that if Plaintiff sustained any damages by reason of the

12    allegations in the Complaint, which allegations are denied, then Plaintiff may not recover for any

13    such damages because, by his own acts and omissions, Plaintiff has failed timely and properly to

14    mitigate those damages.

15    ## THIRD AFFIRMATIVE DEFENSE

16    ### (Statute of Limitations)

17    3.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

18    of action therein, Defendants allege that Plaintiff's claims are barred by the applicable statutes of

19    limitations, including but not limited to the provisions of Code of Civil Procedure Section 335.1

20    and Government Code Sections 12960(d) and 12965(b).

21    ## FOURTH AFFIRMATIVE DEFENSE

22    ### (Waiver and Estoppel)

23    4.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

24    of action therein, Defendants allege that Plaintiff by his express and implied actions has waived

25    and is estopped from asserting, in whole or in part, any of the causes of action upon which he

26    seeks relief.

27    \\\

28    \\\

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7553645.1                    2                    Case No. CGC-07-461178
FIRST AMENDED ANSWER OF DEFENDANTS ARAMARK SPORTS LLC,
MCVICKER AND LEE TO PLAINTIFF'S UNVERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FIFTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

5.     As a separate and affirmative defense to Plaintiff's Complaint, and to each cause of action therein, Defendants allege that each cause of action is barred by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

### (Privilege/Justification)

6.     As a separate and affirmative defense to Plaintiff's Complaint, and to each cause of action therein, Defendants allege that their conduct was a just and proper exercise of managerial discretion, undertaken for fair and honest reasons, comporting with good faith under the circumstances then existing, and was privileged and justified.

## SEVENTH AFFIRMATIVE DEFENSE

### (Workers' Compensation Exclusive Remedy)

7.     As a separate and affirmative defense to Plaintiff's Complaint, and to each cause of action therein, Defendants allege that if Plaintiff sustained any injuries and/or emotional distress by reason of the allegations in the Complaint, which allegations are denied, Plaintiff's exclusive remedy for any such damages is governed by the California Workers' Compensation Act statutes.  Cal. Labor Code Sections 3200, et seq.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Administrative Remedies)

8.     As a separate and affirmative defense to Plaintiff's Complaint, Defendants allege that Plaintiff's statutory claims are barred in whole or in part to the extent Plaintiff has failed timely and/or properly to exhaust his administrative remedies with the California Department of Fair Employment and Housing ("DFEH") and/or the Equal Employment Opportunity Commission ("EEOC") and are barred in whole or in part to the extent his alleged causes of action exceed or are outside the scope of any administrative charge(s) filed by Plaintiff with the DFEH and/or EEOC.  Government Code §§ 12940, 12965(b); *Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal. App. 4th 1607.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7353645.1     3     Case No. CGC-07-461178

FIRST AMENDED ANSWER OF DEFENDANTS ARAMARK SPORTS LLC,
MCVICKER AND LEE TO PLAINTIFF'S UNVERIFIED COMPLAINT

## NINTH AFFIRMATIVE DEFENSE

### (Avoidable Consequences)

9.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause of action therein, Defendant ARAMARK Sports & Entertainment Services LLC alleges that it exercised reasonable care to prevent and promptly correct any discriminatory, harassing or retaliatory conduct, that Plaintiff unreasonably failed to take advantage of the preventative and corrective opportunities provided by Defendant or otherwise to avoid harm, and that reasonable use of Defendant's internal procedure and remedies would have prevented some, if not all, of Plaintiff's claimed damages from occurring. *State Dept. of Health Services v. Superior Court (McGinnis)* (2003) 31 Cal. 4th 1026.

## TENTH AFFIRMATIVE DEFENSE

### (Mixed Motive)

10.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause of action therein, Defendants allege that, to the extent that unlawful reasons were motivating factors as to any action by Defendants alleged in the Complaint, which Defendants expressly deny, legitimate non-discriminatory, non-retaliatory reasons, standing alone, would have induced Defendants to make the same employment decisions.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Absence of Malice)

11.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause of action therein, Defendants allege that at all times and places alleged in the Complaint, Defendants acted without malice and with a good faith belief in the propriety of their conduct.

## TWELFTH AFFIRMATIVE DEFENSE

### (Punitive Damages)

12.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause of action therein, Defendants allege that Plaintiff's Complaint fails to state facts sufficient to support any claim for punitive damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7553645.1                                    4                          Case No. CGC-07-461178

FIRST AMENDED ANSWER OF DEFENDANTS ARAMARK SPORTS LLC,
MCVICKER AND LEE TO PLAINTIFF'S UNVERIFIED COMPLAINT

1    (Constitutional Limit on Punitive Damages)

2    13.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

3    of action therein, Defendants allege that Plaintiff's claim for punitive damages is barred by the

4    Contract Clause (Article I, Section 10, Clause 1), the Due Process Clause (Fourteenth

5    Amendment, Section 1), and the Excessive Fines Clause (Eighth Amendment) of the United

6    States Constitution, and the corresponding provisions of the Constitution of the State of

7    California.

8    **FOURTEENTH AFFIRMATIVE DEFENSE**

9    **(Business Necessity)**

10    14.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

11    of action therein, Defendants allege that Plaintiff's claims are barred because Defendants' actions

12    about which Plaintiff complains were job-related and consistent with business necessity.

13    **FIFTEENTH AFFIRMATIVE DEFENSE**

14    **(No Vicarious Liability)**

15    15.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

16    of action therein, Defendant ARAMARK Sports, LLC alleges that any claim by Plaintiff for

17    punitive damages against ARAMARK Sports, LLC is barred because there is no vicarious

18    liability, in that no officer, director, or managing agent of ARAMARK Sports, LLC: (i) had

19    advance knowledge of the unfitness of any employee alleged to have acted unlawfully but

20    nonetheless employed such employee with a conscious disregard of the rights or safety of others,

21    (ii) authorized or ratified the alleged wrongful conduct for which damages are claimed, or (iii)

22    was personally guilty of oppression, fraud or malice.

23    **SIXTEENTH AFFIRMATIVE DEFENSE**

24    **(After-Acquired Evidence)**

25    16.    As a separate and affirmative defense to Plaintiff's Complaint, and to each cause

26    of action therein, Defendants allege that, to the extent during the course of this litigation

27    Defendants acquire any evidence of wrongdoing by Plaintiff, which wrongdoing would have

28    materially affected the terms and conditions of Plaintiff's employment or would have resulted in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FIRST AMENDED ANSWER OF DEFENDANTS ARAMARK SPORTS LLC,
MCVICKER AND LEE TO PLAINTIFF'S UNVERIFIED COMPLAINT

1   Plaintiff either being demoted, disciplined, or termination, such after-acquired evidence shall bar

2   Plaintiff from establishing liability and from recovering damages and/or shall reduce his recovery,

3   if any, for such claims as provided by law.

4           WHEREFORE, Defendants pray for the following:

5       1.  That Plaintiff take nothing in this action;

6       2.  That judgment be entered in favor of Defendants and against Plaintiff;

7       3.  That costs of suit be awarded to Defendants;

8       4.  That attorneys fees be awarded to Defendants; and

9       5.  For such other and further relief in favor of Defendants as the Court deems just

10          and proper.

11  Dated: May 22, 2007                    MORGAN, LEWIS & BOCKIUS LLP
                                           ERIC MECKLEY
12

13

14  By _____
                                           Eric Meckley
15                                         Attorney for Defendants
                                           ARAMARK SPORTS, LLC, YING KEE
16                                         MCVICKER, and MATTHEW LEE

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## PROOF OF SERVICE

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is One Market, Spear Street Tower, San Francisco, California 94105-1126.

On May 22, 2007, I served the within document(s):

**FIRST AMENDED ANSWER TO DEFENDANTS ARAMARK SPORTS, LLC, YING KEE MCVICKER AND MATTHEW LEE TO PLAINTIFF'S UNVERIFIED COMPLAINT**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a <u>Federal Express</u> agent for delivery.

☐    by causing the document(s) listed above to be personally delivered to the person(s) at the address(es) set forth below.

☐    by transmitting via electronic mail the document(s) listed above to each of the person(s) as set forth below.

Mark Foster, In Pro Per
725 Ellis Street, Apt. 408
San Francisco, CA 94109
Tel: 415.756.1611

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on May 22, 2007, at San Francisco, California.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

Melissa M. Estus

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

Case No. CGC-07-461178

EXHIBIT 7

1   **Mark Antoine Foster, In Pro Per**
    **725 Ellis Street, Apt. 408**
2   **San Francisco, CA 94109**
    **(415) 756-1611**
3

4

5

6

7

8                      **SUPERIOR COURT OF CALIFORNIA**

9              **IN AND FOR THE COUNTY OF SAN FRANCISCO**

10                    **CIVIL UNLIMITED JURISDICTION**

11
                                    No.  **CGC07461178**
12  **MARK ANTOINE FOSTER,**
                                    **REPLY IN SUPPORT OF**
13          **Plaintiff,**          **DEMURRER TO DEFENDANTS'**
                                    **FIRST AMENDED ANWSER**
14          **vs.**
                                    **Date: June 5, 2007**
15  **ARAMARK SPORTS and Entertainment,**   **Time: 9:30am**
    **Ying Kee McVicker, an individual, Matthew**   **Dept: 302**
16  **Lee, an individual, and DOES 1**
    **Through 51**
17          **Defendants**

18  _____/

19                          **I. Introduction**

20

21          Plaintiff MARK ANTOINE FOSTER hereby submits his reply to defendants' first

22  amended answer to his complaint.

23                       **II. Rebuttal Argument**

24          Defendants' first amended answer, in its entirety is groundless. In defendants' first

25
    **REPLY IN SUPPORT OF DEMURRER**                                    1

1   amended answer, two additional affirmative defenses were added. Plaintiff has already

2   responded to the defendants' initial answer (which included fourteen affirmative defenses) by

3   filing a demurrer in this court to their answer on May 14, 2007.

4       Plaintiff now responds to defendants' two additional affirmative defenses, which include

5   affirmative defenses fifth teen and sixteen.

6       DEFENDANTS' FIFTHTEENTH AFFIRMATIVE DEFENSE (NO VICARIOUS

7   LIABILTY) IS GROUNDLESS, DUE TO:

8       PLAINTIFF HAS PRESENTED CREDIBLE EVIDENCE SHOWING THAT

9   ARAMARK SPORTS, LLC AND ARAMARK HUMAN RESOURCES DEPARTMENT IN

10  PHILADELPHIA ARE MANAGING AGENTS OF THE CORPORATION AND WAS MADE

11  AWARE AND WAS WELL AWARE AND OR HAD ADVANCE KNOWLEDGE OF THE

12  UNFITNESS OR ACTIONS OF ITS SUPERVISOR DEFENDANT McVICKER AND

13  MANAGER DEFENDANT LEE, THEREFORE PLAINTIFF'S PUNITIVE DAMAGES

14  AGAINST ARAMARK SPORTS, LLC IS NOT BARRED.

15      Plaintiff states on lines 1 through 6 on page 5 of his memorandum of points and

16  authorities the dates on which he reported the harassment. Plaintiff also states on lines 12

17  through 15 on page 15 of his memo that he reported the harassment to Aramark Sports, LLC's

18  General Manager Phil Epps, at the Carnelian Room.

19      Plaintiff states on lines 22 through 24, on page 15 of his memo how Aramark Sports,

20  LLC initiated an investigation that was insufficient, incomplete and inadequate, and how it failed

21  to take measures that were reasonably calculated to end the harassment.

22      Plaintiff states on lines 24 on page 21 through lines 1 through 4 on page 22, how he

23  requested his employee records prior to filing his complaint, and how those records did not

24  contain any documentation regarding the investigation and its results.

25

REPLY IN SUPPORT OF DEMURRER                                                    2

1    Plaintiff claims at the time he requested his employee records, he also requested his
2  telephone recordings from the employee hotline when he reported the harassment to Aramark's
3  Human Resource Department in Philadelphia on or about February 17, 2006. Plaintiff was told
4  by James Chan, Aramark Sports, LLC's in-house human resource manager that he could not
5  acquire those recordings.

6    Plaintiff alleges that defendants are with unclean hands to deny or claim that no
7  officer, director or managing agent was not made aware of the harassment or had no advance
8  knowledge of the unfitness of any employee alleged to have acted unlawfully.

9    Plaintiff will motion this court to request affidavits from Aramark's LLC's General
10  Manager, Phil Epps, Aramark's General Manager of the Santa Clara Convention Center, Jerry
11  D. McCarthy, Aramark's Senior Executive Chef Jesus, and Aramark's Regional Human
12  Resource Director, Vicki, stating whether or not plaintiff made them aware of the harassment
13  of their supervisor and manager defendants McVicker and Lee. Plaintiff will also request an
14  affidavit from James Chan, stating whether or not plaintiff requested the telephone recordings
15  and what his response to plaintiff was.

16    Furthermore, According to FEHA Govt. 12900-12966, an employer in a sexual
17  harassment case (whether quid pro quo or hostile environment) is strictly liable for it's agents or
18  supervisor's acts of sexual harassment, regardless of its own degree of knowledge about the
19  harassment, and the acts of other than an agent or supervisor if it knew or should have known of
20  the harassment and failed to take corrective action. Govt Code 12940 (j) (1).

21    "A plaintiff must prove malice or recklessness for purposes of an award of punitive
22  damages under 42 U.S.C.S. §1981a (b) (1). Under the terms of §1981a (b) (1) punitive damages
23  are available in claims under Title VII Civil Rights Act of 1964, 42 U.S.C.S. §2000e et seq.,
24  where the employer has engaged in intentional discrimination and has done so with malice or
25  with reckless indifference to the federally protected rights of an aggrieved individual. The terms

**REPLY IN SUPPORT OF DEMURRER**                                                3

1    malice or reckless indifference pertain to the employers knowledge that it may be acting in

2    violation of federal law, not its awareness that it is engaging in discrimination". Odgen v. Wax

3    Works, Inc. 214 F. 3d 999; 2000 U.S. App.

4    The punitive damages inquiry under 42 U.S.C.S. §1981a(b)(1) does not end with a

5    showing of the required malice or reckless indifference on the part of certain individuals; the

6    plaintiff must impute liability for punitive damages to the employer, that is where an employee

7    serving in a managerial capacity committed the wrong while acting in the scope of

8    employment. Odgen v. Wax Works, Inc. 214 F. 3d 999; 2000 U.S. App.

9    Plaintiff alleges that Defendants Aramark Sports, LLC, and defendants McVicker and

10   Lee are individuals serving in managerial or supervisory capacities and committed the wrong

11   while acting in the scope of their employment.

12   Kolstad v. American Dental Asc., 527 U.S. 526 (1999) continues to be the focus of cases

13   addressing the liability of punitive damages in vicarious liability cases. The courts note its

14   inapplicability in direct liability cases. Delineation of direct and vicarious liability is not precise.

15   Similarly, who is a managerial agent, who is in top management and which actor essentially is

16   the defendant, are yet to be uniformly developed. It is quite clear, however, that defendant, in

17   large measure, proves much of plaintiff's punitive damages case when proving its affirmative

18   defense.

19   Defendants and all of them have no affirmative defense for their actions.

In Anderson v. G.D.C. Inc., 281 F. 3d452 (4th Cir. 2002), the court held that the district

20   court abused its discretion in denying a sex discrimination plaintiff's motion for a new trial on

21   punitive damages. The court found, first, that a reasonable jury could conclude that the general

22   manager of G.D.C. engaged in harassing conduct despite knowing that his conduct might

23   violate federal law. As evidence, the court noted that an EEOC poster regarding sexual

24   harassment hung in the dispatch trailer at the worksite. Second, the general manager "was

25

**REPLY IN SUPPORT OF DEMURRER**                                                              4

1  unquestionably a managerial employee, as shown by his authority to hire and fire drivers and to

2  impose lesser forms of discipline, including docking a driver's wages." Third, the manager

3  committed the discrimination while in the course of his employment. This third requirement can

4  be satisfied, as in this case, when "a supervisor with immediate(or successively higher)

5  authority over the [victimized] employee creates "an actionable hostile environment".

6  Plaintiff alleges that defendants, and all of them, were managing agents, supervisors,

7  managers, or executive mangers, and that they engaged in harassing conduct despite knowing

8  that their conduct might violate federal law.

9  Furthermore, Defendants have **NO AFFIRMATIVE DEFENSE** to the actions alleged in

10  the complaint, due to the plaintiff's employment resulting in a **CONSTRUCTIVE**

11  **DISCHARGE**, which constitutes a **"TANGIBLE EMPLOYMENT ACTION"**.

12  The Ellerth/Faragher rule is clear: no affirmative defense is available to the employer

13  when the supervisor's harassment culminates in a "tangible employment action". Odgen v.

14  WaxWorks, Inc. 214 F. 3d 999, 2000 U.S. App.

15  "The constructive discharge would constitute a tangible employment action and prevent

16  the Department from utilizing the affirmative defense" Jackson v. Arkansas Department of

17  Education 272 F. 3d 1020, 2002 U.S. App.

18  Plaintiff alleges that when defendants filed their first amended answer with this court,

19  it included seven pages, including the proof of service as the seventh page. Although when

20  defendants council mailed plaintiff a copy of the their first amended answer, it only included

21  six pages, including the proof of service, as defendants omitted the six page which included

22  the fifth teeth and sixteenth affirmative defenses.

23  Plaintiff alleges that defendants or defendants' council purposely omitted the six page, as

24  it contained the additional affirmative defenses. Plaintiff claims that defendants did this to

25  suppress from plaintiff those new additional affirmative defenses in an attempt to not allow

**REPLY IN SUPPORT OF DEMURRER**                                    5

1  plaintiff enough time to respond to those particular new affirmative defenses. If plaintiff had
2  not went to the court and requested a true and correct copy of their first amended answer, it could
3  have delayed or mislead plaintiff into believing that there were only minor changes in their first
4  amended answer, as plaintiff may not have noticed the missing page.

5  DEFENDANTS' SIXTEENTH AFFIRMATIVE DEFENSE (AFTER
6  ACQUIRED EVIDENCE) IS GROUNDLESS, DUE TO: PLAINTIFF HAS PRESEENTED
7  CREDIBLE EVIDENCE SHOWING THAT HE WAS CONSTRUCTIVELY DISCHARGED.

8  Plaintiff claims that there is no evidence of wrongdoing on his part, as his employee
9  records do not contain any negative reports, warning notices or disciplinary actions against
10  plaintiff.

11  Plaintiff alleges that defendants terminated him while he was on disability leave, as
12  defendants terminated him unjustly. Defendants claimed they contacted plaintiff and informed
13  plaintiff he was on the schedule to work and that he did not report to work as scheduled and
14  was thereafter terminated . Plaintiff claims that Executive Sous Chef Tim Miller contacted
15  plaintiff, but the only words contained in there conversation was Miller asking plaintiff if he was
16  coming back to work. Plaintiff informed Miller he would call him back to let him know.
17  Plaintiff instead called James Chan approximately two weeks later and informed him that he
18  would not be returning to work, as plaintiff understood that the defendants stated that they would
19  terminate him on the day he was due back, if he did not return, which was June 15, 2006.
20  Defendants' stated that if plaintiff did not return on that date, it would be considered a voluntary
21  quit. Plaintiff realized that he would not be able to return to work. Plaintiff was never told he was
22  on the schedule to work, as he would have informed Miller at that time that he would not be able
    to report back to work as scheduled, due to the reasons stated in his complaint.
23  Plaintiff was neither demoted nor disciplined during the entire course of his employment
24

25

REPLY IN SUPPORT OF DEMURRER                                    6

1  at the Carnelian Room. Plaintiff was a dedicated, hard working employee, with no record of

2  unexcused absences or tardiness.

3      Plaintiff alleges that defendants are attempting to discredit him or create an image or idea

4  that plaintiff did something wrong to cause his termination when he did not.

5                              **III. Conclusion**

6      Based on the foregoing, plaintiff's demurrer to defendants' answer, in its entirety, should

7  be sustained without leave to amend.

8      Wherefore, Plaintiff prays for the following:

9      1.    Compensatory damages on all causes of action against defendants.

10     2.    Punitive damages where applicable.

11     3.    Attorney's fees and costs pursuant to Government Code Section 12965 and other

12           applicable statute.

13     4.    Costs of suit.

14     5.    Any other relief that this court deems proper.

15

16  Dated: May 24, 2007                              Mark Antoine Foster, In Pro Per

17

18

19

20      .

21

22

23

24

25

EXHIBIT 8

ENDORSED
F I L E D
San Francisco County Superior Court

JUN 0 6 2007

GORDON PARK-LI, Clerk
BY: _____ MARY ANN MORAN
                        Deputy Clerk

1  Mark Antoine Foster, In Pro Per
   725 Ellis Street, Apt. 408
2  San Francisco, CA 94109
   (415) 756-1611
3

4

5

6

7

8            **SUPERIOR COURT OF CALIFORNIA**

9        **IN AND FOR THE COUNTY OF SAN FRANCISCO**

10            **CIVIL UNLIMITED JURISDICTION**

11
                              No.  **CGC07461178**
12  **MARK ANTOINE FOSTER,**
                              **NOTICE OF AMENDED DEMURRER**
13        **Plaintiff,**        **AND AMENDED DEMURRER TO**
                              **DEFENDANTS' FIRST AMENDED**
14        **vs.**              **ANSWER TO PLAINTIFF'S**
                              **COMPLAINT, MEMORANDUM OF**
15  **ARAMARK SPORTS and Entertainment,**  **POINTS AND AUTHORITIES;**
    **Ying Kee McVicker, an individual, Matthew**  **REQUEST FOR JUDICIAL NOTICE**
16  **Lee, an individual, and DOES 1**
    **Through 51**
17        **Defendants**        **Date:**
                              **Time: 9:30 am**
18  _____/  **Dept: 302**

19        TO ALL PARTIES HEREIN AND TO THEIR ATTORNEY OF RECORD:

20        Please take notice that on _____, or as soon thereafter as the

21  matter may be heard in department 302 of the above mentioned court, plaintiff MARK

22  ANTOINE FOSTER will demurrer to defendants' answer to his complaint as set fourth in the

23  accompanying AMENDED DEMURRER.

24

25  NOTICE OF AMENDED DEMURRER TO DEFENDANTS' FIRST AMENDED AWNSER TO
    PLAINTIFF'S COMPLAINT, MEMO OF POINTS & AUTHORITIES, REQUEST FOR JUDICIAL
    NOTICE

1

1       This amended demurrer is made and based upon this notice, the records, pleadings and

2   files herein, the memorandum of points and authorities attached hereto, and upon such oral

3   and documentary evidence as may be presented at the hearing of this demurrer.

4   DATED:                                      Mark Antoine Foster, In Pro Per

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   **NOTICE OF AMENDED DEMURRER TO DEFENDANTS' FIRST AMENDED AWNSER TO PLAINTIFF'S COMPLAINT, MEMO OF POINTS & AUTHORITIES, REQUEST FOR JUDICIAL NOTICE**

ENDORSED
F I L E D
San Francisco County Superior Court

JUN 0 6 2007

GORDON PARK-LI, Clerk
BY: _____ MARY ANN MORAN _____
                    Deputy Clerk

1  Mark Antoine Foster, In Pro Per
   725 Ellis Street, Apt. 408
2  San Francisco, CA 94109
   (415) 756-1611
3

4

5

6

7

8              **SUPERIOR COURT OF CALIFORNIA**

9            **IN AND FOR THE COUNTY OF SAN FRANCISCO**

10              **CIVIL UNLIMITED JURISDICTION**

11
                                No.  **CGC07461178**
12  **MARK ANTOINE FOSTER,**
                                **AMENDED DEMURRER TO**
13        **Plaintiff,**          **DEFENDANTS' FIRST AMENDED**
                                **AWNSER TO PLAINTIFF'S**
14        **vs.**                 **COMPLAINT**

15  **ARAMARK SPORTS and Entertainment,**   **Date:**
   **Ying Kee McVicker, an individual, Matthew**   **Time: 9:30pm**
16  **Lee, an individual, and DOES 1**    **Dept: 302**
   **Through 51**
17        **Defendants**

18  _____/

19       Plaintiffs MARK ANTOINE FOSTER demurrer to defendants' FIRST AMENDED

20  AWNSER in its entirety to plaintiff's complaint, as specifically set forth below:

21       **PLAINTIFF MARK ANTOINE FOSTER DEMURRER DEFENDANTS' FIRST**

22              **AMENDED AWNSER TO HIS COMPLAINT**

23       Plaintiff demurs to defendants' FIRST AMENDED AWNSER, in its entirety pursuant to

24  California Code of Civil Procedure §430.10, on the grounds that plaintiff's first amended answer

25

**DEMURRER TO DEFENDANTS' FIRST AMENDED AWNSER TO PLAINTIFF'S COMPLAINT**                    1

1  does not state facts sufficient to constitute a defense.

2      Defendants' have **NO AFFIRMATIVE DEFENSE** to their actions in the complaint, due

3  to constructively discharging plaintiff.

4      This amended demurrer is made and based upon this notice, the records, pleadings and

5  files herein, the Memorandum of Points and Authorities attached hereto, and such oral and

6  documentary evidence as may be presented at the hearing of this demurrer.

7  .

8  **DATED: June 6, 2007**                    **By: Mark Antoine Foster, In Pro Per**

9

10

11

12

13

14

15

16

17

18

19

20  .

21

22

23

24

25
**DEMURRER TO DEFENDANTS' FIRST AMENDED AWNSER TO PLAINTIFF'S COMPLAINT**    2

ENDORSED
F I L E D
*San Francisco County Superior Court*

JUN 0 6 2007

GORDON PARK-LI, Clerk
BY: _____ MARY ANN MORAN _____
Deputy Clerk

1  **Mark Antoine Foster, In Pro Per**
   **725 Ellis Street, Apt. 408**
2  **San Francisco, CA 94109**
   **(415) 756-1611**
3

4

5

6

7

8              **SUPERIOR COURT OF CALIFORNIA**

9          **IN AND FOR THE COUNTY OF SAN FRANCISCO**

10              **CIVIL UNLIMITED JURISDICTION**

11                                        No.  **CGC07461178**

12  **MARK ANTOINE FOSTER,**              **PLAINTIFF'S MEMORANDUM OF**
                                          **POINTS AND AUTHORITIES IN**
13          **Plaintiff,**                **SUPPORT OF AMENDED**
                                          **DEMURRER TO DEFENDANTS'**
14          **vs.**                       **FIRST AMENDED ANWSER TO**
                                          **PLAINTIFF'S COMPLAINT**
15  **ARAMARK SPORTS and Entertainment**
    **Ying Kee McVicker, an individual, Matthew**  **Date:**
16  **Lee, an individual, and DOES 1**   **Time: 9:30 am**
    **Through 51**                        **Dept: 302**
17          **Defendants**

18

19      Plaintiff **MARK ANTOINE FOSTER** respectfully submits these Points and Authorities in

20  support of his amended demurrer to defendants' first amended answer to plaintiff's complaint

21      Pursuant to Cal. Code of Civil Procedure 480.80 (b). If a party against whom an answer has

22  been filed fails to demur thereto, that party is deemed to have waived the objection unless it is an

23  objection that the answer does not state facts sufficient to constitute a defense.

24      Plaintiff alleges that defendants' first amended answer does not state facts sufficient to

25

**Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer**                    1

1   constitute a defense.

2       Plaintiff filed his complaint against defendants in this court on March 9, 2007, and served

3   summons and complaint on defendants on March 12, 2007. Defendants filed their answer to

4   plaintiff's complaint on April 26, 2007. Plaintiff filed a demurrer to defendants' answer on May

5   14, 2007. Thereafter, defendants filed their first amended answer to plaintiff's complaint on May

6   22, 2007 prior to the hearing on the demurrer scheduled to be heard on June 5, 2007.  Thereafter

7   this court removed plaintiff's demurrer off calendar.

8       Plaintiff inadvertently failed to file a demur to defendants' first amended answer within ten

9   days of the filing of defendants' first amended answer.

10      Pursuant to Code of Civil Procedure 472, 473, as a pleading, a demurrer is subject to

11  amendment [see Baxter V. Boston – Pacific Oil Co. ( 1927 ) 81 Cal. App. 187, 189. 253 P. 185 (

12  trial court properly allowed amendment to demurrer].

13      Pursuant o Code Civ. Proc. 471.5 (b), If the answer is amended, the adverse party has ten

14  days after service thereof, or such other time as the court may direct, in which to demur to the

15  amended answer.

16            **I.**    **INTRODUCTION**

17      This is a wrongful termination matter stemming from plaintiff's employment at ARAMARK

18  SPORTS, LLC, (sued as Aramark Sports and Entertainment), located at 555 California in San

19  Francisco.

20      Defendants deny that plaintiff has been injured in the amount or manner alleged or any

21  other manner whatsoever.

22      Plaintiff alleges that defendants are in denial and have no reason to believe that plaintiff

23  has not been injured in the manner alleged, given the defendants' conduct and the manner in

24  which the plaintiff was discharged.

25          **II. STATUTORY AUTHORITY FOR FILING A DEMURRER**

1    When any ground for objection to a complaint appears on the face thereof, the objection

2    on that ground may be taken by a demurrer to the pleading. Code of Civil Procedure §430.30(a).

3    When a Complaint is successfully challenged by a general demurrer, the burden is on the

4    plaintiff to demonstrate how the complaint might be amended to cure it of the defect.

5    Association of Community Orgs.For Reform Now v. State Dept. of Indus. Rel., (1995) 41 Cal.

6    App. 4th 298, 302, 48 Cal. Rptr. 2d 486, 488.

7                                    **III. Rebuttal Argument**

8    **Defendants' FIRST AFFIRMATIVE DEFENSE (Failure to State a Cause of Action)**

9    **to each cause of action therein is groundless, due to:**

10    **PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO SHOW THAT HE WAS**

11    **CONSTRUCTIVELY DISCHARGED IN BREACH OF THE EMPLOYMENT**

12    **AGREEMENT [or IN VIOLATION OF PUBLIC POLICY] IN THAT THE EMPLOYER**

13    **CREATED CONDITIONS OF EMPLOYMENT THAT WERE SO INTOLERABLE**

14    **THAT A REASONABLE PERSON WOULD RESIGN.**

15    **A) CONSTRUCTIVE DISCHARGE LEGALLY REGARDED AS FIRING.**

16    Constructive Discharge occurs when the employer's conduct forces the employee to

17    resign. Although the employee resigns, the employment relationship is actually severed

18    involuntarily by the employer's acts, and against the employee's will. Thus, a constructive

19    discharge is legally considered a firing rather than a resignation (Turner v. Anheuser Busch, Inc.

20    (1994) 7 Cal. 4th 1238, 1244-1245, 32Cal Rptr. 2d 223, 876 P.2d 1022).

21    In plaintiff's first cause of action for Harassment and Constructive Discharge resulting

22    from Harassment, plaintiff claims that Defendant Aramark Sports, LLC (formerly known as

23    "Aramark Sports, Inc" and its supervisors McVicker and Lee engaged in conduct that

24    constituted harassment and discrimination against plaintiff. Plaintiff explains a series of

25

1    incidents describing in detail the actions of the defendants, and how those actions established an

2    objectively hostile and or abusive work environment.

3    **B) CONSTRUCTIVE DISCHARGE AS BREACH OF PUBLIC POLICY**

4    *The employer has no right terminate employment for a reason that contravenes public*

5    policy. An actual or constructive discharge in violation of fundamental public policy gives rise to

6    a tort action in favor of the terminated employee (Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.

7    4th 1238, 1244-1245, 32Cal Rptr. 2d 223, 876 P.2d 1022).

8    Plaintiff also claimed in his first cause of action that he was subject to Quid Pro Quo

9    harassment, workplace harassment, and discrimination, and also retaliation from Aramark

10   Sports, LLC's management.

11   **C) SERIES OF SEPARATE INCIDENTS MAY CONSTITUTE CONSTRUCTIVE**

12   **DISCHARGE**

13   *Although single, trivial, or isolated incidents ordinarily are insufficient to constitute a*

14   constructive discharge, a series of separate incidents may establish a constructive discharge

15   through a continuous pattern of harassment of the employee, even if each incident considered

16   separately might be viewed as trivial (Thompson v. Tracor Flight Sys., Inc. (2001) 86 Cal. App.

17   4th 1156, 1171-1172, 104 Cal. Rptr. 2d 95).

18   Plaintiff claims in paragraph 22, on page 10 of his complaint that the actions of the

19   defendants caused him to be constructively discharged, and that a reasonable person in plaintiff's

20   position subject to those actions would have resigned or quit their employment.

21   However, counsel may establish that a series of separate incidents constituted a

22   continuous pattern of intolerable conditions by showing that the incidents amounted to a

23   campaign of harassment against the employee (Thompson v. Tracor Flight Sys., Inc. (2001) 86

24   Cal. App. 4th 1156, 1171-1172, 104 Cal. Rptr. 2d 95).

25

Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer    **4**

1

2

## D) EMPLOYER CREATED INTOLERABLE OR AGGRAVATED WORKING CONDITIONS

3    Constructive Discharge is established when the employer either intentionally created or

4    knowingly permitted working conditions that were so intolerable or aggravated at the time of the

5    employee's resignation that a reasonable employer would realize that a reasonable person in the

6    employee's position would be compelled to resign (Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.

7    4th 1238, 1244-1245, 32Cal Rptr. 2d 223, 876 P.2d 1022).

8    Plaintiff claims in paragraph 24, on page 10 of his complaint, how Defendant Aramark

9    Sports, LLC retaliated against plaintiff, and how no remedial action to promptly stop the

10   harassment was taken once Defendant Aramark Sports, LLC knew of the harassment.

11   Plaintiff claims in paragraph 25, on page 10 and 11 of his complaint how Defendants, and

12   all of them, caused plaintiff to be constructively  discharged and how Defendants actions were

13   caused by and were in retaliation  for the protected  activity of plaintiff set forth in paragraph 9,

14   and how defendants continued to harass and discriminate against plaintiff, after plaintiff filed

15   written and verbal complaints regarding defendants McVicker and Lee's discriminatory behavior

16   to Aramark's Human Resource department and management staff, and also after plaintiff

17   threatened to report the harassment and discrimination to the  EEOC  and DFEH, if the matter

18   was not resolved.

19   Plaintiff claims in paragraph 26, on page 11 of his complaint how and when he reported

20   the harassment and discriminatory behavior of Defendants McVicker and Lee to Aramark's

21   Human Resource Department in Philadelphia, and the Management staff at the Carnelian Room,

22   and how Defendant Aramark Sports, LLC failed to take the immediate and appropriate action to

23   stop the harassing and discriminatory behavior, once they knew about it.

24   Plaintiff claims in paragraph 31, on page 12 of his complaint how Defendant Aramark

25

1    Sports, LLC, became prejudiced toward plaintiff after he filed the complaints, and how

2    defendants McVicker and Lee's hostility got worse, and the discrimination never stopped.

3    ### E) LEAVING JOB BECAUSE OF INTOLERABLE CONDITIONS CONSTITUTES

4    ### RESIGNATION

5    To have a valid claim of constructive discharge, an employee need not have completely

6    resigned from the job. It is sufficient if the employee establishes that, because of intolerable

7    conditions , he or she needed to remove himself or herself from the job ( for example, by

8    electing to go on disability retirement)and thus was effectively constructively discharged (

9    Colores v. Board of Trs. of Cal. State  Univ. (2003) 105  Cal App. 4th 1293, 1316-1318, 130 Cal.

10   Rptr. 2d 347).

11   Plaintiff claims in paragraph 19, on page 9 of his complaint, how he was forced to take a

12   medical leave due to the discrimination and retaliation of the defendants causing him emotional

13   stress.

14   Plaintiff claims in paragraph 20, on page 9 of his complaint, why he did not return to

15   work for the defendants, as he was not mentally and emotionally well enough to return to work,

16   and as it was necessary for  plaintiff to remain in therapy.

17   Plaintiff claims in paragraph 21, on page 9 of his complaint, how it was necessary for him

18   to remain in therapy for approximately seven months after his due date of June 15, 2006 to return

19   to work, and how he was in therapy for a total of approximately ten months, until January 31,

20   2007.

21   Furthermore, Defendants have **NO AFFIRMATIVE DEFENSE** to the actions alleged in

22   the complaint, due to the plaintiff's employment resulting in a **CONSTRUCTIVE**

23   **DISCHARGE**, which constitutes a **"TANGIBLE EMPLOYMENT ACTION".**

24   The Ellerth/Faragher rule is clear: no affirmative defense is available to the employer

25

1   when the supervisor's harassment culminates in a "tangible employment action". Odgen v.

2   WaxWorks, Inc. 214 F. 3d 999, 2000 U.S. App.

3       "The constructive discharge would constitute a tangible employment action and prevent

4   *the Department from utilizing the affirmative defense" Jackson v. Arkansas Department of*

5   Education 272 F. 3d 1020, 2002 U.S. App.

6       . According to FEHA Govt. 12900-12966, an employer in a sexual harassment case

7   (whether quid pro quo or hostile environment) is strictly liable for it's agents or supervisor's acts

8   of sexual harassment, regardless of its own degree of knowledge about the harassment, and the

9   acts of other than an agent or supervisor if it knew or should have known of the harassment and

10  failed to take corrective action. Govt code 12940 (j) (1).

11      Plaintiff claims quid pro quo and workplace harassment and discrimination by

12  defendants. In paragraph 13, on page 4 of his complaint, he   SPECIFICALLY DESCRIBES

13  *how defendant McVicker's actions interfered with his work flow.*

14      The fact finder must consider the totalality of the circumstances in deciding whether the

15  conduct was severe and pervasive enough to constitute hostile environment harassment. Such

16  circumstances  include: the frequency of the conduct ; the severity of the conduct; whether the

17  conduct was physically threatening or humiliating, or was a mere offensive utterance; whether

18  the conduct reasonably interfered with the plaintiff's work performance, although the plaintiff

19  need not show  that she or he could not perform the job. Harris v. Forklift System (1993) 510

20  U.S. 17, 126 L Ed 2d 295, 114 S. Ct. 367, Ellison v. Brady (9th cir 1991,824 F2d 872, 881.

21  **Plaintiff's Second Cause of Action, <u>Retaliation in Violation of California Fair</u>**

22  **<u>Employment and Housing Act</u>, does states facts sufficient to constitute a cause of action.**

23      The first, ninth and tenth circuits have all held that Title VII's protection against

24  retaliatory discrimination extends to adverse actions which fall short of ultimate employment

25  decisions. Wyatt v. City of Boston 35 F. 3d 13, 15-16 (1st cir stating that actions other than

**Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer**                    7

1  discharge are covered by Title VII's anti-retaliation provision and listing as examples, "

2  employer activities such as demotions, disadvantages transfers or  assignment, refusals to

3  promote, unwarranted negative job evaluations and toleration of harassment by other employees.

4  Plaintiff claims in paragraph 24, page  10 of his complaint how he requested a raise and

5  promotion and was denied, and how defendant Aramark Sports, LLC retaliated against plaintiff

6  by  taking no remedial action to promptly stop the harassing behavior of defendants McVicker

7  and Lee and allowed it to fester and get worse.

8  To prove a cause of action for hostile work environment sexual harassment under federal

9  or state law, the plaintiff must show that she or he was subjected to unwelcome conduct that was

10  based on sex and was sufficiently severe or pervasive to alter the work environment and create

11  an abusive working environment. Gregory v Widnall (9[th cir] 1998) 153 F 3d 1071, 1077.  Stated

12  another way, the plaintiff must show that the unwelcome conduct was based on sex unreasonably

13  interfered with his or her job performance or created an intimidating, hostile, or offensive

14  working environment. See 29 CFR §1604.11(a) (3), Aguilar v. Avis Rent a Car Sys, Inc. (1994)

15  21 C 4th 121, 130, 87 CR 2d (California Supreme Court cited with approval federal law defining

16  hostile work environment).

17  Plaintiff claims in paragraph 25, on page 10 of his complaint that defendants' actions

18  were caused by and were in retaliation for the protected activity of plaintiff set forth in paragraph

19  9. In paragraph 9, on page 3 of plaintiff's complaint, plaintiff states, " Defendants Aramark, and

20  Defendant's supervisors Ying Kee McVicker and Matthew Lee  engaged in the following actions

21  with the intent to discriminate and retaliate against plaintiff on the account of 1) ) his sexual

22  relationship with defendant McVicker, and 2) plaintiff's complaints of "Quid Pro Quo" sexual

23  harassment, workplace harassment, discrimination and retaliation to management, and 3)

24  plaintiff's threats of reporting the harassment to the EEOC, and thereafter reporting the

25  discrimination and retaliation to the EEOC and DFEH".

1    Plaintiff claims in paragraph 26, on page 11 of his complaint, when and how he reported

2    the harassment to Aramark's Human Resource Department and the management staff at the

3    Carnelian Room, and how Defendants had enough time to end the harassment, but did not.

4    Attached to the request for judicial notice is a true and correct copy of the documents

5    plaintiff submitted to Aramark's Human Resource Department in Philadelphia and the

6    management staff at the Carnelian Room.

7    "Once the employer knows or should have known about the harassment, it has a duty to

8    take immediate and appropriate action to end it". Steiner v Showboat Operating Co. (9th Cir

9    1994) 25 F 3d 1454. Intleofer v. Turnage (9th Cir 1992) 973 F. 2d 773. Ellison v. Brady (9th Cir

10   1991, 824F 2d 872, 881.

11   "The employer's response must be reasonably calculated to end the harassment". Ellison

12   v. Brady (9th Cir 1991, 824F 2d 872, 881.

13   ***Plaintiff's Third Cause of Action, <u>Failure to Prevent Discrimination and</u>***

14   <u>***Harassment***</u>***, does states facts sufficient to constitute a cause of action.***

15   Plaintiff claims in paragraph 35, on page 13 of his complaint that "Defendants failed to

16   take all reasonable steps to prevent harassment and discrimination from occurring. Defendant's

17   failure to take such action violated the FEHA, Cal. Gov. Code 12940(k)".

18   Plaintiff also states in paragraph 37, on page 13 of his complaint that "Defendant's

19   policies, procedures and practices were inadequate for prevention, monitoring and remediation of

20   workplace harassment. If such policies, procedures and practices existed, employees, including

21   supervisors, were insufficiently trained in or made aware of those policies and procedures for the

22   policies and procedures to prevent workplace harassment from occurring".

23   Plaintiff alleges that defendant Aramark Sports, LLC has posted and made aware their

24   sexual harassment and workplace harassment policies, but have failed to adhere to those policies.

25

1    **Plaintiff's Fourth Cause of Action, <u>Workplace Harassment and Discrimination</u>,**

2    **does states facts sufficient to constitute a cause of action.**

3    Plaintiff claims in paragraph 41, on page 14 of his complaint that he was subjected to

4    *continuous and/or severe hostile environment based on his sexual relationship with defendant*

5    McVicker. He was subject to quid pro quo sex based harassment and discrimination at his

6    workplace which was perpetrated and tolerated by persons in positions of power as set forth

7    herein, violating California Government Code12940 et. Seq.

8    **Plaintiff's Fifth Cause of Action, <u>Intentional Infliction of Emotional Stress</u> does**

9    **states facts sufficient to constitute a cause of action.**

10    In California, the intentional infliction of severe emotional distress, without physical

11    impact, based on "outrageous" conduct, is a separate tort. The elements of the cause of action;

12    (1) outrageous conduct by the defendant, (2) the defendant's intention of causing, or the reckless

13    *disregard of the probability of causing, emotional distress, (3) the plaintiff's actual suffering of*

14    severe or extreme emotional stress, and (4) actual and proximate causation of emotional

15    distress by the defendants outrageous conduct.

16    (Nally v. Grace Community Church 1988) 47 C. 3d 2787, 300, 253 Cal Rptr. 97, 763 P.

17    2d 948; Cole v. Fair Oaks Fire Protection District (1987) 43 C. 3d 148, 233 Cal. Rptr. 308.

18    Plaintiff states in paragraph 46, on page 15 of his complaint, "At all times plaintiff clearly

19    rejected defendants' harassment, retaliation and discrimination, making them aware, that the

20    abuse will not be tolerated. Defendants ignored plaintiff's objections. The actions of defendants

21    were outrageous, intentional, and malicious, and done with reckless disregard of the fact that

22    they would *certainly cause plaintiff to suffer severe emotional and physical distress"*.

23    Plaintiff claims that defendants intended to cause plaintiff emotional stress due to:

24    allowing their anger and resentment towards plaintiff motivate their actions, which resulted in or

rose to the level of "outrageous conduct", and caused them to "recklessly disregard" plaintiff's

25

1  rights. Defendants Aramark Sports, LLC, McVicker and Lee were supervisors and/or managers

2  and executive managers supposedly trained in preventing workplace harassment, and knew or

3  should have known that their actions would certainly cause plaintiff to suffer severe emotional

4  and physical distress. Defendants' actions were vengeful and vindictive.

5  "On appeal, the judgment was affirmed. The Court of Appeal held that defendants'

6  threatened and actual bad faith refusal to make payments under the disability policy, maliciously

7  employed in concert with false and threatening communications directed to plaintiff for the

8  purpose of causing him to surrender his policy or to disadvantageously settle a nonexistent

9  dispute, was essentially tortious in nature and was conduct that could legally be the basis for an

10  action for damages for intentional infliction of emotional distress. U.L. Fletcher v. National Life

11  Insurance CO. 10 Cal. App. 3d 376; 89 Cal. Rptr. 78; 1970 Cal. App.

12  Plaintiff alleges that defendant Aramark Sports, LLC intentionally did not want to end the

13  harassment of defendants McVicker and Lee, once they knew about it, and purposely denied

14  plaintiff a raise, and skipped over him for a promotion. Defendants, and all of them, became

15  prejudiced against plaintiff because (1) he reported the harassment to Aramark Corporation's

16  Human Resources Department in Philadelphia (which defied the management staff at the

17  Carnelian Room), (2) he reported the harassment to the Management staff at the Carnelian

18  Room, (3) he threatened to report the harassment to the EEOC and DEFH, and (4) thereafter, he

19  filed the complaints to the DEFH. Defendants were managers and executive managers, and knew

20  or should have known that their actions were outrageous or that they were acting in reckless

21  disregard of plaintiff right to be free from a workplace environment perpetuated with

22  discrimination, but, they just did not care.

23  Plaintiff claims on lines 12 through 24, page 6 of his complaint how Defendant

24  McVicker's intentional infliction of emotional stress upon him in the workplace was deliberate,

25

1  and how her having the knowledge that plaintiff truly loved her, and, she knew that at that

2  particular time that plaintiff was vulnerable and susceptible to emotional pain.

3  Plaintiff alleges that defendant Lee knew or should have known that by threatening

4  plaintiff's job and creating an intimidating and abusive work atmosphere for plaintiff, that his

5  actions would certainly cause plaintiff to suffer severe emotional and physical distress.

6  Furthermore, to address defendant's claim that plaintiff has not been injured in the

7  manner alleged or in any other manner whatsoever, as long as plaintiff proves that his work

8  environment would reasonably be perceived as hostile or abusive, there is no need for it also to

9  be psychologically injurious for him to make a claim for damages.

10  "The court found that psychological harm could be taken into account, but was not

11  required by statute". Harris v. Forklift Systems, Inc. 510 U.S. 17: 114 S. Ct 367.

12  Although, plaintiff alleges he was injured psychologically in this case.

13  Attached to the request for judicial notice is a true and correct copy of plaintiff's medical

14  records from the Veteran's Administration Psychology Department.

15  Plaintiff claims throughout the report that specific statements were made by plaintiff's

16  doctors that indicate and verify the injuries plaintiff sustained, and the treatment he received for

17  those injuries.

18  Attached to the request for judicial notice is a true and correct copy of plaintiff's first

19  doctor's certification approving plaintiff for Temporary State Disability Insurance.

20  Attached to the request for judicial notice is a true and correct copy of plaintiff's SDI

21  payments from April 2006 thru January 31, 2007.

22  Attached to the request for judicial notice is a true and correct copy of a letter from

23  plaintiff's doctor to the EDD regarding the possible denial of plaintiff's Unemployment

    insurance benefits by defendants.

24

25

1    Attached to the request for judicial notice a true and correct copy of the minutes from a

2   deposition regarding a pending worker's compensation case plaintiff filed against defendants.

3   Plaintiff alleges under oath how his injuries were sustained by the defendants.

4    Attached to the request for judicial notice is a true and correct copy of Administrative

5   Law Judge Peter Wercinski's ruling regarding plaintiff's claim filed with EDD regarding his UI

6   benefits.  Defendants denied his UI benefits, as EDD stated he resigned from the defendant's

7   employment with out "good cause".

8    Judge Wercinski's ruling explains how plaintiff was constructively discharged, and how

9   he was injured psychologically by defendants. Judge Wercenski stated, "The evidence admitted

10   at the hearing established that the claimant's conditions of employment became so onerous as to

11   constitute a threat to his mental well being."

12    Attached to the request for judicial notice is a true and correct copy of plaintiff's

13   employment records from the Carnelian Room, specifically take notice to the Incident/Accident

14   report  showing the injury reported to the HR manager at the Carnelian Room.

15    Attached to the request for judicial notice is a true and correct copy of the "notice to

16   employer of State Disability Claim Filed, showing defendant's approval of SDI  benefits  for

17   plaintiff because of the injury.

18    **Defendants' Second Affirmative Defense (Failure to Mitigate Damages) is**

19   **groundless, due to plaintiff being on disability for ten months and not being able to work.**

20    **Defendants' Third Affirmative Defense (Statute of Limitations) is groundless, due to**

21   **plaintiff filing his complaint with the DFEH in a timely manner, and acquiring "rights to**

22   **sue" letters, and then thereafter filing this complaint in this court prior to April 22, 2007.**

23    Attached to the request for judicial notice is a true and correct copy of plaintiff's letters

    for "rights to sue".

24

25

**Defendants' Fourth Affirmative Defense (Waiver and Estoppel) is groundless, due to the fact that plaintiff has not waived his rights and is not estopped from asserting his rights to bring his claim for damages.**

**Defendants' Fifth Affirmative Defense (Unclean Hands) is groundless, due to the fact that it is not the plaintiff who is barred by unclean hands it is the defendants who are with unclean hands. Plaintiff is the injured party, not the defendants.**

**Defendants' Six Affirmative Defense (Privilege/Justification) is groundless, due to defendants' conduct not being a just and proper exercise of managerial discretion, nor was their conduct undertaken for fair and honest reasons.**

Plaintiff alleges defendants' conduct constitute a misuse of authority as defendants abused their managerial positions by constructively discharging plaintiff.

**Defendants Seventh Affirmative Defense (Worker's Compensation Exclusive Remedy) is groundless and without merit, due to plaintiff's wrongful discharge claim being a violation of public policy by defendants, and therefore plaintiff's emotional distress claim is not preempted by California Worker's Compensation Act.**

"Employee's emotional distress claim against employer is not preempted by California Worker's Compensation Act where alleged wrongful discharge on which claim is based violates fundamental policy. *Kirton v Summit Medical Center*, N.D. Cal. 1997, 982 F. Supp. 1381. Worker' Compensation 2088.

"Under California law, allegations of employer misconduct involving sexual or racial discrimination are actionable in tort notwithstanding Worker's compensation Act's broad preemption. *Kirton v Summit Medical Center*, N.D. Cal. 1997, 982 F. Supp. 1381. Worker' Compensation 2088. See also Gant v. Sentry Ins, 1 Cal 4[th] 1083

**Defendants' Eighth Affirmative Defense (Failure To Exhaust Administrative Remedies) is groundless and without merit, due to the fact that plaintiff first reported**

**the harassment of defendants McVicker and Lee to Aramark's Human Resources**

**Department in Philadelphia on or around February 17, 2006 via the employee hotline, as**

**the harassment started around February 3, 2006 and progressed and continued throughout**

**March 28, 2006.**

Defendants claim that plaintiff failed timely or properly to exhaust his administrative

remedies.

Plaintiff reported the harassment immediately because he wanted it to end, as he reported

the harassment of defendant McVicker within ten days after it began. Defendant Lee's

harassment was reported within a few days after it began.

Defendants McVicker and Lee's harassment was reported again on or about February

23, 2006 to Aramark' Human Resources Department in Philadelphia and to the management

staff at the Carnelian Room, as plaintiff submitted two written documents to Phil Epps the

General Manager at the Carnelian Room, who then faxed the documents to Human Resources.

Plaintiff claims that he did not fail to timely or properly exhaust his administrative

remedies.

**Defendants Ninth Affirmative Defense (Avoidable Consequences) is groundless and**

**without merit, due to defendants' negligence and failure to prevent and properly correct**

**their discriminatory, harassing and retaliatory conduct. Plaintiff did not fail to take**

**advantage of the preventive and corrective opportunities provided by defendants.**

Plaintiff claims that after he reported the harassment and discrimination of defendants

McVicker and Lee to Aramark Sports, LLC, thereafter, Aramark Sports, LLC initiated an

investigation that was insufficient, incomplete and inadequate, as it failed to take measures that

were reasonably calculated to end the harassment. Aramark Sports, LLC failed to properly

investigate and end the harassment.

1    Plaintiff claims that on or about February 24, 2006, he met with Phil Epps regarding the

2    complaints. Epps informed Plaintiff that he would fax the written documents to Aramark's

3    Human Resource Department in Philadelphia. Epps told plaintiff that he was sorry that this was

4    happening and he had sympathy for him because his daughter had recently broke-up with her

5    fiancée. He told plaintiff that if he ever wanted to go outside to get some air he could if it would

6    make him feel better.

7    Thereafter, on or about February 27, 2006, Epps informed Plaintiff that someone from

8    Human Resources would be there to interview him that day. Plaintiff noticed that defendant

9    McVicker was also there to be interviewed, and believed that defendant Lee would be there to be

10   interviewed as well.

11   Plaintiff was called to be interviewed by Mr. Jerry McCarthy, an Aramark General

12   Manager from the Santa Clara Convention Center. He said he was just gathering facts about the

13   situation. During the interview he asked plaintiff some basic questions regarding his position and

14   responsibilities. He stated that he had the documents plaintiff submitted to HR in front of him,

15   but he wanted plaintiff to explain to him verbally what happened. Plaintiff proceeded to do so.

16   After the interview was over, McCarthy informed Plaintiff to give him about a week to

17   get back to him  regarding the matter and that Aramark has a non-retaliation policy, and if

18   Plaintiff had any problems don't hesitate to call. He then gave plaintiff his card and said call

19   anytime.

20   Plaintiff contacted McCarthy on or about March 6, 2006, frustrated that the harassment

21   was still going on. Plaintiff left a message for McCarthy and McCarthy returned his call a day or

22   two later. McCarthy told plaintiff that he had forwarded his findings to a manager in Human

23   Resources and they would be contacting plaintiff in the near future. Plaintiff became upset

24   because he felt Aramark Sports, LLC was reacting slowly in ending the harassment.

25

Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer                16

1    On or about March 15, 2006, Plaintiff called Executive Sous chef Tim Miller to inform

2  him that he would not be in to work on March 16, 2006 because he had to go to the doctor.

3    On or about March 17, 2006, when plaintiff returned to work, he met with Senior

4  Executive Chef Jesus and Executive Sous Chef Tim Miller in regards to his complaints against

5  Defendants McVicker and Lee. Plaintiff was informed that Vicki, the regional director of HR

6  was there to interview him and defendant McVicker on the 16[th,] the day before, but because

7  plaintiff was not there, he missed the opportunity to speak to her. He was also informed that

8  defendant McVicker also was not interviewed, because plaintiff was not there. At this point

9  plaintiff felt that he should have least received a phone call to let him know the regional director

10  was there to speak with him. Plaintiff had waited a considerable amount of time to meet with

11  someone regarding his complaints and was frustrated because the harassment was still going on,

12  and that nothing appeared to be concluded.

13    Chef Jesus stated that he felt that plaintiff and defendant McVicker were having

14  personality conflicts and this was the core of their problems. Plaintiff told Chef Jesus that this

15  was not the situation at all. He explained that when defendant McVicker ended the relationship

16  with him he gave her some constructive criticism about herself and she became infuriated with

17  him. Plaintiff stated he did not threaten her or call her any names, and that her anger turned into

18  hatred and hostility towards him and she brought it to the workplace and made plaintiff's job

19  hard for him. Plaintiff also stated that he could accept the break-up but he will not tolerate the

20  harassment. Both chefs seemed to be receptive and said if she did this she is wrong. Plaintiff said

21  that he had many examples of how she made things hard for him and how it affected production.

22    Plaintiff was told that they were asked to or had considered splitting them up on different

23  shifts, but because they did not know what would be fair they did not. Chef Jesus stated "I think

24  we can work this out ourselves; I'm asking you as your boss, don't do this harassment thing". He

25

1    said HR wanted to know what they could do to solve the problem. Plaintiff informed them he

2    could not answer that question because he did want his answer to be considered bias or unfair.

3        At the commencement of the meeting, plaintiff was told that McVicker still going to be

4    working with him, but for now she was instructed to not supervise him and nothing was ever

5    mentioned regarding defendant Lee.

6        At this point, plaintiff felt even more insecure working at the Carnelian Room and felt

7    that nothing was going to be done to stop the harassment, and that he just had to accept it and

8    move on.

9        "Once the employer knows or should have known about the harassment, it has a duty to

10   take immediate and appropriate action to end it.

11   Steiner v Showboat Operating Co. (9th Cir 1994) 25 F 3d 1454, 1464. Intleofer v Turnage (9th cir

12   1992) 973 F 2d 773. Ellison v Brady (9th Cir 1991, 824 F2d 872, 881

13       "The employer's response must be reasonably calculated to end the harassment". Ellison

14   v Brady.

15   The law requires: "Although the necessary response varies with each case, typically an employer

16   should:

17       • Take the complaint seriously
         • Do nothing that penalizes or stigmatizes the complainant
18       • Investigate the complaint
         • Interview the complainant, the alleged harasser and any necessary witnesses;
19       • Communicate with the complainant as to the progress and conclusions of the
           investigation
20
         Aramark's investigation failed, because 1) although Foster, McVicker and Lee were
21
     interviewed, other pertinent witnesses were not interviewed, and 2) by not immediately ending
22
     the harassment, Foster was stigmatized and 3) the complaint was not taken seriously, and 4)
23
     there was no communication with Foster regarding the progress and conclusions of the
24

25
     Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer                    18

1  investigation.

2  Tayborn v City of County of San Francisco (9th cir 2003) 341 F 3d 957, "employer's internal

3  investigation  was incomplete because employer  failed to interview some employees and

4  managers involved in the alleged incidents, this and other evidence created triable issue of fact

5  over whether defendant took prompt and adequate  remedial  measures on learning of  alleged

6  harassment".

7  Swenson v. Potter (9th cir 2001) 271 F 3d 1184, 1198 (when employer took prompt steps to

8  end harassment, liability could not be premised or "perceived inadequacies in the investigation.

9  "Employer decision to return harasser to plaintiff's workplace created hostile environment".

10  Ellison v Brady

11  Aramark never removed defendant McVicker from plaintiff's workplace, they allowed her to

12  continue to work with him on the same shift, as she continued to harass and/or retaliate against

13  him.

14  The simple fact that Aramark Sports, LLC allowed defendant McVicker to continue to work

15  with plaintiff  in a supervisor capacity  on the same shift two days after he reported  the

16  harassment to management shows  that their investigation was not reasonably calculated  to end

17  the harassment.

18  "A single, isolated response, whether in the form of a rebuke, counseling or demotion, is

19  insufficient to immunize an employer from liability if the response does not put an end to the

20  abusive behavior.

21  Intlekoter v Turnage

22  After plaintiff reported the harassment and retaliation, it did not only continue, it got

23  worse.

24  Casenas v Fujisawa USA, Inc.  (1997)  58 CA 4th 101 (in "text book" response to sexual

25

1    harassment complaint, employer sent letter to complainant summarizing investigation, finding

2    and specifying disciplinary action taken and proposed to be taken if conduct continued) Such

3    communication lets the complainant know that she or he is being protected and that the employer

4    takes the complaint seriously, on privacy actions in general: see chapter 6. t

5    Employers should:

6    1) Make the complainant whole if harassment is found, 2) Take steps to prevent future

7    harassment; and 3) Take steps to ensure that there is no retaliation against the complainant.

8    Aramark Sports, LLC failed in all these areas. Plaintiff never got any documentation

9    written or verbal similar to the "textbook" response mentioned above, during the time of the

10    harassment and/or before he took his medical leave on March 28, 2006, nor before his

11    resignation on June 15, 2006, as his employee records contain no supporting documents

12    reflecting this.

13    Plaintiff perceived that his complaint was heard but nothing was going to be done about

14    it, and he was going to have to continue working with defendants McVicker and Lee in the same

15    capacity.

16    "By focusing much of its investigation on the most personal and private aspects of the

17    plaintiff's life, rather than the alleged harasser and harassment the employer does not act

18    appropriately."

19    Sarro v City of Sacramento (ED Cal 1999) 78 F Supp 2d 1057, 1064

20    Plaintiff alleges that statements made by General Manager Phil Epps nd Senior Executive

21    Chef Jesus indicate that they were focusing more on Foster's personal and private life rather than

22    on defendant McVicker and her harassment.

23    "By investigating the plaintiff's allegations, instructing the alleged harasser to stay away

24    from the plaintiff during the investigation, and terminating the harasser's employment when the

25

Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer                20

1  investigation was over, the employer acted appropriately."

2  Ulrich v Kmart Corp (D Kan 1994) 858 F supp 1087

3  "In this circuit, an employer's remedial obligations are defined by Ellison v. Brady. Here,

4  as in other circuits, "remedies should be 'reasonably calculated to end the harassment." Id at 822

5  (quoting Katz v. Dole, 709 F. 2d 251, 256 (4th Cir. 1983)). Ellison lays out a two-part test that

6  goes beyond short term results: In essence, then, we think that the reasonableness of an

7  employer's remedy will depend on its ability to stop the harassment by the person who

8  engaged in the harassment. In evaluating the adequacy of the remedy, the court may take into

9  account the remedy's ability to persuade potential harassers from unlawful conduct. Fuller v.

10 City of Oakland, California, 47 F. 3d 1522, 1995 U.S. App.

11 Attached to the request for judicial notice is a true and correct copy of documents

12 plaintiff composed describing in detail the actions of the defendants and their conduct after

13 plaintiff reported the harassment, and how the discrimination and harassment continued, as the

14 dates of the incidents show that the conduct occurred after plaintiff filed his complaints.

15 "However, this analysis omits a critical step. The fact that harassment stops is only a test

16 for measuring the efficacy of a remedy, not a way of excusing the obligation to remedy.

17 "That obligation will not be discharged until action-prompt, effective action-has been

18 taken. Effectiveness will be measured by the twin purposes of ending the current harassment

19 and deterring future harassment- by the same offender or others. Ellison, 924 F. 2dat 882. If 1)

20 no remedy is [*1529] undertaken, or 2) the remedy attempted is ineffectual, liability will attach."

21 Fuller v. City of Oakland, California, 47 F. 3d 1522, 1995 U.S. App.

22 Plaintiff claims that he requested his employee records from Aramark, LLC in February

23 2007 prior to filing this complaint. Although the records show the reporting of the accident or

24 injury to James Chan, Aramark, LLC's in house Human Resource Manager on March 28, 2006,

25

1  and the filing of the claim for SDI, the records do not show any documentation regarding the

2  investigation and its results.

3  Plaintiff claims that the his employee records also show that Aramark Sports, LLC

4  solution to remedy the problem was to separate plaintiff and defendant McVicker's work shifts

5  upon plaintiff's return from disability leave, as this remedy to be initiated was substantially too

6  late to promptly stop the harassment, or should have been initiated prior to plaintiff taking his

7  disability leave, as it may have helped prevent plaintiff from taking the disability leave.

8  "Title VII does not permit employers to stand idly by once they learn that sexual

9  harassment has occurred. To do so amounts to a ratification of the prior harassment. ." Fuller v.

10 City of Oakland, California, 47 F. 3d 1522, 1995 U.S. App.

11 "Employee was subjected to sexual harassment by her supervisor for a period of four

12 months. Once employee reported the harassment to a higher supervisor, the supervisor was

13 terminated within one month". Phillips v. Taco Bell Corporation, a California Corporation, 156

14 F. 3d. 884; 1998 U.S.App

15 In Phillips, plaintiff was given a two week paid vacation while supervisor was being

16 investigated. The supervisor was first interviewed and then suspended pending the investigation.

17 After the investigator took statements from other Taco Bell employees, the harassing supervisor

18 was terminated. The court held that the evidence presented by the employee did not support a

19 finding of constructive discharge.

20 Plaintiff felt compelled to take a disability leave on March 28, 2006, due to the

21 discrimination and harassment and retaliation of the defendants.

22 Attached to the request for judicial notice is a true and correct copy of Jerry

23 D.McCarthy's business card plaintiff received from McCarthy at the commencement of the

24 meeting.

25

Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer          22

1    Attached to the request for judicial notice is a true and correct copy of the "Complaints of

2  Discrimination" received from the DFEH on March 22, 2006, showing approximately when the

3  harassment started.

4    **Defendants' Tenth Affirmative Defense (Mixed Motive), is groundless, due to**

5  **plaintiff showing credible evidence that defendants actions were discriminatory and**

6  **retaliatory.**

7    **Defendants' Eleventh Affirmative Defense (Absence of Malice) is groundless, due to**

8  **plaintiff showing and describing the malicious acts of the defendants, and the fact the**

9  **defendants have no affirmative defense to their actions, because plaintiff's employment**

10  **resulted in a constructive discharge.**

11    **Defendant's Twelfth Affirmative Defense (Punitive Damages) is groundless, due to**

12  **the fact that plaintiff's complaint has stated facts sufficient to support claims for punitive**

13  **damages.**

14    "A plaintiff must prove malice or recklessness for purposes of an award of punitive

15  damages under 42 U.S.C.S. §1981a (b) (1). Under the terms of §1981a (b) (1) punitive damages

16  are available in claims under Title VII Civil Rights Act of 1964, 42 U.S.C.S. §2000e et seq.,

17  where the employer has engaged in intentional discrimination and has done so with malice or

18  with reckless indifference to the federally protected rights of an aggrieved individual. The terms

19  malice or reckless indifference pertain to the employers knowledge that it may be acting in

20  violation of federal law, not its awareness that it is engaging in discrimination". Odgen v. Wax

21  Works, Inc. 214 F. 3d 999; 2000 U.S. App.

22    The punitive damages inquiry under 42 U.S.C.S. §1981a(b)(1) does not end with a

23  showing of the required malice or reckless indifference on the part of certain individuals; the

24  plaintiff must impute liability for punitive damages to the employer, that is where an employee

25

1  serving in a managerial capacity committed the wrong while acting in the scope of

2  employment. Odgen v. Wax Works, Inc. 214 F. 3d 999; 2000 U.S. App.

3       Plaintiff alleges that Defendants Aramark Sports, LLC, and defendants McVicker and

4  Lee are individuals serving in managerial capacities and committed the wrong while acting in the

5  scope of their employment.

6       Kolstad v. American Dental Asc., 527 U.S. 526 (1999) continues to be the focus of cases

7  addressing the liability of punitive damages in vicarious liability cases. The courts note its

8  inapplicability in direct liability cases. Delineation of direct and vicarious liability is not precise.

9  Similarly, who is a managerial agent, who is in top management and which actor essentially is

10  the defendant, are yet to be uniformly developed. It is quite clear, however, that defendant, in

11  large measure, proves much of plaintiff's punitive damages case when proving its affirmative

12  defense.

13       Defendants and all of them have no affirmative defense for their actions.

14       In Anderson v. G.D.C. Inc., 281 F. 3d452 (4th Cir. 2002), the court held that the district

15  court abused its discretion in denying a sex discrimination plaintiff's motion for a new trial on

16  punitive damages. The court found, first, that a reasonable jury could conclude that the general

17  manager of G.D.C. engaged in harassing conduct despite knowing that his conduct might

18  violate federal law. As evidence, the court noted that an EEOC poster regarding sexual

19  harassment hung in the dispatch trailer at the worksite. Second, the general manager "was

20  unquestionably a managerial employee, as shown by his authority to hire and fire drivers and to

21  impose lesser forms of discipline, including docking a driver's wages." Third, the manager

22  committed the discrimination while in the course of his employment. This third requirement can

23  be satisfied, as in this case, when "a supervisor with immediate(or successively higher)

24  authority over the [victimized] employee creates "an actionable hostile environment".

25

1    Plaintiff alleges that defendants, and all of them, engaged in harassing conduct despite

2 knowing that their conduct might violate federal law.

3    Attached to the request for judicial notice is a true and correct copy of plaintiff's

4 employee records, revealing Defendant's sexual harassment and workplace harassment policies,

5 as defendants are aware of those policies, but have failed to adhere to them.

6    **Defendants Thirteenth Affirmative Defense (Constitutional Limit on Punitive**

7 **Damages), is irrelevant, due to plaintiff not having any contract with defendants, as**

8 **plaintiff claims constructive discharge as a breach of public policy, not by breach of**

9 **employment agreement, therefore he is not barred by the contract clause. Furthermore,**

10 **pertaining to the Due Process Clause, plaintiff has not yet stated an anticipated punitive**

11 **damage award amount, and/or plaintiff has shown that he is entitled to punitive damages.**

12 **Defendants claiming violation of Due Process is premature at this stage of the case, as**

13 *plaintiff claims the same argument for Excessive Fines Clause, as it is also premature at*

14 **this stage of the case.**

15    **Defendant's Fourteenth Affirmative Defense (Business Necessity), is groundless, due**

16 **to plaintiffs claims being valid and the fact that constructively discharging plaintiff is not**

17 **consistent with business necessity.**

18    Defendants' Fifth teeth Affirmative Defense (No Vicarious Liability) is groundless, due

19 to the fact that:

20    PLAINTIFF HAS PRESENTED CREDIBLE EVIDENCE SHOWING THAT

21 ARAMARK SPORTS, LLC AND ARAMARK HUMAN RESOURCES DEPARTMENT IN

22 PHILADELPHIA ARE MANAGING AGENTS OF THE CORPORATION AND WAS MADE

23 AWARE AND WAS WELL AWARE AND OR HAD ADVANCE KNOWLEDGE OF THE

24 UNFITNESS OR ACTIONS OF ITS SUPERVISOR DEFENDANT McVICKER AND

25

**Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer**                    25

MANAGER DEFENDANT LEE, THEREFORE PLAINTIFF'S PUNITIVE DAMAGES AGAINST ARAMARK SPORTS, LLC IS NOT BARRED.

Plaintiff states on lines 21 through 24 on page 15 of this memorandum of points and authorities the dates on which he reported the harassment. Plaintiff also states on lines 8 through 11 on page 16 of this memo that he reported the harassment to Aramark Sports, LLC's General Manager Phil Epps, at the Carnelian Room.

Plaintiff states on lines 18 through 22, on page 16 of this memo how Aramark Sports, LLC initiated an investigation that was insufficient, incomplete and inadequate, and how it failed to take measures that were reasonably calculated to end the harassment.

Plaintiff states on lines 22 on page 24 through lines on page 21, of this memo how he requested his employee records prior to filing his complaint, and how those records did not contain any documentation regarding the investigation and its results.

Plaintiff claims at the time he requested his employee records, he also requested his telephone recordings from the employee hotline when he reported the harassment to Aramark's Human Resource Department in Philadelphia on or about February 17, 2006. Plaintiff was told by James Chan, Aramark Sports, LLC's in-house human resource manager that he could not acquire those recordings.

Plaintiff alleges that defendants are with unclean hands to deny or claim that no officer, director or managing agent was not made aware of the harassment or had no advance knowledge of the unfitness of any employee alleged to have acted unlawfully.

Plaintiff will motion this court to request affidavits from Aramark's LLC's General Manager, Phil Epps, Aramark's General Manager of the Santa Clara Convention Center, Jerry D. McCarthy, Aramark's Senior Executive Chef Jesus, and Aramark's Regional Human Resource Director, Vicki, stating whether or not plaintiff made them aware of the harassment of their supervisor and manager defendants McVicker and Lee. Plaintiff will also request an

1  affidavit from James Chan, stating whether or not plaintiff requested the telephone recordings

2  and what his response to plaintiff was.

3      Furthermore, According to FEHA Govt. 12900-12966, an employer in a sexual

4  harassment case (whether quid pro quo or hostile environment) is strictly liable for it's agents or

5  supervisor's acts of sexual harassment, regardless of its own degree of knowledge about the

6  harassment, and the acts of other than an agent or supervisor if it knew or should have known of

7  the harassment and failed to take corrective action. Govt Code 12940 (j) (1).

8      "A plaintiff must prove malice or recklessness for purposes of an award of punitive

9  damages under 42 U.S.C.S. §1981a (b) (1). Under the terms of §1981a (b) (1) punitive damages

10  are available in claims under Title VII Civil Rights Act of 1964, 42 U.S.C.S. §2000e et seq.,

11  where the employer has engaged in intentional discrimination and has done so with malice or

12  with reckless indifference to the federally protected rights of an aggrieved individual. The terms

13  malice or reckless indifference pertain to the employers knowledge that it may be acting in

14  violation of federal law, not its awareness that it is engaging in discrimination". Odgen v. Wax

15  Works, Inc. 214 F. 3d 999; 2000 U.S. App.

16      The punitive damages inquiry under 42 U.S.C.S. §1981a(b)(1) does not end with a

17  showing of the required malice or reckless indifference on the part of certain individuals; the

18  plaintiff must impute liability for punitive damages to the employer, that is where an employee

19  serving in a managerial capacity committed the wrong while acting in the scope of

20  employment. Odgen v. Wax Works, Inc. 214 F. 3d 999; 2000 U.S. App.

21      Plaintiff alleges that Defendants Aramark Sports, LLC, and defendants McVicker and

22  Lee are individuals serving in managerial or supervisory capacities and committed the wrong

23  while acting in the scope of their employment.

24      Kolstad v. American Dental Asc., 527 U.S. 526 (1999) continues to be the focus of cases

25  addressing the liability of punitive damages in vicarious liability cases. The courts note its

**Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer**                    27

1    inapplicability in direct liability cases. Delineation of direct and vicarious liability is not precise.

2    Similarly, who is a managerial agent, who is in top management and which actor essentially is

3    the defendant, are yet to be uniformly developed. It is quite clear, however, that defendant, in

4    large measure, proves much of plaintiff's punitive damages case when proving its affirmative

5    defense.

6        Defendants and all of them have no affirmative defense for their actions.

7        In Anderson v. G.D.C. Inc., 281 F. 3d452 (4th Cir. 2002), the court held that the district

8    court abused its discretion in denying a sex discrimination plaintiff's motion for a new trial on

9    punitive damages. The court found, first, that a reasonable jury could conclude that the general

10   manager of G.D.C. engaged in harassing conduct despite knowing that his conduct might

11   violate federal law. As evidence, the court noted that an EEOC poster regarding sexual

12   harassment hung in the dispatch trailer at the worksite. Second, the general manager "was

13   unquestionably a managerial employee, as shown by his authority to hire and fire drivers and to

14   impose lesser forms of discipline, including docking a driver's wages." Third, the manager

15   committed the discrimination while in the course of his employment. This third requirement can

16   be satisfied, as in this case, when "a supervisor with immediate(or successively higher)

17   authority over the [victimized] employee creates "an actionable hostile environment".

18       Plaintiff alleges that defendants, and all of them, were managing agents, supervisors,

19   managers, or executive mangers, and that they engaged in harassing conduct despite knowing

20   that their conduct might violate federal law.

21   DEFENDANTS' SIXTEENTH AFFIRMATIVE DEFENSE (AFTER ACQUIRED EVIDENCE)

22   IS GROUNDLESS, DUE TO: PLAINTIFF HAS PRESEENTED CREDIBLE EVIDENCE

23   SHOWING THAT HE WAS CONSTRUCTIVELY DISCHARGED.

24       Plaintiff claims that there is no evidence of wrongdoing on his part, as his employee

25

1  records do not contain any negative reports, warning notices or disciplinary actions against

2  plaintiff.

3       Plaintiff alleges that defendants terminated him while he was on disability leave, as

4  defendants terminated him unjustly. Defendants claimed they contacted plaintiff and informed

5  plaintiff he was on the schedule to work and that he did not report to work as scheduled and

6  was thereafter terminated. Plaintiff claims that Executive Sous Chef Tim Miller contacted

7  plaintiff, but the only words contained in there conversation was Miller asking plaintiff if he was

8  coming back to work. Plaintiff informed Miller he would call him back to let him know.

9  Plaintiff instead called James Chan approximately two weeks later and informed him that he

10  would not be returning to work, as plaintiff understood that the defendants stated that they would

11  terminate him on the day he was due back, if he did not return, which was June 15, 2006.

12  Defendants' stated that if plaintiff did not return on that date, it would be considered a voluntary

13  quit. Plaintiff realized that he would not be able to return to work. Plaintiff was never told he was

14  on the schedule to work, as he would have informed Miller at that time that he would not be able

15  to report back to work as scheduled, due to the reasons stated in his complaint.

16       Plaintiff was neither demoted nor disciplined during the entire course of his employment

17  at the Carnelian Room. Plaintiff was a dedicated, hard working employee, with no record of

18  unexcused absences or tardiness.

19       Plaintiff alleges that defendants are attempting to discredit him or create an image or idea

20  that plaintiff did something wrong to cause his termination when he did not.

21  <div align="center">**IV. CONCLUSION**</div>

22       ***Based upon the foregoing, plaintiff's demurrer to defendants' answer, in its entirety,***

     ***should be sustained without leave to amend.***

23       Wherefore, Plaintiff prays for the following:

24       1.     Compensatory damages on all causes of action against defendants.

25

1  2.  Punitive damages where applicable.

2  3.  Attorney's fees and costs pursuant to Government Code Section 12965 and other

3     applicable statute.

4  4.  Costs of suit.

5  5.  Any other relief that this court deems proper.

6

7  Dated: May 14, 2007         Mark Antoine Foster, In Pro Per

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 9

1   MORGAN, LEWIS & BOCKIUS LLP
    ERIC MECKLEY, State Bar No. 168181
2   One Market Street, Spear Tower
    San Francisco, CA 94105
3   Tel:   415.442.1000
    Fax:   415.442.1001
4
    Attorney for Defendants
5   ARAMARK Sports, LLC (erroneously sued as
    "ARAMARK Sports & Entertainment"), Ying Kee
6   McVicker, and Matthew Lee

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF SAN FRANCISCO

10

11  MARK ANTOINE FOSTER,                    Case No. CGC-07-461178

12              Plaintiff,                  **DEFENDANTS' OPPOSITION TO
                                            PLAINTIFF'S AMENDED DEMURRER
13          vs.                             TO DEFENDANTS' FIRST AMENDED
                                            ANSWER TO PLAINTIFF'S UNVERIFIED
14  ARAMARK Sports and Entertainment,       COMPLAINT**
    Ying Kee McVicker, an individual,
15  Matthew Lee, an individual, and DOES 1
    Through 50,                             Date:      June 28, 2007
16                                          Time:      9:30 a.m.
                Defendants.                 Dept.:     302
17                                          Judge:     Hon. Patrick J. Mahoney

18                                          Complaint filed:   March 9, 2007
                                            Trial Date:        None
19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1-SF/7552301.1                                      Case No. CGC-07-461178

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   PROCEDURAL HISTORY ........................................................................... 2

III.  ARGUMENT ................................................................................................. 2

    A.   Plaintiff's Demurrer Should Be Overruled Or Taken Off Calendar Because He Has Not Given Proper And Timely Notice of Hearing As Required By C.C.P. § 1005(b) ............................................................................................. 2

    B.   Plaintiff Failed To Comply With The Page Limit Required By California Rule of Court 3.1113(d) ............................................................................... 3

    C.   Defendants' Affirmative Defenses Are Properly Pled Because They Provide Adequate Notice to Plaintiff As To The Specific Bases On Which Defendants Will Attack Plaintiff's Complaint ............................................... 4

    D.   Plaintiff's Demurrer Improperly Relies Upon Extrinsic Evidence ............. 5

    E.   Defendants' Third Affirmative Defense Based On The Statute Of Limitations Complies With The Pleading Requirements Of C.C.P. Section 458 ............................................................................................................... 6

    F.   Defendants' Seventh Affirmative Defense Based On Workers' Compensation Exclusivity Is Properly Pled ............................................... 7

    G.   The Ruling Of The Unemployment Insurance Appeals Board Cannot Be Used To Support Plaintiff's Demurrer ...................................................... 8

    H.   The Court Must Grant Defendants' Leave To Amend ................................ 9

IV.   CONCLUSION .............................................................................................. 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

i                                    Case No. CGC-07-461178

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

1

# TABLE OF AUTHORITIES

2

**Page**

3    **Cases**

4    *Coca-Cola Bottling Co. of Los Angeles v. Superior Court,*
5    (1991) 233 Cal. App. 3d 1273................................................................................ 4

*Hata v. Los Angeles County Harbor/UCLA Med. Ctr.*
6    (1995) 31 Cal. App. 4th 1791 .............................................................................. 4

7    *Ion Equip. Corp. v. Nelson,*
(1980) 110 Cal. App. 3d 868................................................................................ 5

8
*Lewis v. Fahn,*
9    (1952) 113 Cal. App. 2d 95.................................................................................. 4

10    *Miller & Lux, Inc. v. San Joaquin Light & Power,*
(1932) 120 Cal. App. 589.................................................................................... 5

11
*Mysel v. Gross,*
12    (1977) 70 Cal. App. 3d Supp. 10 ......................................................................... 7

13    *Pacific Gas & Electric Co. v. Minnette,*
(1949) 92 Cal. App. 2d 401................................................................................. 9

14
*Ross v. San Francisco Bay Area Rapid Transit Dist.,*
15    (2007) 146 Cal. App. 4th 1507 ............................................................................ 7

16    *South Shore Land Co. v. Peterson,*
(1964) 226 Cal. App. 2d 725................................................................................ 5

17
**Statutes**

18
Code of Civ. Proc. § 458.................................................................................. 6, 7
19
Code of Civ. Proc. § 335.1............................................................................... 6, 7
20
Code of Civ. Proc. § 1005.................................................................................... 2
21
Code of Civ. Proc. § 1005(b)............................................................................... 2
22
Code of Civ. Proc. § 431.30(g)........................................................................... 4
23
Code of Civ. Proc. § 1005(b) ........................................................................... 1, 2
24
Evid. Code § 452........................................................................................... 6, 7
25
Evid. Code § 452(g), (h) ..................................................................................... 6
26
Government Code § 12960(d)........................................................................... 6, 7
27
Government Code § 12965(b).............................................................................. 6

28

1

## <u>TABLE OF AUTHORITIES</u>
**(continued)**

2

**Page**

3   **Other Authorities**

4   Unemployment Insurance Code Section 1960......................................................................- -.................. 8

5   **Rules**

6   Cal. Rule of Court 3.1113(e)..........................................................................................- -.................. 3

7   Cal. Rule of Court 3.1320(c)..........................................................................................- -.................. 2

8   Cal. Rule of Court 3.1113(d) ..........................................................................................- -.................. 1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

iii                                    Case No. CGC-07-461178

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

I. INTRODUCTION

Defendants ARAMARK Sports, LLC ("ARAMARK") (erroneously sued as "ARAMARK Sports and Entertainment"), Ying Kee McVicker and Matthew Lee ("Defendants"), through their undersigned counsel, oppose Plaintiff Mark Antoine Foster's ("Plaintiff") Amended Demurrer to Defendants' First Amended Answer to Plaintiff's Unverified Complaint. Plaintiff's Demurrer is procedurally flawed and substantively without merit and should be overruled by the Court based on multiple grounds.

First, Plaintiff has not given proper notice of hearing as required by Code of Civil Procedure Section 1005(b). Because he served the Demurrer by mail, Plaintiff was required to serve his papers an additional five (5) days prior to the requisite 16 court days before the hearing. He did not do so, and thus service was untimely and late.

Second, Plaintiff has exceeded the page limit set forth in California Rule of Court 3.1113(d) by including an additional fifteen (15) pages of argument without providing proper notice to Defendants or receiving permission from the Court. Meckley Decl. ¶¶2-3. The Court should strike and disregard pages 16 through 30 of Plaintiff's Memorandum.

Third, Plaintiff has failed to demonstrate that Defendants' First Amended Answer does not state facts sufficient to constitute a defense. Defendants have properly pled all sixteen affirmative defenses. Defendants are required in their Answer only to recite the legal theories on which their affirmative defenses are based so that Plaintiff has notice as to the bases on which Defendants will attack Plaintiff's Complaint. Defendants have pled with appropriate specificity the affirmative defenses contained in their First Amended Answer, and Plaintiff fails to cite any legal authority which would suggest otherwise.

Fourth, Plaintiff fails to explain how Defendants' Answer is deficient on its face, and instead improperly argues based on extrinsic evidence which is outside the "four corners" of Defendants' Answer. Plaintiff's reliance and argument based on facts not contained within Defendants' First Amended Answer is an obvious attempt to evade the rules regarding demurrers, and these extraneous evidentiary facts cannot be considered when evaluating the sufficiency of Defendants' Answer.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1-SF/7552301.1                    1                    Case No. CGC-07-461178

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

1    Finally, Plaintiff relies on twelve (12) documents for which he has requested the Court to

2    take judicial notice. In his Request for Judicial Notice, Plaintiff has not provided any specific

3    authority that permits this Court to take judicial notice of these documents (which include such

4    items as his medical records, his own deposition testimony, his correspondence with

5    ARAMARK, etc.). The Court cannot rely on any of these documents in deciding whether to

6    sustain or overrule Plaintiff's Demurrer.

7    For these reasons, Plaintiff's Demurrer should be overruled in its entirety or, in the

8    alternative, to the extent the Court sustains any portion of Plaintiff's Demurrer, the Court should

9    grant leave to amend.

10   **II.    PROCEDURAL HISTORY**

11   On March 9, 2007, Plaintiff filed a Complaint against ARAMARK and individual

12   Defendants Ying Kee McVicker and Matthew Lee. On April 26, 2007, Defendants timely

13   answered Plaintiff's unverified Complaint, generally denying each of the material and specific

14   allegations of the Complaint and asserting fourteen separate and affirmative defenses.

15   On May 14, 2007, Plaintiff filed a Demurrer to Defendants' Answer. On May 22, 2007,

16   Defendants timely filed a First Amended Answer to Plaintiff's Complaint asserting sixteen

17   separate and affirmative defenses.

18   On June 6, 2007, Plaintiff filed and served via mail the present Demurrer alleging that

19   "defendants' first amended answer does not state facts sufficient to constitute a defense." Pl.

20   Memo. P&A's., 1: 24; 2: 1.

21   **III.   ARGUMENT**

22   **A.    Plaintiff's Demurrer Should Be Overruled Or Taken Off Calendar Because**
23         **He Has Not Given Proper And Timely Notice of Hearing As Required By**
           **C.C.P. § 1005(b)**

24   California Rule of Court 3.1320(c) states that "a party filing a demurrer must serve and

25   file therewith a notice of hearing that must specify a hearing date in accordance with the

26   provisions of Code of Civil Procedure section 1005."

27   Code of Civil Procedure Section 1005(b) states in pertinent part:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

1  All moving and supporting papers shall be served and filed at least
2  16 court days before the hearing. . . . However, if the notice is
   served by mail, the required 16-day period of notice before the
   hearing shall be increased by five calendar days if the place of
3  mailing and the place of address are within the state of California. .
   . ."

4

5  Plaintiff noticed the hearing on his Demurrer for June 28, 2007. Sixteen (16) court days

6  from June 28, 2007, plus five (5) additional days for service by mail, is June 1, 2007.  Plaintiff

7  served his Demurrer on June 6, 2007 via mail - - five days later than required. Therefore,

8  Plaintiff failed to give timely and proper notice of hearing, and his Demurrer must be overruled

9  and/or taken off calendar on this ground.

10     **B.   Plaintiff Failed To Comply With The Page Limit Required By California
           Rule of Court 3.1113(d)**

11

12  California Rule of Court 3.1113(d) states: "Except in a summary judgment or summary

13  adjudication motion, no opening or responding memorandum may exceed 15 pages."  If an

14  exception is sought, a party must comply with a specific procedure:

15  A party may apply to the court ex parte but with written notice of
    the application to the other parties, at least 24 hours before the
16  memorandum is due, for permission to file a longer memorandum.
    This application must state reasons why the argument cannot be
17  made within the stated limit.

18  Cal. Rule of Court 3.1113(e).

19  Plaintiff's Memorandum of Points and Authorities in Support of Amended Demurrer

20  exceeds the fifteen (15) page limit by an additional fifteen (15) pages. Plaintiff did not notify

21  Defendants of his intent to file a memorandum in excess of the stated page limit.  Meckley Decl.

22  ¶2. Nor did Plaintiff apply to, or receive permission from, the Court to file a thirty (30) page

23  memorandum. Meckley Decl. ¶3. There are no legitimate reasons justifying a memorandum

24  twice the length allowed by the Rules of Court. *Id.*

25  Because Plaintiff has far exceeded the maximum page limit for his memorandum, the

26  Court should simply stop reading at page 15 of his memorandum and disregard the remainder of

27  his argument. Plaintiff's argument on pages 16 through 30 addresses Defendants' Ninth through

28  Sixteenth affirmative defenses. The Demurrer should be overruled as to these affirmative

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1  defenses on this ground alone, as Plaintiff has in effected presented no argument as to the

2  sufficiency of these defenses.

3      **C.**    **Defendants' Affirmative Defenses Are Properly Pled Because They Provide**

4             **Adequate Notice to Plaintiff As To The Specific Bases On Which Defendants Will Attack Plaintiff's Complaint**

5      A pleading is sufficient if it "advises [the opponent] of the issues they will be required to

6  meet at the trial of the action." *Lewis v. Fahn*, (1952) 113 Cal. App. 2d 95, 100.

7      With regard to the adequate form for pleading affirmative defenses, Code of Civil

8  Procedure Section 431.30(g) requires only that "the defenses shall be separately stated, and the

9  several defenses shall refer to the causes of action which they are intended to answer, in a manner

10  by which they may be intelligibly distinguished."

11      The sixteen separate and affirmative defenses pled by Defendants allege that the causes of

12  action stated in Plaintiff's Complaint are legally deficient in certain respects. Defendants have

13  tailored their affirmative defenses to the facts in the Complaint. *See Coca-Cola Bottling Co. of*

14  *Los Angeles v. Superior Court*, (1991) 233 Cal. App. 3d 1273, 1285 (holding that affirmative

15  defense that merely recites legal theory of Workers' Compensation Act preemption would be

16  sufficient where the complaint alleges facts indicating Workers' Compensation coverage). By

17  stating with specificity the legal theory upon which each of Defendants' affirmative defenses is

18  based, Defendants have provided appropriate notice to Plaintiff as to the specific grounds upon

19  which they will attack the Complaint. *See Hata v. Los Angeles County Harbor/UCLA Med. Ctr.*

20  (1995) 31 Cal. App. 4th 1791, 1804 ("While [plaintiff] and the trial court rely on a highly

21  technical argument to support their position [that defendant's answer fails to state facts sufficient

22  to constitute a defense], the fact is [plaintiff] had notice of this particular immunity defense . . .

23  That was sufficient). No greater specificity of pleading is required from Defendants. Plaintiff has

24  not presented this Court with any case law authority which holds that the affirmative defenses

25  pled by Defendants require a greater specificity of pleading than that set forth in Defendants'

26  Answer.

27      Notwithstanding the fact that Defendants have fulfilled their obligation to adequately

28  notify Plaintiff of the grounds upon which they will attack Plaintiff's Complaint, a number of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1-SF/7552301.1          4          Case No. CGC-07-461178

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

1    these defenses are pled with as much particularity as possible prior to discovery. *See, e.g.,*

2    Answer, 2: 8-14 ("Failure to Mitigate"). Certain defenses rely on evidence that is within

3    Plaintiff's possession or is yet to be discovered. Defendants cannot be expected to refrain from

4    pleading an affirmative defense because they have not yet conducted discovery; pleadings can be

5    made on information and belief. As a result, Plaintiff's Demurrer should be overruled.

6        **D.    Plaintiff's Demurrer Improperly Relies Upon Extrinsic Evidence**

7            Generally speaking, "a demurrer reaches only to the contents of the pleading and such

8    matters as may be considered under the doctrine of judicial notice." *South Shore Land Co. v.*

9    *Peterson*, (1964) 226 Cal. App. 2d 725, 733. In considering a demurrer to an answer, the

10   following guidelines have been established:

11               The determination of the sufficiency of the answer requires an
                 examination of the complaint because its adequacy is with reference
12               to the complaint it purports to answer. This requirement, however,
                 does not mean the allegations of the complaint, if denied, are to be
13               taken as true, the rule being that *the demurrer to the answer admits
                 all issuable facts pleaded therein and eliminates all allegations of*
14               *the complaint denied by the answer.*

15   *Id* (emphasis added).

16           "In sustaining a demurrer . . . the ruling must be made on the pleadings alone, without

17   regard to any evidence in the case." *Miller & Lux, Inc. v. San Joaquin Light & Power*, (1932) 120

18   Cal. App. 589, 601. *See also Ion Equip. Corp. v. Nelson*, (1980) 110 Cal. App. 3d 868, 881

19   (holding no extrinsic evidence can be considered on demurrer).

20           In his attack on Defendants' First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth,

21   Eleventh, Twelfth, Fourteenth, Fifteenth, and Sixteenth Affirmative Defenses, Plaintiff relies

22   almost exclusively on facts that are outside the "four corners" of Defendants' First Amended

23   Answer.[1] Indeed, many of Plaintiff's arguments reply upon facts beyond those which he has

24   pled in his own Complaint. *See, e.g.,* Pl. Memo. P&A's, pp. 15-23.

25

26   [1] For example, as to Defendants' First Affirmative Defense, which states that "Plaintiff has failed to state a
     cause of action upon which relief can be granted," Plaintiff argues for several pages that he has been
27   constructively discharged by ARAMARK. Pl. Memo. P&A's, pp. 3-12. Plaintiff cannot prove that he has
     been constructively discharged without resorting to facts outside of Defendants' First Amended Answer,
28   and it is impermissible for the Court to sustain Plaintiff's Demurrer based on a pleading other than the
     Defendants' First Amended Answer.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK
1-SF/7552301.1                    5                    Case No. CGC-07-461178
DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

1    In demurring to Defendants' Answer, Plaintiff is limited solely to the facts alleged in that

2    pleading.  While Plaintiff's Complaint may contain factual allegations which conflict with the

3    affirmative defenses contained in Defendants' Answer, Plaintiff's factual allegations were

4    eliminated and negated by Defendants' *general denial*, and Plaintiff cannot rely upon the facts

5    alleged in his Complaint to support his Demurrer.

6    Plaintiff improperly relies on a number of documents for which he has requested judicial

7    notice.  The Court cannot take judicial notice of any of the documents attached to Plaintiff's

8    Request for Judicial Notice, as none of them qualify as a matter which may be judicially noticed

9    pursuant to Evidence Code Section 452.[2]  Specifically, the documents for which Plaintiff requests

10   judicial notice are neither "facts and propositions that are of such common knowledge within the

11   territorial jurisdiction of the court that they cannot reasonably be the subject of dispute" nor are

12   they "facts and propositions . . . capable of immediate and accurate determination by resort to

13   sources of reasonably indisputable accuracy."  Evid. Code § 452(g), (h).

14   Because Plaintiff has erroneously requested that these documents be judicially noticed and

15   has provided no specific authority that permits this Court to take judicial notice of these

16   documents, it would be improper for the Court to consider such exhibits when ruling upon the

17   Demurrer.  As a result, Plaintiff's Demurrer must be overruled.

18   **E.    Defendants' Third Affirmative Defense Based On The Statute Of Limitations
         Complies With The Pleading Requirements Of C.C.P. Section 458**

19
     Defendants' Third Affirmative Defense asserts a statute of limitations defense by

20   specifically citing to Code of Civil Procedure Section 335.1 and Government Code Sections

21   12960(d) and 12965(b).  Plaintiff attempts to demur to this defense based on the theory that it

22   "fails to state facts sufficient to constitute a defense" by bringing to the Court's attention

23   Plaintiff's DFEH right-to-sue letters.  *See* Pl. Memo. P&A's, 13: 20-24.

24   First, Plaintiff is mistaken as to Defendants' burden in pleading the statute of limitations

25   defense:

26

27

---

[2] Defendant has filed a separate, more detailed Objection to Plaintiff's Request For Judicial Notice in
conjunction with this Opposition.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK
1-SF/7552301.1                          6                          Case No. CGC-07-461178

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

1    There are two accepted ways of pleading a statute of limitations;
     one of these is to allege all the facts showing that the action is
2    barred and to indicate that the lateness in commencing the action is
     urged as a defense, and the second method is to comply with CCP
3    § 458, and plead that the cause of action is barred by the provisions
     of the specified section.
4

5    *Mysel v. Gross*, (1977) 70 Cal. App. 3d Supp. 10, 15.

6        Code of Civil Procedure Section 458 states:

7            In pleading the statute of limitations it is not necessary to state the
             facts showing the defense, but it may be stated generally that the
8            cause of action is barred by the provision of Section (giving the
             number of the section and subdivision thereof, if it is so divided,
9            relied upon) of the Code of Civil Procedure.

10       By alleging in its Third Affirmative Defense that "Plaintiff's claims are barred by the

11   applicable statutes of limitations, including but not limited to . . . Code of Civil Procedure Section

12   335.1 and Government Code Sections 12960(d) and 12965(b)," Defendants have complied with

13   California case law and Code of Civil Procedure Section 458.  Answer, 2:17-20.

14       Second, Plaintiff relies upon extrinsic evidence and information that does not appear in

15   Defendants' Answer. While Plaintiff has filed a Request for Judicial Notice of his DFEH right-to-

16   sue letters, these letters are not "facts or propositions that are of such common knowledge within

17   the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute" nor

18   are they "facts and propositions that are not reasonably subject to dispute and are capable of

19   immediate and accurate determination by resort to sources of reasonably indisputable accuracy"

20   within the scope of Evidence Code Section 452. *See Ross v. San Francisco Bay Area Rapid*

21   *Transit Dist.*, (2007) 146 Cal. App. 4th 1507, 1517 n.14 (refusing to take judicial notice of

22   Plaintiff's DFEH right-to-sue letter).  Therefore, Plaintiff's Demurrer as to Defendants' Third

23   Affirmative Defense must fail.

24   **F.    Defendants' Seventh Affirmative Defense Based On Workers' Compensation
            Exclusivity Is Properly Pled**
25

26       Defendants' Seventh Affirmative Defense states:

27           [I]f Plaintiff sustained any injuries and/or emotional distress by
             reason of the allegations in the Complaint, which allegations are
28           denied, Plaintiff's exclusive remedy for any such damages is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1    governed by the California Workers' Compensation Act statutes.
     Cal. Labor Code Sections 3200, et seq.

2

3    Answer, 3:15-18.

4         Plaintiff cites a variety of authority in support of his theory that his alleged causes of

5    action constitute exceptions to the Workers' Compensation Exclusivity statutes. *See* Pl. Memo.

6    P&A's, 14: 12-23.  However, whether or not these exceptions apply to Plaintiff's allegations is a

7    disputed question of fact.  Plaintiff cannot prove that his alleged injuries resulted from "employer

8    misconduct" without resorting to the use of extrinsic evidence.  For the same reasons discussed

9    *supra*, it is impermissible for the Court to sustain Plaintiff's Demurrer based on a pleading other

10   than the Defendants' Answer.  In addition, the workers compensation exclusive remedy is a

11   defense to a tort claim for intentional infliction of emotional distress, which Plaintiff has pled

12   here.  The Demurrer as to the Seventh Affirmative Defense should be overruled.

13   **G.    The Ruling Of The Unemployment Insurance Appeals Board Cannot Be Used
         To Support Plaintiff's Demurrer**

14

15        Plaintiff has requested judicial notice of "a true and correct copy of Administrative Law

16   Judge Peter Wercinski's ruling on plaintiff's claim for Unemployment Insurance Benefits," and

17   has relied on this document in his Demurrer to attack Defendants' First Affirmative Defense,

18   failure to state a cause of action.  Pl. Req. for Jud. Not., Ex. F; Pl. Memo. P&A's, 13: 4-7.

19   Plaintiff cites the administrative ruling in his Demurrer to support the allegation that he was

20   constructively discharged, a conclusion he uses to attack a number of Defendants' affirmative

21   defenses.  *See* Pl. Memo. P&A's , 3:10-14; 14:10-11; 23:7-11; 25:14-17; 28:20-23.

22        However, California Unemployment Insurance Code Section 1960 states:

23             Any finding of fact or law, judgment, conclusion, or final order
               made by a[n] . . . administrative law judge, or any person with the
24             authority to make findings of fact or law in any action or proceeding
               before the appeals board, *shall not be conclusive or binding in any*
25             *separate or subsequent action or proceeding, and shall not be used*
               *as evidence in any separate or subsequent action or proceeding,*
26             between an individual and his or her present or prior employer
               brought before an arbitrator, court, or judge of this state or the
27             United States, regardless of whether the prior action was between
               the same or related parties or involved the same facts. (Emphasis
28             added.)

MORGAN, LEWIS &
BOCKIUS LLP        1-SF/7552301.1                    8                    Case No. CGC-07-461178
ATTORNEYS AT LAW
NEW YORK

1   Plaintiff may not use the Unemployment Insurance Benefits Appeals Board ruling as

2   evidence in this proceeding, regardless of whether it may be subject to judicial notice, because

3   doing so would violate Unemployment Insurance Code Section 1960. Therefore, Plaintiff's mere

4   argument that he has been constructively discharged is an insufficient basis to sustain the

5   demurrer to Defendants' Answer.

6   ### H.    The Court Must Grant Defendants' Leave To Amend

7   Where an answer "raises issues which should be determined by the court," a court may

8   not sustain a demurrer to an answer without leave to amend. *Pacific Gas & Electric Co. v.*

9   *Minnette,* (1949) 92 Cal. App. 2d 401, 406-407 (finding that it was error to sustain a demurrer to

10  an answer without leave to amend where the answer raised various affirmative defenses,

11  including equitable defenses, and the applicability of such defenses required judicial

12  determination).

13  As discussed above, the facts supporting Defendants' affirmative defenses are disputed by

14  the parties; thus, it would be improper for the Court to sustain a demurrer without leave to amend.

15  ### II.    CONCLUSION

16  For the foregoing reasons, Defendants respectfully request that the Court overrule

17  Plaintiff's Demurrer in its entirety, or in the alternative, grant Defendants leave to amend their

18  Answer as to any portions for which the Court may sustain the demurrer.

19  Dated: June 15, 2007                    MORGAN, LEWIS & BOCKIUS LLP

20

21

22  By_____
        Eric Meckley
23      Attorney for Defendants
        ARAMARK Sports, LLC, Ying Kee
24      McVicker, and Matthew Lee

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1-SF/7552301.1                    9                    Case No. CGC-07-461178

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

EXHIBIT 10

1    **Mark Antoine Foster, In Pro Per**
       **725 Ellis Street, Apt. 408**

2    **San Francisco, CA 94109**
       **(415) 756-1611**

3

4

5

6

7

8             **SUPERIOR COURT OF CALIFORNIA**

9       **IN AND FOR THE COUNTY OF SAN FRANCISCO**

10           **CIVIL UNLIMITED JURISDICTION**

11                        No.   **CGC07461178**

12   **MARK ANTOINE FOSTER,**
                              **PLAINTIFF'S MEMORANDUM OF**

13        **Plaintiff,**                 **POINTS AND AUTHORITIES IN**
                                **SUPPORT OF**

14        **vs.**                     **DEMURRER TO DEFENDANTS'**
                                **FIRST AMENDED (UNVERIFIED)**
                                **ANSWER TO PLAINTIFF'S**

15   **ARAMARK SPORTS and Entertainment**    **COMPLAINT**
    **Ying Kee McVicker, an individual, Matthew**

16   **Lee, an individual, and DOES 1**
    **Through 51**                   **Date: July 27, 2007**

17        **Defendants**               **Time: 9:30 am**
                                **Dept: 302**

18   —————————————————————————/    **Judge: Hon. Patrick J. Mahoney**

19      Plaintiff **MARK ANTOINE FOSTER** respectfully submits these Points and Authorities in

20   support of his         demurrer to defendants' first amended answer to plaintiff's complaint.

21                   **I.**      **INTRODUCTION**

22    <u>**1) Defendants' first amended answer, in its entirety fails due to the answer stated by**</u>

23   <u>**the defendants constituting their defenses is unverified, as plaintiff's complaint is now**</u>

24   <u>**verified pursuant to CCP §446(a).**</u>

25

   **Memorandum of Points & Authorities in Support of Plaintiff's**        **Demurrer**       **1**

---

ENDORSED
F I L E D
San Francisco County Superior Court

JUL - 5 2007

GORDON PARK-LI, Clerk
BY _____
               Deputy Clerk

1    When a complaint is verified, the answer also must be verified, generally, and if the answer

2    is not sufficiently verified, it may be stricken or judgment on the pleadings may be ordered, but

3    such may not be done where it is necessary to inquire into the truth of the affidavit to show

4    insufficiency of the verification. French v. Smith Booth Usher Co. (App. 2 Dist. 1942) 56 Cal.

5    App.2d 23, 131 P. 2d. 863

6    Plaintiff alleges that defendants' first amended answer, in its entirety, fails pursuant to CCP

7    §430.20 (a) (b), because it does not state facts sufficient to constitute a defense and/or due to the

8    uncertainty of the sufficiency of their answer constituting their affirmative defenses, as the

9    uncertainty is unknown and vague, because the defendants' answer constituting their affirmative

10   defenses is unverified.

11   Original answers, insufficiently verified, failed to deny, and hence admitted, allegations of

12   complaint. Jenson v. R.K.O. Studios (App. 3. Dist. 1937) 20 Cal. App. 2d 705, 67 P. 2d 757.

13   An answer ambiguous, uncertain, and unintelligible, in that it is left uncertain thereby

14   whether defendant intended to set forth the facts as a plea of the statute of limitations, or as an

15   equitable defense to plaintiff's cause of action, is demurrable. Hagely v. Hagely (1886) 68 Cal.

16   348, 9 P. 305.

17
## II.    STATUTORY AUTHORITY FOR FILING A DEMURRER

18   Pursuant to CCP  430.20 (a)(b), A party against whom an answer has been filed may

19   object, by demurrer as provided in Section 430.30, to the answer upon any one or more of the

20   following grounds: (a) The answer does not state facts sufficient to constitute a defense, and (b)

21   The answer is uncertain. As used in this subdivision, "uncertain" includes ambiguous and

22   unintelligible

23
### III.    Rebuttal Argument

24   **2) Defendants' First Affirmative Defense (Failure to State a Cause of Action) to each cause of**

25   **action therein is groundless, Because Plaintiff Has Alleged Facts Sufficient to Constitute a**

1    **Cause of Action for Each Cause of Action Alleged In His Complaint.**

2    **Plaintiff's First Cause of Action, <u>Harassment and Constructive Discharge Resulting</u>**

3    **<u>from Harassment</u> does states facts sufficient to constitute a cause of action.**

4    **A) CONSTRUCTIVE DISCHARGE LEGALLY REGARDED AS FIRING.**

5    Constructive Discharge occurs when the employer's conduct forces the employee to

6    resign. Although the employee resigns, the employment relationship is actually severed

7    involuntarily by the employer's acts, and against the employee's will. Thus, a constructive

8    discharge is legally considered a firing rather than a resignation (Turner v. Anheuser-Busch, Inc.

9    (1994) 7 Cal. 4th 1238, 1244-1245, 32Cal Rptr. 2d 223, 876 P.2d 1022).

10    In plaintiff's first cause of action for Harassment and Constructive Discharge resulting

11    from Harassment, plaintiff claims that Defendant Aramark Sports, LLC (formerly known as

12    "Aramark Sports, Inc", and its supervisors McVicker and  Lee engaged in conduct that

13    constituted harassment and discrimination against plaintiff.  Plaintiff explains a series of

14    incidents describing in detail the actions of the defendants, and how those actions established an

objectively hostile and or abusive work environment.

15    **B) CONSTRUCTIVE DISCHARGE AS BREACH OF PUBLIC POLICY**

16    The employer has no right terminate employment for a reason that contravenes public

17    policy. An actual or constructive discharge in violation of fundamental public policy gives rise to

18    a tort action in favor of the terminated employee (Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.

19    4th 1238, 1244-1245, 32Cal Rptr. 2d 223, 876 P.2d 1022).

20    Plaintiff also claimed in his first cause of action that he was subject to Quid Pro Quo

21    harassment, workplace harassment, and discrimination, and also retaliation from Aramark

22    Sports, LLC's management.

23    **C) SERIES OF SEPARATE INCIDENTS MAY CONSTITUTE CONSTRUCTIVE DISCHARGE**

24    Although single, trivial, or isolated incidents ordinarily are insufficient to constitute a

25

1  constructive discharge, a series of separate incidents may establish a constructive discharge

2  through a continuous pattern of harassment of the employee, even if each incident considered

3  separately might be viewed as trivial (Thompson v. Tracor Flight Sys., Inc.  (2001) 86 Cal. App.

4  4th 1156, 1171-1172, 104 Cal. Rptr. 2d 95).

5      Plaintiff claims in paragraph 22, on page 10 of his complaint that the actions of the

6  defendants caused him to be constructively discharged, and that a reasonable person in plaintiff's

7  position subject to those actions would have resigned or quit their employment.

8      **D) EMPLOYER CREATED INTOLERABLE OR AGGRAVATED WORKING**

9      **CONDITIONS**

10  Constructive Discharge is established when the employer either intentionally created or

11  knowingly permitted working conditions that were so intolerable or aggravated at the time of the

12  employee's resignation that a reasonable employer would realize that a reasonable person in the

13  employee's position would be compelled to resign (Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.

14  4th 1238, 1244-1245, 32Cal Rptr. 2d 223, 876 P.2d 1022).

15  Plaintiff claims in paragraph 24, on page 10 of his complaint, how Defendant Aramark

16  Sports, LLC retaliated against plaintiff, and how no remedial action to promptly stop the

17  harassment was taken once Defendant Aramark Sports, LLC knew of the harassment.

18  Plaintiff claims in paragraph 25, on page 10 and 11 of his complaint how Defendants, and

19  all of them, caused plaintiff to be constructively  discharged and how Defendants actions were

20  caused by and were in retaliation  for the protected  activity of plaintiff  set forth in paragraph 9,

21  and how defendants continued to harass and discriminate against plaintiff, after plaintiff filed

22  written and verbal complaints regarding defendants McVicker and Lee's discriminatory behavior

23  to Aramark's Human Resource department and management staff, and also after plaintiff

24  threatened to report the harassment and discrimination to the  EEOC  and DFEH, if the matter

    was not resolved.

25

**Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer**    4

1    Plaintiff claims in paragraph 26, on page 11 of his complaint how and when he reported

2    the harassment and discriminatory behavior of Defendants McVicker and Lee to Aramark's

3    Human Resource Department in Philadelphia, and the Management staff at the Carnelian Room,

4    and how Defendant Aramark Sports, LLC failed to take the immediate and appropriate action to

5    stop the harassing and discriminatory behavior, once they knew about it.

6    Plaintiff claims in paragraph 31, on page 12 of his complaint how Defendant Aramark

7    Sports, LLC, became prejudiced toward plaintiff after he filed the complaints, and how

8    defendants McVicker and Lee's hostility got worse, and the discrimination never stopped.

9    ### E) LEAVING JOB BECAUSE OF INTOLERABLE CONDITIONS CONSTITUTES

10    ### RESIGNATION

11    To have a valid claim of constructive discharge, an employee need not have completely

12    resigned from the job. It is sufficient if the employee establishes that, because of intolerable

13    conditions , he or she needed to remove himself or herself from the job ( for example, by

14    electing to go on disability retirement)and thus was effectively constructively discharged (

15    Colores v. Board of Trs. of Cal. State  Univ. (2003) 105  Cal App. 4th 1293, 1316-1318, 130 Cal.

16    Rptr. 2d 347).

17    Plaintiff claims in paragraph 19, on page 9 of his complaint, how he was forced to take a

18    medical leave due to the discrimination and retaliation of the defendants causing him emotional

19    stress.

20    Plaintiff claims in paragraph 20, on page 9 of his complaint, why he did not return to

21    work for the defendants, as he was not mentally and emotionally well enough to return to work,

22    and as it was necessary for  plaintiff to remain in therapy.

23    Plaintiff claims in paragraph 21, on page 9 of his complaint, how it was necessary for him

24    to remain in therapy for approximately seven months after his due date of June 15, 2006 to return

25    to work, and how he was in therapy for a total of approximately ten months, until January 31, 2007.

**3) Defendants First Amended Answer Fails, Due To Defendants Not Being Able To Claim Any Affirmative Defenses Against The Constructive Discharge Claim Alleged in the Complaint**

The *Ellerth/Faragher* rule is clear: *no affirmative defense is available to the employer* when the supervisor's harassment culminates in a "tangible employment action". Odgen v. WaxWorks, Inc. 214 F. 3d 999, 2000 U.S. App.

"The constructive discharge would constitute a tangible employment action and prevent the Department from utilizing the affirmative defense" Jackson v. Arkansas Department of Education 272 F. 3d 1020, 2002 U.S. App.

According to FEHA Govt. 12900-12966, an employer in a sexual harassment case (whether quid pro quo or hostile environment) is strictly liable for it's agents or supervisor's acts of sexual harassment, regardless of its own degree of knowledge about the harassment, and the *acts of other than an agent or supervisor if it knew or should have known of the harassment and* failed to take corrective action. Govt code 12940 (j) (1).

Plaintiff claims quid pro quo and workplace harassment and discrimination by defendants. In paragraph 13, on page 4 of his complaint, he   SPECIFICALLY DESCRIBES how defendant McVicker's actions interfered with his work flow.

The fact finder must consider the totality of the circumstances in deciding whether the conduct was severe and pervasive enough to constitute hostile environment harassment. Such circumstances  include: the frequency of the conduct ; the severity of the conduct; whether the conduct was physically threatening or humiliating, or was a mere offensive utterance; whether *the conduct reasonably interfered with the plaintiff's work performance, although the plaintiff* need not show  that she or he could not perform the job. Harris v. Forklift System (1993) 510 U.S. 17, 126 L Ed 2d 295, 114 S. Ct. 367, Ellison v. Brady (9th cir 1991,824 F2d 872, 881.

1    **Plaintiff's Second Cause of Action, <u>Retaliation in Violation of California Fair</u>**

2    **<u>Employment and Housing Act</u>, does states facts sufficient to constitute a cause of action.**

3    The first, ninth and tenth circuits have all held that Title VII's protection against

4    *retaliatory discrimination extends to adverse actions which fall short of ultimate employment*

5    decisions. Wyatt v. City of Boston 35 F. 3d 13, 15-16 (1st cir stating that actions other than

6    discharge are covered by Title VII's anti-retaliation provision and listing as examples, "

7    employer activities such as demotions, disadvantages transfers or assignment, refusals to

8    promote, unwarranted negative job evaluations and toleration of harassment by other employees.

9    Plaintiff claims in paragraph 24, page 10 of his complaint how he requested a raise and

10   promotion and was denied, and how defendant Aramark Sports, LLC retaliated against plaintiff

11   by taking no remedial action to promptly stop the harassing behavior of defendants McVicker

12   and Lee and allowed it to fester and get worse.

13   *Plaintiff claims in paragraph 26, on page 11 of his complaint, when and how he reported*

14   the harassment to Aramark's Human Resource Department and the management staff at the

15   Carnelian Room, and how Defendants had enough time to end the harassment, but did not.

16   "Once the employer knows or should have known about the harassment, it has a duty to

17   take immediate and appropriate action to end it". Steiner v Showboat Operating Co. (9th Cir

18   1994) 25 F 3d 1454. Intleofer v. Turnage (9th Cir 1992) 973 F. 2d 773. Ellison v. Brady (9th Cir

19   1991, 824F 2d 872, 881.

20   **"Plaintiff's Third Cause of Action, <u>Failure to Prevent Discrimination and</u>**

21   **<u>Harassment</u>, does states facts sufficient to constitute a cause of action.**

22   *Plaintiff claims in paragraph 35, on page 13 of his complaint that* "Defendants failed to

23   take all reasonable steps to prevent harassment and discrimination from occurring. Defendant's

24   failure to take such action violated the FEHA, Cal. Gov. Code 12940(k)".

25

**Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer**                7

1    Plaintiff also states in paragraph 37, on page 13 of his complaint that "Defendant's

2  policies, procedures and practices were inadequate for prevention, monitoring and remediation of

3  workplace harassment. If such policies, procedures and practices existed, employees, including

4  *supervisors, were insufficiently trained in or made aware of those policies and procedures for the*

5  policies and procedures to prevent workplace harassment from occurring".

6    Plaintiff alleges that defendant Aramark Sports, LLC has posted and made aware their

7  sexual harassment and workplace harassment policies, but have failed to adhere to those policies.

8    **Plaintiff's Fourth Cause of Action, <u>Workplace Harassment and Discrimination</u>,**

9  **does states facts sufficient to constitute a cause of action.**

10    Plaintiff claims in paragraph 41, on page 14 of his complaint that he was subjected to

11  continuous and/or severe hostile environment based on his sexual relationship with defendant

12  McVicker. He was subject to quid pro quo sex based harassment and discrimination at his

13  *workplace which was perpetrated and tolerated by persons in positions of power as set forth*

14  herein, violating California Government Code12940 et. Seq.

15    **Plaintiff's Fifth Cause of Action, <u>Intentional Infliction of Emotional Stress</u> does**

16  **states facts sufficient to constitute a cause of action.**

17    In California, the intentional infliction of severe emotional distress, without physical

18  impact, based on "outrageous" conduct, is a separate tort. The elements of the cause of action;

19  (1) outrageous conduct by the defendant, (2) the defendant's intention of causing, or the reckless

20  disregard of the probability of causing, emotional distress, (3) the plaintiff's actual suffering of

21  severe or extreme emotional stress, and (4) actual and proximate causation of emotional

22  *distress by the defendants outrageous conduct.*

23    (Nally v. Grace Community Church 1988) 47 C. 3d 2787, 300, 253 Cal Rptr. 97, 763 P.

24  2d 948; Cole v. Fair Oaks Fire Protection District (1987) 43 C. 3d 148, 233 Cal. Rptr. 308.

25

**Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer**    8

1    Plaintiff states in paragraph 46, on page 15 of his complaint, "At all times plaintiff clearly
2    rejected defendants' harassment, retaliation and discrimination, making them aware, that the
3    abuse will not be tolerated. Defendants ignored plaintiff's objections. The actions of defendants
4    were outrageous, intentional, and malicious, and done with reckless disregard of the fact that
5    they would certainly cause plaintiff to suffer severe emotional and physical distress".

6    Plaintiff claims that defendants intended to cause plaintiff emotional stress due to:
7    allowing their anger and resentment towards plaintiff motivate their actions, which resulted in or
8    rose to the level of "outrageous conduct", and caused them to "recklessly disregard" plaintiff's
9    rights. Defendants Aramark Sports, LLC, McVicker and Lee were supervisors and/or managers
10   and executive managers supposedly trained in preventing workplace harassment, and knew or
11   should have known that their actions would certainly cause plaintiff to suffer severe emotional
12   and physical distress. Defendants' actions were vengeful and vindictive.

13   Plaintiff alleges that defendant Aramark Sports, LLC intentionally did not want to end the
14   harassment of defendants McVicker and Lee, once they knew about it, and purposely denied
15   plaintiff a raise, and skipped over him for a promotion. Defendants, and all of them, became
16   prejudiced against plaintiff because (1) he reported the harassment to Aramark Corporation's
17   Human Resources Department in Philadelphia (which defied the management staff at the
18   Carnelian Room), (2) he reported the harassment to the Management staff at the Carnelian
19   Room, (3) he threatened to report the harassment to the EEOC and DEFH, and (4) thereafter, he
20   filed the complaints to the DEFH. Defendants were managers and executive managers, and knew
21   or should have known that their actions were outrageous or that they were acting in reckless
22   disregard of plaintiff right to be free from a workplace environment perpetuated with
23   discrimination, but, they just did not care.

24   Plaintiff claims on lines 12 through 24, page 6 of his complaint how Defendant
25   McVicker's intentional infliction of emotional stress upon him in the workplace was deliberate,

1  and how her having the knowledge that plaintiff truly loved her, and, she knew that at that

2  particular time that plaintiff was vulnerable and susceptible to emotional pain.

3  Plaintiff alleges that defendant Lee knew or should have known that by threatening

4  plaintiff's job and creating an intimidating and abusive work atmosphere for plaintiff, that his

5  actions would certainly cause plaintiff to suffer severe emotional and physical distress.

6  Furthermore, to address defendant's claim that plaintiff has not been injured in the

7  manner alleged or in any other manner whatsoever, as long as plaintiff proves that his work

8  environment would reasonably be perceived as hostile or abusive, there is no need for it also to

9  be psychologically injurious for him to make a claim for damages.

10  "The court found that psychological harm could be taken into account, but was not

11  required by statute". Harris v. Forklift Systems, Inc. 510 U.S. 17: 114 S. Ct 367.

12  Although, plaintiff alleges he was injured psychologically in this case.

13  Defendants' **Second Affirmative Defense** (Failure to Mitigate Damages) is groundless,

14  due to plaintiff taking a disability leave on March 28, 2006 and not being able to work for ten

15  months thereafter.

16  Defendants' **Third Affirmative Defense** (Statute of Limitations) is groundless, due to (1)

17  pursuant to Government Code 12965(b) plaintiff filing his complaint with the DFEH on March

18  22, 2006 and acquiring "rights to sue" letters on April 22, 2006, and thereafter filing this

19  complaint in this court prior to April 22, 2007, (2) pursuant to CCP §335.1, plaintiff filed his

20  complaint in less than two years, (3) pursuant to Government Code Section 12960(d) plaintiff

21  filed complaint on March 9, 2007, less than one year from the date of the alleged unlawful

22  practice or refusal to cooperate, which was March 28, 2006, the date plaintiff took medical leave.

23  Defendants' **Fourth Affirmative Defense** (Waiver and Estoppel) is groundless, due to

24  the fact that plaintiff has not waived his rights and is not estopped from asserting his rights to

25  bring his claim for damages.

1    Defendants' **Fifth Affirmative Defense** (Unclean Hands) is groundless, due to the fact

2    that it is not the plaintiff who is barred by unclean hands it is the defendants who are with

3    unclean hands. Plaintiff is the injured party, not the defendants.

4    *Defendants' **Six Affirmative Defense** (Privilege/Justification) is groundless, due to*

5    defendants' conduct not being a just and proper exercise of managerial discretion, nor was their

6    conduct undertaken for fair and honest reasons.

7    Plaintiff alleges defendants' conduct constitute a misuse of authority as defendants

8    abused their managerial positions by constructively discharging plaintiff.

9    Defendants **Seventh Affirmative Defense** (Worker's Compensation Exclusive Remedy)

10   is groundless and without merit, due to plaintiff's wrongful discharge claim being a violation of

11   public policy by defendants, and therefore plaintiff's emotional distress claim is not preempted

12   by California Worker's Compensation Act.

13   "*Employee's emotional distress claim against employer is not preempted by California*

14   Worker's Compensation Act where alleged wrongful discharge on which claim is based violates

15   fundamental policy. Kirton v Summit Medical Center, N.D. Cal. 1997, 982 F. Supp. 1381.

16   Worker' Compensation 2088.

17   Defendants' **Eighth Affirmative Defense** (Failure To Exhaust Administrative Remedies)

18   is groundless and without merit, due to the fact that plaintiff first reported the harassment of

19   defendants McVicker and Lee to Aramark's Human Resources Department in Philadelphia on or

20   around February 17, 2006 via the employee hotline, as the harassment started around February 3,

21   2006 and progressed and continued throughout March 28, 2006.

22   *Plaintiff reported the harassment immediately because he wanted it to end, as he reported*

23   the harassment of defendant McVicker within ten days after it began. Defendant Lee's

24   harassment was reported within a few days after it began.

25

1    Defendants  McVicker and  Lee's harassment was reported again on or about February

2  23,  2006 to Aramark' Human Resources  Department in Philadelphia and  to the management

3  staff at the Carnelian Room, as plaintiff submitted two written documents to Phil  Epps the

4  *General Manager at the Carnelian Room, who then faxed  the documents to Human Resources.*

5    Plaintiff claims that he did not fail to timely or properly exhaust his administrative

6  remedies.

7    Defendants **Ninth Affirmative Defense** (Avoidable Consequences) is groundless and

8  without merit, due to defendants' negligence and failure to prevent and properly correct their

9  discriminatory, harassing and retaliatory conduct. Plaintiff did not fail to take advantage of the

10  preventive and corrective opportunities provided by defendants.

11    Plaintiff claims that after he reported the harassment and discrimination of defendants

12  McVicker and Lee to Aramark Sports, LLC, thereafter, Aramark Sports, LLC initiated an

13  *investigation that was insufficient, incomplete and inadequate, as it failed to take measures that*

14  were reasonably calculated to end the harassment. Aramark Sports, LLC failed to properly

15  investigate and end the harassment.

16    "Title VII does not permit employers to stand idly by once they learn that sexual

17  harassment has occurred. To do so amounts to a ratification of the prior harassment. ." Fuller v.

18  City of Oakland, California, 47 F. 3d 1522, 1995 U.S. App.

19    Plaintiff felt compelled to take a disability leave on March 28, 2006, due to the

20  *discrimination and harassment and retaliation of the defendants.*

21    Defendants' **Tenth Affirmative Defense** (Mixed Motive) is groundless, due to plaintiff

22  alleging facts sufficiently showing that defendants' actions were discriminatory and retaliatory.

23    Defendants' **Eleventh Affirmative Defense** (Absence of Malice) is groundless, due to 1)

24  plaintiff showing and describing the malicious acts of the defendants, 2) the fact the defendants

25

1   have no affirmative defense to their actions, because plaintiff's employment resulted in a

2   constructive discharge, and 3) plaintiff has stated facts sufficient to support claims for punitive

3   damages.

4       *Defendant's* **Twelfth Affirmative Defense** *(Punitive Damages) is groundless, due to the*

5   fact that plaintiff's complaint has stated facts sufficient to support claims for punitive damages.

6       "A plaintiff must prove malice or recklessness for purposes of an award of punitive

7   damages under 42 U.S.C.S. §1981a (b) (1). Under the terms of §1981a (b) (1) punitive damages

8   are available in claims under Title VII Civil Rights Act of 1964, 42 U.S.C.S. §2000e et seq.,

9   where the employer has engaged in intentional discrimination and has done so with malice or

10  with reckless indifference to the federally protected rights of an aggrieved individual. The terms

11  malice or reckless indifference pertain to the employers knowledge that it may be acting in

12  violation of federal law, not its awareness that it is engaging in discrimination". Odgen v. Wax

13  *Works, Inc. 214 F. 3d 999; 2000 U.S. App.*

14      The punitive damages inquiry under 42 U.S.C.S. §1981a(b)(1) does not end with a

15  showing of the required malice or reckless indifference on the part of certain individuals; the

16  plaintiff must impute liability for punitive damages to the employer, that is where an employee

17  serving in a managerial capacity committed the wrong while acting in the scope of

18  employment. Odgen v. Wax Works, Inc. 214 F. 3d 999; 2000 U.S. App.

19      Plaintiff alleges that Defendants Aramark Sports, LLC, and defendants McVicker and

20  Lee are individuals serving in managerial capacities and committed the wrong while acting in the

21  scope of their employment.

22      Kolstad v. *American Dental Asc., 527 U.S. 526 (1999) It is quite clear, however, that*

23  defendant, in large measure, proves much of plaintiff's punitive damages case when proving its

24  affirmative defense.

25      Defendants and all of them have no affirmative defense for their actions.

**Memorandum of Points & Authorities in Support of Plaintiff's Amended Demurrer**

13

Plaintiff alleges that defendants, and all of them, engaged in harassing conduct despite knowing that their conduct might violate federal law.

Defendants **Thirteenth Affirmative Defense** (Constitutional Limit on Punitive *Damages), is irrelevant, due to plaintiff not having any contract with defendants, as plaintiff* claims constructive discharge as a breach of public policy, not by breach of employment agreement, therefore he is not barred by the contract clause. Furthermore, pertaining to the Due Process Clause, plaintiff has not yet stated an anticipated punitive damage award amount, and/or plaintiff has shown that he is entitled to punitive damages. Defendants claiming violation of Due Process is premature at this stage of the case, as plaintiff claims the same argument for Excessive Fines Clause, as it is also premature at this stage of the case.

Defendant's **Fourteenth Affirmative Defense** (Business Necessity), is groundless, due to plaintiffs claims being valid and the fact that constructively discharging plaintiff is not *consistent with business necessity.*

Defendants' **Fifthteenth Affirmative Defense** (No Vicarious Liability) is groundless, due to the fact that:

Plaintiff has stated sufficient facts showing that Aramark Sports, LLC, and Aramark Human Resource Department in Philadelphia are managing agents of the corporation and was made aware and was well aware and had advance knowledge of the unfitness or actions of its supervisor defendant McVicker and manager defendant Lee. Therefore plaintiff's punitive damages against Aramark Sports LLC is not barred.

Furthermore, According to FEHA Govt. 12900-12966, an employer in a sexual *harassment case (whether quid pro quo or hostile environment) is strictly liable for it's agents or* supervisor's acts of sexual harassment, regardless of its own degree of knowledge about the harassment, and the acts of other than an agent or supervisor if it knew or should have known of the harassment and failed to take corrective action. Govt Code 12940 (j) (1).

1   Plaintiff alleges that Defendants Aramark Sports, LLC, and defendants McVicker and

2   Lee are individuals serving in managerial or supervisory capacities and committed the wrong

3   while acting in the scope of their employment.

4   *In Anderson v. G.D.C. Inc., 281 F. 3d452 (4th Cir. 2002), Third, the manager committed*

5   the discrimination while in the course of his employment. This third requirement can be satisfied,

6   as in this case, when "a supervisor with immediate(or successively higher) authority over the

7   [victimized] employee creates "an actionable hostile environment".

8   Plaintiff alleges that defendants, and all of them, were managing agents, supervisors,

9   managers, or executive mangers, and that they engaged in harassing conduct despite knowing

10  that their conduct might violate federal law.

11  Defendants' **Sixteenth Affirmative defense** (After Acquired Evidence) is groundless,

12  due to: Plaintiff stating facts sufficient showing he was constructively discharged at no fault of

13  *his own.*

14  Plaintiff claims that there is no evidence of wrongdoing on his part that would bar him

15  from establishing liability or from recovering damages, nor is there any After Acquired Evidence

16  that would barr or limit plaintiff's claim for damages, and his employee records do not contain

17  any negative reports, warning notices or disciplinary actions against him.

18  ## V. CONCLUSION

19  Based upon the foregoing, and the fact that plaintiff has shown that even if defendants

20  were entitled to the affirmative defenses stated herein, they still can not claim the affirmative

21  defenses stated herein, plaintiff's            demurrer to defendants' first amended answer, in its

22  entirety, should be sustained without leave to amend.

23  Dated: July 5, 2007                     Mark Antoine Foster, In Pro Per

24

25

EXHIBIT 11

1 | MORGAN, LEWIS & BOCKIUS LLP
ERIC MECKLEY, State Bar No. 168181
2 | One Market Street, Spear Tower
San Francisco, CA 94105
3 | Tel:   415.442.1000
Fax:   415.442.1001
4 |
Attorney for Defendants
5 | ARAMARK Sports, LLC (erroneously sued as
"ARAMARK Sports & Entertainment"), Ying Kee
6 | McVicker, and Matthew Lee

7 |

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF SAN FRANCISCO

10 |

11 | MARK ANTOINE FOSTER,                          Case No. CGC-07-461178

12 |                    Plaintiff,                **DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER**

13 |          vs.                                 **TO DEFENDANTS' FIRST AMENDED ANSWER TO PLAINTIFF'S UNVERIFIED**

14 | ARAMARK Sports and Entertainment,            **COMPLAINT**
Ying Kee McVicker, an individual,
15 | Matthew Lee, an individual, and DOES 1
Through 50,                                    Date:      July 27, 2007
16 |                                             Time:      9:30 a.m.
                   Defendants.                 Dept.:     302
17 |                                             Judge:     Hon. Patrick J. Mahoney

18 |                                             Complaint filed:   March 9, 2007
                                               Trial Date:        None
19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

ORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1-SF/7552301.2                                                          Case No. CGC-07-461178

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

1    **I.    INTRODUCTION**

2    Defendants ARAMARK Sports, LLC ("ARAMARK"), Ying Kee McVicker and Matthew

3    Lee ("Defendants") oppose Plaintiff Mark Antoine Foster's ("Plaintiff") Demurrer to Defendants'

4    First Amended Answer to Plaintiff's Unverified Complaint.  Plaintiff's Demurrer is untimely,

5    procedurally flawed and substantively without merit and should be overruled by the Court based

6    on multiple grounds.

7    Plaintiff's Demurrer is untimely.  He failed to it within ten (10) days after service of

8    Defendants' First Amended Answer, as required by Code of Civil Procedure Section 430.40(b).

9    Instead, Plaintiff filed his Demurrer *twenty-seven days* (27) after service of Defendants' First

10    Amended Answer.  Plaintiff cannot provide this Court with any legitimate justification for his

11    untimely filing and failure to adhere to Section 430.40(b).

12    Plaintiff has claimed that Defendants' First Amended Answer fails for "uncertainty"

13    because it is not verified.  Yet, Plaintiff's original Complaint, which is the operative pleading, is

14    not verified.  Nor has he sought leave to amend in order to file a verified Complaint.  Defendants

15    are not required to file a verified Answer to an unverified Complaint.  The declaration which

16    Plaintiff served on Defendants along with his Demurrer papers, which attempts to retroactively

17    and improperly to verify his Complaint after the filing of Defendants' Amended Answer, is

18    procedurally inappropriate and does not compel Defendants to file a verified Answer.  Thus,

19    Plaintiff's claim that Defendants' First Amended Answer is subject to demurrer because it is

20    unverified lacks any merit.

21    Plaintiff's Demurrer should also be denied because he has failed to demonstrate that

22    Defendants' First Amended Answer does not state facts sufficient to constitute a defense.

23    Defendants have properly pled all sixteen affirmative defenses.  Defendants are required in their

24    Answer only to recite the legal theories on which their affirmative defenses are based so that

25    Plaintiff has notice as to the bases on which Defendants will attack Plaintiff's Complaint.

26    Defendants have pled with appropriate specificity the affirmative defenses contained in their First

27    Amended Answer, and Plaintiff has failed to cite any legal authority to the contrary.

28    Finally, Plaintiff's Demurrer improperly relies upon extrinsic evidence which is outside

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

1    the "four corners" of Defendants' Answer. Plaintiff's reliance and argument based on facts not

2    contained within Defendants' First Amended Answer is an obvious attempt to evade the rules

3    regarding demurrers, and the Court may not consider these extraneous evidentiary facts when

4    ruling upon the Demurrer.

5        For these reasons, Plaintiff's Demurrer should be overruled in its entirety or, in the

6    alternative, to the extent the Court sustains any portion of Plaintiff's Demurrer, the Court should

7    grant leave to amend.

8    **II.    PROCEDURAL HISTORY**

9        On March 9, 2007, Plaintiff filed an unverified Complaint against ARAMARK and

10   individual Defendants Ying Kee McVicker and Matthew Lee. On April 26, 2007, Defendants

11   timely answered Plaintiff's unverified Complaint, generally denying each of the material and

12   specific allegations of the Complaint and asserting fourteen separate and affirmative defenses.

13       On May 14, 2007, Plaintiff filed a Demurrer to Defendants' Answer.

14       On May 22, 2007, Defendants timely filed a First Amended Answer to Plaintiff's

15   Complaint asserting sixteen separate and affirmative defenses.

16       On June 6, 2007, Plaintiff filed and served via mail a Demurrer alleging that Defendants'

17   First Amended Answer does not state facts sufficient to constitute a defense. On June 15, 2007,

18   Defendants timely filed an Opposition to Plaintiff's Demurrer. Plaintiff's Demurrer was taken off

19   calendar by the Court because the Demurrer exceeded the page limit imposed by statute and

20   Plaintiff failed to give timely notice.

21       On July 5, 2007, Plaintiff filed and personally served a second Demurrer to Defendants'

22   First Amended Answer, alleging that Defendants' First Amended Answer fails because it "does

23   not state facts sufficient to constitute a defense and/or due to the uncertainty of the sufficiency of

24   their answer constituting their affirmative defenses." Pl. Memo. P&A's, 2: 6-8. Along the the

25   Demurrer papers, Plaintiff served Defendants with a "Declararation In Support of Verification of

26   Complaint" (which was apparently filed three days earlier on July 2).

27

28

ORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1    III.   **ARGUMENT**

2    A.   **Plaintiff's Demurrer Should Be Overruled Or Taken Off Calendar Because It Is Untimely Pursuant To C.C.P. § 430.40(b)**

3
4    Code of Civil Procedure Section 430.40(b) states that "[a] party who has filed a complaint
     or cross-complaint may, within 10 days after service of the answer to his pleading, demur to the
5    answer."

6    Defendants' served their First Amended Answer via mail on May 22, 2007. Plaintiff filed
7    his Demurrer on July 5, 2007 -- *twenty-seven (27) days* after the statutorily mandated deadline.
8    "A [party] cannot, *as of right*, answer or demur after the expiration of the time prescribed by
9    statute." *Buck v. Morrossis*, (1952) 114 Cal. App. 2d 461, 464-465. Plaintiff has failed to provide
10   the Court with any legitimate justification for the untimeliness of his Demurrer.

11   Moreover, Plaintiff has now filed three (3) procedurally defective and substantively
12   meritless demurrers. This succession of unwarranted demurrers is harassing to Defendants and a
13   waste of the Court's time and resources. Plaintiff should not be permitted to continue this pattern
14   any further. The Court should overrule his Demurrer.

15   B.   **Defendants' First Amended Complaint Does Not Fail For Uncertainty – The Answer Need Not Be Verified.**
16

17   "When a complaint is unverified, a defendant's answer requires no verification." *Kraus v.*
18   *Walt Disney Productions, Inc.*, (1963) 221 Cal. App. 2d 736, 737.

19   Plaintiff filed an Unverified Complaint on March 9, 2007. On May 22, 2007, Defendants
20   filed an Unverified First Amended Answer to Plaintiff's Complaint. On July 2, 2007, four (4)
21   months after he filed his Complaint, Plaintiff filed with the Court a "Declaration of Mark Antoine
22   Foster in Support of Verification of Complaint." Plaintiff claims that Defendants' First Amended
23   Answer fails "due to the uncertainty of the sufficiency of their answer constituting their
24   affirmative defenses, as the uncertainty is unknown or vague, because the defendants' answer
25   constituting their affirmative defenses is unverified. Pl. Memo. P&A's, 2: 8-10.

26   Plaintiff's argument is unintelligible. To the extent Plaintiff is arguing that Defendants'
27   Answer fails because he has now filed a declaration purporting to retroactively verify his original
28   Complaint, his argument lacks any substantive merit. Plaintiff's Complaint was and is unverified.

IORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK
1-SF/7552301.2                    3                    Case No. CGC-07-461178

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

1   When Defendants filed their First Amended Answer on May 22, they were responding to an

2   unverified Complaint. While failure to verify a pleading may be cured by amending the pleading,

3   Plaintiff has failed to take such measures. *Franchise Tax. Board v. Municipal Court*, (1975) 45

4   Cal. App. 3d 377, 384.

5       At this point, Plaintiff is not entitled to file an amended Complaint at this point without

6   first seeking leave of court. Code of Civ. Proc. § 472 ("Any pleading may be amended once by

7   the party of course, and without costs, at any time *before the answer or demurrer is*

8   *filed*")(emphasis added). Therefore, even if Plaintiff had filed an Amended Complaint, which he

9   did not, it would be improper given that he has not have received leave of court to do so. Because

10  Plaintiff has not filed a verified Complaint, either initially or by amendment, and because

11  Defendant cannot, in fact, file an Amended Complaint without leave of court, Defendants'

12  Answer "requires no verification". Defendants' general denial is appropriate under Code of Civil

13  Procedure Section 431.30.

14     C.   **Defendants' Affirmative Defenses Are Properly Pled Because They Provide
15               Adequate Notice to Plaintiff As To The Specific Bases On Which Defendants Will
             Attack Plaintiff's Complaint**

16      A pleading is sufficient if it "advises [the opponent] of the issues they will be required to

17  meet at the trial of the action." *Lewis v. Fahn*, (1952) 113 Cal. App. 2d 95

18      With regard to the adequate form for pleading affirmative defenses, Code of Civil

19  Procedure Section 431.30(g) requires only that "the defenses shall be separately stated, and the

20  several defenses shall refer to the causes of action which they are intended to answer, in a manner

21  by which they may be intelligibly distinguished."

22      The sixteen separate and affirmative defenses pled by Defendants allege that the causes of

23  action stated in Plaintiff's Complaint are legally deficient in certain respects. Defendants have

24  tailored their affirmative defenses to the facts in the Complaint. *See Coca-Cola Bottling Co. of*

25  *Los Angeles v. Superior Court*, (1991) 233 Cal. App. 3d 1273, 1285 (holding that affirmative

26  defense that merely recites legal theory of Workers' Compensation Act preemption would be

27  sufficient where the complaint alleges facts indicating Workers' Compensation coverage). By

28  stating with specificity the legal theory upon which each of Defendants' affirmative defenses is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1-SF/7552301.2           4           Case No. CGC-07-461178

DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER

1    based, Defendants have provided appropriate notice to Plaintiff as to the specific grounds upon

2    which they will attack the Complaint. *See Hata v. Los Angeles County Harbor/UCLA Med. Ctr.*

3    (1995) 31 Cal. App. 4th 1791, 1804 ("While [plaintiff] and the trial court rely on a highly

4    technical argument to support their position [that defendant's answer fails to state facts sufficient

5    to constitute a defense], the fact is [plaintiff] had notice of this particular immunity defense . . .

6    That was sufficient). No greater specificity of pleading is required from Defendants. Plaintiff has

7    not presented this Court with any case law authority which holds that the affirmative defenses

8    pled by Defendants require a greater specificity of pleading than that set forth in Defendants'

9    Answer.

10    Notwithstanding the fact that Defendants have fulfilled their obligation to adequately

11    notify Plaintiff of the grounds upon which they will attack Plaintiff's Complaint, a number of

12    these defenses are pled on information and belief and with as much particularity as possible prior

13    to discovery. *See, e.g.*, Answer, 2: 8-14 ("Failure to Mitigate"). Certain defenses rely on

14    evidence that is within Plaintiff's possession or is yet to be discovered. Defendants cannot be

15    expected to refrain from pleading an affirmative defense because they have not yet conducted

16    discovery; pleadings can be made on information and belief. As a result, Plaintiff's Demurrer

17    should be overruled.

18    **D.    Plaintiff's Demurrer Improperly Relies Upon Extrinsic Evidence**

19    Generally speaking, "a demurrer reaches only to the contents of the pleading and such

20    matters as may be considered under the doctrine of judicial notice." *South Shore Land Co. v.*

21    *Peterson*, (1964) 226 Cal. App. 2d 725, 733. In considering a demurrer to an answer, the

22    following guidelines have been established:

23    The determination of the sufficiency of the answer requires an
      examination of the complaint because its adequacy is with reference
24    to the complaint it purports to answer. This requirement, however,
      does not mean the allegations of the complaint, if denied, are to be
25    taken as true, the rule being that *the demurrer to the answer admits*
      *all issuable facts pleaded therein and eliminates all allegations of*
26    *the complaint denied by the answer.*

27    *Id* (emphasis added).

28    "In sustaining a demurrer . . . the ruling must be made on the pleadings alone, without

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1-SF/7552301.2                    5                    Case No. CGC-07-461178

1    **PROOF OF SERVICE BY MAIL**

2        I am a citizen of the United States and employed in San Francisco County, California. I
     am over the age of eighteen years and not a party to the within-entitled action. My business
3    address is One Market, Spear Street Tower, San Francisco, California 94105-1126. I am readily
     familiar with this firm's practice for collection and processing of correspondence for mailing with
4    the United States Postal Service.

5        On July 16, 2007, I placed with this firm at the above address for deposit with the United
     States Postal Service a true and correct copy of the within document(s):

6
     **DEFENDANTS' OPPOSITION TO PLAINTIFF'S DEMURRER TO DEFENDANTS'**
7    **FIRST AMENDED ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**

8    in a sealed envelope, postage fully paid, addressed as follows:

9        Mark Antoine Foster              *Plaintiff, In Pro Per*
         725 Ellis Street, Apt. 408
10       San Francisco, CA 94109

11       Following ordinary business practices, the envelope was sealed and placed for collection
     and mailing on this date, and would, in the ordinary course of business, be deposited with the
12   United States Postal Service on this date.

13       Executed on July 16, 2007, at San Francisco, California.

14       I declare under penalty of perjury, under the laws of the State of California, that the
     foregoing is true and correct.
15

16

17   _____
                                    Grace C Chiu
18

19

20

21

22

23

24

25

26

27

28
MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO        1-SF/7574882.1
_____
                                    PROOF OF SERVICE

# EXHIBIT 12

.

CM-110

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, state bar number, and address):* | **FOR COURT USE ONLY** |

Eric Meckley (SBN 168181)
Morgan Lewis & Bockius LLP
One Market, Spear Street Tower

San Francisco, CA 94105
TELEPHONE NO.: 415.442.1000     FAX NO. *(Optional)*: 415.442.1001
E-MAIL ADDRESS *(Optional)*: emeckley@morganlewis.com
ATTORNEY FOR *(Name)*: Defendant ARAMARK Sports, LLC

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

ENDORSED
**F I L E D**
San Francisco County Superior Court

'' '' ) o 2007

jORDON FARRELL, Clerk
v CAROLYN BALISTRERI
                              Clerk

PLAINTIFF/PETITIONER: Mark Antoine Foster

DEFENDANT/RESPONDENT: ARAMARK Sports, LLC

| **CASE MANAGEMENT STATEMENT** | **CASE NUMBER:** |
|---|---|
| **(Check one):**  [X] **UNLIMITED CASE**  (Amount demanded exceeds $25,000)   [ ] **LIMITED CASE**  (Amount demanded is $25,000 or less) | CGC-07-461178 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: August 10, 2007          Time: 9:00 a.m.     Dept.:          Div.:          Room: 212

Address of court *(if different from the address above):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [X]  This statement is submitted by party *(name):* Defendant ARAMARK Sports, LLC
   b. [ ]  This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date):*
   b. [ ]  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [ ]  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. [ ]  The following parties named in the complaint or cross-complaint
      (1) [ ]  have not been served *(specify names and explain why not):*
      (2) [ ]  have been served but have not appeared and have not been dismissed *(specify names):*
      (3) [ ]  have had a default entered against them *(specify names):*
   c. [ ]  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a.  Type of case in  [X] complaint   [ ] cross-complaint    *(describe, including causes of action):*
      Alleged quid pro quo and hostile environment, sexual harassment, retaliation and discrimination in violation of the FEHA and intentional infliction of emotional distress.

Page 1 of 4

| | | |
|---|---|---|
| Form Adopted for Mandatory Use  Judicial Council of California  CM-110 [Rev. January 1, 2007] | **CASE MANAGEMENT STATEMENT** | Legal Solutions Plus | Cal. Rules of Court,  rules 3.720-3.730 |

CM-110

| PLAINTIFF/PETITIONER: Mark A. ...une Foster | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: ARAMARK Sports, LLC | CGC-07-461178 |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
Defendants assert that Plaintiff's claims are entirely without merit and that Plaintiff is not entitled to any damages whatsoever. Plaintiff voluntarily quit his job after his co-worker, defendant Ying Kee McVicker, ended their romantic relationship.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial   *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):* Plaintiff has filed 3 successive demurrers to Defendants' answer. Defendants have experienced significant difficulty obtaining discovery from pro per Plaintiff. Parties agree that May 2008 trial date is appropriate.
c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☒ days *(specify number):* 5 court days
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:
e. Fax number:
f. E-mail address:
g. Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a. Counsel ☒ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c. ☐ The case has gone to an ADR process *(indicate status):*

| PLAINTIFF/PETITIONER: Mark Ar.   Foster | NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: ARAMARK Sports, LLC | CGC-07-461178 |

10. d.  The party or parties are willing to participate in (check all that apply):
- (1) ☐ Mediation
- (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
- (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
- (4) ☐ Binding judicial arbitration
- (5) ☐ Binding private arbitration
- (6) ☐ Neutral case evaluation
- (7) ☒ Other (specify):  San Francisco Superior Court, BASF Early Settlement Program

e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11:

g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court (specify exemption):

11. **Settlement conference**
    ☒ The party or parties are willing to participate in an early settlement conference (specify when):   September 2007

12. **Insurance**
- a. ☐ Insurance carrier, if any, for party filing this statement (name):
- b. Reservation of rights:    ☐ Yes   ☐ No
- c. ☐ Coverage issues will significantly affect resolution of this case (explain):

13. **Jurisdiction**
    Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
    ☐ Bankruptcy    ☐ Other (specify):
    Status:

14. **Related cases, consolidation, and coordination**
- a. ☐ There are companion, underlying, or related cases.
  - (1) Name of case:
  - (2) Name of court:
  - (3) Case number:
  - (4) Status:
  ☐ Additional cases are described in Attachment 14a.
- b. ☐ A motion to   ☐ consolidate   ☐ coordinate   will be filed by (name party):

15. **Bifurcation**
    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action (specify moving party, type of motion, and reasons):

16. **Other motions**
    ☒ The party or parties expect to file the following motions before trial (specify moving party, type of motion, and issues):
    Possible discovery motions
    Motion for summary judgment or, in the alternative, summary adjudication of issues

| | |
|---|---|
| PLAINTIFF/PETITIONER: Mark An. Foster | NUMBER: |
| DEFENDANT/RESPONDENT: ARAMARK Sports, LLC | CGC-07-461178 |

**17. Discovery**
  a. [ ] The party or parties have completed all discovery.
  b. [X] The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| Defendants | Written discovery | September 2007 |
| Defendants | Deposition of Plaintiff | September 2007 |
| Defendants | Third-party depositions | October 2007 |

  c. [X] The following discovery issues are anticipated *(specify)*:

   Obtaining timely and full and complete discovery responses from pro per Plaintiff.

**18. Economic Litigation**
  a. [ ] This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

  b. [ ] This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**
  [X] The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:   Scheduling of May 2008 trial date

**20. Meet and confer**
  a. [X] The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

  b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**
   Previous case management orders in this case are *(check one)*:   [X] none   [ ] attached as Attachment 21.

**22.** Total number of pages attached *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: July 16, 2007

Eric Meckley
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

   [ ] Additional signatures are attached

**CASE MANAGEMENT STATEMENT**

1

## **PROOF OF SERVICE BY MAIL**

2       I am a citizen of the United States and employed in San Francisco County, California. I
am over the age of eighteen years and not a party to the within-entitled action. My business
3   address is One Market, Spear Street Tower, San Francisco, California 94105-1126. I am readily
familiar with this firm's practice for collection and processing of correspondence for mailing with
4   the United States Postal Service.

5       On July 16, 2007, I placed with this firm at the above address for deposit with the United
States Postal Service a true and correct copy of the within document(s):

6

## **CASE MANAGEMENT STATEMENT**

7

in a sealed envelope, postage fully paid, addressed as follows:

8

9       Mark Antoine Foster                    *Plaintiff, In Pro Per*
        725 Ellis Street, Apt. 408
10      San Francisco, CA 94109

11      Following ordinary business practices, the envelope was sealed and placed for collection
and mailing on this date, and would, in the ordinary course of business, be deposited with the
12  United States Postal Service on this date.

13      Executed on July 16, 2007, at San Francisco, California.

14      I declare under penalty of perjury, under the laws of the State of California, that the
foregoing is true and correct.

15

16

17                                                      Grace C Chiu

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
HOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7574882.1

CASE MANAGEMENT STATEMENT

EXHIBIT 13

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO

400 MCALLISTER STREET, SAN FRANCISCO, CA 94102

| | |
|---|---|
| MARK ANTOINE FOSTER | **Pretrial Department 212** |
| | **Case Management Order** |
| PLAINTIFF (S) | |
| VS. | **NO. CGC-07-461178** |
| ARAMARK CORPORATION et al | |
| | **Order Continuing Case** |
| | **Management Conference** |
| DEFENDANT (S) | |

TO: ALL COUNSEL AND PARTIES IN PROPRIA PERSONA

The AUG-10-2007 CASE MANAGEMENT CONFERENCE is canceled, and it is hereby ordered:

This case is set for a case management conference on SEP-21-2007 in Department 212 at 9:00 AM.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than fifteen (15) days before the case management conference. However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management conference.

PLAINTIFF'S COUNSEL OR PLAINTIFF(S) IN PROPRIA PERSONA must send a copy of this notice to all parties not listed on the attached proof of service within five (5) days of the date of this order.

DATED: AUG-01-2007          ARLENE T. BORICK
                            JUDGE/COMMISSIONER

EXHIBIT 14

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Eric Meckley (SBN 168181)<br>Suzanne Boag (SBN 250441)<br>Morgan Lewis & Bockius LLP<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>TELEPHONE NO.: 415.442.1000   FAX NO. *(Optional)*  415.442.1001<br>E-MAIL ADDRESS *(Optional)*: emeckley@morganlewis.com; sboag@morganlewis.com<br>ATTORNEY FOR *(Name)*: Defendant ARAMARK Sports, LLC | ENDORSED<br>FILED<br>San Francisco County Superior Court<br><br>SEP 0 6 2007<br><br>GORDON PARK-LI, Clerk<br>BY: CAROLYN BALISTRERI<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE San Francisco, CA 94102
BRANCH NAME:

PLAINTIFF/PETITIONER: Mark Antoine Foster

DEFENDANT/RESPONDENT: ARAMARK Sports, LLC

| CASE MANAGEMENT STATEMENT | CASE NUMBER |
|---|---|
| (Check one):   [X] UNLIMITED CASE        [  ] LIMITED CASE<br>               (Amount demanded        (Amount demanded is $25,000<br>               exceeds  $25,000)        or less) | CGC-07-461178 |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date: September 21, 2007        Time: 9:00 a.m.        Dept.: 212        Div.:        Room:

Address of court *(if different from the address above)*:

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1.  **Party or parties** *(answer one)*:
    a. [X]  This statement is submitted by party *(name)*: Defendants ARAMARK Sports, LLC, Matthew Lee, Ying Kee McVicker
    b. [  ]  This statement is submitted jointly by parties *(names)*:

BY FAX

2.  **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
    a.  The complaint was filed on *(date)*:
    b. [  ]  The cross-complaint, if any, was filed on *(date)*:

3.  **Service** *(to be answered by plaintiffs and cross-complainants only)*
    a. [  ]  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
    b. [  ]  The following parties named in the complaint or cross-complaint
        (1) [  ]  have not been served *(specify names and explain why not)*:
        (2) [  ]  have been served but have not appeared and have not been dismissed *(specify names)*:
        (3) [  ]  have had a default entered against them *(specify names)*:
    c. [  ]  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4.  **Description of case**
    a.  Type of case in   [X] complaint       [  ] cross-complaint    *(describe, including causes of action)*:
    Alleged quid pro quo and hostile environment sexual harassment, retaliation and discrimination in violation of the FEHA and intentional infliction of emotional distress.

Page 1 of 4

**CM-110**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number and address)*:<br>Eric Meckley (SBN 168181)<br>Suzanne Boag (SBN 250441)<br>Morgan Lewis & Bockius LLP<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>  TELEPHONE NO  415.442.1000      FAX NO *(Optional)*  415.442.1001<br>  E-MAIL ADDRESS *(Optional)*  emeckley@morganlewis.com; sboag@morganlewis.com<br>  ATTORNEY FOR *(Name)*  Defendant ARAMARK Sports, LLC | FOR COURT USE ONLY |

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco<br>  STREET ADDRESS 400 McAllister Street<br>  MAILING ADDRESS<br>  CITY AND ZIP CODE San Francisco, CA 94102<br>  BRANCH NAME | |
| PLAINTIFF/PETITIONER Mark Antoine Foster | |
| DEFENDANT/RESPONDENT: ARAMARK Sports, LLC | |

| CASE MANAGEMENT STATEMENT | | CASE NUMBER |
|---|---|---|
| **(Check one):**   ⌊X⌋ **UNLIMITED CASE**<br>(Amount demanded<br>exceeds $25,000) | ⌊  ⌋ **LIMITED CASE**<br>(Amount demanded is $25,000<br>or less) | CGC-07-461178 |

| A **CASE MANAGEMENT CONFERENCE** is scheduled as follows: |
|---|
| Date: September 21, 2007        Time: 9:00 a.m.        Dept.: 212        Div.:        Room: |
| Address of court *(if different from the address above)* |

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1   **Party or parties** *(answer one)*:

   a.   ⌊X⌋   This statement is submitted by party *(name)*: Defendants ARAMARK Sports, LLC, Matthew Lee, Ying Kee McVicker

   b.   ⌊  ⌋   This statement is submitted **jointly** by parties *(names)*:

2   **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*

   a.   The complaint was filed on *(date)*:

   b.   ⌊  ⌋   The cross-complaint, if any, was filed on *(date)*:

3   **Service** *(to be answered by plaintiffs and cross-complainants only)*

   a.   ⌊  ⌋   All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.

   b.   ⌊  ⌋   The following parties named in the complaint or cross-complaint

      (1)   ⌊  ⌋   have not been served *(specify names and explain why not)*

      (2)   ⌊  ⌋   have been served but have not appeared and have not been dismissed *(specify names)*:

      (3)   ⌊  ⌋   have had a default entered against them *(specify names)*:

   c.   ⌊  ⌋   The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4   **Description of case**

   a.   Type of case in   ⌊X⌋ complaint       ⌊  ⌋ cross-complaint      *(describe, including causes of action)*:
   Alleged quid pro quo and hostile environment sexual harassment, retaliation and discrimination in violation of the FEHA and intentional infliction of emotional distress.

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Legal<br>Solutions<br>⌊Ɋ Plus

Cal. Rules of Court,<br>rules 3.720-3.730

**CM-110**

| PLAINTIFF/PETITIONER: Mark Antoine Foster | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: ARAMARK Sports, LLC | CGC-07-461178 |

4. b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
Defendants assert that Plaintiff's claims are entirely without merit and that Plaintiff is not entitled to any damages whatsoever. Plaintiff voluntarily quit his job after his co-worker, defendant Ying Kee McVicker, ended their romantic relationship.

After they prevail against Plaintiff, Defendants will each recover their costs and attorneys' fees from Plaintiff for filing this frivlous lawsuit.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*  Plaintiff has filed 3 successive demurrers to Defendants' Answer, as well as a Motion for Leave to File First Amended Complaint. Defendants also experienced difficulty obtaining discovery from pro per Plaintiff. Parties agree that **May 2008** trial date is appropriate.
c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
12/20/07-01/03/08; 04/07/08-04/30/08 -- trial in Washington State

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☒ days *(specify number):* 8-10 court days
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  Fax number:
f   E-mail address:
g.  Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a.  Counsel ☒ has ☐ has not    provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b.  ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c.  ☐ The case has gone to an ADR process *(indicate status):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: Mark Antoine Foster | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: ARAMARK Sports, LLC | CGC-07-461178 |

10. d.  The party or parties are willing to participate in *(check all that apply)*:

    (1) [＿] Mediation

    (2) [＿] Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) [＿] Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) [＿] Binding judicial arbitration

    (5) [＿] Binding private arbitration

    (6) [＿] Neutral case evaluation

    (7) [X] Other *(specify):* San Francisco Superior Court, BASF Early Settlement Program

e. [＿] This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f. [＿] Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11

g. [＿] This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

## 11. Settlement conference

[X] The party or parties are willing to participate in an early settlement conference *(specify when):* October 2007

## 12. Insurance

a. [＿] Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: [＿] Yes  [＿] No

c. [＿] Coverage issues will significantly affect resolution of this case *(explain):*

## 13. Jurisdiction

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

[＿] Bankruptcy  [＿] Other *(specify):*

Status:

## 14. Related cases, consolidation, and coordination

a. [＿] There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

[＿] Additional cases are described in Attachment 14a.

b. [＿] A motion to [＿] consolidate [＿] coordinate  will be filed by *(name party):*

## 15. Bifurcation

[＿] The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

## 16. Other motions

[X] The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*
Possible discovery motions
Motion for summary judgment or, in the alternative, summary adjudication of issues

1

**PROOF OF SERVICE**

2     I am a resident of the State of California and over the age of eighteen years, and not a

3     party to the within action; my business address is One Market, Spear Street Tower, San

4     Francisco, California 94105-1126. On September 6, 2007, I served the within document(s):

5                          **CASE MANAGEMENT STATEMENT**

6

7     ☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set
           forth below on this date before 5:00 p.m.

8     ☒    by placing the document(s) listed above in a sealed envelope with postage thereon
           fully prepaid, in the United States mail at San Francisco, California addressed as
9          set forth below.

10    ☐    by placing the document(s) listed above in a sealed Federal Express envelope and
           affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal
11         Express agent for delivery.

12    ☐    by causing the document(s) listed above to be personally delivered to the person(s)
           at the address(es) set forth below.

13    ☐    by transmitting via electronic mail the document(s) listed above to each of the
           person(s) as set forth below.

14
      Mark Antoine Foster
15    725 Ellis Street, Apt. 408
      San Francisco, CA 94109
16
          Following ordinary business practices, the envelope was sealed and placed for collection
17
      and mailing on this date, and would, in the ordinary course of business, be deposited with the
18
      United States Postal Service on this date.
19
          Executed on September 6, 2007, at San Francisco, California.
20
          I declare under penalty of perjury, under the laws of the State of California, that the
21
      foregoing is true and correct.
22

23                                                  _____
                                                              Ronn R. Uchihara
24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF 7553645.1                          2

EXHIBIT 15

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 MCALLISTER STREET, SAN FRANCISCO, CA 94102

MARK ANTOINE FOSTER

PLAINTIFF (S)

VS.

ARAMARK CORPORATION et al

DEFENDANT (S)

**Pretrial Department 212**
**Case Management Order**

**NO. CGC-07-461178**

**Notice of Time and Place of Trial and Mandatory Settlement Conference**

To: ALL COUNSEL AND PARTIES IN PROPRIA PERSONA

The SEP-21-2007 CASE MANAGEMENT CONFERENCE is canceled.

YOU ARE HEREBY NOTIFIED that this case is set for Jury TRIAL on MAR-17-2008 at 9:30 AM in Dept. 206.

A MANDATORY SETTLEMENT CONFERENCE is set for FEB-28-2008 at 3:30 PM in Department 318, 400 McAllister Street San Francisco, CA 94102.  Sanctions will be imposed for failure to comply with Local Rule 5.0.A. and California Rules of Court, Rule 3.1385.

If any party objects to this order, written notice of the objection must be filed with the Court; a courtesy copy must be delivered to Dept. 212 and served on all parties; and all counsel must appear for an objection hearing on SEP-21-2007 in  Department 212 at 9:00AM.

After SEP-21-2007, ALL REQUESTS FOR CONTINUANCE MUST BE SUBMITTED TO THE PRESIDING JUDGE in Department 206, 400 MCALLISTER STREET, SAN FRANCISCO, CA 94102.

DATED:  SEP-10-2007                    ARLENE T. BORICK

                                       JUDGE/COMMISSIONER

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 MCALLISTER STREET, SAN FRANCISCO, CA 94102

MARK ANTOINE FOSTER

PLAINTIFF (S)

VS.

ARAMARK CORPORATION et al

DEFENDANT (S)

**Pretrial Department 212**
**Case Management Order**

**NO. CGC-07-461178**

**Notice of Time and Place of Trial and Mandatory Settlement Conference**

To: ALL COUNSEL AND PARTIES IN PROPRIA PERSONA

The SEP-21-2007 CASE MANAGEMENT CONFERENCE is canceled.

YOU ARE HEREBY NOTIFIED that this case is set for Jury TRIAL on MAR-17-2008 at 9:30 AM in Dept. 206.

A MANDATORY SETTLEMENT CONFERENCE is set for FEB-28-2008 at 3:30 PM in Department 318, 400 McAllister Street San Francisco, CA 94102.  Sanctions will be imposed for failure to comply with Local Rule 5.0.A. and California Rules of Court, Rule 3.1385.

If any party objects to this order, written notice of the objection must be filed with the Court; a courtesy copy must be delivered to Dept. 212 and served on all parties; and all counsel must appear for an objection hearing on SEP-21-2007 in  Department 212 at 9:00AM.

After SEP-21-2007, ALL REQUESTS FOR CONTINUANCE MUST BE SUBMITTED TO THE PRESIDING JUDGE in Department 206, 400 MCALLISTER STREET, SAN FRANCISCO, CA 94102.

DATED:  SEP-10-2007

ARLENE T. BORICK

JUDGE/COMMISSIONER

EXHIBIT 16

1    MORGAN, LEWIS & BOCKIUS LLP
     ERIC MECKLEY, State Bar No. 168181
2    SUZANNE BOAG, State Bar No. 250441
     One Market, Spear Street Tower
3    San Francisco, CA  94105-1126
     Tel: 415.442.1000
4    Fax: 415.442.1001

5    Attorneys for Defendants
     ARAMARK SPORTS, LLC (erroneously sued as
6    ARAMARK Sports and Entertainment), YING KEE
     McVICKER, and MATTHEW LEE
7

ENDORSED
F I L E D
San Francisco County Superior Court

SEP 1 3 7007

GORDON PARK-LI, Clerk
BY:_____WESLEY RAMIREZ____
                          Deputy Clerk

8                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SAN FRANCISCO

10                           UNLIMITED JURISDICTION

11

12   MARK ANTOINE FOSTER,                    Case No. CGC-07-461178

13                  Plaintiff,               **NOTICE OF OBJECTION TO TRIAL
                                             DATE**
14          vs.                              **(L.R. 3.4(D))**

15   ARAMARK SPORTS &                        **NOTICE OF OBJECTION TO COURT
     ENTERTAINMENT, Ying Kee McVicker,       COMMISSIONER ACTING AS TRIAL**
16   an individual, Matthew Lee, an individual,  **JUDGE**
     and DOES 1 Through 51,                  **(L.R. 6.0(C))**
17
                    Defendants.
18                                           CMC:        September 21, 2007
                                             Room:       212
19                                           Time:       9:00 a.m.

20                                           Action Filed:   March 9, 2007
                                             Trial Date:
21

22   TO MARK ANTOINE FOSTER, PLAINTIFF IN PRO PER:    **BY FAX**

23          PLEASE TAKE NOTICE THAT, pursuant to San Francisco Superior Court Civil Local

24   Rule 3.4(D), Defendants Aramark Sports LLC, Ying Kee McVicker, and Matthew Lee

25   ("Defendants") hereby timely file with the Court and serve upon all parties this written objection

26   to the trial date of March 17, 2008 as set forth in the Notice of Time and Place of Trial dated

27   September 10, 2007.

28          Accordingly, Defendants will appear at the objection hearing and Case Management

1-SF/7602707.1                              1

NOTICE OF OBJECTION TO TRIAL DATE AND COURT COMMISSIONER

1  MORGAN, LEWIS & BOCKIUS LLP
   ERIC MECKLEY, State Bar No. 168181
2  SUZANNE BOAG, State Bar No. 250441
   One Market, Spear Street Tower
3  San Francisco, CA 94105-1126
   Tel: 415.442.1000
4  Fax: 415.442.1001

5  Attorneys for Defendants
   ARAMARK SPORTS, LLC (erroneously sued as
6  ARAMARK Sports and Entertainment), YING KEE
   McVICKER, and MATTHEW LEE
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     COUNTY OF SAN FRANCISCO

10                        UNLIMITED JURISDICTION

11

| | |
|---|---|
| 12  MARK ANTOINE FOSTER, | Case No. CGC-07-461178 |
| 13          Plaintiff, | **NOTICE OF OBJECTION TO TRIAL DATE** |
| 14          vs. | **(L.R. 3.4(D))** |
| 15  ARAMARK SPORTS & ENTERTAINMENT, Ying Kee McVicker, | **NOTICE OF OBJECTION TO COURT COMMISSIONER ACTING AS TRIAL JUDGE** |
| 16  an individual, Matthew Lee, an individual, and DOES 1 Through 51, | **(L.R. 6.0(C))** |
| 17          Defendants. | |
| 18 | CMC:           September 21, 2007 |
| 19 | Room:          212<br>Time:           9:00 a.m. |
| 20 | Action Filed:  March 9, 2007 |
| 21 | Trial Date: |

22  TO MARK ANTOINE FOSTER, PLAINTIFF IN PRO PER:

23          PLEASE TAKE NOTICE THAT, pursuant to San Francisco Superior Court Civil Local

24  Rule 3.4(D), Defendants Aramark Sports LLC, Ying Kee McVicker, and Matthew Lee

25  ("Defendants") hereby timely file with the Court and serve upon all parties this written objection

26  to the trial date of March 17, 2008 as set forth in the Notice of Time and Place of Trial dated

27  September 10, 2007.

28          Accordingly, Defendants will appear at the objection hearing and Case Management

1  Conference on September 21, 2007 in Department 212.

2     In addition, pursuant to San Francisco Superior Court Civil Local Rule 6.0(C), Defendants

3  hereby timely file with the Court and serve upon all parties this written objection to a court

4  commissioner acting as a trial judge in this matter.

5  Dated:  September 13, 2007                    MORGAN, LEWIS & BOCKIUS LLP

6

7

8                                            By _____
                                                Suzanne Boag
9                                               Attorneys for Defendants
                                                ARAMARK SPORTS LLC, YING KEE
10                                              McVICKER, and MATTHEW LEE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1-SF/7602707.1                              2

1

## PROOF OF SERVICE

2     I am a resident of the State of California and over the age of eighteen years, and not a
party to the within action; my business address is One Market, Spear Street Tower, San

3     Francisco, CA 94105-1126. On September 13, 2007, I served the within documents:

4     **NOTICE OF OBJECTION TO TRIAL DATE (L.R. 3.4(D))**

5     **NOTICE OF OBJECTION TO COURT COMMISSIONER ACTING AS TRIAL
JUDGE (L.R. 6.1(C))**

6

7     ☐     by transmitting via facsimile the document(s) listed above to the fax number(s) set
forth below on this date before 5:00 p.m.

8
☒     by placing the document(s) listed above in a sealed envelope with postage thereon
9           fully prepaid, in the United States mail at San Francisco, California addressed as
set forth below.

10
☐     by placing the document(s) listed above in a sealed _____ envelope
11          and affixing a pre-paid air bill, and causing the envelope to be delivered to a
_____ agent for delivery.

12
☐     by having Worldwide Network personally deliver the document(s) listed above to
13          the person(s) at the address(es) set forth below.

14
Mark Antoine Foster                          *Plaintiff in pro per*
15    725 Ellis Street, Apt. 408
San Francisco, CA 94109

16
I am readily familiar with the firm's practice of collection and processing correspondence
17    for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
18    motion of the party served, service is presumed invalid if postal cancellation date or postage
meter date is more than one day after date of deposit for mailing in affidavit.

19
Executed on September 13, 2007, at San Francisco, California.

20
I declare under penalty of perjury, under the laws of the State of California and the United
21    States of America, that the foregoing is true and correct.

22

23

24                                           Ronn R. Uchihara

25

26

27

28

EXHIBIT 17

1    **Mark Antoine Foster, In Pro Per**
     **725 Ellis Street, Apt. 408**
2    **San Francisco, CA 94109**
     **(415) 756-1611**
3

4

5

6

7

8                        **SUPERIOR COURT OF CALIFORNIA**

9                **IN AND FOR THE COUNTY OF SAN FRANCISCO**

10                       **CIVIL UNLIMITED JURISDICTION**

11                                      No.  **CGC07461178**

12   **MARK ANTOINE FOSTER,**              **PLAINTIFF'S REPLY TO**
                                           **DEFENDANTS' OPPOSITION TO**
13           **Plaintiff,**               **DATE SET FOR TRIAL AND**
                                           **OPPOSITION TO COMMISIONER**
14           **vs.**                       **ACTING AS TRIAL JUDGE**

15   **ARAMARK SPORTS and Entertainment,**   **Date: September 21, 2007**
     **Ying Kee McVicker, an individual, Matthew**  **Time: 9:00 a.m.**
16   **Lee, an individual, and DOES 1**      **Dept.: 212**
     **Through 51**                         **Judge: Hon. Arlene T. Borick**
17           **Defendants**               **Complaint filed: March 9, 2007**
                                           **Trial Date: March 17, 2008**
18   _____/

19          Plaintiff **MARK ANTOINE FOSTER** hereby submits his reply to Defendants' notice,

20   pursuant to L.R. 3.4(D), objecting the date of March 17, 2008 as trial date, and their objection,

21   pursuant to L.R. 6.0 (C), to the Commissioner acting as trial judge in this case.

22          Plaintiff hereby denies Defendants' objections and will appear at the Case Management

23   Conference on September 21, 2007 at 9:00 am to contest to their objections.

24          Plaintiff respectfully requests that the Court denies Defendants objections.

25

     **PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO TRIAL DATE**                    1

1   Dated: September 18, 2007

Mark Antoine Foster, In Pro Per

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 18

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 MCALLISTER STREET, SAN FRANCISCO, CA 94102

MARK ANTOINE FOSTER

**Pretrial Department 212**

PLAINTIFF (S)

VS.

**NO. CGC-07-461178**

ARAMARK CORPORATION et al

**Notice of Time and Place of Trial and Mandatory Settlement Conference**

DEFENDANT (S)

To: ALL COUNSEL AND PARTIES IN PROPRIA PERSONA

As a result of the hearing regarding objection to the tentative setting in the case,

YOU ARE HEREBY NOTIFIED that this case is set for Jury TRIAL on MAY-19-2008 at 9:30 AM in Dept. 206.

A MANDATORY SETTLEMENT CONFERENCE is set for MAY-05-2008 at 3:30 PM in Department 613, 400 McAllister Street San Francisco, CA 94102. Sanctions will be imposed for failure to comply with Local Rule 5.0.A. and California Rules of Court, Rule 3.1385.

ALL REQUESTS FOR CONTINUANCE MUST BE SUBMITTED TO THE PRESIDING JUDGE in Department 206, 400 MCALLISTER STREET, SAN FRANCISCO, CA 94102.

DATED: SEP-25-2007                    Arlene T. Borick

JUDGE/COMMISSIONER

EXHIBIT 19

Mark A. Foster
In Pro Per
725 Ellis St. Apt. 408
San Francisco, CA 94109

Eric Meckley
Morgan Lewis et al
One Market St. Spear Tower
San Francisco, CA 94105

October 12, 2007

## SUPERIOR COURT OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO
## EARLY SETTLEMENT PROGRAM

### Notice of Early Settlement Conference

| Plaintiff(s) | Case Number |
|---|---|
| **MARK ANTOINE FOSTER** | **461178** |
| **vs.** | |
| **ARAMARK SPORTS AND ENTERTAINMENT; YING KEE MCVICKER, INDIVIDUAL; MATTHEW LEE, INDIVIDUAL; ARAMARK SPORTS LLC (FORMERLY KNOWN AS ARAMARK SPORTS INC AND SUED AS ARAMARK SPORTS & ENTERTAINMENT)** | |
| **Defendant(s)** | |

Notice is hereby given that the EARLY SETTLEMENT CONFERENCE for the above-entitled case has been SCHEDULED.  Attendance at the settlement conference by the parties, authorized representatives of the insurer (other than counsel) and the trial attorney(s) is mandatory.

It is HEREBY ORDERED that the matter is set for settlement conference on

**3/14/2008    at    11:00 A.M.**

You will receive written notification of the identity of the assigned panelists and conference location from the Bar Association of San Francisco two to three weeks prior to conference date.

You are then required to send the required ESP Statement by mail, hand-delivery or fax, insuring that the panelist(s), ESP/BASF and all other counsel <u>receive</u> a copy no later than the Monday before your ESP conference.  The ESP Statement must include a Proof of Service indicating all who were sent a copy.

Your administrative fee invoice is enclosed.



### ESP Policies and Procedures and the Superior Court Local Rule 4.3 is enclosed.

EXHIBIT 20

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:  415.442.1000
Fax:  415.442.1001
www.morganlewis.com



**Morgan Lewis**
COUNSELORS AT LAW

**Eric Meckley**
Of Counsel
(415) 442-1013
emeckley@morganlewis.com

October 17, 2007

**VIA U.S. MAIL**

Early Settlement Program
The Bar Association of San Francisco (ESP/BASF)
465 California Street, Suite 1100
San Francisco, California  94104

Re:     Mark Antoine Foster v. ARAMARK Sports, LLC., et al., Case No. 461178

Dear ESP Program Coordinator:

I represent Defendants ARAMARK Sports, LLC, Ying Kee McVicker, and Matthew Lee in the above-referenced case.

The Early Settlement Conference in this case is currently scheduled for March 14, 2008.  I am writing to request that the Early Settlement Conference be rescheduled to an *earlier* date for the following good cause:

Based upon the May 19, 2008 trial date in this case, Defendants are required to file their motion for summary judgment no later than late January 2008 – well before the scheduled Early Settlement Conference date.  As a practical matter, once Defendants expend the time, money and effort to prepare and file their motion for summary judgment, Defendants will want to proceed with the hearing on the motion and will not be particularly inclined to settle this case.  Therefore, the utility and benefit of conducting an "Early Settlement Conference" after Defendants have filed their summary judgment motion will be limited.  Whereas, if the Early Settlement Conference can be scheduled to occur well before the deadline for Defendants to file their summary judgment motion, it will significantly increase the potential to settle this case.

Based upon the above good cause, Defendants request that the Early Settlement Conference be rescheduled for a date in late November or December 2007 or, at the latest, early January 2008. This will greatly benefit the parties.



Morgan Lewis
COUNSELORS AT LAW

October 17, 2007
Page 2

Please feel free to contact me if you have any questions. I have also enclosed the required form
requesting a rescheduling of the Early Settlement Conference.

Sincerely,

Eric Meckley

Enclosure

cc:    Mark Antoine Foster

EXHIBIT 21

1  Mark Antoine Foster, In Pro Per
   725 Ellis Street, Apt. 408
2  San Francisco, CA 94109
   (415) 756-1611
3

4

5

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SAN FRANCISCO

10                  CIVIL UNLIMITED JURISDICTION

11
                                  No.  **CGC07461178**
12  MARK ANTOINE FOSTER,
                                  NOTICE OF MOTION AND MOTION
13         Plaintiff,             FOR LEAVE TO FILE AMENDED
                                  COMPLAINT, MEMORANDUM OF
14         vs.                    POINTS AND AUTHORITIES

15  ARAMARK SPORTS and Entertainment,   Date:  January 3, 2008
    Ying Kee McVicker, an individual, Matthew   Time: 9:30 am
16  Lee, an individual, and DOES 1          Dept: 302
    Through 51                   Judge: Hon. Patrick J. Mahoney
17         Defendants            Complaint filed:  March 9, 2007
                                  Trial Date: May 19, 2008
18  _____/

19         TO ALL PARTIES HEREIN AND TO THEIR ATTORNEY OF RECORD:

20         Please take notice that on January 3, 2008 or as soon thereafter as the matter may be

21  heard in department 302 of the above mentioned court, plaintiff MARK ANTOINE FOSTER

22  will move FOR LEAVE to file his amended complaint, as the proposed amendment would be to

23  add three additional causes of action to his complaint.

24         This motion for leave to amend is made and based upon this notice, the records,

25  **NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT, MEMO OF**    1
    **POINTS & AUTHORITIES**

1   pleadings and files herein, the memorandum of points and authorities, the Declaration of Mark

2   Antoine Foster, AND THE AMENDED COMPLAINT OR PROPOSED AMENDMENT

3   attached hereto as Exhibit "A", and upon such oral and documentary evidence as may be

4   presented at the hearing of this motion for leave to amend.

5   DATED: December 5, 2007            Mark Antoine Foster, In Pro Per

25   **NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT, MEMO OF POINTS & AUTHORITIES**

2

Mark Antoine Foster, In Pro Per
725 Ellis Street, Apt. 408
San Francisco, CA 94109
(415) 756-1611

ENCLOSED
FILED
Superior Court of California
County of San Francisco

DEC 07 2007

GORDON PARK-LI, Clerk
BY: _____ Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

CIVIL UNLIMITED JURISDICTION

No. **CGC07461178**

MARK ANTOINE FOSTER,

    Plaintiff,

    vs.

ARAMARK CORPORATION,
Ying Kee McVicker, an individual, Matthew
Lee, an individual, and DOES 1
Through 51
    Defendants

**MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF MOTION FOR LEAVE TO FILE
"AMENDED" COMPLAINT**

**Date: January 3, 2008**
**Time: 9:30 am**
**Dept: 302**
**Judge: Hon. Patrick J. Mahoney**

**Complaint filed: March 9, 2007**
**Trial Date: May 19, 2008**

Plaintiff MARK ANTOINE FOSTER RESPECTFULLY submits these points and

Authorities in support of his motion for leave to file an "Amended" complaint to add three

additional causes of action to his complaint, which include, 1) a violation of the American with

Disabilities Act, (ADA) 42 U.S.CA. 12101-12111, 2) a violation of the Unruh Civil Rights Act,

section 51(f) and 52, and 3) a violation of FEHA section 12940 (a) (m).

    1.  INTRODUCTON

1    Plaintiff timely files this motion for leave to file an amended complaint to claim disability

2   discrimination pursuant to 42 U.S.C.A., 12010-12111, that provides a four-year statute of

3   limitations for disability discrimination claims. Plaintiff alleges that the time of the

4   discriminatory act was determined on or around March 28, 2006, which was plaintiff's last day

5   working prior to taking his medical leave from the Carnelian Room.

6    Federal statute, providing four-year statute of limitations for all subsequently enacted statutes

7   lacking their own limitation period, did not apply to claims under previously enacted American

8   with Disability Act (ADA), even though ADA became effective after effective date of general

9   statute of limitations. Estrada v. Trager, E.D. 2003. 2002 WL 31053819, unreported.

10   "Hearing impaired students filed a class action against the University of California alleging

11   discrimination under section 504 and the ADA. The students alleged they had been denied full

12   and equal access to programs, services and activities of the defendants and/or deterred from

13   enrolling, claiming that defendants provided services and accommodations that were not accurate

14   and effective; failed to provide prompt accommodation and services; including delays of weeks

15   or months; failed to participate in a good faith, interactive process; failed to provide

16   accommodation and services for extra curricular activities which are provided to non-disabled

17   students; failed to install effective back-up plan to provide accommodation when captioners or

18   interpreters suddenly become available. Defendant moved to dismiss one student's claim as

19   untimely, claiming a one-year general personal injury statute of limitations applied. The court

20   held that a three-year statute of limitations applied to California disability discrimination statutes.

21   Although neither the ADA nor 504 contains its own statute of limitations, the state law most

22   analogous to the ADA is the Unruh Act, which makes any violation of the ADA also a violation

23   of the Unruh Act and under which the 9th Circuit indicated a three-year statute of limitations

24   would apply to any claims made thereunder. Kramer v. University of California, 81 F. Supp. 2d

25

1  972. (9th Cir. (N.D. Ca) 1999. Siddiqi v. Regents of U.C., 2000 U.S. DIST. LEXUS 19930.

2       Violation of American with Disabilities Act is a violation of California's Unruh Civil Rights

3  Act, and actual damages suffered are thus compensable. Americans with Disabilities Act of 1990

4  §2.101 42 U.S.C.A. 12101-12111, Wests Ana. Cal. Civ. Code §51, §52.

5       Defendants improperly terminated plaintiff's employment while he was on disability leave.

6  Defendants terminated plaintiff's employment prior to making a reasonable accommodation to

7  his disability.

8       Defendants failed to accommodate to plaintiff's disability by not offering plaintiff any

9  alternative measure that would have ameliorated to his disability; such as extending plaintiff's

10 medical leave would have demonstrated or evidenced a reasonable accommodation of plaintiff's

11 disability.

12      Defendants knew or should have known plaintiff was on disability or was still disabled when

13 they terminated his employment. Defendants were responsible in knowing whether plaintiff was

14 fit to return to work, whether he was no longer disabled, or still disabled, prior to terminating his

15 employment

16      Plaintiff was still disabled on or around June 15, 2006 when plaintiff was due to return to

17 work.

18      Plaintiff's disability claim began on or around April 4, 2006 and remained active until

19 January 31, 2007.

20   II. ARGUMENT

21   THE DISCRETION OF THE COURT TO ALLOW A PARTY TO AMEND ANY

22   PLEADING SHOULD BE LIBERALLY EXERCISED SO THAT CASES MAY BE

23   DETERMINED ON THEIR MERITS

24      **A.** Statutory Authority. The court, in its discretion, may allow an amendment to any

25

1    pleading in the name of justice and on such terms as may be proper. (Code Civ. Proc

2    §§ 473 (a), 576). A complaint is a pleading (Code Civ. Proc. § 422.10). Amendment

3    may be allowed by the court at any time before or after the commencement of trial

4    (Code Civ. Proc. § 576).

5    Plaintiff is allowed to amend his complaint in the name of justice, as this amendment

6    would be his first amended complaint, and as it is before the commencement of trial..

7    **B.** Liberal Allowance of Amendment. The power of the courts to allow amendment of

8    pleadings is to be liberally exercised so that cases may be decided on their merits.

9    (Desny v. Wilder (1956) 46 Cal. 2d 715, 751, 299 P. 2d 257, Klopstock v. Superior

10   Court (1941) 17 Cal. 2d. 13, 19-20, 22, 108 p.2d 906).

11   Plaintiff's complaint is allowed amendment because plaintiff's case requires decision on

12   its merits.

13   **C.** Denial of Leave to Amend Rarely Justified. A court will very rarely be justified in

14   refusing a party leave to amend so that he or she may properly present the case (

15   Guidery v. Green  (1892) 95 Cal. 630, 633, 30 P. 786; Redevelopment Agency v.

16   Harold  (1978) 86 Cal. App. 3d 1024, 1031, 150 Cal. Rptr. 621).

17   Plaintiff's complaint is allowed amendment in order for plaintiff's to be able to properly

18   present his case.

19   **D.** Timely Motion to Amend to Assert Meritorious Claim or Defense. It is an abuse of

20   the courts discretion to deny a timely motion to amend when the refusal deprives

21   a party of the right to assert a meritorious cause of action or defense, if granting

22   leave to amend will not prejudice the opposing party ( Redevelopment Agency v.

23   Herrold (1978) 86 Cal.App. 3d 1024, 1031, 150 Cal.Rptr. 621;Morgan v. Superior

24   Court (1959) 172 Cal. App. 2d 527, 530, 343 P. 2d 62).

25   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE FOR TO FILE
     "AMENDED" COMPLAINT                                                                    4

1    II.    CONCLUSION

2    For the foregoing reasons, Plaintiff respectfully requests that this court grant his motion for

3    leave to file his amended complaint.

4    Dated: December 5, 2007           *Mark A. Foster*
                                         Mark Antoine Foster, In Pro Per

EXHIBIT 22

1    **Mark Antoine Foster, In Pro Per**
     725 Ellis Street, Apt. 408
2    San Francisco, CA 94109
     (415) 756-1611
3

4

5

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SAN FRANCISCO

10                 CIVIL UNLIMITED JURISDICTION

11
                                    No.  **CGC07461178**
12   MARK ANTOINE FOSTER,
                                        **AMENDED COMPLAINT**
13          Plaintiff,                   **FOR CIVIL RIGHTS,**
                                    **EMPLOYMENT DISCRIMINATION,**
14          vs.                       **PURSUANT TO FEHA SECTION**
                                        **12940 (j), (k) (h) (i)**
15   ARAMARK CORPORATION,
     Ying Kee McVicker, an individual, Matthew
16   Lee, an individual, and DOES 1
     Through 104
17          Defendants

18

19                       INTRODUCTION

20          This case is brought against defendants pursuant to FEHA section 12940, for creating and

21   maintaining an abusive and discriminatory work environment, failing to properly investigate and

22   take prompt, remedial or appropriate action to stop "Quid Pro Quo" Harassment and workplace

23   discrimination, and for retaliating against plaintiff in response to his complaints about the

24   abusive work environment and threats to report the discriminatory acts of defendants to the

25                                              Exhibit "A"

AMENDED COMPLAINT FOR CIVIL RIGHTS - EMPLOYMENT DISCRIMINATION                    1

1  EEOC and DFEH.

2                                    **PARTIES**

3        1.      Plaintiff Mark Antoine Foster, was an employee of Aramark Sports and

4  Entertainment, a subsidiary of Aramark Corporation. He worked for the Carnelian Room located

5  at 555 California Street, San Francisco, California.

6        2.      Defendants does 1 through 51, inclusive, are sued under fictitious names. Their

7  true names and capacities are unknown to plaintiff. When their true names and capacities are

8  ascertained, plaintiff will amend this complaint by inserting their true names and capacities

9  herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named

10  defendants is responsible in some manner for the occurrences herein alleged, and such

11  defendants caused plaintiff damages as herein alleged.

12        3.      Plaintiff is informed and believes, and thereon alleges, that at all times herein

13  mentioned each and every defendant was the agent, servant, employee and/or representative of

14  each other defendant and was, in doing the things complained of herein, acting within the scope

15  of said agency, service, employment and or representation, and that each and every defendant

16  herein is jointly and severally responsible and liable to plaintiff for the damages hereinafter

17  alleged.

18                            **JURISDICTION AND VENUE**

19        4.      Jurisdiction is proper in this court as the acts complained of occurred in San

20  Francisco, California.

21        5.      The amount in controversy exceeds limited jurisdiction.

22        6.      Plaintiff initially filed with the Department of Fair Employment and Housing on

23  March 22, 2006. A right to sue letter against all defendants was issued on April 20, 2006.

24  Plaintiff timely files this complaint.

25

**AMENDED COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**                    2

7.    Plaintiff will amend this complaint to allege those causes of action once defendants respond to the claim.

### FIRST CAUSE OF ACTION
### HARASSMENT AND CONSTRUCTIVE DISCHARGE RESULTING FROM HARASSMENT
### CAL. GOV. CODE 12940 (j), (k) FEHA

8    Plaintiff realleges and incorporates herein by reference every allegation stated herein.

9.    Defendants Aramark and Defendant's supervisors(s) Ying Kee McVicker and Matthew Lee engaged in the following actions with the intent to discriminate and retaliate against plaintiff on the account of 1) his sexual relationship with defendant McVicker, and 2) plaintiff's complaints of "Quid Pro Quo" sexual harassment, workplace harassment, discrimination and retaliation to management, and 3) plaintiff's threats of reporting the harassment to the EEOC, and thereafter reporting the discrimination and retaliation to the EEOC and DFEH.

10.    Plaintiff and defendant McVicker were in a consensual, sexual relationship approximately nine (9) months prior to plaintiff beginning his employment at the Carnelian Room, and approximately four months after the date of plaintiff's hire. Plaintiff considered himself and defendant McVicker companions in a deep, loving relationship and had talked of living together, having children and eventually getting married

11.    Defendant McVicker began her employment at the Carnelian Room as the a.m. sous chef, approximately two months prior to plaintiff's hire date. Defendant McVicker asked and encouraged plaintiff to come and work for her at the Carnelian Room, and informed plaintiff that she would be his immediate supervisor, and that he and she would be working the same shift together. Defendant McVicker highly recommended plaintiff to the Executive Chef for the job as a.m. banquet cook, as he was hired upon her recommendation.

12.    On or around February 1 2006, defendant McVicker ended her relationship with

1 | plaintiff due to plaintiff' discovery of defendant McVicker's substance abuse problems.

2 | Defendant McVicker became very angry and hostile towards plaintiff when plaintiff discovered

3 | and approached her about her alcohol and cocaine addictions. Defendant McVicker became

4 | infuriated with plaintiff, when he offered defendant McVicker constructive criticism in regards

5 | to her substance abuse additions. Plaintiff then withdrew his attention and affection for

6 | Defendant McVicker. This also angered Defendant McVicker, and caused her to resent plaintiff.

7 | Thereafter, she did not desire plaintiff in the workplace any longer, and initiated discriminatory

8 | acts against plaintiff, in an attempt to cause plaintiff to quit. Defendant McVicker also became

9 | worried and insecure thinking that plaintiff would expose her substance abuse problems to

10 | management to ruin her reputation, and cause her to lose her job.

11 |      13.     Thereafter, between February 3, 2006 and March 28, 2006, plaintiff alleges that

12 | defendant McVicker then initiated a course of retaliation against plaintiff, with the intent to

13 | intimidate and coerce plaintiff from the workplace, and/or with the purpose to interfere with

14 | plaintiff's workflow, to the point where he could not perform his duties. Defendant McVicker

15 | wanted plaintiff to become frustrated enough to want to quit. Specifically, plaintiff alleges that

16 | defendant McVicker caused detrimental conditions to his employment, constituting 'Quid Pro

17 | Quo" harassment. Defendant McVicker: (1) completely stopped communicating with plaintiff

18 | regarding their shared work assignments and stopped providing "team work efforts" to complete

19 | the work assignments with plaintiff, and the other kitchen employees, as she normally would, as

20 | it was her responsibility to do so. Plaintiff was the a.m. head banquet cook, primarily

21 | responsible for all the banquet orders on his shift, and was dependant on defendant

22 | McVicker's support, instruction and combined unified effort to complete the work assignments.

23 | Defendant McVicker was the a.m. sous chef in charge of kitchen operations, and the supervision

24 | of the kitchen employees, and was plaintiff's immediate supervisor responsible for assuring

25 | plaintiff's work assignments were completed successfully. Defendant McVicker ceased in her

**AMENDED COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**     **4**

1  efforts to accomplish these goals, and so neglected her duties to do so, because of her anger,

2  resentment and hostility towards plaintiff, and 2) defendant McVicker attempted to sabotage

3  plaintiff's work in an attempt to discredit him among his peers and management. This happened

4  on several occasions when defendant McVicker deliberately concealed information from plaintiff

5  that was pertinent to plaintiff completing his work assignments. On two occasions, defendant

6  McVicker caused plaintiff to prepare food that was already prepared, by deliberately not telling

7  plaintiff the food was already prepared. Defendant McVicker knew plaintiff was preparing the

8  food that was already prepared. On the first occasion, defendant McVicker concealed from

9  plaintiff, that food he was preparing for a banquet order was already prepared, and in the

10  refrigerator. On the second occasion, defendant McVicker caused plaintiff to prepare the

11  employee meal that he normally prepares unnecessarily, concealing the fact she was preparing

12  the employee meal that day herself, doing this for the purpose of making plaintiff prepare

13  the employee meal unnecessarily, just to anger him and waste his production time, when

14  plaintiff could have been doing another project. Defendant McVicker knew plaintiff was

15  preparing the employee meal for that day and time, as it was his primary daily responsibility.

16  Defendant McVicker also attempted to sabotage plaintiff's work on several other occasions by,

17  (a) not ordering enough food inventory to complete plaintiff's food orders and by, (b) by taking

18  raw food materials from plaintiff's food inventory that was specifically ordered for plaintiff's

19  food orders , and deliberately concealing the fact took it from plaintiff, and/or not informing

20  plaintiff she took the raw food materials until it was too late, disrupting the timing and

21  efficiency of plaintiff's catering orders that day and (c) and on another occasion, she

22  intentionally did not insure that a food order that plaintiff prepared a day in advance for a client,

23  was not properly completed to the client's satisfaction before it was delivered to the client

24  Plaintiff alleges that all the above actions were done to discredit plaintiff, and make plaintiff's

25  working conditions intolerable and (3) defendant McVicker took a complete turn-around and

AMENDED COMPLAINT FOR CIVIL RIGHTS - EMPLOYMENT DISCRIMINATION                              5

1 stopped helping plaintiff in the method she normally would, specifically not helping plaintiff

2 dish-up catering food orders, and (4) defendant McVicker interrupted the workflow with some of

3 the other kitchen employees as well, because she involved them by asking them to verbally

4 communicate with plaintiff, because she chose not to not verbally speak to plaintiff directly

5 regarding work projects, using the employees, in the process, to express her disdain and anger

6 towards plaintiff, thus creating an abusive work environment with other kitchen employees, and

7 (5) defendant McVicker's deliberate and intentional infliction of emotional stress upon plaintiff

8 in the workplace, in that, her having the knowledge that plaintiff truly loved and cared for her,

9 and she knew, that at the particular time, he was very vulnerable and susceptible to emotional

10 pain. Defendant McVicker intentionally deceived plaintiff into believing she was having a close,

11 intimate relationship with her immediate supervisor Defendant Matthew Lee, two to three days

12 after a breakup of a thirteen month relationship with plaintiff Plaintiff alleges that defendant

13 McVicker did this to intentionally hurt plaintiff emotionally and make him jealous and feel

14 intimidated, all for the purpose and intent to help drive plaintiff away from the workplace, and/or

15 to make his working conditions intolerable, and (6) Defendant McVicker also purposely intended

16 to make plaintiff feel jealously and emotional pain by flirting heavily with some of the other

17 male kitchen employees, thus using the elements in the workplace in this manner to accomplish

18 her goals.

14      Plaintiff alleges that Defendant McVicker's actions were premeditated to inflict

20 extreme emotional stress on him, her objective was to get plaintiff to resign by all means

21 necessary, as she abused her position of authority to accomplish her goals.

22      15.      Plaintiff alleges that defendant McVicker "willfully" knew and deliberately

23 concealed from management, the fact she was in a sexual relationship with plaintiff, and

24 "willfully" knew bringing plaintiff in the work atmosphere in the method that she did, she

25

1   would be in a position to manipulate plaintiff at work, while maintaining a sexual relationship

2   with him, in and outside of the workplace.

3       16.    Plaintiff alleges that Defendant McVicker's actions were malicious and

4   oppressive, in that, her intent was to destroy plaintiff's sense of well being, both

5   emotionally and psychologically. Defendant McVicker's retaliatory actions against plaintiff

6   (after she terminated her relationship with plaintiff) constitute Quid Pro Quo sexual harassment,

7   because after plaintiff discovered her substance abuse problems, he withdrew her attentions and

8   affections from her, and afterwards she demonstrated that she did not want plaintiff around her

9   anymore. Thereafter, she initiated the above mentioned actions against plaintiff, which caused

10  detriment to his employment position, and was done with the purpose and intent to get rid of

11  him

12      17.    Plaintiff alleges that Defendant McVicker also deceived plaintiff into believing

13  she was having an intimate relationship with defendant Matthew Lee in an attempt to hurt

14  and intimidate him. Thereafter, plaintiff perceived her as having an intimate relationship with

15  Defendant Lee.

16      18.    Thereafter, plaintiff alleges that Defendant Lee showed signs of prejudice

17  towards him, specifically regarding an incident with plaintiff's work schedule. Defendants

18  Lee and McVicker were at the time responsible for preparing the employee work schedule. The

19  defendants made an error in plaintiff's work schedule during the week ending Tuesday,

20  February 21, 2006, scheduling plaintiff off on Saturday the 18th when he was needed to

21  work. Plaintiff's schedule was posted on that previous Tuesday, but was changed about three

22  days later without plaintiff knowing, as defendants did not inform plaintiff of the change.

23  Plaintiff alleges that the defendants expected plaintiff to work on the days he was initially

24  scheduled off, regardless of any plans plaintiff had made to do on his off days. Plaintiff

25  noticed the change in his schedule on that Thursday the 16th, and informed defendant

AMENDED COMPLAINT FOR CIVIL RIGHTS - EMPLOYMENT DISCRIMINATION                    7

1  McVicker that he was not going to be able to work the following Saturday, defendant

2  McVicker responded by saying nothing to plaintiff. The following day, Friday the 17th,

3  plaintiff also informed defendant Lee that he was not going to be able to work on Saturday

4  the eighth-teeth, because he already made plans on the off days he was initially given when

5  the schedule was first posted. At that point, there was a verbal exchange between plaintiff and

6  defendant Lee, which went as follows; Mark: "Matthew I can't work tomorrow", Matthew:

7  "What do you mean you can't work tomorrow?". Mark: "I can't work because I already made

8  plans, when the schedule was posted I was scheduled off Sat, Sun, Mon and Tues, I can't

9  change my plans", Matthew: "Well you must don't value your job then", Mark: "I was

10 scheduled off Matthew and I will not be here", Matthew: "I'll remember that!". Defendant Lee

11 was quiet for about thirty seconds, and then stated, "I'm going to write you up for refusing to

12 come to work tomorrow". Plaintiff responded by saying, "Go ahead, I'm not going to sign it.

13 Defendant Lee proceeded to write the warning notice and gave it to defendant McVicker to give

14 to plaintiff to sign it. The warning notice stated the following, "Mark is scheduled to work on

15 Saturday 2/18/06 and refuses. He says he has other plans." When plaintiff read this he knew it

16 was a blatant lie, because plaintiff was not initially scheduled to work Saturday the 18th. Plaintiff

17 alleges that defendants Lee and McVicker hoped plaintiff did not notice that he was off on

18 Saturday, and/or expected plaintiff to work regardless of his plans. Plaintiff alleges that

19 defendant Lee verbally threatened his job and created an intimidating and abusive work

20 atmosphere for plaintiff. Plaintiff became very uncomfortable and felt Defendant Lee was now

21 "out to get him", and would make things hard for him, and would eventually fire plaintiff, or

22 cause him to lose his job. Plaintiff also felt very uncomfortable because he perceived Defendant

23 Lee and McVicker in a sexual relationship, and because Defendant Lee , at the time, was the

24 acting Executive Chef because the kitchen had recently lost their Executive Chef David

25

AMENDED COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    8

1   Lawrence, who was asked to resign due to his abusive attitude and treatment of kitchen

2   employees.

3       19.    On or about March 28, 2006, plaintiff took a ten week psychological medical

4   leave from Aramark, due to the discrimination and retaliation causing plaintiff emotional stress,

5   and because plaintiff was subject to "quid pro quo" harassment and an abusive work

6   environment while working at the Carnelian Room. Defendant Aramark authorized the medical

7   leave, and plaintiff was certified by the Veteran's Administration Psychiatry Hospital for

8   Temporary State Disability Insurance payments.

9       20    Plaintiff was entitled to a twelve week leave without losing his job, and was

10  scheduled to return to work by June.15, 2006, but did not return because he was not mentally

11  and emotionally well enough to return to work, as it was necessary for plaintiff to remain in

12  therapy, and because plaintiff was afraid of further retaliation from Aramark's Management

13  staff, as well as being afraid of being fired for reporting the employer harassment to the DFEH,

14  and also because defendant McVicker and Lee were still employed there. Plaintiff's doctor

15  agreed with plaintiff's decision not to return to work for Aramark as it would have been

16  emotionally and mentally unhealthy for plaintiff if he had returned to work there.

17      21.    Plaintiff remained in therapy for approximately an additional seven months after

18  June 15, 2006, and for a total of ten months up until January 31 2007

19      22.    The actions alleged in paragraphs above caused plaintiff to be constructively

20  discharged from his employment, in that any reasonable person in plaintiff's position subject to

21  those actions would have resigned or quit his employment, as plaintiff was compelled to do.

    Defendants had actual knowledge of the intolerable conditions caused by the acts of harassment

22  alleged above, but failed to take any and/or all of the proper steps to end those conditions (for the

23  purpose of causing plaintiff's resignation). Furthermore, defendants knew or should have known

24  that plaintiff's resignation would result from its actions

25  AMENDED COMPLAINT FOR CIVIL RIGHTS - EMPLOYMENT DISCRIMINATION    9

SECOND CAUSE OF ACTION

RETALIATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND

HOUSING ACT, CAL. GOV. CODE 12940(h)

23.    Plaintiff realleges and incorporates herein by reference every allegation stated herein.

24.    Between February 17, 2006 and March 28, 2006, defendants Aramark took the following actions against plaintiff: 1) plaintiff requested a raise and promotion, and defendant Aramark denied plaintiff the raise and promotion. Plaintiff was entitled to the raise and promotion, because plaintiff had not received a raise nor promotion since he began his employment there, and deserved both, and 2) defendant Aramark retaliated against plaintiff by taking no remedial action to promptly stop the harassing and/or retaliatory behavior of defendants McVicker and Lee against plaintiff, and allowed it to fester and get worse, not protecting plaintiff from the further abuse of their supervisors. Plaintiff's mental and emotional state was damaged due the harassment and retaliation from all of the defendants.

25.    Defendants Aramark, McVicker and Lee's actions were caused by and were in retaliation for the protected activity of plaintiff set forth in paragraph 9 above. And in that defendants harassed and discriminated against plaintiff after plaintiff filed written and verbal complaints regarding defendants McVicker and Lee's harassing behavior to Aramark's Human Resources Department and Management Staff, and also after plaintiff threatened to report the harassment and discrimination to the EEOC and DFEH, if the matter was not resolved.

26.    Specifically, plaintiff first reported the harassing and retaliatory behavior of defendant McVicker and Lee to Human Resources and management on or around February 17, 2006, by both verbal communication via the employee hotline, and submitting written documents to management at the Carnelian Room. Defendants, and all of them, had reasonable time to stop the harassing and retaliatory behavior, but failed to take the immediate and appropriate action

AMENDED COMPLAINT FOR CIVIL RIGHTS -- EMPLOYMENT DISCRIMINATION                    10

to do so. Defendants had approximately six weeks after plaintiff reported the harassing behavior, and another two and a half months to remedy the situation while plaintiff was on medical leave. Plaintiff never got any indication that the situation would have been rectified if he was to return to work. Plaintiff alleges that he was actually terrified to return to work there, because of the abuse he was subject to, and his emotional and psychological state of mind.

27.    Furthermore, plaintiff explained to defendant Aramark that, 1) he was being harassed and retaliated against by defendant McVicker, that they were in a sexual relationship that ended, and that she was his immediate supervisor, working the same shift and hours as plaintiff, and 2) that defendant Lee was harassing plaintiff, and that he was also plaintiff's immediate supervisor, working a majority of the same shift with plaintiff.

28.    Defendants Aramark, McVicker and Lee knew or should have known, that by not removing one or all of the parties involved from the workplace, the workplace would continue to be hostile, and become even more hostile, and would eventually cause plaintiff to quit.

29.    Defendants Aramark, McVicker and Lee knew or should have known that by failing to resolve the disputes between plaintiff and defendants, and allowing them to continue to work together on the same shift during the same time periods, that they would continue to feud, and become more hostile with each other in the workplace, and would eventually cause plaintiff to quit.

30.    Defendants Aramark knew or should have known that after plaintiff made them aware of the sexual relationship he had with Defendant McVicker, and the fact that she was his immediate supervisor discriminating against him in the workplace; and by not, at least, correcting this fundamental problem, they were being negligent in their duties to stop the discriminatory behavior.

AMENDED COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    11

1    31.    Plaintiff alleges that after he filed the complaints of discrimination to
2    management and human resources and threatened to report the discrimination to DFEH and
3    EEOC, Defendant Aramark retaliated by not taking the immediate and appropriate action to
4    stop the discriminatory behavior of Defendants McVicker and Lee. Defendant Aramark became
5    prejudiced toward plaintiff and Defendants McVicker and Lee's hostility got worse, and the
6    discrimination never stopped.

7    32.    Plaintiff alleges that he also experienced retaliation and discrimination from
8    two other members of the management staff he worked with in the workplace, the Assistant
9    General Manager, but at the time, the acting General Manager, Phil Epps and Elizabeth
10   Morgan, the catering manager for the Wharton School of Business Account. Specifically, after
11   plaintiff reported the incidents to management and human resources and threatened to report,
12   and reported the harassment to EEOC and DFEH, Defendant Aramark's Phil Epps and
13   Elizabeth Morgan's attitude became unfavorable against plaintiff, being that Mr Epps and
14   Ms. Morgan turned a "blind eye" and/or seemed to deny or ignore the actions of
15   Defendant's McVicker and Defendant Lee, and showed them favoritism, and seemed to side
16   with them, and wanted to protect them, and not reprimand them for their actions (as they
17   demonstrated this to plaintiff in his presence). Defendant Aramark's Managers Epps and
18   Morgan made unfavorable remarks to plaintiff that showed signs of a retaliatory attitude towards
19   plaintiff, looking for areas to criticize plaintiff's work, when before they praised his work.

20   33    Defendants Aramark, McVicker and Lee knew or should have known that by
21   failing to take prompt remedial action to correct or stop their discriminatory behavior, that
22   plaintiff would eventually quit.

### THIRD CAUSE OF ACTION

#### FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT

California Government Code 12940(i)

1

2        34.    Plaintiff realleges and incorporates herein by reference every allegation stated

3    herein.

4        35.    Defendants failed to take all reasonable steps to prevent harassment and

5    discrimination from occurring. Defendant's failure to take such action violated the FEHA, Cal

6    Gov. Code 12940(k).

7        36.    The FEHA requires employers to take all reasonable steps to prevent workplace

8    harassment, including the institution by employer of policies, procedures and practices that

9    include prompt and effective remedial procedures, and appropriate training, monitoring and

10   disciplinary measures.

11       37.    Defendant's policies, procedures and practices were inadequate for prevention,

12   monitoring and remediation of workplace harassment. If such policies, procedures and practices

13   existed, employees, including supervisors, were insufficiently trained in or made aware of those

14   policies and procedures for the policies and procedures to prevent workplace harassment from

15   occurring.

16       38.    Once made aware of the hostile and abusive conduct toward plaintiff, defendants

17   failed to take measures to prevent additional harassment.

18       39.    The above-described conduct of defendants in violation of the FEHA, caused

19   plaintiff to suffer extreme emotional distress, physical suffering and economic loss. As a

20   foreseeable result of this conduct, plaintiff has suffered and will continue to suffer damages as

21   set forth above.

22       Wherefore, Plaintiff requests relief as set forth below

23               FORTH CAUSE OF ACTION

24           WORKPLACE HARASSMENT AND DISCRIMINATION

25                California Government Code 12940 et. Seq.

**AMENDED COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**          13

1

2    40.    Plaintiff realleges and incorporates each and every fact alleged herein.

3    41.    Plaintiff was subjected to continuous and/or severe hostile environment based on

4  his sexual relationship with defendant McVicker. He was subject to quid pro quo sex based

5  harassment and discrimination at his workplace which was perpetrated and tolerated by persons

6  in positions of power as set forth herein.

7    42.    Plaintiff complained to Human Resources and Management about the harassment

8  and discrimination to which he was subjected.

9    43.    The above described conduct of defendants in violation of the FEHA caused

10 plaintiff to suffer extreme emotional distress, insomnia, physical suffering and economic

11 damages. As a foreseeable result of this conduct, plaintiff has suffered and will continue to suffer

12 damages as set forth below

13    Wherefore, plaintiff seeks relief as set forth below.

FIFTH CAUSE OF ACTION

14

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

15    44.    Plaintiff realleges and incorporates each and every fact alleged herein

16    45.    On or about February 1, 2006 through March 28, 2006, Defendants McVicker,

17 Lee and Aramark harassed, discriminated, retaliated and constructively discharged plaintiff

18 because of his sexual relationship with Defendant McVicker and because plaintiff filed

19 complaints of the discrimination to Human Resources and DFEH, and peaceably exercised his

20 rights to a work in an environment free of discrimination

21    46    At all times plaintiff clearly rejected defendants' harassment, retaliation and

22 discrimination, making them aware, that the abuse will not be tolerated. Defendants ignored

23 plaintiff's objections. The actions of defendants were outrageous, intentional, and malicious, and

24 done with reckless disregard of the fact that they would certainly cause plaintiff to suffer severe

25

AMENDED COMPLAINT FOR CIVIL RIGHTS - EMPLOYMENT DISCRIMINATION          14

1    emotional and physical distress.

2        47.    As a proximate result of the acts of defendants, plaintiff suffered severe emotional

3    distress, in the form of fear, nervousness, anxiety, worry, insomnia and indignity. Defendants'

4    conduct created a work environment extremely detrimental to plaintiff's emotional and physical

5    health, and interfered with plaintiff's work performance.  After the above described actions,

6    plaintiff was not able to work for approximately ten months, had difficulty eating and sleeping.

7    Plaintiff had also required psychological counseling for approximately ten months as a result of

8    defendants' conduct.

9        48.    As a proximate result of defendants' conduct, plaintiff has suffered general

10   damages in an amount to be determined by proof at trial.

11       49. As a further direct and proximate result of defendants conduct, plaintiff was unable to

12   work for a period of ten months, and accordingly, lost wages in an amount to be determined by

13   proof at trial.

14       50    Defendants' conduct was done knowingly, willfully, and with malicious intent

15   and plaintiff are entitled to punitive damages in an amount to be determined by proof at trial.

16                         SIX CAUSE OF ACTION

     VIOLATION OF AMERICAN WITH DISABILITIES ACT (ADA), 42 U.S.C.A. 12100-

17                              12111

18                    FAILURE TO REASONABLY ACCOMODATE

         51.    Plaintiff realleges and incorporates each and every fact alleged herein.

19

         52.    Plaintiff is informed and believes and therefore alleges that the defendants subject

20

     to him to disability discrimination, violating the ADA. due to defendants failing to reasonably

21

     accommodate to his mental disability.

22

         53.    Defendants improperly terminated plaintiff's employment while he was on

23

     disability leave. Defendants terminated plaintiff's employment prior to making a reasonable

24

     accommodation to his disability

25

     AMENDED COMPLAINT FOR CIVIL RIGHTS - EMPLOYMENT DISCRIMINATION                    15

54.    Defendants failed to accommodate to plaintiff's disability by not offering plaintiff any alternative measure that would have ameliorated to his disability; such as extending plaintiff's medical leave would have demonstrated or evidenced a reasonable accommodation of plaintiff's disability.

55.    On or around March 28, 2006 plaintiff requested and took a medical leave from the Carnelian Room, due to work related stress allegedly caused by the defendants.

56.    Defendant Aramark Sports. LLC approved the request for leave of absence and agreed and approved plaintiff's state disability claim, which enabled him to receive state disability payments while on leave. Defendants requested that plaintiff sign an agreement that he would return to work on June 15, 2006 This agreement was pursuant to a Collective Bargaining Agreement between the union and Defendant Aramark Sports, LLC.

57.    On or around April 4, 2006, plaintiff was certified disabled and unfit to work due to work related stress.

58.    During the month of June 2006, plaintiff's disability payments stopped temporarily, due to plaintiff missing an appointment with his doctor, who thereafter went on vacation. Although plaintiff's state disability claim was still active, he needed recertification to continue receiving payments. Plaintiff was recertified on or around June 28, 2006, prior to his claim ending, and started receiving payments again in on or around July 14, 2006. Plaintiff also received back pay for his missed disability payments for the month of June 2006, which shows plaintiff's claim was still active and that plaintiff was still disabled during that period.

59.    On June 15, 2006 plaintiff was due back to work from his medical leave, but did not return due to still being disabled.

60.    On or about June 15, 2006. plaintiff received a phone call from Defendant Aramark Sports. LLC's Executive Sous Chef Tim Miller to inquire whether plaintiff was going to return to work. Plaintiff responded by informing Tim Miller that he would call him back to

AMENDED COMPLAINT FOR CIVIL RIGHTS - EMPLOYMENT DISCRIMINATION                16

1  inform him whether he was going to return to work. Approximately two weeks later, Plaintiff

2  contacted Aramark Sports, LLC's Human Resource Manager James Chan to officially resign.

3  James Chan informed plaintiff that they had already terminated his employment on June 15,

4  2006, because he failed to return to work on June 15, 2006.

5       61.     Defendants' actions dictate failing to reasonably accommodate to plaintiff's

6  disability. Plaintiff never received any communication from defendants that would have

7  specifically inquired as to whether he was still disabled or fit to return to work, before

8  terminating his employment. Defendants knew or should have known that plaintiff was still

9  disabled and failed to accommodate to his disability prior to terminating his employment.

10  Defendants failed to confirm that plaintiff was fit to return to work and or failed to confirm that

11  was still disabled.

12       62.     Defendants' 90-day requirement for plaintiff to return to work was pursuant to or

13  part of a collective bargaining agreement. Plaintiff's ADA claim can not be preempted by any

14  collective bargaining agreement.

15       63.     Defendants also failed to follow due process in terminating plaintiff's

16  employment due to not allowing plaintiff his right to grievance and arbitration procedures

17  required by the union.

18       64.     Plaintiff did not request his entitled full 90-day leave, instead plaintiff, in a good

19  faith effort wanted to attempt to return to work in approximately 75 days from March 29, 2006 to

20  June 15, 2006. Defendants on June 15, 2006, could have at least extended plaintiff's medical

21  leave until June 30, 2006, as this could have been considered a reasonable accommodation from

22  defendant Aramark Sports, LLC.

23       65.     Plaintiff believes and therefore alleges that the defendants were so eager to

24  terminate his employment, due to defendants' retaliation against plaintiff, that they disregarded

25  his disability and failed to reasonably accommodate him.

AMENDED COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION    **17**

66.    Defendants failed to fully engage in the interactive process with plaintiff, a disabled employee, to identify and implement an appropriate reasonable accommodation in good faith.

67.    Plaintiff is informed, believes and therefore alleges that the defendants claim that because plaintiff agreed to being terminated on June 15, 2006 or that by him not returning by June 15, 2006, it would be considered a voluntary quit and would be appropriate to terminate his employment pursuant to the 90-day (or in this case the 75-day) related CBA.

68.    It may appear that defendants had a right to terminate plaintiff's employment due to the CBA, although under the circumstances, defendants failed to adhere to state and federal laws regarding disability discrimination. Collective Bargaining Agreements does not preempt plaintiff's rights regarding federal and state discrimination laws. Therefore, the signed CBA is void in being a legitimate reason to terminate plaintiff's employment, absent a reasonable accommodation, due to the fact that plaintiff was still on disability leave when defendants terminated his employment, as defendants failed to determine if it was necessary to offer plaintiff a reasonable accommodation prior to terminating him, knowing plaintiff was still disabled.

69.    Subsequent to the of the original complaint filing, on or around July 24, 2007, defendants requested and coerced plaintiff to sign a document confirming he voluntarily resigned on June 15, 2006, prior to defendants paying a mutually agreed upon workers compensation settlement of 5,000 dollars

70.    Plaintiff is informed, believes and therefore alleges that the reason for defendants requesting plaintiff to sign the document was because in the event plaintiff discovered that he was not reasonably accommodated by the defendants, defendants would create the defense that plaintiff voluntarily quit, and they therefore had no reason to or was not obligated to

1 | accommodate to plaintiff's disability, and that the CBA agreement gave the defendants the right

2 | to terminate plaintiff's employment regardless of the fact that he was still disabled.

3 |     71.    The above described conduct of defendants in violation of the ADA caused

4 | plaintiff to suffer extreme emotional distress, insomnia, physical suffering and economic

5 | damages. As a foreseeable result of this conduct, plaintiff has suffered and will continue to suffer

6 | damages as set forth below.

7 |     Wherefore, plaintiff seeks relief as set forth below.

8 | SEVENTH CAUSE OF ACTION

9 | Interference with Exercise of Unruh Civil Rights
California Civil Codes 51, 52

10 |     72.    Plaintiff realleges and incorporates each and every fact alleged herein.

11 |     73.    Plaintiff is informed and believes and thereon alleges that he was discriminated

12 | against by Defendants on the basis of his disability, violating Civil Codes 51(f), 52(a).

13 |     74.    The Unruh Civil Rights Act provides that all persons within the jurisdiction of

14 | this state are free and equal, and no matter what their sex, race, color, religion, ancestry or

15 | national origin are entitled to the full and equal accommodations, advantages, facilities,

16 | privileges or services in all business establishments of every kind whatsoever.

17 |     75.    Defendants improperly terminated plaintiff's employment while he was on

18 | disability leave. Defendants terminated plaintiff's employment prior to making a reasonable

19 | accommodation to his disability.

20 |     76.    Defendants failed to reasonably accommodate to plaintiff's disability by not

21 | offering plaintiff any alternative measure that would have ameliorated to his disability; such as

22 | extending plaintiff's medical leave would have demonstrated or evidenced a reasonable

23 | accommodation of plaintiff's disability.

24 |     77.    On or around March 28, 2006 plaintiff requested and took a medical leave from

25 |

**AMENDED COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**    19

1  the Carnelian Room. due to work related stress allegedly caused by the defendants.

2      78.    Defendant Aramark Sports, LLC approved the request for leave of absence and
3  agreed and approved plaintiff's state disability claim which enabled him to receive state
4  disability payments while on leave. Defendants requested that plaintiff sign an agreement that he
5  would return to work on June 15, 2006. This agreement was pursuant to a Collective Bargaining
6  Agreement between the union and Defendant Aramark Sports, LLC.

7      79.    On or around April 4, 2006, plaintiff was certified disabled and unfit to work due
8  to work related stress.

9      80.    During the month of June 2006, plaintiff's disability payments stopped
10 temporarily due to plaintiff missing an appointment with his doctor who thereafter went on
11 vacation. Although plaintiff's state disability claim was still active, he needed recertification to
12 continue receiving payments. Plaintiff was recertified on or around June 28, 2006,prior to his
13 claim ending, and started receiving payments again in on or around July 14, 2006. Plaintiff also
14 received back pay for his missed disability payments for the month of June 2006, which shows
15 plaintiff's claim was still active and that plaintiff was still disabled during that period.

16     81.    On June 15, 2006, plaintiff was due back to work from his medical leave, but did
17 not return due to still being disabled.

18     82     On or about June 15, 2006, plaintiff received a phone call from Defendant
19 Aramark Sports, LLC's Executive Sous Chef Tim Miller to inquire whether plaintiff was going
20 to return to work. Plaintiff responded by informing Tim Miller that he would call him back to
21 inform him whether he was going to return to work. Approximately two weeks later, Plaintiff
22 contacted Aramark Sports, LLC's Human Resource Manager James Chan to officially resign.
23 James Chan informed plaintiff that they had already terminated his employment on June 15,
24 2006, because he failed to return to work on June 15, 2006.

25

1    83.    Defendants' actions dictate failing to reasonably accommodate to plaintiff's

2    disability. Plaintiff never received any communication from defendants that would have

3    specifically inquired as to whether he was still disabled or fit to return to work, before

4    terminating his employment. Defendants knew or should have known that plaintiff was still

5    disabled and failed to accommodate to his disability prior to terminating his employment.

6    Defendants failed to confirm that plaintiff was fit to return to work and or failed to confirm that

7    was still disabled.

8    .84.    Defendants' 90-day requirement for plaintiff to return to work was pursuant to or

9    part of a collective bargaining agreement. Plaintiff's disabilty claim should not be preempted by

10   any collective bargaining agreement.

11   85.    Defendants also failed to follow due process in terminating plaintiff's

12   employment due to not allowing plaintiff his right to grievance and arbitration procedures

13   required by the union.

14   86    Plaintiff did not request his entitled full 90-day leave, instead plaintiff, in a good

15   faith effort wanted to attempt to return to work in approximately 75 days from March 29, 2006 to

16   June 15, 2006. Defendants on June 15, 2006, could have at least extended plaintiff's medical

17   leave until June 30, 2006, as this could have been considered a reasonable accommodation from

18   defendant Aramark Sports, LLC.

19   87.    Plaintiff believes and therefore alleges that the defendants were so eager to

20   terminate his employment, due to defendants' retaliation against plaintiff, that they disregarded

21   his disability and failed to reasonably accommodate him.

22   88.    Plaintiff is informed, believes and therefore alleges that the defendants claim that

23   because plaintiff agreed to being terminated on June 15 2006 or that by him not returning by

24   June 15, 2006, it would be considered a voluntary quit and would be appropriate to terminate his

25   employment pursuant to the 90-day (or in this case the 75-day) related CBA.

AMENDED COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION    21

89.     It may appear that defendants had a right to terminate plaintiff's employment due to the CBA, although under the circumstances, defendants failed to adhere to state and federal laws regarding disability discrimination. Collective Bargaining Agreements does not preempt plaintiff's rights regarding federal and state discrimination laws. Therefore, the signed CBA is void in being a legitimate reason to terminate plaintiff's employment, absent a reasonable accommodation, due to the fact that plaintiff was still on disability leave when defendants terminated his employment, as defendants failed to determine if it was necessary to offer plaintiff a reasonable accommodation prior to terminating him, knowing plaintiff was still disabled.

90.     Subsequent to the of the original complaint filing, on or around July 2007, defendants requested and coerced plaintiff to sign a document confirming he voluntarily resigned on June 15, 2006, prior to defendants paying a mutually agreed upon workers compensation settlement of 5,000 dollars.

91      Plaintiff is informed, believes and therefore alleges that the reason for defendants requesting plaintiff to sign the document was because in the event plaintiff discovered that he was not reasonably accommodated by the defendants, defendants would create the defense that plaintiff voluntarily quit, and they therefore had no reason to or was not obligated to accommodate to plaintiff's disability, and that the CBA agreement gave the defendants the right to terminate plaintiff's employment regardless of the fact that he was still disabled.

92.     The above described conduct of defendants in violation of the Unruh Civil Rights Act caused plaintiff to suffer extreme emotional distress, insomnia, physical suffering and economic damages. As a foreseeable result of this conduct, plaintiff has suffered and will continue to suffer damages as set forth below.

Wherefore, plaintiff seeks relief as set forth below

EIGHTH CAUSE OF ACTION
FAILURE TO REASONABLY ACCOMODATE
California Government Code 12940 (a) (m)

AMENDED COMPLAINT FOR CIVIL RIGHTS - EMPLOYMENT DISCRIMINATION

22

93.. Plaintiff realleges and incorporates each and every fact alleged herein.

94. Plaintiff is informed and believes and thereon alleges that he was discriminated against by Defendants on the basis of his disability, violating FEHA section 12940 (a) (m).

95. Defendants improperly terminated plaintiff's employment while he was on disability leave. Defendants terminated plaintiff's employment prior to making a reasonable accommodation to his disability.

96. Defendants failed to accommodate to plaintiff's disability by not offering plaintiff any alternative measure that would have ameliorated to his disability; such as extending plaintiff's medical leave would have demonstrated or evidenced a reasonable accommodation of plaintiff's disability.

97. On or around March 28, 2006 plaintiff requested and took a medical leave from the Carnelian Room, due to work related stress allegedly caused by the defendants.

98. On or around April 4, 2006, plaintiff was certified disabled and unfit to work due to work related stress.

99. On June 15, 2006, plaintiff was due back to work from his medical leave, but did not return due to still being disabled

100. On or about June 15, 2006, plaintiff received a phone call from Defendant Aramark Sports, LLC's Executive Sous Chef Tim Miller to inquire whether plaintiff was going to return to work. Plaintiff responded by informing Tim Miller that he would call him back to inform him whether he was going to return to work. Approximately two weeks later, Plaintiff contacted Aramark Sports, LLC's Human Resource Manager James Chan to officially resign. James Chan informed plaintiff that they had already terminated his employment on June 15, 2006, because he failed to return to work on June 15, 2006.

101. Defendants' actions dictate failing to reasonably accommodate to plaintiff's disability. Plaintiff never received any communication from defendants that would have

**AMENDED COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**

23

1   specifically inquired as to whether he was still disabled or fit to return to work, before

2   terminating his employment. Defendants knew or should have known that plaintiff was still

3   disabled and failed to accommodate to his disability prior to terminating his employment.

4   Defendants failed to confirm that plaintiff was fit to return to work and or failed to confirm that

5   was still disabled.

6       102.    Defendants failed to engage in the interactive process with plaintiff, a disabled

7   employee, to identify and implement an appropriate reasonable accommodation in good faith.

8       103.    The above related actions of the defendants were done with malice, fraud or

9   oppression and in reckless disregard of the Plaintiff's rights. Specifically, (1) Defendants knew

10  that their actions and conduct were despicable and was intended to cause injury to Plaintiff.

11  Defendants were willful and conscious, knowing that Plaintiff had a right to a reasonable

12  accommodation but failed to do so, and therefore, plaintiff is entitled to punitive damages in an

13  amount to be determined by proof at trial

14      104.    The above described conduct of defendants in violation of the FEHA caused

15  plaintiff to suffer extreme emotional distress, insomnia, physical suffering and economic

16  damages. As a foreseeable result of this conduct, plaintiff has suffered and will continue to suffer

17  damages as set forth below.

18      Wherefore, plaintiff seeks relief as set forth below

19                          REQUEST FOR RELIEF

20  Plaintiff hereby requests the following relief:

21      1       Compensatory damages on all causes of action against defendants.

22      2.      For Punitive Damages

23      3.      Attorney's fees and costs pursuant to Government Code Section 12965 and other

        applicable statute.

24      4       Costs of suit

25

1    5.    Any other relief that this court deems proper.

2    Dated:  December 3, 2007          *Mark A. Foster*
                                       Mark Antoine Foster, In Pro Per

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AMENDED COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    25

**POS-030**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

MARK ANTOINE FOSTER
728 ELLIS STREET #408
SAN FRANCISCO, CALIFORNIA
94109

TELEPHONE NO.: 415-756-1611    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA
BRANCH NAME: Civic Center

PETITIONER/PLAINTIFF: MARK ANTOINE FOSTER

RESPONDENT/DEFENDANT: ARAMARK SPORTS, LLC

**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**

CASE NUMBER:
CGC07461173

### (Do not use this Proof of Service to show service of a Summons and Complaint.)

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is: 728 Ellis Street #408, San Francisco, CA

3. On (date): Dec 6, 07 I mailed from (city and state): San Francisco, CA
   the following documents (specify):
   1) Motion and notice of motion & Motion for leave to File Amended Complaint
   2) Memo of Pts & Authorities in support of Motion for leave to File amended Complaint
   3) Declaration of Mark Antoine Foster in support of Motion ... Complaint
   4) Amended Complaint

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and (check one):
   a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows: Eric McKley, Attorney at Law, McKenzie & ...
   a. Name of person served: Aramark Sports LLC c/o ... San Francisco CA 94105
   b. Address of person served:
      235 California St
      S.F., CA

   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 6, 2007

Thomas R McMullen
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)

(SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1, 2005]

**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(Proof of Service)**

Code of Civil Procedure, §§ 1013, 1013a
www.USCourtForms.com

American LegalNet, Inc.
www.USCourtForms.com

1  |  Mark Antoine Foster, In Pro Per
2  |  725 Ellis Street, Apt. 408
   |  San Francisco, CA 94109
3  |  (415) 756-1611

ENDORSED
FILED
Superior Court of California
County of San Francisco

DEC 07 2007

4

5

6

7

8                    **SUPERIOR COURT OF CALIFORNIA**

9              **IN AND FOR THE COUNTY OF SAN FRANCISCO**

10                    **CIVIL UNLIMITED JURISDICTION**

11

                                              No.  **CGC07461178**

12  | **MARK ANTOINE FOSTER,**

                                              **DECLARATION OF MARK**
13  |        **Plaintiff,**                   **ANTOINE FOSTER  IN SUPPORT OF**
                                              **MOTION TO AMEND COMPLAINT**
                                              **AND EXHIBIT "A" ATTACHED**
14  |        **vs.**                          **THERETO**

15  | **ARAMARK SPORTS and Entertainment**
     | **Ying Kee McVicker, an individual, Matthew**  **Date: January 3, 2008**
16  | **Lee, an individual, and DOES 1**      **Time: 9:30am**
     | **Through 51**                         **Dept: 302**
17  |        **Defendants**                   **Judge: Honorable Patrick J. Mahoney**

                                              **Complaint filed:  March 9, 2007**
18  | _____/       **Trial Date: None**

19

20             **I MARK ANTOINE FOSTER** declare that:

21        1.       I am the plaintiff in this action and have personal knowledge of each fact stated

22  | in the complaint filed against Aramark Sports, LLC ("Aramark") ( erroneously  sued as

23  | "Aramark Sports and Entertainment") Ying Kee McVicker and Matthew Lee ("Defendants") on

24  | March 9, 2007.

25

**DECLARATION OF MARK ANTOINE FOSTER IN SUPPORT OF MOTION TO AMEND COMPLAINT**                    1

1      2.     Attached hereto as Exhibit "A" is a copy of the proposed amended complaint.

2      2.     The declaration is made in support of plaintiff's motion for leave to file an

3  amended complaint in order to specifically add three additional causes of action to his complaint.

4      3.     The additional causes of action will include 1) a violation of the ADA, 42

5  U.S.C.A. 12101-12111, 2) a violation of the Unruh Civil Rights Act, a 3) a violation of FEHA

6  section 12940 (a) (m).

7      I am a party to this action, and I have read the foregoing in the complaint and know its

8  contents. The matters stated in the complaint are true based on my own knowledge, except as to

9  those matters stated on information and belief, and as to those matters I believe them to be true.

10      If called to upon to testify, I could and would competently testify to the foregoing.

11      I declare under penalty of perjury under the laws of the state of California that the

12  foregoing is true and correct.

13      Executed this day on 5 day of December, 2007, at San Francisco, California.

14

15  Dated: December 5, 2007             Mark Antoine Foster, In Pro Per

16

17

18

19

20

21

22

23

24

25

EXHIBIT 23

## I.    **INTRODUCTION**

Defendants ARAMARK Sports, LLC ("ARAMARK"), Ying Kee McVicker ("McVicker"), and Matthew Lee ("Lee") (collectively "Defendants") submit this mediation brief in connection with the mediation scheduled for January 11, 2008 through the Bar Association of San Francisco's Early Settlement Program. Although Defendants are submitting this brief to Plaintiff Mark Foster ("Foster" or "Plaintiff") in advance of the mediation date, this brief and the information contained herein (and the exhibits attached hereto) are subject to the "mediation privilege" set forth in Evidence Code Section 1119(b) and shall not be admissible in any civil or administrative action or subject to discovery or disclosure.

Defendants did not discriminate, harass or retaliate against Plaintiff Foster. Based upon the undisputed evidentiary record in this case, Plaintiff does not have a claim as a matter of law and Defendants are confident that the motion for summary judgment they intend to file within the next 2 weeks will be granted in full by the Court.

The facts in this case are fairly straightforward. Plaintiff had a romantic relationship with Defendant Ying Kee McVicker. McVicker broke up with Plaintiff in early February 2006. Plaintiff was devastated by the break up, so much so that he began seeking mental health treatment. Soon after the break-up, Plaintiff claimed that McVicker and her supervisor, Defendant Matthew Lee, harassed and retaliated against him.

ARAMARK began an investigation less than one week after Plaintiff first complained of alleged harassment by McVicker and Lee. The investigation revealed that Plaintiff was upset about the break-up of his romantic relationship with McVicker, but that there was no evidence to support Plaintiff's claims of harassment/retaliation. Soon after Plaintiff's last conversation with ARAMARK management regarding the issue, Plaintiff requested and was granted a leave of absence. ARAMARK contacted Plaintiff shortly before the expiration of his leave to inquire about his return to work. Plaintiff never responded to ARAMARK and thus effectively resigned in June 2006. In total, Plaintiff was employed by ARAMARK for approximately 9 months and, during that period, was actively working for only approximately 6 months.

Since his brief employment ended, Plaintiff has filled his time by filing a number of

ORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7649382.1                         1                    Case No. CGC-07-461178

DEFENDANTS' EARLY SETTLEMENT PROGRAM SETTLEMENT CONFERENCE STATEMENT

EXHIBIT 24



Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001
www.morganlewis.com

**Suzanne Boag**
Associate
415.442 1375
sboag@morganlewis.com

February 8, 2008

**VIA U.S. MAIL**

Mark Antoine Foster
200 Corpus Christi Road, #A
Alameda, California  94501

Re:    Mark Antoine Foster v. ARAMARK Sports, LLC, et al.

Dear Mr. Foster:

I am writing to address the recent discovery requests you have caused to be served on
Defendants in the above-referenced matter.  Beginning January 18, you have served the
following:

- Requests for Admission, Set Two

- Requests for Admission, Set Three

- Requests for Admission, Set Four

- Special Interrogatories, Set Two

- Special Interrogatories, Set Three

- Requests for Production of Documents, Set Three

- Requests for Production of Documents, Set Four

- Requests for Production of Documents, Set Five

- Requests for Production of Documents, Set Six

- Form Interrogatories – General, Set Two



Morgan Lewis
COUNSELORS AT LAW

Mark Antoine Foster
February 8, 2008
Page 2

- Form Interrogatories – Employment, Set Two

- Notice of Taking Written Deposition of James Chan

- Notice of Taking Written Deposition of Gretchen McCoy

As you are aware, this case was removed to the United States District Court, Northern District
of California, on January 31. Because the above-mentioned discovery requests were served in
state court pursuant to state court procedural rules, the requests now have no force or effect in
this federal case. Moreover, the federal rules do not allow the voluminous number of discovery
requests you have propounded. Consequently, Defendants do not intend to respond to any of
the above-referenced discovery requests.

Please feel free to contact me if you have any questions.

Sincerely,

Suzanne Boag

EXHIBIT 25

1   MARK ANTOINE FOSTER, IN PRO PER
    725 Ellis Street, Apt. 408
2   San Francisco, CA 94109
    Tel: 415.756.1611

3

4   MORGAN, LEWIS & BOCKIUS LLP
    ERIC MECKLEY, State Bar No. 168181
5   SUZANNE BOAG, State Bar No. 250441
    One Market Street, Spear Street Tower
6   San Francisco, CA 94105
    Tel: 415.442.1000
7   Fax: 415.442.1001

8   Attorneys for Defendants
    ARAMARK Sports, LLC, Ying Kee McVicker, and
9   Matthew Lee

10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                      COUNTY OF SAN FRANCISCO

13

14  MARK ANTOINE FOSTER,                  Case No. CGC-07-461178

15                 Plaintiff,             **STIPULATION AND [~~PROPOSED~~]
                                          ORDER FOR LEAVE TO FILE AMENDED**
16         vs.                            **COMPLAINT**

17  ARAMARK SPORTS AND
    ENTERTAINMENT, YING KEE              Action Filed:   March 9, 2007
18  MCVICKER, an individual, MATTHEW     Trial Date:     May 19, 2008
    LEE, an individual, and DOES 1 through
19  51,

20                 Defendants.

21

22         WHEREAS on March 9, 2007, Plaintiff filed this action in San Francisco County Superior

23  Court;

24         WHEREAS, Plaintiff desires to file the ~~attached~~ Amended Complaint which adds new

25  causes of action for alleged violation(s) of the Americans with Disabilities Acts (ADA), the

26  Unruh Civil Rights Act, and the California Fair Employment and Housing Act (FEHA);

27         WHEREAS, Defendants stipulate that Plaintiff be given leave to file the ~~attached~~

28  Amended Complaint;

ROAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF.7644867.1                          1                   Case No.: CGC-07-461178

STIPULATION AND [~~PROPOSED~~] ORDER FOR LEAVE TO FILE AMENDED COMPLAINT

ENDORSED
F I L E D
San Francisco County Superior Court

JAN 1 8 2008

GORDON PARK-LI, Clerk
BY: _____ GINA GONZALES _____
                        Deputy Clerk

1      THEREFORE, IT IS HEREBY STIPULATED, by and among Plaintiff and Defendants,

2   through their respective counsel, that Plaintiff may have leave to file his Amended Complaint, a

3   copy of which is attached hereto as Exhibit A.

4
    Dated: December /9, 2007                          MARK ANTOINE FOSTER
5

6
                                                     By  *Mark A. Foster*
7                                                       Mark Antoine Foster
                                                        In Pro Per
8

9   Dated: December 19, 2007                          MORGAN, LEWIS & BOCKIUS LLP

10

11                                                    By
12                                                      Suzanne Boag
                                                        Attorney for Defendants ARAMARK
13                                                      Sports, LLC, Ying Kee McVicker, and
                                                        Matthew Lee
14

15

16                                    **ORDER**

17      For the reasons set forth above, Plaintiff is hereby given leave to file the Amended

18   Complaint attached hereto as Exhibit A.

19

20      IT IS SO ORDERED.

21
    Date:     JAN 1 8 2008                            **PAUL H. ALVARADO**
22                                                   JUDGE OF THE SUPERIOR COURT
23                                                      PAUL H. ALVARADO

24

25

26

27

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
28

1-SF/7644867.1                          2                      Case No.: CGC-07-461178

STIPULATION AND [PROPOSED] ORDER FOR LEAVE TO FILE AMENDED COMPLAINT

EXHIBIT 26

1  MORGAN, LEWIS & BOCKIUS LLP
   ERIC MECKLEY, State Bar No. 168181
2  SUZANNE BOAG, State Bar No. 250441
   One Market, Spear Street Tower
3  San Francisco, CA  94105-1126
   Tel:  415.442.1000
4  Fax:  415.442.1001
5
   Attorneys for Defendants
6  ARAMARK SPORTS, LLC, (formerly known as
   "ARAMARK Sports & Entertainment Services,
7  Inc."), YING KEE MCVICKER, and MATTHEW
8  LEE

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JAN 2 3 2008

GORDON PARK-LI, Clerk
BY _____ WESLEY HAMILTON
          Deputy Clerk

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                      COUNTY OF SAN FRANCISCO

11                        UNLIMITED JURISDICTION

12

13  MARK ANTOINE FOSTER,                 Case No. CGC-07-461178

14              Plaintiff,               **NOTICE OF ENTRY OF ORDER FOR
                                         LEAVE TO FILE AMENDED
15        vs.                            COMPLAINT**

16  ARAMARK SPORTS &
17  ENTERTAINMENT, Ying Kee McVicker,    Complaint filed:   March 9, 2007
    an individual, Matthew Lee, an individual,   Trial Date:        May 19, 2008
18  and DOES 1 Through 51,

19              Defendant.

20

21        PLEASE TAKE NOTICE THAT the Stipulation and Order for Leave to File Amended

22  Complaint was entered on January 18, 2008, a copy of which is attached hereto as Exhibit 1.

23  Dated:  January 23, 2008                MORGAN, LEWIS & BOCKIUS LLP

24
                                           By _____
25                                            Eric Meckley
                                              Attorneys for Defendants
26                                            ARAMARK SPORTS, LLC, (formerly
                                              known as "ARAMARK Sports &
27                                            Entertainment Services, Inc."), YING KEE
                                              MCVICKER, and MATTHEW LEE
28

1-SF/7656245.1                          1                      Case No. CGC-07-461178

1    PROOF OF SERVICE

2    I am a resident of the State of California and over the age of eighteen years, and not a

3    party to the within action; my business address is One Market, Spear Street Tower, San

4    Francisco, California 94105-1126.

5    On January 23, 2008, I served the within document(s):

6

7    **NOTICE OF ENTRY OF ORDER FOR LEAVE TO FILE AMENDED COMPLAINT**

8    ☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set
         forth below on this date before 5:00 p.m.
9

10   ☒    by placing true and correct copies of the documents listed above in sealed
         envelopes with postage thereon fully prepaid, in the United States mail at San
         Francisco, California addressed as set forth below.
11

12   ☐    by placing the document(s) listed above in a sealed Federal Express envelope and
         affixing a pre-paid air bill, and causing the envelope to be delivered to a <u>Federal
         Express</u> agent for delivery.
13

14   ☐    by causing the document(s) listed above to be personally delivered to the person(s)
         at the address(es) set forth below.
15

16   ☐    by transmitting via electronic mail the document(s) listed above to each of the
         person(s) as set forth below.

17
            Mark Foster, *In Pro Per*
18          200 Corpus Christi Road, #A
            Alameda, CA 94501
19

20   I am readily familiar with the firm's practice of collection and processing correspondence

21   for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same

22   day with postage thereon fully prepaid in the ordinary course of business. I am aware that on

23   motion of the party served, service is presumed invalid if postal cancellation date or postage

24   meter date is more than one day after date of deposit for mailing in affidavit.

25   Executed on January 23, 2008, at San Francisco, California.

26   I declare under penalty of perjury, under the laws of the State of California, that the above

27   is true and correct.

28          Mary Gonzalez
            Mary Gonzalez

1-SF/7656245.1                            2                      Case No. C 04-00058