1  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   JULIA MOLANDER  Bar No. 83839
2  julia.molander@sdma.com
   DEAN J. MCELROY  Bar No. 213132
3  dean.mcelroy@sdma.com
   LISA G. ROWE  Bar No. 232601
4  lisa.rowe@sdma.com
   One Market Plaza
5  Steuart Tower, 8th Floor
   San Francisco, California 94105
6  Telephone: (415) 781-7900
   Facsimile: (415) 781-2635
7
   Attorneys for Defendant
8  SPECIALTY RISK SERVICES

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11  MARK ANTOINE FOSTER,              CASE NO. 3:08-cv-00733-MHP

12          Plaintiff,                **DECLARATION OF LISA G. ROWE IN
                                      SUPPORT OF SPECIALTY RISK**
13      v.                            **SERVICES' ADMINISTRATIVE MOTION
                                      TO RELATE CASES**
14  ARAMARK SPORTS &
    ENTERTAINMENT, INC., YING KEE     JUDGE:    HON. MARILYN HALL PATEL
15  MCVICKER, AND MATTHEW LEE,

16          Defendants.

17

18

19      I, Lisa G. Rowe, declare:

20      1. I am an attorney admitted to practice before this Court and before all the courts of the

21  State of California. I am a member of the law firm of Sedgwick, Detert, Moran & Arnold LLP,

22  attorneys of record for defendant Specialty Risk Services ("SRS"). I make this declaration in

23  support of SRS' Administrative Motion to Relate Cases under Local Rules of Court 3-12 and 7-

24  11. The matters stated herein are within my personal knowledge and, if called upon to do so, I

25  could and would testify thereto.

26      2. On January 31, 2008, defendant removed this action, *Foster v. Aramark Sports &

27  Entertainment, Inc., Ying Kee McVicker, an individual, Matthew Lee, an individual, and DOES 1

28  through 51*, Case No. 3:08-cv-00733-MHP ("*Foster I*"), to this Court and it was assigned to Hon.

1    Marilyn Hall Patel. A true and correct copy of the complaint in *Foster I* is attached hereto as
2    Exhibit A.

3        3. On March 7, 2008, an action titled *Foster v. Aramark Sports LLC, and Aramark*
4    *Corporation, and DOES 1 through 73*, Case No. 3:08-cv-01336-EMC ("*Foster II*"), was
5    removed to this Court and assigned to Hon. Phyllis J. Hamilton. A true and correct copy of the
6    complaint in *Foster II* is attached hereto as Exhibit B.

7        4. On March 7, 2008, an action titled *Foster v. Morgan Lewis & Bockius, LLP, and Eric*
8    *Meckley, as an Individual, and DOES 1 through 81*, Case No. 3:08-cv-01337-EDL ("*Foster III*"),
9    was removed to this Court and assigned to Magistrate Judge Elizabeth D. Laporte. A True and
10   correct copy of the complaint in *Foster III* is attached hereto at Exhibit C.

11       5. On March 12, 2008, defendant SRS removed an action titled *Foster v. Specialty Risk*
12   *Services and Gretchen Devine, as an Individual, and DOES 1 through 91*, Case No. 4:08-cv-
13   01421-SBA ("*Foster IV*"), to this Court and it was assigned to Hon. Saundra Brown Armstrong.
14   A true and correct copy of the complaint in *Foster IV* is attached hereto as Exhibit D.

15       6. According to the allegations of the complaints filed in *Foster I* and *Foster II*, plaintiff
16   was an employee of Aramark Sports and Entertainment, a subsidiary of Aramark Corporation,
17   and plaintiff worked for the Carnelian Room, located at 555 California Street, San Francisco,
18   California. (See Exhibit A, ¶1 and Exhibit B, ¶1.)

19       7. According to the allegations of the complaint filed in *Foster III*, plaintiff claims that
20   Aramark Sports and Entertainment, a subsidiary of Aramark corporation, is a client of Morgan
21   Lewis & Bockius. (See Exhibit C, ¶1.) Although Eric Meckley, an individual, is named in the
22   caption of the lawsuit, he is not specifically identified in the section entitled "Parties." (See *Id.*)

23       8. According to the allegations of the complaint filed in *Foster IV*, plaintiff claims that
24   Aramark Sports and Entertainment, a subsidiary of Aramark Corporation, is a client of SRS.
25   (See Exhibit A, ¶1.) Although Gretchen Devine is named in the caption of the lawsuit, she is not
26   specifically identified in the section entitled "Parties." (See *Id.*)

27       9. Each of the complaints filed in *Foster II, Foster III*, and *Foster IV* assert nine identical
28   causes of action, namely 1) Fraud and Intentional Deceit; 2) Intentional Misrepresentation of

1  Fact; 3) Negligent Misrepresentation; 4) Suppression of Fact; 5) Mail Fraud; 6) Conspiracy to

2  Mail Fraud; 7) Wire Fraud; 8) Intentional Inflection of Emotional Distress; and 9) Negligent

3  Infliction of Emotion Distress.  (See Ex. B, p. 1; Ex. C, p. 1; and Ex. D, p. 1.)

4        10.  The complaints filed in *Foster III* (against Morgan, Lewis & Bockius and Eric

5  Meckley) and *Foster IV* (against SRS and Gretchen Devine) also assert a cause of action for

6  Breach of Fiduciary Duty.

7        I declare under penalty of perjury under the laws of the United States that the foregoing is

8  true and correct, and that this declaration was executed at San Francisco, California, on March

9  19, 2008.

10

11                   Lisa G. Rowe

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A**

SUMMONS ISSUED
FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

2007 MAR -9 PM 3: 25

GORDON PARK - LI, CLERK

BY: Deborah Steppe
DEPUTY CLERK

1  Mark Antoine Foster, In Pro Per
   725 Ellis Street, Apt. 408
2  San Francisco, CA 94109
   (415) 756-1611
3

4  CASE MANAGEMENT CONFERENCE SET

5  AUG 1 0 2007 -9⁰⁰AM

6  DEPARTMENT 212

7

8  **SUPERIOR COURT OF CALIFORNIA**

9  **IN AND FOR THE COUNTY OF SAN FRANCISCO**

10  **CIVIL UNLIMITED JURISDICTION**

11  No.  CGC-07-461178

12  MARK ANTOINE FOSTER,                    **COMPLAINT FOR CIVIL RIGHTS**
                                            **EMPLOYMENT DISCRIMINATION,**
13         Plaintiff,                       **PURSUANT TO FEHA SECTION**
                                            **12940 (j), (k) (h) (i)**
14         vs.

15  ARAMARK CORPORATION,
    Ying Kee McVicker, an individual, Matthew
16  Lee, an individual, and DOES 1
    Through 51
17         Defendants

18  _____/

19                    INTRODUCTION

20         This case is brought against defendants pursuant to FEHA section 12940, for

21  creating and maintaining an abusive and discriminatory work environment, failing to

22  properly investigate and take prompt, remedial or appropriate action to stop "Quid Pro

23  Quo" Harassment and workplace discrimination, and for retaliating against plaintiff in

24  response to his complaints about the abusive work environment, and threats to report the

25

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                            1

1  discriminatory acts of defendants to the EEOC and DFEH.

2  <div align="center">**PARTIES**</div>

3      1.    Plaintiff Mark Antoine Foster, was an employee of Aramark Sports and

4  Entertainment, a subsidiary of Aramark Corporation. He worked for the Carnelian Room

5  located at 555 California Street, San Francisco, California.

6      2.    Defendants does 1 through 51, inclusive, are sued under fictitious names.

7  Their true names and capacities are unknown to plaintiff. When their true names and

8  capacities are ascertained, plaintiff will amend this complaint by inserting their true names

9  and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the

10  fictitiously named defendants is responsible in some manner for the occurrences herein

11  alleged, and such defendants caused plaintiff damages as herein alleged.

12      3.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

13  mentioned each and every defendant was the agent, servant, employee and/or

14  representative of each other defendant and was, in doing the things complained of herein,

15  acting within the scope of said agency, service, employment and or representation, and that

16  each and every defendant herein is jointly and severally responsible and liable to plaintiff

17  for the damages hereinafter alleged.

18  <div align="center">**JURISDICTION AND VENUE**</div>

19      4.    Jurisdiction is proper in this court as the acts complained of occurred in San

20  Francisco, California.

21      5.    The amount in controversy exceeds limited jurisdiction.

22      6.    Plaintiff initially filed with the Department of Fair Employment and Housing

23  on March 22, 2006. A right to sue letter against all defendants was issued on April 20, 2006.

24  Plaintiff timely files this complaint.

25

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION    2

7.    Plaintiff will amend this complaint to allege those causes of action once defendants respond to the claim.

### FIRST CAUSE OF ACTION
### HARASSMENT AND CONSTRUCTIVE DISCHARGE RESULTING FROM HARASSMENT
### CAL. GOV. CODE 12940 (j), (k) FEHA

8.    Plaintiff realleges and incorporates herein by reference every allegation stated herein.

9.    Defendants Aramark and Defendant's supervisors(s) Ying Kee McVicker and Matthew Lee engaged in the following actions with the intent to discriminate and retaliate against plaintiff on the account of 1) his sexual relationship with defendant McVicker, and 2) plaintiff's complaints of "Quid Pro Quo" sexual harassment, workplace harassment, discrimination and retaliation to management, and 3) plaintiff's threats of reporting the harassment to the EEOC, and thereafter reporting the discrimination and retaliation to the EEOC and DFEH.

10.    Plaintiff and defendant McVicker were in a consensual, sexual relationship approximately nine (9) months prior to plaintiff beginning his employment at the Carnelian Room, and approximately four months after the date of plaintiff's hire. Plaintiff considered himself and defendant McVicker companions in a deep, loving relationship and had talked of living together, having children and eventually getting married.

11.    Defendant McVicker began her employment at the Carnelian Room as the a.m. sous chef, approximately two months prior to plaintiffs hire date. Defendant McVicker asked and encouraged plaintiff to come and work for her at the Carnelian Room, and informed plaintiff that she would be his immediate supervisor, and that he and she would be working the same shift together. Defendant McVicker highly recommended plaintiff to the Executive Chef for the job as a.m. banquet cook, as he was hired upon her recommendation.

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                3

1       12.    On or around February 1, 2006, defendant McVicker ended her relationship

2  with plaintiff due to plaintiff' discovery of defendant McVicker's substance abuse

3  problems. Defendant McVicker became very angry and hostile towards plaintiff when

4  plaintiff discovered and approached her about her alcohol and cocaine addictions.

5  Defendant McVicker became infuriated with plaintiff, when he offered defendant

6  McVicker constructive criticism in regards to her substance abuse additions. Plaintiff then

7  withdrew his attention and affection for Defendant McVicker. This also angered Defendant

8  McVicker, and caused her to resent plaintiff. Thereafter, she did not desire plaintiff in the

9  workplace any longer, and initiated discriminatory acts against plaintiff, in an attempt to

10  cause plaintiff to quit. Defendant McVicker also became worried and insecure thinking

11  that plaintiff would expose her substance abuse problems to management to ruin her

12  reputation, and cause her to lose her job.

13       13.    Thereafter, between February 3, 2006 and March 28, 2006, plaintiff alleges

14  that defendant McVicker then initiated a course of retaliation against plaintiff, with the

15  intent to intimidate and coerce plaintiff from the workplace, and/or with the purpose to

16  interfere with plaintiff's workflow, to the point where he could not perform his duties.

17  Defendant McVicker wanted plaintiff to become frustrated enough to want to quit.

18  Specifically, plaintiff alleges that defendant McVicker caused detrimental conditions to his

19  employment, constituting 'Quid Pro Quo" harassment. Defendant McVicker: (1)

20  completely stopped communicating with plaintiff regarding their shared work assignments

21  and stopped providing "team work efforts" to complete the work assignments with

22  plaintiff, and the other kitchen employees, as she normally would, as it was her

23  responsibility to do so. Plaintiff was the a.m. head banquet cook, primarily responsible for

24  all the banquet orders on his shift, and was dependant on defendant McVicker's

25  support, instruction and combined unified effort to complete the work assignments.

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION         4

1    Defendant McVicker was the a.m. sous chef in charge of kitchen operations, and the

2    supervision of the kitchen employees, and was plaintiff's immediate supervisor responsible

3    for assuring plaintiff's work assignments were completed successfully. Defendant

4    McVicker ceased in her efforts to accomplish these goals, and so neglected her duties to do

5    so, because of her anger, resentment and hostility towards plaintiff, and 2) defendant

6    McVicker attempted to sabotage plaintiff's work in an attempt to discredit him among his

7    peers and management. This happened on several occasions when defendant McVicker

8    deliberately concealed information from plaintiff that was pertinent to plaintiff completing

9    his work assignments. On two occasions, defendant McVicker caused plaintiff to prepare

10   food that was already prepared, by deliberately not telling plaintiff the food was already

11   prepared.  Defendant McVicker knew plaintiff was preparing the food that was already

12   prepared. On the first occasion, defendant McVicker concealed from plaintiff, that food he

13   was preparing for a banquet order was already prepared, and in the refrigerator. On the

14   second occasion, defendant McVicker caused plaintiff to prepare the employee meal  that

15   he normally prepares unnecessarily, concealing the fact she was preparing the employee

16   meal that day herself, doing this for the purpose of making plaintiff prepare the

17   employee meal unnecessarily, just to anger him and waste his production time, when

18   plaintiff could have been doing another project. Defendant McVicker knew plaintiff was

19   preparing the employee meal for that day and time, as it was his primary daily

20   responsibility.  Defendant McVicker also attempted to sabotage plaintiff's work on several

21   other occasions by, (a) not ordering enough food inventory to complete plaintiff's food

22   orders and by, (b) by taking raw food materials from plaintiff's food inventory that was

23   specifically ordered for plaintiff's food orders , and deliberately concealing the fact she

24   took it from plaintiff, and/or not informing plaintiff she took the raw food materials until it

25   was too late, disrupting the  timing and efficiency of plaintiff's catering orders that day

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    5

1  and (c) and on another occasion, she intentionally did not insure that a food order that

2  plaintiff prepared a day in advance for a client, was not properly completed to the client's

3  satisfaction before it was delivered to the client.  Plaintiff alleges that all the above actions

4  were done to discredit plaintiff, and make plaintiff's working conditions intolerable, and

5  (3) defendant McVicker took a complete turn-around and stopped helping plaintiff in the

6  method she normally would, specifically not helping plaintiff dish-up catering food orders,

7  and (4) defendant McVicker interrupted the workflow with some of the other kitchen

8  employees as well, because she involved them by asking them to verbally communicate

9  with plaintiff, because she chose not to not verbally speak to plaintiff directly regarding

10  work projects, using the employees, in the process, to express her disdain and anger

11  towards plaintiff, thus creating an abusive work environment with other kitchen

12  employees, and (5) defendant McVicker's deliberate and intentional infliction of emotional

13  stress upon plaintiff in the workplace, in that, her having the knowledge that plaintiff truly

14  loved and cared for her, and she knew, that at the particular time, he was very

15  vulnerable and susceptible to emotional pain. Defendant McVicker intentionally deceived

16  plaintiff into believing she was having a close, intimate relationship with her immediate

17  supervisor Defendant Matthew Lee, two to three days after a breakup of a thirteen month

18  relationship with plaintiff. Plaintiff alleges that defendant McVicker did this to

19  intentionally hurt plaintiff emotionally and make him jealous and feel intimidated, all for

20  the purpose and intent to help drive plaintiff away from the workplace, and/or to make his

21  working conditions intolerable, and (6) Defendant McVicker also purposely intended to

22  make plaintiff feel jealously and emotional pain by flirting heavily with some of the other

23  male kitchen employees, thus using the elements in the workplace in this manner to

24  accomplish her goals.

25

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                6

14.   Plaintiff alleges that Defendant McVicker's actions were premeditated to inflict extreme emotional stress on him, her objective was to get plaintiff to resign by all means necessary, as she abused her position of authority to accomplish her goals.

15.   Plaintiff alleges that defendant McVicker "willfully" knew and deliberately concealed from management, the fact she was in a sexual relationship with plaintiff, and "willfully" knew bringing plaintiff in the work atmosphere in the method that she did, she would be in a position to manipulate plaintiff at work, while maintaining a sexual relationship with him, in and outside of the workplace.

16.   Plaintiff alleges that Defendant McVicker's actions were malicious and oppressive, in that, her intent was to destroy plaintiff's sense of well being, both emotionally and psychologically. Defendant McVicker's retaliatory actions against plaintiff (after she terminated her relationship with plaintiff) constitute Quid Pro Quo sexual harassment, because after plaintiff discovered her substance abuse problems, he withdrew her attentions and affections from her, and afterwards she demonstrated that she did not want plaintiff around her anymore. Thereafter, she initiated the above mentioned actions against plaintiff, which caused detriment to his employment position, and was done with the purpose and intent to get rid of him.

17.   Plaintiff alleges that Defendant McVicker also deceived plaintiff into believing she was having an intimate relationship with defendant Matthew Lee in an attempt to hurt and intimidate him. Thereafter, plaintiff perceived her as having an intimate relationship with Defendant Lee.

18.   Thereafter, plaintiff alleges that Defendant Lee showed signs of prejudice towards him, specifically regarding an incident with plaintiff's work schedule. Defendants Lee and McVicker were at the time responsible for preparing the employee work schedule. The defendants made an error in plaintiff's work schedule during the

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    7

1  week ending Tuesday, February 21, 2006, scheduling plaintiff off on Saturday the

2  18th, when he was needed to work. Plaintiff's schedule was posted on that previous

3  Tuesday, but was changed about three days later without plaintiff knowing, as

4  defendants did not inform plaintiff of the change. Plaintiff alleges that the defendants

5  expected plaintiff to work on the days he was initially scheduled off, regardless of any

6  plans plaintiff had made to do on his off days. Plaintiff noticed the change in his

7  schedule on that Thursday the 16th, and informed defendant McVicker that he was not

8  going to be able to work the following Saturday, defendant McVicker responded by

9  saying nothing to plaintiff. The following day, Friday the 17th, plaintiff also informed

10  defendant Lee that he was not going to be able to work on Saturday the eighth-teeth,

11  because he already made plans on the off days he was initially given when the schedule

12  was first posted. At that point, there was a verbal exchange between plaintiff and

13  defendant Lee, which went as follows; Mark: "Matthew I can't work tomorrow", Matthew:

14  "What do you mean you can't work tomorrow?", Mark: "I can't work because I already

15  made plans, when the schedule was posted I was scheduled off Sat, Sun, Mon and Tues, I

16  can't change my plans", Matthew: "Well you must don't value your job then", Mark: "I

17  was scheduled off Matthew and I will not be here", Matthew: "I'll remember that!".

18  Defendant Lee was quiet for about thirty seconds, and then stated, "I'm going to write you

19  up for refusing to come to work tomorrow". Plaintiff responded by saying, "Go ahead, I'm

20  not going to sign it. Defendant Lee proceeded to write the warning notice and gave it to

21  defendant McVicker to give to plaintiff to sign it. The warning notice stated the following,

22  "Mark is scheduled to work on Saturday 2/18/06 and refuses. He says he has other plans."

23  When plaintiff read this he knew it was a blatant lie, because plaintiff was not initially

24  scheduled to work Saturday the 18th. Plaintiff alleges that defendants Lee and McVicker

25  hoped plaintiff did not notice that he was off on Saturday, and/or expected plaintiff to

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    8

1    work regardless of his plans. Plaintiff alleges that defendant Lee verbally threatened his

2    job and created an intimidating and abusive work atmosphere for plaintiff. Plaintiff

3    became very uncomfortable and felt Defendant Lee was now "out to get him", and would

4    make things hard for him, and would eventually fire plaintiff, or cause him to lose his job.

5    Plaintiff also felt very uncomfortable because he perceived Defendant Lee and McVicker

6    in a sexual relationship, and because Defendant Lee , at the time, was the acting Executive

7    Chef because the kitchen had recently lost their Executive Chef David Lawrence, who was

8    asked to resign due to his abusive attitude and treatment of kitchen employees.

9        19.    On or about March 28, 2006, plaintiff took a ten week psychological medical

10    leave from Aramark, due to the discrimination and retaliation causing plaintiff emotional

11    stress, and because plaintiff was subject to "quid pro quo" harassment and an abusive

12    work environment while working at the Carnelian Room. Defendant Aramark authorized

13    the medical leave, and plaintiff was certified by the Veteran's Administration Psychiatry

14    Hospital for Temporary State Disability Insurance payments.

15        20.    Plaintiff was entitled to a twelve week leave without losing his job, and  was

16    scheduled to return to work by  June 15, 2006, but did not return because he was not

17    mentally and emotionally well enough  to return to work, as it was necessary for plaintiff

18    to remain in therapy, and because plaintiff was afraid of further retaliation from

19    Aramark's Management staff, as well as being afraid of being fired  for reporting the

20    employer harassment to the  DFEH, and  also because defendant McVicker and Lee were

21    still employed there. Plaintiff's doctor agreed with plaintiff's decision not to return to work

22    for Aramark, as it would have been emotionally and mentally unhealthy for plaintiff if he

23    had returned to work there.

24        21.    Plaintiff remained in therapy for approximately an additional seven months

25    after June 15, 2006, and for a total of ten months up until January 31, 2007.

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION

9

22.     The actions alleged in paragraphs above caused plaintiff to be constructively

discharged from his employment, in that any reasonable person in plaintiff's position

subject to those actions would have resigned or quit his employment, as plaintiff was

compelled to do. Defendants had actual knowledge of the intolerable conditions caused by

the acts of harassment alleged above, but failed to take any and/or all of the proper steps to

end those conditions (for the purpose of causing plaintiff's resignation). Furthermore,

defendants knew or should have known that plaintiff's resignation would result from its

actions.

## SECOND CAUSE OF ACTION

## RETALIATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND

## HOUSING ACT, CAL. GOV. CODE 12940(h)

23.     Plaintiff realleges and incorporates herein by reference every allegation

stated herein.

24.     Between February 17, 2006 and March 28, 2006, defendants Aramark took

the following actions against plaintiff: 1) plaintiff requested a raise and promotion, and

defendant Aramark denied plaintiff the raise and promotion. Plaintiff was entitled to the

raise and promotion, because plaintiff had not received a raise nor promotion since he

began his employment there, and deserved both, and 2) defendant Aramark retaliated

against plaintiff by taking no remedial action to promptly stop the harassing and/or

retaliatory behavior of defendants McVicker and Lee against plaintiff, and allowed it to

fester and get worse, not protecting plaintiff from the further abuse of their supervisors.

Plaintiff's mental and emotional state was damaged due the harassment and retaliation

from all of the defendants.

25.     Defendants Aramark, McVicker and Lee's actions were caused by and were

in retaliation for the protected activity of plaintiff set forth in paragraph 9 above.  And

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION

10

1  in that defendants harassed and discriminated against plaintiff after plaintiff filed written

2  and verbal complaints regarding defendants McVicker and Lee's harassing behavior to

3  Aramark's Human Resources Department and Management Staff, and also after plaintiff

4  threatened to report the harassment and discrimination to the EEOC and DFEH, if the

5  matter was not resolved.

6      26.    Specifically, plaintiff first reported the harassing and retaliatory behavior of

7  defendant McVicker and Lee to Human Resources and management on or around

8  February 17, 2006, by both verbal communication via the employee hotline, and submitting

9  written documents to management at the Carnelian Room. Defendants, and all of them,

10 had reasonable time to stop the harassing and retaliatory behavior, but failed to take the

11 immediate and appropriate action to do so. Defendants had approximately six weeks

12 after plaintiff reported the harassing behavior, and another two and a half months to

13 remedy the situation while plaintiff was on medical leave. Plaintiff never got any

14 indication that the situation would have been rectified if he was to return to work.

15 Plaintiff alleges that he was actually terrified to return to work there, because of the abuse

16 he was subject to, and his emotional and psychological state of mind.

17     27.    Furthermore, plaintiff explained to defendant Aramark that, 1) he was

18 being harassed and retaliated against by defendant McVicker, that they were in a sexual

19 relationship that ended, and that she was his immediate supervisor, working the same

20 shift and hours as plaintiff, and 2) that defendant Lee was harassing plaintiff, and that he

21 was also plaintiff's immediate supervisor, working a majority of the same shift with

22 plaintiff.

23     28.    Defendants Aramark, McVicker and Lee knew or should have known, that

24 by not removing one or all of the parties involved from the workplace, the workplace would

25

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    11

1   continue to be hostile, and become even more hostile, and would eventually cause plaintiff

2   to quit.

3        29.    Defendants Aramark, McVicker and Lee knew or should have known that

4   by failing to resolve the disputes between plaintiff and defendants, and allowing them to

5   continue to work together on the same shift during the same time periods, that they

6   would continue to feud, and become more hostile with each other in the workplace, and

7   would eventually cause plaintiff to quit.

8        30.    Defendants Aramark knew or should have known that after plaintiff

9   made them aware of the sexual relationship he had with Defendant McVicker, and the

10   fact that she was his immediate supervisor discriminating against him in the workplace;

11   and by not, at least, correcting this fundamental problem, they were being negligent in

12   their duties to stop the discriminatory behavior.

13        31.    Plaintiff alleges that after he filed the complaints of discrimination to

14   management and human resources and threatened to report the discrimination to DFEH

15   and EEOC, Defendant Aramark retaliated by not taking the immediate and appropriate

16   action to stop the discriminatory behavior of Defendants McVicker and Lee. Defendant

17   Aramark became prejudiced toward plaintiff and Defendants McVicker and Lee's hostility

18   got worse, and the discrimination never stopped.

19        32.    Plaintiff alleges that he also experienced retaliation and discrimination

20   from two other members of the management staff he worked with in the workplace, the

21   Assistant General Manager, but at the time, the acting General Manager, Phil Epps and

22   Elizabeth Morgan, the catering manager for the Wharton School of Business Account.

23   Specifically, after plaintiff reported the incidents to management and human resources

24   and threatened to report, and reported the harassment to EEOC and DFEH, Defendant

25   Aramark's Phil Epps and Elizabeth Morgan's attitude became unfavorable against

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION

12

1  plaintiff, being that Mr. Epps and Ms. Morgan turned a "blind eye" and/or seemed to

2  deny or ignore the actions of Defendant's McVicker and Defendant Lee, and showed

3  them favoritism, and seemed to side with them, and wanted to protect them, and not

4  reprimand them for their actions (as they demonstrated this to plaintiff in his presence).

5  Defendant Aramark's Managers Epps and Morgan made unfavorable remarks to plaintiff

6  that showed signs of a retaliatory attitude towards plaintiff, looking for areas to criticize

7  plaintiff's work, when before they praised his work.

8      33.    Defendants Aramark, McVicker and Lee knew or should have known that

9  by failing to take prompt remedial action to correct or stop their discriminatory behavior,

10  that plaintiff would eventually quit.

<div align="center">

**THIRD CAUSE OF ACTION**
**FAILURE TO PREVENT DISCRIMINATIION AND HARASSMENT**
**California Government Code 12940(i)(k)**

</div>

13     34.    Plaintiff realleges and incorporates herein by reference every allegation

14  stated herein.

15     35.    Defendants failed to take all reasonable steps to prevent harassment and

16  discrimination from occurring. Defendant's failure to take such action violated the FEHA,

17  Cal. Gov. Code 12940(k).

18     36.    The FEHA requires employers to take all reasonable steps to prevent

19  workplace harassment, including the institution by employer of policies, procedures and

20  practices that include prompt and effective remedial procedures, and appropriate

21  training, monitoring and disciplinary measures.

22     37.    Defendant's policies, procedures and practices were inadequate for

23  prevention, monitoring and remediation of workplace harassment. If such policies,

24  procedures and practices existed, employees, including supervisors, were insufficiently

25

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    13

1  trained in or made aware of those policies and procedures for the policies and procedures

2  to prevent workplace harassment from occurring.

3      38.    Once made aware of the hostile and abusive conduct toward plaintiff,

4  defendants failed to take measures to prevent additional harassment.

5      39.    The above-described conduct of defendants in violation of the FEHA, caused

6  plaintiff to suffer extreme emotional distress, physical suffering and economic loss. As a

7  foreseeable result of this conduct, plaintiff has suffered and will continue to suffer damages

8  as set forth above.

9      Wherefore, Plaintiff requests relief as set forth below.

10                    FORTH CAUSE OF ACTION
        WORKPLACE HARASSMENT AND DISCRIMINATION
11             California Government Code 12940 et. Seq.

12      40.    Plaintiff realleges and incorporates each and every fact alleged herein.

13      41.    Plaintiff was subjected to continuous and/or severe hostile environment

14  based on his sexual relationship with defendant McVicker. He was subject to quid pro quo

15  sex based harassment and discrimination at his workplace which was perpetrated and

16  tolerated by persons in positions of power as set forth herein.

17      42.    Plaintiff complained to Human Resources and Management about the

18  harassment and discrimination to which he was subjected.

19      43.    The above described conduct of defendants in violation of the FEHA caused

20  plaintiff to suffer extreme emotional distress, insomnia, physical suffering and economic

21  damages. As a foreseeable result of this conduct, plaintiff has suffered and will continue to

22  suffer damages as set forth below.

23      Wherefore, plaintiff seeks relief as set forth below.

24                    FIFTH CAUSE OF ACTION
25        INTENTIONAL INFLICTTION OF EMOTIONAL DISTRESS

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    14

44. Plaintiff realleges and incorporates each and every fact alleged herein.

45. On or about February 1, 2006 through March 28, 2006, Defendants McVicker, Lee and Aramark harassed, discriminated, retaliated and constructively discharged plaintiff because of his sexual relationship with Defendant McVicker and because plaintiff filed complaints of the discrimination to Human Resources and DFEH, and peaceably exercised his rights to a work in an environment free of discrimination.

46. At all times plaintiff clearly rejected defendants' harassment, retaliation and discrimination, making them aware, that the abuse will not be tolerated. Defendants ignored plaintiff's objections. The actions of defendants were outrageous, intentional, and malicious, and done with reckless disregard of the fact that they would certainly cause plaintiff to suffer severe emotional and physical distress.

47. As a proximate result of the acts of defendants, plaintiff suffered severe emotional distress, in the form of fear, nervousness, anxiety, worry, insomnia and indignity. Defendants' conduct created a work environment extremely detrimental to plaintiff's emotional and physical health, and interfered with plaintiff's work performance. After the above described actions, plaintiff was not able to work for approximately ten months, had difficulty eating and sleeping. Plaintiff had also required psychological counseling for approximately ten months as a result of defendants' conduct.

48. As a proximate result of defendants' conduct, plaintiff has suffered general damages in an amount to be determined by proof at trial.

49. As a further direct and proximate result of defendants conduct, plaintiff was unable to work for a period of ten months, and accordingly, lost wages in an amount to be determined by proof at trial.

50. Defendants' conduct was done knowingly, willfully, and with malicious

COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION                    15

1 │ intent, and plaintiff are entitled to punitive damages in an amount to be determined by

2 │ proof at trial.

3 │ <center>**REQUEST FOR RELIEF**</center>

4 │ Plaintiff hereby requests the following relief:

5 │ 1.    Compensatory damages on all causes of action against defendants.

6 │ 2.    Attorney's fees and costs pursuant to Government Code Section 12965 and

7 │    other applicable statute.

8 │ 3.    Costs of suit.

9 │ 4.    Any other relief that this court deems proper.

10 │

11 │ Dated: April 1, 2007                    Mark Antoine Foster, In

12 │ Pro Per

13 │

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

**COMPLAINT FOR CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**                    16

# Exhibit B

1  Mark Antoine Foster, In Pro Per
   200 Corpus Cristie Road #A
2  Alameda, CA 94502
   (415) 756-1611
3

4

5

6

7

8          SUPERIOR COURT OF CALIFORNIA

9       IN AND FOR THE COUNTY OF SAN FRANCISCO

10         CIVIL UNLIMITED JURISDICTION CGC-08-471936

**FILED**
San Francisco County Superior Court

FEB 0 7 2008

GORDON PARK-LI, Clerk
BY: _Deborah Steppe_
DEBORAH STEPPE, Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

JUL 1 1 2008 -9:00 AM

DEPARTMENT 212

SUMMONS ISSUED

11
12  MARK ANTOINE FOSTER,

13       Plaintiff,

14       vs.

15  ARAMARK SPORTS L.L.C, and ARAMARK
    CORPORATION, and DOES 1
16  Through 73
        Defendants
17

18  _____/

19

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS (related to Employment discrimination)**
1. Fraud and Intentional Deceit
2. Intentional Misrepresentation of Fact
3. Negligent Misrepresentation
4. Suppression of Fact
5. Mail Fraud (18 U.S.C Sec. §1341)
6. Conspiracy to Mail Fraud (18 U.S.C. Sec. §1345, §1349)
7. Wire Fraud (18 U.S.C. Sec. §1343)
8. Intentional Infliction of Emotional Distress
9. Negligent Infliction of Emotional Distress

INTRODUCTION

20
21    This case is brought against defendants pursuant to

California Codes of Civil Procedure §1709, §1710 and §1572 for

22  committing acts that constitute fraud and intentional deceit,

23  mail fraud and wire fraud and conspiracy to defraud. Defendant's

24  acts were related to plaintiff's previous employment with the

25
    COMPLAINT FOR DAMAGES, CIVIL RIGHTS                        1

1  defendants, as defendants committed these acts after plaintiff's
2  employment with the defendants ended.

3      Although the acts were committed after plaintiff's
4  employment ended, the acts were connected to claims plaintiff
5  alleged in a previous complaint plaintiff filed against
6  defendants in San Francisco Superior Court on March 9, 2007.
7  These acts show a continuing pattern of further deprivation of
8  plaintiff's civil rights by defendants.

9      The connected case number 07461178, which alleges acts that
10 were committed by defendants while plaintiff was employed with
11 the defendants has been presently removed to federal court by
12 defendants on or around January 31, 2008, which plaintiff
13 believes is an attempt to delay trial and prosecution of the
14 case in state court. Plaintiff will file a motion for remand in
15 federal court to have the case moved back to state court within
16 30 days of its removal.

17     Defendants stated to the court in their case management
18 conference statement that they would file a motion for summary
19 judgment or as an alternative a motion for summary adjudication
20 but instead, upon discovering that plaintiff has acquired enough
21 evidence to support his claims through his own discovery plan,
22 defendants removed the case to federal court in an attempt to
23 divert plaintiff and gather their thoughts as to how they want
24 and should settle the case.

25     Plaintiff will also file a second amended complaint adding

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                    2

1 claims alleging Wrongful Termination, additional retaliation
2 that resulted in Fraud and Intentional Deceit, Suppression of
3 Fact, and to change quid pro quo sexual harassment to hostile
4 work environment sexual harassment.

5    Plaintiff will also file a supplemental complaint alleging
6 continued retaliation after plaintiff filed his complaint on
7 March 9, 2007.

8                              PARTIES

9    1.   Plaintiff Mark Antoine Foster was an employee of
10 Aramark Sports and Entertainment, a subsidiary of Aramark
11 Corporation. He worked for the Carnelian Room located at 555
12 California Street, San Francisco, California.

13    2.   Defendants does 1 through 73, inclusive, are sued
14 under fictitious names.  Their true names and capacities are
15 unknown to plaintiff. When their true names and capacities are
16 ascertained, plaintiff will amend this complaint by inserting
17 their true names and capacities herein. Plaintiff is informed
18 and believes and thereon alleges that each of the fictitiously
19 named defendants is responsible in some manner for the
20 occurrences herein alleged, and such defendants caused plaintiff
21 damages as herein alleged.

22    3.   Plaintiff is informed and believes, and thereon
23 alleges, that at all times herein mentioned each and every
24 defendant was the agent, servant, employee and/or representative
25 of each other defendant and was, in doing the things complained

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              3

1  of herein, acting within the scope of said agency, service,

2  employment and or representation, and that each and every

3  defendant herein is jointly and severally responsible and liable

4  to plaintiff for the damages hereinafter alleged.

5                          JURISDICTION AND VENUE

6      4.      Jurisdiction is proper in this court as the acts

7              complained of occurred in San Francisco,

8              California.

9      5.      The amount in controversy exceeds limited

10             jurisdiction.

11     6.      Plaintiff    timely    files    this    complaint,    as    he

12             discovered    the    fraudulent    acts    of    the    defendants    in

13             December 2007.

14     7.      Plaintiff will amend this complaint to allege those

15             causes of action once defendants respond to the claim.

16                          **FIRST CAUSE OF ACTION**
                            **FRAUD AND INTENTIONAL DECEIT**
                            **(California Civil Codes §1709, §1710 and §1572)**

17                          **FIRST COUNT**
                            **INTENTIONAL MISREPRESENTATION OF FACT**

18     8.      Plaintiff realleges and incorporates herein by

19  reference every allegation stated herein.

20     9.      Plaintiff is informed, believes and therefore alleges

21  that defendants' acts constituted fraud and intentional deceit

22  due to the defendants attempting to cover-up a possible or

23  would-be disability discrimination claim from plaintiff, in the

24  event plaintiff discovered that the defendants discriminated

25
COMPLAINT FOR DAMAGES, CIVIL RIGHTS                                          4

1    against due to his disability.

2        10.    On or around March 28, 2006, plaintiff requested a

3    medical leave from the defendants due to work related stress

4    allegedly caused by two of the defendants' supervisor/managers.

5    On or around March 28, 2006, plaintiff signed an voluntary

6    resignation agreement stating he would return no later than June

7    15, 2006 and that if he did not return by June 15, 2006, his

8    absence would be considered a voluntary quit and he will be

9    terminated on that day.

10       11.    On or around June 15, 2006, plaintiff did not return

11   to work due to (1) still being disabled and (2) due to fear of

12   further retaliation from defendants, and (3) due to fear of

13   being terminated once he did return to work for the defendants.

14       12.    Plaintiff is informed, believes and therefore alleges

15   that he was forced to resign on June 15, 2006, pursuant to the

16   voluntary resignation agreement he signed on March 28, 2006,

17   absent defendants offering plaintiff a further reasonable

18   accommodation to his disability before allowing him to "

19   voluntarily quit", as voluntary quit in this case is voluntary

20   termination which results in its simple form – termination of

21   employment.

22       13.    On or around March 9, 2007, plaintiff filed a

23   complaint against defendants Aramark Sports,LLC, and Ying Kee

24   McVicker and Mathew Lee as individuals, alleging Retaliation,

25
     COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              5

1  Harassment, Constructive Discharge, Failure to Prevent

2  Harassment, and Intentional Infliction of Emotional Distress.

3  Plaintiff did not in this complaint allege Disability

4  Discrimination due to not knowing he was or had been subject to

5  disability Discrimination at that point in time. Plaintiff

6  discovered in December 2007 that he had been subject to

7  disability discrimination on June 15, 2006.

8      14.     Plaintiff alleges that sometime in Feb.2007, he

9  requested his employee records from Defendants, specifically

10  Defendants' HR Manager, James Chan. Mr. Chan released plaintiff's

11  employee records which contained a copy of the voluntary

12  resignation agreement dated March 28, 2006 that plaintiff signed

13  agreeing to return on June 15 2006. On the Face of the Voluntary

14  Resignation Agreement was a notation made by James Chan stating

15  that he communicated with the Executive Chef regarding plaintiff

16  not returning to work on June 15, 2006. Plaintiff alleges that

17  this is evidence that he was terminated pursuant to the

18  voluntary resignation agreement, in addition to the fact that

19  the mere existence of the voluntary resignation agreement shows

20  plaintiff was more than likely terminated pursuant to it.

21      15.     On or around August 28, 2007, plaintiff served

22  defendants a request for documents demanding all documents

23  relevant to his termination, instead of defendants producing the

24  same documents he received from James Chan before he filed his

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                                6

1   lawsuit defendants presented another version of the voluntary

2   resignation without the notation of James Chan on the face of

3   the agreement. This shows defendants withheld evidence.

4   16.    On or around December 20, 2007, plaintiff realized

5   through research that he had been subject to Disability

6   Discrimination and in December 2007, filed a motion to amend his

7   complaint to add Disability Discrimination under the ADA, UNRUH

8   and FEHA. Defendants stipulated with plaintiff to allow the

9   amendment.

10   17.    On or Around Jan 15, 2008, Plaintiff discovered

11   through his Discovery served on defendants that he was defrauded

12   by defendants, as defendants attempted to cover up the fact that

13   they had discriminated against plaintiff due to his mental

14   disability.

15   18.    On or around May 2, 2007, defendants, through their

16   Worker's compensation Attorneys Gray and Prouty, requested that

17   plaintiff agree and sign a document stating that he voluntarily

18   resigned on May 1, 2007. The purpose for defendants' request was

19   to allow the proposed agreement to void out the agreement signed

20   on March 28, 2006, as this agreement is the initial and actual

21   reason why plaintiff was terminated: which was when Plaintiff

22   was forced to resign due to his disability violating ADA, the

23   Unruh and FEHA.

24   19.    Defendants through their council submitted the

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

7

1   agreement to plaintiff for his signature. Plaintiff then refused
2   to agree that he resigned on May 1, 2007, knowing that he
3   resigned on June 15, 2006, pursuant to the agreement signed on
4   March 28, 2006.

5      20.    Defendants insisted that plaintiff signed the
6   agreement prior to releasing his already agreed upon Worker's
7   Compensation settlement of $5,500. Plaintiff altered the date
8   and signed the agreement as voluntarily resigning on June 15,
9   2006, not May 1, 2007 as Defendants requested he do. Although
10  plaintiff did not sign the agreement as voluntarily resigning on
11  May 1, 2007, he did sign agreeing that he *voluntarily resigned*
12  on June 15, 2006. Even though Defendants were not successful in
13  getting plaintiff to agree that he resigned on May 1, 2007, they
14  planned to use the agreement anyway to void out the original
15  agreement signed on March 28, 2006. Defendant planned to use the
16  new agreement to say that plaintiff resigned on June 15, 2006 to
17  give the impression that he voluntarily resigned on his own on
18  June 15, 2006 and not pursuant to the agreement he signed on
19  March 28, 2006, to shield themselves from disability
20  discrimination. Although the mere existence of any voluntary
21  agreement plaintiff signed in May 2007, or anytime therafter is
22  a fraud.

23     21.    Plaintiff is informed believes and therefore alleges
24  that the defendants made a false representation offering the

25
COMPLAINT FOR DAMAGES, CIVIL RIGHTS                                    8

1 voluntary resignation agreement. The true facts being;

2 Defendants forced plaintiff to resign pursuant to the voluntary

3 resignation agreement he signed on March 28, 2006,and defendants

4 were attempting to suppress this material fact, requesting that

5 he sign the agreement presented on May 2, 2007. This act was

6 FRAUD in its purest Form. Defendants used their Worker's

7 Compensation Attorney, Gray and Prouty, and held back the agreed

8 upon settlement to coerce plaintiff to sign the agreement, to

9 help plaintiff defraud his own self. Plaintiff signed the

10 agreement and returned it, as this proves that the FRAUD reached

11 its full Fruition or Justifiable reliance, damaging plaintiff

12 even further.

13    22.    Plaintiff alleges that it was a misrepresentation of

14 Material Fact by Defendants to request plaintiff to agree and

15 sign an agreement stating that his voluntary resignation was on

16 a date after he had already voluntarily resigned in an attempt

17 to cover up a possible disability discrimination claim against

18 them.

19    23.    Defendants attempt to use the document to void out his

20 original resignation agreement signed on March 28, 2006 was

21 despicable conduct done with malice. Defendants attempted to

22 defraud Plaintiff of his rightful claim of disability

23 discrimination and the tangible and intangible benefits

24 representing monetary and other damages that could be awarded

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              9

1   due to the disability claim. This act is clearly a intentional

2   misrepresentation of Material Fact.

3       24.    When the Defendants made the representations, they

4   knew them to be false or were based on false pretenses or

5   misrepresentations, as the defendants made these representations

6   with the intention to deceive and defraud plaintiff and to

7   induce plaintiff to act in reliance on these representations in

8   the manner alleged, or with the expectation that plaintiff would

9   so act. Defendants expected plaintiff to sign the agreement so

10  he could receive his WC Settlement of $5,500 and coerced him to

11  sign the agreement before agreeing to release payment of the

12  $5,500 to him.

13      25.    Plaintiff at the time these representations were made

14  by Defendants, believed that that the Defendants representations

15  were true. Due to believing, plaintiff thought it was acceptable

16  or alright to sign the document, and that it was not depriving

17  him of any further rights and that there was a legal forthright

18  reason for defendants requesting him to sign the voluntary

19  agreement. Defendants used their council to help trick plaintiff

20  by presenting the document as if it was legal, when actually it

21  was not, as this shows that plaintiff's reliance on defendant

22  representation was justified.

23      26.    Plaintiff alleges that he has satisfied all the

24  elements for intention misrepresentations, which includes: (1)

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

10

1   misrepresentations (2) Material Fact (3) Knowledge of Falsity

2   (4) Intent to induce reliance (5) Justifiable reliance and (6)

3   Causation and Damages

4   27.    Defendants attempt to defraud Plaintiff violated

5   California Civil Codes §1709, §1710, and §1572

6   28.    As a proximate result of the fraudulent conduct or the

7   defendants as herein alleged, plaintiff was subjected to Fraud

8   and Intentional Deceit that subject or caused him emotional

9   distress and mental anguish.

10   29.    The aforementioned conduct of defendants was an

11   intentional misrepresentation, deceit, or concealment of a

12   material fact known to the defendants with the intention on the

13   part of the defendants of to deprive the plaintiff of property

14   or legal rights, causing injury, and was despicable conduct that

15   subjected plaintiff to a cruel unjust hardship in conscious

16   disregard of the plaintiff's rights, so as to justify an award

17   of exemplary and punitive damages.

18                            SECOND COUNT

19                       Negligent Misrepresentation

20   30.    When the defendants made the representation they had

21   no reasonable grounds for believing them to be true. Defendants

22   knew that (1) it was not necessary for Plaintiff to sign the

23   Agreement at all (2) it was not necessary for plaintiff to sign

24   the agreement as a condition to him receiving or defendants

25

1  releasing plaintiff already agreed upon worker's compensation
2  settlement of $5,500.

3      31.  Plaintiff alleges that the defendants made the
4  representation with intent to induce plaintiff to rely upon it.

5      32.  Plaintiff alleges that he was unaware of the falsity
6  of the representation; in that he did not know that the purpose
7  or the agreement was to shield the defendants from a possible
8  discrimination disability claim from plaintiff, depriving
9  plaintiff of any possible monetary damages from the claim.

10      33.  Plaintiff alleges that he acted in reliance upon the
11 truth of the representation; as in him thinking it was necessary
12 to sign the agreement, as he believed it to be safe or true
13 because it was presented to him by Defendants worker's
14 compensation attorney.  Plaintiff believed it to be true
15 because he knew Defendants WC Attorney knew exactly when he
16 actually resigned or knew Plaintiff resigned on June 15, 2006
17 pursuant to the March 28, 2006 agreement.

18      34.  Defendants initiating these actions in an attempt to
19 DEFRAUD plaintiff of his claim of disability discrimination and
20 any possible monetary damages that would be awarded in lieu of
21 the disability discrimination claim, violated California Codes
22 $1572, $1709 and $1710, Therefore Plaintiff is entitled to
23 Statutory Damages, Costs and awards of Attorney Fees.

24                        THIRD COUNT

25
   COMPLAINT FOR DAMAGES, CIVIL RIGHTS                    12

1                             Suppression of Fact

2      35.  Defendants suppressed the fact that if was not

3 necessary for Plaintiff to agree and sign the voluntary

4 resignation agreement to receive his worker's compensation

5 settlement of $5,500.

6      36.  In addition on or around July 2,2007, defendants

7 worker's compensation Attorney Dana Mitchell filed an opposition

8 to plaintiff's Readiness to Proceed. In the opposition,

9 Defendants state or implied that the reason plaintiff's

10 settlement of $5,500 had not been paid was due to plaintiff

11 filing an EEOC Claim subsequent to agreeing to the settlement of

12 $5,500 with defendants. Plaintiff believes that defendants lied

13 to the Worker's Compensation Appeals Board to create a "Smoke

14 screen" or cover up as to the actual reason plaintiff's

15 settlement was held up, which was defendants wanting to force

16 plaintiff to sign the agreement to shield them from the

17 disability discrimination claim. Defendants concealed from the

18 Worker's Compensation Appeals Board that there was no EEOC Claim

19 filed by plaintiff subsequent to the agreement of the worker's

20 compensation Settlement.

21      37.  The defendants made the failure to disclose and

22 suppressed and/or concealed the information mentioned herein

23 alleged, with the intent to induce the plaintiff to act in the

24 manner herein alleged in reliance thereupon, with the intent to

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                  13

1  cause plaintiff to sign the agreement.

2      38.    As a proximate result of the fraudulent conduct or the

3  defendants as herein alleged, plaintiff was subjected to Fraud

4  and Intentional Deceit that subject or caused him emotional

5  distress and mental anguish.

6      39.    The aforementioned conduct of defendants was an

7  intentional misrepresentation, deceit, or concealment of a

8  material fact known to the defendants with the intention on the

9  part of the defendants of to deprive the plaintiff of property

10 or legal rights, causing injury, and was despicable conduct that

11 subjected plaintiff to a cruel unjust hardship in conscious

12 disregard of the plaintiff's rights, so as to justify an award

13 of exemplary and punitive damages.

14     40.    Defendants' attempt to defraud plaintiff violated

15 section §1572 of the California Civil Code. Plaintiff is

16 therefore entitled to Statutory Damages, Costs and award of

17 Attorney fees.

18   Wherefore Plaintiff prays for judgment against Defendants as

19 more fully set forth below.

20                    SECOND CAUSE OF ACTION

21               Mail Fraud (18 U.S.C. Section §1341)

22     41.  Plaintiff realleges and incorporates therein by

23 reference every allegation stated herein.

24     42.  On or around May 2, 2007 Defendants mailed to

25
COMPLAINT FOR DAMAGES, CIVIL RIGHTS                        14

1  Plaintiff by way of his Worker's Compensation Attorney Mary Lou

2  Williams, the voluntary agreement, which was the execution of a

3  scheme to defraud plaintiff.

4      43.   Title 18 – Crimes and Criminal Procedures, Part 1 –

5  Crimes Chapter 63 section 1341 Frauds and Swindles States:

6  Whoever, having devised or intending to devise any scheme or

7  artifice to defraud, or for obtaining money or property by means

8  of false or fraudulent pretenses, representations, or promises,

9  or to sell, dispose of, loan, exchange, alter, give away,

10  distribute, supply, or furnish or procure for unlawful use any

11  counterfeit or spurious coin, obligation, security, or other

12  article, or other article, or anything represented to be or

13  intimated or held out to be such counterfeit or spurious

14  article, for the purpose of executing such scheme or artifice or

15  attempting so to do, places in any post office or authorized

16  depository for mail matter, any matter or thing whatever to sent

17  or delivered by the Postal Service, or Deposits or causes to be

18  deposited any matter or thing whatever to sent or delivered by

19  any private or commercial interstate carrier, or takes or

20  receives therefrom, any such matter or thing, or knowingly

21  causes to be delivered by mail or such carrier according to the

22  direction thereon, or at the place at which it is directed to be

23  delivered by the person to whom it is addressed, any such matter

24  or thing shall be fined under this title or shall be fined under

25

1  this title or imprisoned not more than 20 years, or both.

2      44.  Upon Defendants placing the Voluntary Resignation

3  Agreement in the Post Office for Mail matter to be sent by the

4  Postal Service, the Defendants committed Mail Fraud.

5                    FIRST COUNT OF MAIL FRAUD

6      45.  On or around May 2,2007 upon Defendants mailing the

7  Voluntary Resignation Agreement to Mary Lou Williams at 4104 24th

8  Street, San Francisco, CA 94104 constitutes first count of mail

9  fraud.

10                   SECOND COUNT OF MAIL FRAUD

11     46.  On or around May 2,2007 upon Defendants mailing a copy

12  of the Voluntary Resignation Agreement to Gretchen McCoy at SRS,

13  at P.O. Box 591, Burbank, CA constitutes second count of mail

14  fraud, as it was initiated to further the Scheme.

15                    THIRD COUNT OF MAIL FRAUD

16     47.  On or around May 2,2007 upon Defendants mailing a

17  copy of the Voluntary Resignation Agreement to Mark Antoine

18  Foster at 225 Ellis Street, San Francisco, CA., constitutes a

19  third count of mail fraud, as it was initiated to further the

20  Scheme.

21                   FOURTH COUNT OF MAIL FRAUD

22     48.  On or around July 3,2007 upon Defendants mailing a

23  copy of the opposition to Plaintiff's Declaration of Readiness

24  to Proceed to the Worker's Compensation Appeals Board

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                           16

1  constitutes a Fourth Count of MAIL FRAUD, as it was initiated to

2  further the Scheme.

3                    FIFTH COUNT OF MAIL FRAUD

4      49.  On or around July 3,2007 upon Defendants mailing a

5  copy of the opposition to Plaintiff's Declaration of Readiness

6  to Proceed Mary Lou Williams at 4104 24th Street, San Francisco,

7  CA 94104 constitutes a Fifth Count of MAIL FRAUD, as it was

8  initiated to further the Scheme.

9                    SIXTH COUNT OF MAIL FRAUD

10     50.  On or around July 3,2007 upon Defendants mailing a

11 copy of the opposition to Plaintiff's Declaration of Readiness

12 to Proceed Gretchen Devine at Specialty Risk Services at P.O.

13 Box 591, Burlingame, CA constitutes a Sixth Count of MAIL FRAUD,

14 as it was initiated to further the Scheme.

15     51.  As a proximate result of the fraudulent conduct or the

16 defendants as herein alleged, plaintiff was subjected to Fraud

17 and Intentional Deceit that subject or caused him emotional

18 distress and mental anguish.

19     52.  The aforementioned conduct of defendants was an

20 intentional misrepresentation, deceit, or concealment of a

21 material fact know to the defendants with the intention on the

22 part of the defendants of to deprive the plaintiff of property

23 or legal rights, causing injury, and was despicable conduct that

24 subjected plaintiff to a cruel unjust hardship in conscious

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                      17

1   disregard of the plaintiff's rights, so as to justify an award

2   of exemplary and punitive damages.

3       Wherefore Plaintiff prays for judgment against Defendants as

4   more fully set forth below.

5                        CONSPIRACY TO DEFRAUD

6                   (18 U.S.C. SECTION §1345,§1349)

7       53.  Plaintiff realleges and incorporates therein by

8   reference every allegation stated herein.

9       54.  Plaintiff is informed, believes and therefore alleges

10  that between March 9,2007 and May 1, 2007 Defendants and/or

11  members of Management conspired to defraud plaintiff by

12  attempting to cover-up a "would be" Disability Discrimination

13  Claim and wrongful termination Claim pursuant to the ADA, the

14  UNRUH and FEHA.

15      55.  Plaintiff is informed, believes and therefore alleges

16  that Aramark's managers conspired and authorized their council,

17  both Gray & Prouty and Morgan & Lewis to submit and offer the

18  Voluntary Resignation Agreement to plaintiff, on May 2,2007,

19  knowing it was being submitted for fraudulent reasons.

20      56.  Defendants conspiring to defraud plaintiff violated

21  California Civil Codes §1709, §1710 and §1572 and 18 U.S.C.

22  Section 1345, and 1349.

23      57.  As a proximate result of the fraudulent conduct of the

24  defendants as herein alleged, plaintiff was subjected to fraud

25
    COMPLAINT FOR DAMAGES, CIVIL RIGHTS                          18

1  and intentional deceit and MAIL FRAUD, causing him emotional

2  distress and mental anguish.

3      58.  The aforementioned conduct of defendants was an

4  intentional misrepresentation deceit, or concealment of a

5  material fact known to the defendants with the intention on the

6  part of the defendants of thereby depriving the plaintiff of

7  property or legal rights causing injury, and was despicable

8  conduct that subjected plaintiff to a cruel unjust hardship in

9  conscious disregard of the plaintiff's rights, so as to justify

10 an award of exemplary and punitive damages.

11    Wherefore Plaintiff prays for judgment against Defendants as

12 more fully set forth below.

13                          WIRE FRAUD

14                    18 U.S.C. SECTION §1343

15    59.  Plaintiff realleges and incorporates therein by

16 reference every allegation stated herein.

17     60. Plaintiff is informed, believes and therefore alleges

18 that between March 9,2007 and May 2,2007, Defendants and/or

19 members of Management of Aramark utilized emails, the telephone

20 or by fax to further their Scheme to defraud Plaintiff by

21 attempting to cover-up a "would be" disability discrimination

22 claim and wrongful termination Claim pursuant to the ADA, the

23 UNRUH and FEHA.

24     61. Plaintiff is informed, believes and therefore alleges

25
   COMPLAINT FOR DAMAGES, CIVIL RIGHTS                          19

1   that between March 9,2007 and May 2,2007, Defendants and or

2   members of Management of Aramark conspired and Authorized their

3   council Gray & Prouty and Morgan & Lewis to submit the offer to

4   plaintiff in the form of the agreement.

5       62. Defendant's use of the above mentions methods of

6   Communication to defraud plaintiff violated Section California

7   Civil Codes §1709, §1710 and 18 U.S.C. Section §1343.

8       63. As a proximate result of the Fraudulent conduct or the

9   defendants as herein alleged, Plaintiff was subjected to Fraud

10  and Intentional Deceit and WIRE FRAUD, causing plaintiff

11  emotional distress and mental anquish.

12      64. The aforementioned conduct of defendants was an

13  intentional misrepresentation, deceit, or concealment of a

14  material fact known to the defendants, with the intention on the

15  part of the defendants, thereby depriving the plaintiff of

16  property or legal rights, causing injury to plaintiff, and was

17  despicable conduct that subjected plaintiff to a cruel unjust

18  hardship in conscious disregard of the plaintiff's rights, so as

19  to justify an award of exemplary and punitive damages.

20      Wherefore Plaintiff prays for judgment against Defendants as

21  more fully set forth below.

22              INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

23      65.   Plaintiff realleges and incorporates therein by

24  reference every allegation stated herein.

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                          20

1    66.    The fraudulent actions of defendants were outrageous,

2    intentional and malicious and done with reckless disregard of

3    the fact that they would certainly cause plaintiff to suffer

4    severe emotional and physical distress. Defendants knew that

5    defrauding plaintiff in an attempt to deprive from his "would

6    be" Disability Discrimination Claim would certainly cause him to

7    suffer severe emotional and physical distress. Defendants also

8    knew Plaintiff had already suffered psychological injury due to

9    the previous acts of the Defendants while Plaintiff was employed

10   at the Carnelian Room, but still proceeded with their Fraudulent

11   acts after Plaintiff resigned or was constructively Discharged.

12   67.    As a proximate result of the acts of defendants,

13   Plaintiff has and will more than likely continue to suffer

14   emotional distress in the form of fear, anxiety, worry, and

15   mental suffering as the injury will have an effect on

16   Plaintiff's future capacity to work and earn income.

17   68.    Plaintiff will seek more psychological counseling as a

18   result of the defendants conduct.

19   69.    As a proximate result of Defendants conduct, Plaintiff

20   has suffered general Damages in an amount to be determined by

21   Proof at Trial.

22   70.    Defendants conduct was done knowingly, willfully and

23   with malicious intent and Plaintiff can prove the fraudulent

24   acts of Defendants by "clear and convincing" evidences and

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

1    therefore Plaintiff is entitled o Punitive Damages in an amount

2    to be determined by Proof at trial.

3       Wherefore Plaintiff prays for judgment against Defendants as

4    more fully set forth below.

5                  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

6       71.  Plaintiff realleges and incorporates therein by

7    reference every allegation stated herein.

8       72.  Plaintiff is informed, believes and therefore alleges

9    that Defendant Aramark Corporation is negligent in causing

10   plaintiff Emotional Distress, in that Defendant Aramark

11   Corporation has breached their duty of care by allowing Aramark

12   Sports, LLC, and its Managers to intentionally inflict Plaintiff

13   with Emotional Distress causing Plaintiff injury resulting in

14   damages. Defendants' negligence causing of Emotional Distress is

15   not an independent Tort: it is a Tort of Negligence.

16      73.  As a proximate result of the fraudulent conduct of the

17   defendants as herein alleged, Plaintiff has suffered general

18   Damages in an amount to be determined by Proof at Trial.

19      Wherefore Plaintiff prays for judgment against Defendants as

20   more fully set forth below.

21                         PRAYER FOR RELEIF

22      WHEREFORE, Plaintiff FOSTER prays for judgment against

23   defendants, and each of them, as more fully set forth below:

24      1. For general damages, including emotional distress,

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

22

1    according to proof;

2    2. For statutory penalties and all relief allowed by

3    statute according to proof;

4    3. For punitive damages;

5    4. for an award of attorney's fees;

6    5. For pre-judgment interest at the legal rate according to

7    proof;

8    6. For costs of suit incurred;

9    7. For such other and further relief as the court may deem

10    proper.

11    Dated: *February 1, 2008*    *Mark Antoine Foster*

12    Mark Antoine Foster,  In Pro Per

13

14

15

16

17

18

19

20

21

22

23

24

25    COMPLAINT FOR DAMAGES, CIVIL RIGHTS    **23**

**Exhibit C**

**FILED**

San Francisco County Superior Court

FEB 0 7 2008

GORDON PARK-LI, Clerk

BY: _Deborah Steppe_

DEBORAH STEPPE, Deputy Clerk

1  Mark Antoine Foster, In Pro Per
   200 Corpus Cristie Road #A
2  Alameda, CA 94502
   (415) 756-1611
3

CASE MANAGEMENT CONFERENCE SET

4

5  JUL 1 1 2008 -9⁰⁰AM

6  DEPARTMENT 212

7

8  SUPERIOR COURT OF CALIFORNIA    **SUMMONS ISSUED**

9  IN AND FOR THE COUNTY OF SAN FRANCISCO

10  CIVIL UNLIMITED JURISDICTION    C G C - 0 8 - 4 7 1 9 3 7

11

12  MARK ANTOINE FOSTER,              **COMPLAINT FOR DAMAGES FOR
                                      CIVIL RIGHTS (related to Employment
13      Plaintiff,                    discrimination)**
                                        1.  **Fraud and Intentional Deceit**
14  vs.                                 2.  **Intentional Misrepresentation of
                                            Fact**
15  MORGAN LEWIS & BOCKIUS, LLP        3.  **Negligent Misrepresentation**
    AND ERIC MECKLEY, as an           4.  **Suppression of Fact**
16  Individual, and DOES 1 through    5.  **Mail Fraud (18 U.S.C Sec. §1341)**
    81                                6.  **Conspiracy to Mail Fraud (18
17      Defendants                        U.S.C. Sec. §1345, §1349)**
                                        7.  **Wire Fraud (18 U.S.C. Sec. §1343)**
18  _____/         8.  **Breach of Fiduciary Duty**
                                        9.  **Intentional Infliction of Emotional
19                                         Distress**
                                       10. **Negligent Infliction of Emotional
                                           Distress**

20                  INTRODUCTION

21      This case is brought against defendants pursuant to

22  California Codes of Civil Procedure §1709, §1710 and §1572 for

23  committing acts that constitute fraud and intentional deceit,

24  mail fraud and wire fraud and conspiracy to defraud. Defendant

25
    COMPLAINT FOR DAMAGES, CIVIL RIGHTS                          1

1   Law Firm Morgan Lewis & Backius and its employee attorney Eric

2   Meckley conspired with their clients Aramark Sports, L.L.C. and

3   Aramark Corporation to defraud plaintiff of his disability

4   discrimination claim against defendant Aramark Corporation. The

5   acts were committed to shield their client from a "would be"

6   claim of disability discrimination claim and deprive plaintiff

7   of any monetary damages that would be awarded to plaintiff as a

8   result. Defendant's acts were related to plaintiff's previous

9   employment with ·ARAMARK, ·  as defendants committed these

10  acts after plaintiff's employment with the defendants ended.

11      Although the acts were committed after plaintiff's

12  employment ended, the acts were connected to claims plaintiff

13  alleged in a previous complaint plaintiff filed against

14  ·ARAMARK in San Francisco Superior Court on March 9, 2007.

15  These acts show a continuing pattern of further deprivation of

16  plaintiff's civil rights by defendants.

17      The connected case number 07461178, which alleges acts that

18  were committed by defendants while plaintiff was employed with

19  the ARAMARK·  has been presently removed to federal court by

20  ARAMARK, on January 30, 2008 which plaintiff believes is an

21  attempt to delay trial and prosecution of the case in state

22  court. Plaintiff will file a motion for remand in federal court

23  to have the case moved back to state court within 30 days of its

24  removal.

25      ARAMARK stated to the court in their case management

1    conference statement that they would file a motion for summary

2    judgment or as an alternative a motion for summary adjudication

3    but instead, upon discovering that plaintiff has acquired enough

4    evidence to support his claims through his own discovery plan,

5    defendants removed the case to federal court in an attempt to

6    divert plaintiff and gather their thoughts as to how they want

7    and should settle the case.

8        Plaintiff will ~~file~~ also file a second amended complaint

9    adding claims alleging Wrongful Termination, additional

10   retaliation that resulted in Fraud and Intentional Deceit,

11   Suppression of Fact, and to change quid pro quo sexual

12   harassment to hostile work environment sexual harassment.

13       Plaintiff will also file a supplemental complaint alleging

14   continued retaliation after plaintiff filed his complaint on

15   March 9, 2007.

                              PARTIES

16       1.    Plaintiff Mark Antoine Foster was an employee of

17   defendant Morgan and Lewis's client Aramark Sports and

18   Entertainment, a subsidiary of Aramark Corporation. He worked

19   for the Carnelian Room located at 555 California Street, San

20   Francisco, California.

21       2.    Defendants does 1 through 81, inclusive, are sued

22   under fictitious names.  Their true names and capacities are

23   unknown to plaintiff. When their true names and capacities are

24   ascertained, plaintiff will amend this complaint by inserting

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              3

1   their true names and capacities herein. Plaintiff is informed

2   and believes and thereon alleges that each of the fictitiously

3   named defendants is responsible in some manner for the

4   occurrences herein alleged, and such defendants caused plaintiff

5   damages as herein alleged.

6       3.    Plaintiff is informed and believes, and thereon

7   alleges, that at all times herein mentioned each and every

8   defendant was the agent, servant, employee and/or representative

9   of each other defendant and was, in doing the things complained

10  of herein, acting within the scope of said agency, service,

11  employment and or representation, and that each and every

12  defendant herein is jointly and severally responsible and liable

13  to plaintiff for the damages hereinafter alleged.

                    JURISDICTION AND VENUE

14  4.      Jurisdiction is proper in this court as the acts

15          complained of occurred in San Francisco,

16          California.

17  5.      The amount in controversy exceeds limited

18          jurisdiction.

19  6.  Plaintiff   timely   files   this   complaint,   as   he

20      discovered   the   fraudulent   acts   of   the   defendants   in

21      December 2007.

22  7.  Plaintiff will amend this complaint to allege those

23      causes of action once defendants respond to the claim.

24                  **FIRST CAUSE OF ACTION**
                    **FRAUD AND INTENTIONAL DECEIT**

25
COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              4

**(California Civil Codes 1709, 1710 and 1572)**
**FIRST COUNT**
**INTENTIONAL MISREPRESENTATION OF FACT**

8.    Plaintiff realleges and incorporates herein by reference every allegation stated herein.

9.    Plaintiff is informed, believes and therefore alleges that the defendants' acts constituted fraud and intentional deceit due to the defendants attempting to help their client cover-up a possible or "would-be" disability discrimination claim from plaintiff, in the event plaintiff discovered that defendants discriminated against due to his disability.

10.    On or around March 28, 2006, plaintiff requested a medical leave from Aramark due to work related stress allegedly caused by two of the Aramark's supervisor/managers. On or around March 28, 2006, plaintiff signed an voluntary resignation agreement stating he would return no later than June 15, 2006 and that if he did not return by June 15, 2006, his absence would be considered a voluntary quit and he will be terminated on that day.

11.    On or around June 15, 2006, plaintiff did not return to work due to (1) still being disabled and (2) due to fear of further retaliation from ARAMARK, and (3) due to fear of being terminated once he did return to work for the Aramark.

12.    Plaintiff is informed, believes and therefore alleges that he was forced to resign on June 15, 2006 pursuant to the voluntary resignation agreement he signed on March 28, 2006,

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                                    5

1  absent Aramark offering plaintiff a further reasonable
2  accommodation to his disability before allowing him to "
3  voluntarily quit", as voluntary quit in this case is voluntary
4  termination, which results in its simple form – termination of
5  employment.

6     13.    On or around March 9, 2007, plaintiff filed a
7  complaint against defendants Aramark Sports,LLC, and Ying Kee
8  McVicker and Mathew Lee as individuals, alleging Retaliation,
9  Harassment, Constructive Discharge, Failure to Prevent
10 Harassment, and Intentional Infliction of Emotional Distress.
11 Plaintiff did not in this complaint allege Disability
12 Discrimination due to not knowing his was or had been subject to
13 disability Discrimination at that point in time. Plaintiff
14 discovered in January 2008 that he had been subject to
15 disability discrimination on June 15, 2006.

16    14.    Plaintiff alleges that sometime in Feb.2007, he
17 requested his employee records from Aramark, specifically
18 Aramark's HR Manager, James Chan. Mr. Chan released plaintiff's
19 employee records which contained a copy of the voluntary
20 resignation agreement dated March 28, 2006 plaintiff signed
21 agreeing to return on June 15 2006. On the Face of the Voluntary
22 Resignation Agreement was a notation made by James Chan stating
23 that he communicated with the Executive Chef regarding Plaintiff
24 not returning to work on June 15, 2006. Plaintiff alleges that

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

6

1 | this is evidence that he was terminated pursuant to the

2 | voluntary resignation agreement, in addition to the fact that

3 | the mere existence of the voluntary resignation agreement shows

4 | plaintiff was more than likely terminated pursuant to it.

5 |    15.    On or around August 28, 2007, plaintiff served Aramark

6 | a request for documents demanding all documents relevant to his

7 | termination; instead of Aramark producing the same documents he

8 | received from James Chan before he filed his lawsuit ARAMARK :

9 | presented another version of the voluntary resignation without

10 | the notation of James Chan on the face of the agreement. This

11 | shows defendants withheld evidence.

12 |    16.    On or around December 20, 2007, plaintiff realized

13 | through research that he had been subject to Disability

14 | Discrimination and in December 2007, filed a motion to amend his

15 | complaint to add Disability Discrimination under the ADA, UNRUH

16 | and FEHA. Defendants stipulated with plaintiff to allow the

17 | amendment.

18 |    17.    On or Around Jan 15, 2008, Plaintiff discovered

19 | through his Discovery served on Aramark that he was defrauded by

20 | defendants, as defendants conspired with their clients to help

21 | cover up or attempt to cover-up the fact that they had

22 | discriminated against plaintiff due to his mental disability.

23 |    18.    On or around May 2, 2007, defendants with their client

24 | Aramark and their clients' Worker's compensation Attorneys Gray

25 |

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

7

1    and Prouty, requested from plaintiff that he agree and sign a
2    document stating that he voluntarily resigned on May 1, 2007.
3    The purpose for defendants' request was to allow the proposed
4    agreement to void out the agreement signed on March 28, 2006, as
5    this agreement is the initial and actual reason why plaintiff
6    was terminated: which was when plaintiff was forced to resign
7    due to his disability violating ADA, the Unruh and FEHA.

8        19.    Defendants and their client Aramark submitted the
9    agreement to plaintiff for his signature. Plaintiff then refused
10   to agree that he resigned on May 1, 2007, knowing that he
11   resigned on June 15, 2006, pursuant to the agreement signed on
12   March 28, 2006.

13       20.    Defendants insisted that plaintiff sign the agreement
14   prior to releasing his already agreed upon Worker's Compensation
15   settlement of $5,500. Plaintiff altered the date and signed the
16   agreement as voluntarily resigning on June 15, 2006, not May 1,
17   2007 as Defendants requested he do. Although plaintiff did not
18   sign the agreement as voluntarily resigning on May 1, 2007, he
19   did sign agreeing that he *voluntarily resigned* on June 15, 2006.
20   Even though defendants were not successful in getting plaintiff
21   to agree that he resigned on May 1, 2007, they planned to use
22   the agreement anyway to void out the original agreement signed
23   on March 28, 2006. Defendant planned to use the new agreement to
24   say that plaintiff resigned on June 15, 2006 to give the

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              8

1  impression that he voluntarily resigned on his own on June 15,

2  2006 and not pursuant to the agreement he signed on March 28,

3  2006, to shield themselves from disability discrimination.

4  Although the mere existence of any voluntary agreement plaintiff

5  signed in May 2007, or anytime therafter is a fraud.

6      21.    Plaintiff is informed believes and therefore alleges

7  that the defendants made a false representation offering the

8  voluntary resignation agreement. The true facts being; Aramark

9  forced plaintiff to resign pursuant to the voluntary resignation

10  agreement he signed on March 28, 2006,and defendants and Aramark

11  were attempting to suppress this material fact. Defendants

12  requesting plaintiff to sign the agreement presented on May 2,

13  2007.This act was FRAUD in its purest Form. Defendants abused

14  their position of attorneys and held back the agreed upon

15  settlement to coerce plaintiff to sign the agreement, causing

16  plaintiff to defraud his own self. Plaintiff signed the

17  agreement and returned it, as this proves that the FRAUD reached

18  its full Fruition or Justifiable reliance, damaging plaintiff

19  even further.

20      22.    Plaintiff alleges that it was a misrepresentation of

21  Material Fact by Defendants to request plaintiff to agree and

22  sign an agreement stating that his voluntary resignation was on

23  a date after he had already voluntarily resigned in an attempt

24  to cover up a possible disability discrimination claim against

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

9

1  their clients.

2      23.     Defendants attempt to use the document to void out his

3  original resignation agreement signed on March 28, 2006 was

4  despicable conduct done with malice. Defendants attempted to

5  help their clients defraud Plaintiff of his rightful claim of

6  disability discrimination and the tangible and intangible

7  benefits representing monetary and other remedy for damages that

8  could be awarded due to the disability claim. This act is

9  clearly an intentional misrepresentation of Material Fact.

10     24.     When the Defendants made the representations, they

11  knew then to be false or were based on false pretenses or

12  misrepresentations, as the defendants made these representations

13  with the intention to deceive and defraud plaintiff and to

14  induce plaintiff to act in reliance on these representations in

15  the manner alleged, or with the expectation that plaintiff would

16  so act. Defendants expected plaintiff to sign the agreement so

17  he could receive his WC Settlement of $5,500 and coerced him to

18  sign the agreement before agreeing to release payment of the

19  $5,500 to him.

20     25.     Plaintiff at the time these representations were made

21  by Defendants, believed that that the Defendants representations

22  were true. Due to believing, plaintiff thought it was acceptable

23  or all right to sign the document, and that it was not depriving

24  him of any further rights and that there was a legal forthright

25
COMPLAINT FOR DAMAGES, CIVIL RIGHTS

10

1 │ reason for defendants requesting him to sign the voluntary

2 │ agreement. Aramark and the defendants used their positions as

3 │ attorneys to help present the document to trick plaintiff, as if

4 │ it was legal when actually it was not, as this shows that

5 │ plaintiff's reliance on defendant representation was justified.

6 │   26.    Plaintiff alleges that he has satisfied all the

7 │ elements for intentional misrepresentations, which includes: (1)

8 │ misrepresentations (2) Material Fact (3) Knowledge of Falsity

9 │ (4) Intent to induce reliance (5) Justifiable reliance and (6)

10 │ Causation and Damages

11 │   27.    Defendants attempt to defraud Plaintiff violated

12 │ California Civil Codes 1709, 1710, and 1572

13 │   28.    As a proximate result of the fraudulent conduct or the

14 │ defendants as herein alleged, plaintiff was subjected to Fraud

15 │ and Intentional Deceit that subject or caused him emotional

16 │ distress and mental anguish.

17 │   29.    The aforementioned conduct of defendants was an

18 │ intentional misrepresentation, deceit, or concealment of a

19 │ material fact know to the defendants with the intention on the

20 │ part of the defendants to deprive the plaintiff of property or

21 │ legal rights, causing injury, and was despicable conduct that

22 │ subjected plaintiff to a cruel unjust hardship in conscious

23 │ disregard of the plaintiff's rights, so as to justify an award

24 │ of exemplary and punitive damages.

25 │

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                          11

1

2                           SECOND COUNT

3                      Negligent Misrepresentation

4        30.   When the defendants made the representation they had

5    no reasonable grounds for believing them to be true. Defendants

6    knew that (1) it was not necessary for Plaintiff to sign the

7    Agreement at all (2) it was not necessary for plaintiff to sign

8    the agreement as a condition to him receiving or defendants

9    releasing plaintiff's already agreed upon worker's compensation

10   settlement of $5,500.

11       31.   Plaintiff alleges that the defendants made the

12   representation with intent to induce plaintiff to rely upon it.

13       32.   Plaintiff alleges that he was unaware of the falsity

14   of the representation; in that he did not know that the purpose

15   or the agreement was to shield Aramark from a possible

16   discrimination disability claim from plaintiff, depriving

17   plaintiff of any possible monetary damages from the claim.

18       33.   Plaintiff alleges that he acted in reliance upon the

19   truth of the representation; as in him thinking it was necessary

20   to sign the agreement, as he believed it to be safe or true

21   because it was presented to him by Aramark's worker's

22   compensation attorney. Plaintiff believed it to be true because

23   he knew Defendants and Aramark's Worker's Compensation Attorneys

24   knew exactly when he actually resigned or knew Plaintiff

25
     COMPLAINT FOR DAMAGES, CIVIL RIGHTS                            12

1 | resigned on June 15, 2006 pursuant to the March 28, 2006

2 | agreement.

3 |     34.  Defendants initiating these actions in an attempt to

4 | DEFRAUD plaintiff of his claim of disability discrimination and

5 | any possible monetary damages that would be awarded in lieu of

6 | the disability discrimination claim, violated California Codes

7 | §1572, §1709 and §1710, Therefore Plaintiff is entitled to

8 | Statutory Damages, Costs and awards of Attorney Fees.

9 | <div align="center">THIRD COUNT</div>

10 | <div align="center">Suppression of Fact</div>

11 |     35.  Defendants suppressed the fact that if was not

12 | necessary for plaintiff to agree and sign the voluntary

13 | resignation agreement to receive his worker's compensation

14 | settlement of $5,500.

15 |     36.  In addition on or around July 2,2007, Aramark's

16 | worker's compensation Attorney Dana Mitchell filed an opposition

17 | to plaintiff's Readiness to Proceed. In the opposition,

18 | Defendants state or implied that the reason plaintiff's

19 | settlement of $5,500 had not been paid was due to plaintiff

20 | filing an EEOC Claim subsequent to agreeing to the settlement of

21 | $5,500 with defendants. Defendants lied to the Worker's

22 | Compensation Appeals Board to create a "Smoke screen" or cover

23 | up as to the actual reason plaintiff's settlement was held up,

24 | which was defendants wanting to force plaintiff to sign the

25 |

COMPLAINT FOR DAMAGES, CIVIL RIGHTS       13

1 | agreement to shield them from the disability discrimination
2 | claim. Defendants concealed from the Worker's Compensation
3 | Appeals Board that there was no EEOC Claim filed by plaintiff
4 | subsequent to the agreement of the worker's compensation
5 | Settlement.

6 |    37.  The defendants made the failure to disclose and
7 | suppressed and/or concealed the information mentioned herein
8 | alleged, with the intent to induce the plaintiff to act in the
9 | manner herein alleged in reliance thereupon, with the intent to
10 | cause plaintiff to sign the agreement.

11 |    38.  As a proximate result of the fraudulent conduct or the
12 | defendants as herein alleged, plaintiff was subjected to Fraud
13 | and Intentional Deceit that subject or caused him emotional
14 | distress and mental anguish.

15 |    39.  The aforementioned conduct of defendants was an
16 | intentional misrepresentation, deceit, or concealment of a
17 | material fact known to the defendants with the intention on the
18 | part of the defendants of to deprive the plaintiff of property
19 | or legal rights, causing injury, and was despicable conduct that
20 | subjected plaintiff to a cruel unjust hardship in conscious
21 | disregard of the plaintiff's rights, so as to justify an award
22 | of exemplary and punitive damages.

23 |    40.  Defendants' attempt to defraud plaintiff violated
24 | section 1572 of the California Civil Code. Plaintiff is

25 |

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

14

1  therefore entitled to Statutory Damages, Costs and award of

2  Attorney fees.

3      Wherefore Plaintiff prays for judgment against Defendants

4  as more fully set forth below.

5                    SECOND CAUSE OF ACTION

6              Mail Fraud (18 U.S.C. Section 1341)

7      41. Plaintiff realleges and incorporates therein by

8  reference every allegation stated herein.

9      42. On or around May 2, 2007 Defendants mailed to

10 Plaintiff by way of his Worker's Compensation Attorney Mary Lou

11 Williams, the voluntary agreement, which was the execution of a

12 scheme to defraud plaintiff.

13     43. Title 18 - Crimes and Criminal Procedures, Part 1 -

14 Crimes Chapter 63 section 1341 Frauds and Swindles States:

15 Whoever, having devised or intending to devise any scheme or

16 artifice to defraud, or for obtaining money or property by means

17 of false or fraudulent pretenses, representations, or promises,

18 or to sell, dispose of, loan, exchange, alter, give away,

19 distribute, supply, or furnish or procure for unlawful use any

20 counterfeit or spurious coin, obligation, security, or other

21 article, or other article, or anything represented to be or

22 intimated or held out to be such counterfeit or spurious

23 article, for the purpose of executing such scheme or artifice or

24 attempting so to do, places in any post office or authorized

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              15

1  depository for mail matter, any matter or thing whatever to sent

2  or delivered by the Postal Service, or Deposits or causes to be

3  deposited any matter or thing whatever to sent or delivered by

4  any private or commercial interstate carrier, or takes or

5  receives therefrom, any such matter or thing, or knowingly

6  causes to be delivered by mail or such carrier according to the

7  direction thereon, or at the place at which it is directed to be

8  delivered by the person to whom it is addressed, any such matter

9  or thing shall be fined under this title or shall be fined under

10  this title or imprisoned not more than 20 years, or both.

11    44. Upon Defendants placing the Voluntary Resignation

12  Agreement in the Post Office for Mail matter to be sent by the

13  Postal Service, the Defendants committed Mail Fraud.

14                    FIRST COUNT OF MAIL FRAUD

15    45. On or around May 2,2007 upon Defendants mailing the

16  Voluntary Resignation Agreement to Mary Lou Williams at 4104 24th

17  Street, San Francisco, CA 94104 constitutes first count of mail

18  fraud.

19                   SECOND COUNT OF MAIL FRAUD

20    46. On or around May 2,2007 upon Defendants mailing a copy

21  of the Voluntary Resignation Agreement to Gretchen McCoy at SRS,

22  at P.O. Box 591, Burbank, CA constitutes second count of mail

23  fraud, as it was initiated to further the Scheme.

24                    THIRD COUNT OF MAIL FRAUD

25
COMPLAINT FOR DAMAGES, CIVIL RIGHTS                                16

1       47. On or around May 2,2007 upon Defendants mailing a copy

2    of the Voluntary Resignation Agreement to Mark Antoine Foster at

3    725 Ellis Street, San Francisco, CA., constitutes a third count

4    of mail fraud, as it was initiated to further the Scheme.

5                      FOURTH COUNT OF MAIL FRAUD

6       48. On or around July 3,2007 upon Defendants mailing a

7    copy of the opposition to Plaintiff's Declaration of Readiness

8    to Proceed to the Worker's Compensation Appeals Board

9    constitutes a Fourth Count of MAIL FRAUD, as it was initiated to

10   further the Scheme.

11                      FIFTH COUNT OF MAIL FRAUD

12      49.  On or around July 3,2007 upon Defendants mailing a

13   copy of the opposition to Plaintiff's Declaration of Readiness

14   to Proceed Mary Lou Williams at 4104 24th Street, San Francisco,

15   CA 94104 constitutes a Fifth Count of MAIL FRAUD, as it was

16   initiated to further the Scheme.

17                      SIXTH COUNT OF MAIL FRAUD

18      50. On or around July 3,2007 upon Defendants mailing a

19   copy of the opposition to Plaintiff's Declaration of Readiness

20   to Proceed Gretchen Devine at Specialty Risk Services at P.O.

21   Box 591, Burlingame, CA constitutes a Sixth Count of MAIL FRAUD,

22   as it was initiated to further the Scheme.

23      51.  As a proximate result of the fraudulent conduct or the

24   defendants as herein alleged, plaintiff was subjected to Fraud

25
     COMPLAINT FOR DAMAGES, CIVIL RIGHTS                          17

1   and Intentional Deceit and Mail Fraud that or caused him
2   emotional distress and mental anguish.

3       52.   The aforementioned conduct of defendants was an
4   intentional misrepresentation, deceit, or concealment of a
5   material fact know to the defendants with the intention on the
6   part of the defendants of to deprive the plaintiff of property
7   or legal rights, causing injury, and was despicable conduct that
8   subjected plaintiff to a cruel unjust hardship in conscious
9   disregard of the plaintiff's rights, so as to justify an award
10  of exemplary and punitive damages.

11      53.   Defendants' attempt to defraud plaintiff violated
12  section 1572 of the California Civil Code. Plaintiff is
13  therefore entitled to Statutory Damages, Costs and award of
14  Attorney fees.

15      Wherefore Plaintiff prays for judgment against Defendants
16  as more fully set forth below.

17                  THIRD CAUSE OF ACTION

18                  CONSPIRACY TO DEFRAUD

19              (18 U.S.C. SECTION §1345,§1349)

20      54.   Plaintiff realleges and incorporates therein by
21  reference every allegation stated herein.

22      55.   Plaintiff is informed, believes and therefore alleges
23  that between March 9,2007 and May 1, 2007 Defendants and members
24  of Aramark's Management conspired to defraud plaintiff by

25
    COMPLAINT FOR DAMAGES, CIVIL RIGHTS                        18

1    attempting to cover-up a "would be" Disability Discrimination

2    Claim and wrongful termination Claim pursuant to the ADA, the

3    UNRUH and FEHA.

4        56.  Plaintiff is informed, believes and therefore alleges

5    that Aramark's managers conspired and with their council, both

6    Gray & Prouty and Morgan & Lewis to submit and offer the

7    Voluntary Resignation Agreement to plaintiff, on May 2,2007,

8    knowing it was being submitted for fraudulent reasons.

9        57.  Defendants conspiring to defraud plaintiff violated

10   California Civil Codes 1709, 1710 and 1572 and 18 U.S.C. Section

11   1345, and 1349.

12       58.  As a proximate result of the fraudulent conduct of the

13   defendants as herein alleged, plaintiff was subjected to fraud

14   and intentional deceit and MAIL FRAUD, causing plaintiff to

15   suffer emotional stress.

16       59.  The aforementioned conduct of defendants was an

17   intentional misrepresentation deceit, or concealment of a

18   material fact know to the defendants with the intention on the

19   part of the defendants of thereby depriving the plaintiff of

20   property or legal rights causing injury, and was despicable

21   conduct that subjected plaintiff to a cruel unjust hardship in

22   conscious disregard of the plaintiff's rights, so as to justify

23   an award of exemplary and punitive damages.

24       Wherefore Plaintiff prays for judgment against Defendants

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                                    19

1  as more fully set forth below.

2                    FOURTH CAUSE OF ACTION

3                          WIRE FRAUD

4                    18 U.S.C. SECTION 1343

5        60.  Plaintiff realleges and incorporates therein by

6  reference every allegation stated herein.

7        61.  Plaintiff is informed, believes and therefore alleges

8  that between March 9,2007 and May 2,2007, Defendants and members

9  of Aramark Management utilized emails, the telephone or by fax

10 to further their Scheme to defraud Plaintiff by attempting to

11 cover-up a "would be" disability discrimination claim and

12 wrongful termination Claim pursuant to the ADA, the UNRUH and

13 FEHA.

14       62.  Plaintiff is informed, believes and therefore alleges

15 that between March 9,2007 and May 2,2007, Defendants and members

16 of Management of Aramark conspired with their council Gray &

17 Prouty and Morgan & Lewis to submit the offer to plaintiff in

18 the form of the agreement.

19       63.  Defendant's use of the above mentions methods of

20 Communication to defraud plaintiff violated Section California

21 Civil Codes 1709, 1710 and 18 U.S.C. Section 1343.

22       64.  As a proximate result of the Fraudulent conduct or the

23 defendants as herein alleged, Plaintiff was subjected to Fraud

24 and Intentional Deceit and MAIL FRAUD, causing plaintiff

25
   COMPLAINT FOR DAMAGES, CIVIL RIGHTS                           20

1  emotional stress.

2      65. The aforementioned conduct of defendants was an

3  intentional misrepresentation, deceit, or concealment of a

4  material fact know to the defendants with the intention on the

5  part of the defendants, thereby depriving the plaintiff of

6  property or legal rights causing injury to plaintiff, and was

7  despicable conduct that subjected plaintiff to a cruel unjust

8  hardship in conscious disregard of the plaintiff's rights, so as

9  to justify an award of exemplary and punitive damages.

10     Wherefore Plaintiff prays for judgment against Defendants

11 as more fully set forth below.

12                    FIFTH CAUSE OF ACTION

13                   BREACH OF FUDICIARY DUTY

14     66. Plaintiff realleges and incorporates therein by

15 reference every allegation stated herein.

16     67. Defendants, as attorneys, breached their fiduciary

17 duty, as attorneys, they were negligent in their duties and

18 behaved in a way that was despicable due to them being attorneys

19 having a duty of care to uphold the law, knowing they were

20 helping break the law. Defendants knew the acts being committed

21 were being done for fraudulent reasons and still allowed

22 themselves to conspire with their clients to help defraud

23 plaintiff. Defendants recognized the risks created by their

24 actions and Aramark actions and understood what could happen

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                          21

1   from those risks taken.

2       68.  Plaintiff alleges that defendants knew all details
3   regarding plaintiff's employment with their client Aramark,
4   including knowing when plaintiff actually resigned and why.
5   Defendants knew requesting and coercing plaintiff to sign the
6   agreement presented on May 2, 2007 was to void out the original
7   agreement plaintiff signed on March 28, 2006 to help shield
8   their client Aramark from a possible discrimination claim from
9   plaintiff.

10      69.  Plaintiff alleges that professional attorneys are held
11  to a higher standard of care than an ordinary reasonable person
12  would be. Attorneys must behave as a reasonable attorney would
13  do so rather than a reasonable person. The perspective of an
14  attorney would be different matters in the court. Defendants
15  Morgan and Lewis, and Eric Meckley owe plaintiff a reasonable
16  standard of care.

17      70.  Plaintiff alleges that the defendants' acts breached
18  their fiduciary duty violating section §3300 of the California
19  Civil Code.

20      71.  As a direct and proximate result of said breach,
21  plaintiff has suffered the actual and special and general
22  damages as alleged, and which are incorporated herein by this
23  reference, and seek recovery of the same, and for an award of
24  costs and reasonable attorney fees.

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                          22

1    72. Plaintiff alleges that the defendants' breach was

2    committed to defraud plaintiff and was in conscious disregard of

3    plaintiff's rights and was willful, oppressive and malicious;

4    and designed to cause plaintiff to suffer economic and emotional

5    injury. Plaintiff is therefore entitled to an award of exemplary

6    and punitive damages against defendants, in an amount to be

7    determined at trial.

8        Wherefore Plaintiff prays for judgment against Defendants

9    as more fully set forth below.

10              INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

11    73.    Plaintiff realleges and incorporates therein by

12    reference every allegation stated herein.

13    74.    The fraudulent actions of defendants were outrageous,

14    intentional and malicious and done with reckless disregard of

15    the fact that they would certainly cause plaintiff to suffer

16    severe emotional and physical distress. Defendants knew that

17    defrauding plaintiff in an attempt to deprive from his "would

18    be" Disability Discrimination Claim would certainly cause him to

19    suffer severe emotional and physical distress. Defendants also

20    knew Plaintiff had already suffered psychological injury due to

21    the previous acts of the Aramark while Plaintiff was employed at

22    the Carnelian Room, but still proceeded with their Fraudulent

23    acts after Plaintiff resigned or was constructively Discharged.

24        75. As a proximate result of the acts of defendants,

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

23

1 │ Plaintiff has and will more than likely continue to suffer

2 │ emotional distress in the form of fear, anxiety, worry, and

3 │ mental suffering as the injury will have an effect on

4 │ Plaintiff's future capacity to work and earn income.

5 │　　76. Plaintiff will seek more psychological counseling as a

6 │ result of the defendants conduct.

7 │　　77. As a proximate result of Defendants conduct, Plaintiff

8 │ has suffered general Damages in an amount to be determined by

9 │ Proof at Trial.

10 │　　78. Defendants conduct was done knowingly, willfully and

11 │ with malicious intent and Plaintiff can prove the fraudulent

12 │ acts of Defendants by "clear and convincing" evidences and

13 │ therefore Plaintiff is entitled o Punitive Damages in an amount

14 │ to be determined by Proof at trial.

15 │　　Wherefore Plaintiff prays for judgment against Defendants

16 │ as more fully set forth below.

17 │　　　　　　NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

18 │　　79. Plaintiff realleges and incorporates therein by

19 │ reference every allegation stated herein.

20 │　　80.  Plaintiff is informed, believes and therefore alleges

21 │ that Defendant Morgan and Lewis is negligent in causing

22 │ plaintiff Emotional Distress, in that Defendant Morgan and Lewis

23 │ has breached their duty of care by allowing themselves as

24 │ attorneys and their client Aramark to intentionally inflict

25 │

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

24

1   Plaintiff with Emotional Distress causing Plaintiff injury

2   resulting in damages. Defendants' negligence causing of

3   Emotional Distress is not an independent Tort: it is a Tort of

4   Negligence.

5       81.   As a proximate result of the fraudulent conduct of

6   the defendants as herein alleged, plaintiff was injured

7   emotionally and mentally suffering damage

8       Wherefore Plaintiff prays for judgment against Defendants

9   as more fully set forth below.

10                      PRAYER FOR RELEIF

11      WHEREFORE, Plaintiff FOSTER prays for judgment against

12  defendants, and each of them, as more fully set forth below:

13      1. For general damages, including emotional distress,

14          according to proof;

15      2. For statutory penalties and all relief allowed by

16          statute according to proof;

17      3. For punitive damages;

18      4. For an award of attorney's fees;

19      5. For pre-judgment interest at the legal rate according to

20          proof;

21      6. For costs of suit incurred;

22      7. For such other and further relief as the court may deem

23          proper.

24  Dated:

25                                                           25
    COMPLAINT FOR DAMAGES, CIVIL RIGHTS

February 7, 2008        Mark A. Foster

1                       Mark Antoine Foster, In Pro Per

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                    26

**Exhibit D**

1 | Mark Antoine Foster, In Pro Per
200 Corpus Cristie Road #A

2 | Alameda, CA 94502
(415) 756-1611

**ENDORSED**
**FILED**
Superior Court of California
County of San Francisco

3 |

FEB 0 7 2008

4 |

**GORDON PARK-LI, Clerk**
BY:_____ **DEBORAH STEPPE**
**Deputy Clerk**

5 |

**CASE MANAGEMENT CONFERENCE SET**

6 |

7 |

JUL 1 1 2008 -9⁰⁰AM

8 | SUPERIOR COURT OF CALIFORNIA

**DEPARTMENT 212**

9 | IN AND FOR THE COUNTY OF SAN FRANCISCO

**CGC-08-471939**

10 | CIVIL UNLIMITED JURISDICTION

11 |

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS (related to Employment discrimination)**

12 | MARK ANTOINE FOSTER,

1. **Fraud and Intentional Deceit**
2. **Intentional Misrepresentation of Fact**

13 |     Plaintiff,

3. **Negligent Misrepresentation**
4. **Suppression of Fact**

14 | vs.

5. **Mail Fraud (18 U.S.C Sec. §1341)**
6. **Conspiracy to Mail Fraud (18 U.S.C. Sec. §1345, §1349)**

15 | SPECIALTY RISK SERVICES, AND
GRETCHEN DEVINE, as an individual,

16 | and DOES 1 through
91

7. **Wire Fraud (18 U.S.C. Sec. §1343)**

17 |     Defendants

8. **Breach of Fiduciary Duty**
9. **Intentional Infliction of Emotional Distress**

18 | _____/

10. **Negligent Infliction of Emotional Distress**

19 |

20 |                        INTRODUCTION

21 |     This case is brought against defendants pursuant to

22 | California Codes of Civil Procedure §1709, §1710 and §1572 for

23 | committing acts that constitute fraud and intentional deceit,

24 | mail fraud and wire fraud and conspiracy to defraud. Defendant

25 |

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              1

1  SPECIALTY RISK SERVICES and its employee GRETCHEN DEVINE
2  conspired with their clients Aramark Sports, L.L.C. and Aramark
3  Corporation to defraud plaintiff of his disability
4  discrimination claim against defendant Aramark Corporation. The
5  acts were committed to shield their client from a "would be"
6  claim of disability discrimination claim and deprive plaintiff
7  of any monetary damages that would be awarded to plaintiff as a
8  result. Defendant's acts were related to plaintiff's previous
9  employment with ARAMARK    , as defendants committed these
10 acts after plaintiff's employment with the defendants ended.

11     Although the acts were committed after plaintiff's
12 employment ended, the acts were connected to claims plaintiff
13 alleged in a previous complaint plaintiff filed against
14 ARAMARK in San Francisco Superior Court on March 9, 2007.
15 These acts show a continuing pattern of further deprivation of
16 plaintiff's civil rights by defendants.

17     The connected case number 07461178, which alleges acts that
18 were committed by defendants while plaintiff was employed with
19 the ARAMARK has been presently removed to federal court by
20 ARAMARK on January 30, 2008 in an attempt to delay trial and
21 prosecution of the case in state court. Plaintiff will file a
22 motion for remand in federal court to have the case moved back
23 to state court within 30 days of its removal.

24     ARAMARK. stated to the court in their case management
25 conference statement that they would file a motion for summary

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

2

1   judgment or as an alternative a motion for summary adjudication
2   but instead, upon discovering that plaintiff has acquired enough
3   evidence to support his claims through his own discovery plan,
4   defendants removed the case to federal court in an attempt to
5   divert plaintiff and gather their thoughts as to how they want
6   and should settle the case.

7       Plaintiff will   .. also file a second amended complaint
8   adding claims alleging Wrongful Termination, additional
9   retaliation that resulted in Fraud and Intentional Deceit,
10  Suppression of Fact, and to change quid pro quo sexual
11  harassment to hostile work environment sexual harassment.

12      Plaintiff will also file a supplemental complaint alleging
13  continued retaliation after plaintiff filed his complaint on
    March 9, 2007.
14
                            PARTIES
15
16      1.   Plaintiff Mark Antoine Foster was an employee of
    defendant Speciality Risk Services client Aramark Sports and
17
    Entertainment, a subsidiary of Aramark Corporation. He worked
18
    for the Carnelian Room located at 555 California Street, San
19
    Francisco, California.
20
        2.   Defendants does 1 through 91, inclusive, are sued
21
    under fictitious names.  Their true names and capacities are
22
    unknown to plaintiff. When their true names and capacities are
23
    ascertained, plaintiff will amend this complaint by inserting
24
    their true names and capacities herein. Plaintiff is informed
25
    COMPLAINT FOR DAMAGES, CIVIL RIGHTS                          3

1  and believes and thereon alleges that each of the fictitiously
2  named defendants is responsible in some manner for the
3  occurrences herein alleged, and such defendants caused plaintiff
4  damages as herein alleged.

5    3.    Plaintiff is informed and believes, and thereon
6  alleges, that at all times herein mentioned each and every
7  defendant was the agent, servant, employee and/or representative
8  of each other defendant and was, in doing the things complained
9  of herein, acting within the scope of said agency, service,
10  employment and or representation, and that each and every
11  defendant herein is jointly and severally responsible and liable
   to plaintiff for the damages hereinafter alleged.
12
                          JURISDICTION AND VENUE
13
        4.       Jurisdiction is proper in this court as the acts
14
                 complained of occurred in San Francisco,
15
                 California.
16
        5.       The amount in controversy exceeds limited
17
                 jurisdiction.
18
        6.    Plaintiff   timely   files   this   complaint,   as   he
19
              discovered the fraudulent acts of the defendants in
20
              December 2007.
21
        7.    Plaintiff will amend this complaint to allege those
22
              causes of action once defendants respond to the claim.
23
                        **FIRST CAUSE OF ACTION**
                     **FRAUD AND INTENTIONAL DECEIT**
24
                **(California Civil Codes 1709, 1710 and 1572)**
                            **FIRST COUNT**
25
   COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              4

**INTENTIONAL MISREPRESENTATION OF FACT**

8.   Plaintiff realleges and incorporates herein by reference every allegation stated herein.

9. Plaintiff is informed, believes and therefore alleges that the defendants' acts constituted fraud and intentional deceit due to the defendants attempting to help their client cover-up a possible or would-be disability discrimination claim from plaintiff, in the event plaintiff discovered that Aramark discriminated against him due to his disability.

10.   On or around March 28, 2006, plaintiff requested a medical leave from the Aramark due to work related stress allegedly caused by two of the Aramarks' supervisor/managers. On or around March 28, 2006, plaintiff signed an voluntary resignation agreement stating he would return no later than June 15, 2006 and that if he did not return by June 15, 2006, his absence would be considered a voluntary quit and he will be terminated on that day.

11.   On or around June 15, 2006, plaintiff did not return to work due to (1) still being disabled and (2) due to fear of further retaliation from ARAMARK, and (3) due to fear of being terminated once he did return to work for Aramark.

12.   Plaintiff is informed, believes and therefore alleges that he was forced to resign on June 15, 2006 pursuant to the voluntary resignation agreement he signed on March 28, 2006, absent Aramark offering plaintiff a further reasonable

1   accommodation to his disability before allowing him to "

2   voluntarily quit", as voluntary quit in this case is voluntary

3   termination which results in its simple form – termination of

4   employment.

5      13.    On or around March 9, 2007, plaintiff filed a

6   complaint against defendants Aramark Sports,LLC, and Ying Kee

7   McVicker and Mathew Lee as individuals, alleging Retaliation,

8   Harassment, Constructive Discharge, Failure to Prevent

9   Harassment, and Intentional Infliction of Emotional Distress.

10  Plaintiff did not in this complaint allege Disability

11  Discrimination due to not knowing his was or had been subject to

12  disability Discrimination at that point in time. Plaintiff

13  discovered in January 2008 that he had been subject to

14  disability discrimination on June 15, 2006.

15     14.    Plaintiff alleges that sometime in Feb.2007, he

16  requested his employee records from Aramark, specifically

17  Aramark's HR Manager, James Chan. Mr. Chan released plaintiff's

18  employee records which contained a copy of the voluntary

19  resignation agreement dated March 28, 2006 plaintiff signed

20  agreeing to return on June 15 2006. On the Face of the Voluntary

21  Resignation Agreement was a notation made by James Chan stating

22  that he communicated with the Executive Chef regarding plaintiff

23  not returning to work on June 15, 2006. Plaintiff alleges that

24  this is evidence that he was terminated pursuant to the

25
    COMPLAINT FOR DAMAGES, CIVIL RIGHTS                          6

1  voluntary resignation agreement, in addition to the fact that

2  the mere existence of the voluntary resignation agreement shows

3  plaintiff was more than likely terminated pursuant to it.

4    15.    On or around August 28, 2007, plaintiff served Aramark

5  a request for documents demanding all documents relevant to his

6  termination; instead of Aramark producing the same documents he

7  received from James Chan before he filed his lawsuit ARAMARK

8  presented another version of the voluntary resignation without

9  the notation of James Chan on the face of the agreement. This

10  shows defendants withheld evidence.

11    16.    On or around December 20, 2007, plaintiff realized

12  through research that he had been subject to Disability

13  Discrimination and in December 2007, filed a motion to amend his

14  complaint to add Disability Discrimination under the ADA, UNRUH

15  and FEHA. Defendants stipulated with plaintiff to allow the

16  amendment.

17    17.    On or Around Jan 15, 2008, Plaintiff discovered

18  through his Discovery served on Aramark that he was defrauded by

19  defendants, as defendants conspired with their clients to help

20  cover up or attempt to cover-up the fact that they had

21  discriminated against plaintiff due to his mental disability.

22    18.    On or around May 2, 2007, defendants with their client

23  Aramark and their clients' Worker's compensation Attorneys Gray

24  and Prouty, requested from plaintiff that he agree and sign a

25

1   document stating that he voluntarily resigned on May 1, 2007.

2   The purpose for defendants' request was to allow the proposed

3   agreement to void out the agreement signed on March 28, 2006, as

4   this agreement is the initial and actual reason why plaintiff

5   was terminated: which was when plaintiff was forced to resign

6   due to his disability violating ADA, the Unruh and FEHA.

7       19.     Defendants and their client Aramark submitted the

8   agreement to plaintiff for his signature. Plaintiff then refused

9   to agree that he resigned on May 1, 2007, knowing that he

10  resigned on June 15, 2006, pursuant to the agreement signed on

11  March 28, 2006.

12      20.     Defendants insisted that plaintiff sign the agreement

13  prior to releasing his already agreed upon Worker's Compensation

14  settlement of $5,500. Plaintiff altered the date and signed the

15  agreement as voluntarily resigning on June 15, 2006, not May 1,

16  2007 as Defendants requested he do. Although plaintiff did not

17  sign the agreement as voluntarily resigning on May 1, 2007, he

18  did sign agreeing that he *voluntarily resigned* on June 15, 2006.

19  Even though defendants were not successful in getting plaintiff

20  to agree that he resigned on May 1, 2007, they planned to use

21  the agreement anyway to void out the original agreement signed

22  on March 28, 2006. Defendants and their client Aramark planned

23  to use the new agreement to say that plaintiff resigned on June

24  15, 2006, to give the impression that he voluntarily resigned on

25

1 his own on June 15, 2006, and not pursuant to the agreement he
2 signed on March 28, 2006, to shield themselves from disability
3 discrimination. Although the mere existence of any voluntary
4 agreement plaintiff signed in May 2007, or anytime thereafter,
5 is a fraud.

6     21.    Plaintiff is informed believes and therefore alleges
7 that the defendants made a false representation offering the
8 voluntary resignation agreement. The true facts being; Aramark
9 forced plaintiff to resign pursuant to the voluntary resignation
10 agreement he signed on March 28, 2006,and defendants and Aramark
11 were attempting to suppress this material fact. Defendants
12 requesting plaintiff to sign the agreement presented on May 2,
13 2007 was FRAUD in its purest Form. Defendants Specialty Risk
14 Services abused their position as worker's compensation carriers
15 and helped their client Aramark use the agreed upon settlement
16 of $5,500 to coerce plaintiff to sign the agreement, which would
17 cause plaintiff to defraud his own self. Plaintiff signed the
18 agreement and returned it, as this proves that the FRAUD reached
19 its full Fruition or Justifiable reliance, damaging plaintiff
20 even further.

21     22.    Plaintiff alleges that it was a misrepresentation of
22 Material Fact by Defendants to request plaintiff to agree and
23 sign an agreement stating that his voluntary resignation was on
24 a date after he had already voluntarily resigned in an attempt

25
COMPLAINT FOR DAMAGES, CIVIL RIGHTS       9

1  to cover up a possible disability discrimination claim against
2  their clients.

3     23.    Defendants attempt to use the document to void out his
4  original resignation agreement signed on March 28, 2006 was
5  despicable conduct done with malice. Defendants attempted to
6  help their clients defraud Plaintiff of his rightful claim of
7  disability discrimination and the tangible and intangible
8  benefits representing monetary and other remedy for damages that
9  could be awarded due to the disability claim. This act is
10  clearly an intentional misrepresentation of Material Fact.

11     24.    When the Defendants made the representations, they
12  knew then to be false or were based on false pretenses or
13  misrepresentations, as the defendants made these representations
14  with the intention to deceive and defraud plaintiff and to
15  induce plaintiff to act in reliance on these representations in
16  the manner alleged, or with the expectation that plaintiff would
17  so act. Defendants expected plaintiff to sign the agreement so
18  he could receive his WC Settlement of $5,500 and coerced him to
19  sign the agreement before agreeing to release payment of the
20  $5,500 to him.

21     25.    Plaintiff at the time these representations were made
22  by Defendants, believed that the Defendants representations were
23  true. Due to believing, plaintiff thought it was acceptable or
24  all right to sign the document, and that it was not depriving

25

1    him of any further rights and that there was a legal forthright

2    reason for defendants requesting him to sign the voluntary

3    agreement. Aramark and the defendants abused their positions as

4    reputable third party administrators, to help present the

5    document as if it was legal when actually it was not, as this

6    shows that plaintiff's reliance on defendant representation was

7    justified.

8        26.    Plaintiff alleges that he has satisfied all the

9    elements for intentional misrepresentations, which includes: (1)

10   misrepresentations (2) Material Fact (3) Knowledge of Falsity

11   (4) Intent to induce reliance (5) Justifiable reliance and (6)

12   Causation and Damages

13       27.    Defendants attempt to defraud Plaintiff violated

14   California Civil Codes 1709, 1710, and 1572

15       28.    As a proximate result of the fraudulent conduct or the

16   defendants as herein alleged, plaintiff was subjected to Fraud

17   and Intentional Deceit that subject or caused him emotional

18   distress and mental anguish.

19       29.    The aforementioned conduct of defendants was an

20   intentional misrepresentation, deceit, or concealment of a

21   material fact know to the defendants with the intention on the

22   part of the defendants to deprive the plaintiff of property or

23   legal rights, causing injury, and was despicable conduct that

24   subjected plaintiff to a cruel unjust hardship in conscious

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              11

1  disregard of the plaintiff's rights, so as to justify an award
2  of exemplary and punitive damages.

3                          SECOND COUNT

4                    Negligent Misrepresentation

5      30.   When the defendants made the representation they had
6  no reasonable grounds for believing them to be true. Defendants
7  knew that (1) it was not necessary for Plaintiff to sign the
8  Agreement at all (2) it was not necessary for plaintiff to sign
9  the agreement as a condition to him receiving or defendants
10 releasing plaintiff already agreed upon worker's compensation
11 settlement of $5,500.

12     31.   Plaintiff alleges that the defendants made the
13 representation with intent to induce plaintiff to rely upon it.

14     32.   Plaintiff alleges that he was unaware of the falsity
15 of the representation; in that he did not know that the purpose
16 or the agreement was to shield Aramark from a possible
17 discrimination disability claim from plaintiff, depriving
18 plaintiff of any possible monetary damages from the claim.

19     33.   Plaintiff alleges that he acted in reliance upon the
20 truth of the representation; as in him thinking it was necessary
21 to sign the agreement, as he believed it to be safe or true
22 because it was presented to him by ARAMARK's worker's
23 compensation attorney. Plaintiff believed it to be true because
24 he knew Defendants as well as Aramark's Worker's Compensation

25                                                              12

1  Attorneys knew exactly when Plaintiff actually resigned or knew

2  Plaintiff resigned on June 15, 2006 pursuant to the March 28,

3  2006 agreement.

4      34.   Defendants initiating these actions in an attempt to

5  DEFRAUD plaintiff of his claim of disability discrimination and

6  any possible monetary damages that would be awarded in lieu of

7  the disability discrimination claim violating California Codes

8  1572, 1709 and 1710, Therefore Plaintiff is entitled to

9  Statutory Damages, Costs and awards of Attorney Fees.

10                         THIRD COUNT

11                       Suppression of Fact

12     35.   Plaintiff alleges that defendants suppressed the fact

13  that if was not necessary for plaintiff to agree and sign the VR

14  agreement to receive his WC Check.

15     36.   In addition on or around July 2, 2007, defendants'

16  Attorney Dana Mitchell filed an opposition to plaintiff's

17  Readiness to Proceed. In the opposition, Defendants state or

18  implied that the reason plaintiff's settlement of $5,500 had not

19  been paid was due to plaintiff filing an EEOC Claim subsequent

20  to agreeing to the settlement of $5,500 with defendants.

21  Plaintiff believes defendants lied to the Worker's Compensation

22  Appeals Board to create a "Smoke screen" or cover up as to the

23  actual reason plaintiff's settlement was held up, which was

24  defendants wanting to force plaintiff to sign the agreement to

25

1  shield them from the disability discrimination claim. Defendants
2  concealed from the Worker's Compensation Appeals Board that
3  there was no EEOC Claim filed by plaintiff subsequent to the
4  agreement of the worker's compensation Settlement.

5      37.  The defendants made the failure to disclose and
6  suppressed and/or concealed the information mentioned herein
7  alleged, with the intent to induce the plaintiff to act in the
8  manner herein alleged in reliance thereupon, with the intent to
9  cause plaintiff to sign the agreement.

10     38.  As a proximate result of the fraudulent conduct or the
11 defendants as herein alleged, plaintiff was subjected to Fraud
12 and Intentional Deceit that subject or caused him emotional
13 distress and mental anguish.

14     39.  The aforementioned conduct of defendants was an
15 intentional misrepresentation, deceit, or concealment of a
16 material fact know to the defendants with the intention on the
17 part of the defendants of to deprive the plaintiff of property
18 or legal rights, causing injury, and was despicable conduct that
19 subjected plaintiff to a cruel unjust hardship in conscious
20 disregard of the plaintiff's rights, so as to justify an award
21 of exemplary and punitive damages.

22     40.  Defendants' attempt to defraud plaintiff violated
23 section 1572 of the California Civil Code. Plaintiff is
24 therefore entitled to Statutory Damages, Costs and award of

25
COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              14

1  Attorney fees.

2      Wherefore Plaintiff prays for judgment against Defendants
3  as more fully set forth below.

4                          FOURTH COUNT

5                       SUPPRESION OF FACT

6      41.  Plaintiff realleges and incorporates therein by
7  reference every allegation stated herein.

8      42.  Plaintiff is informed, believes and therefore alleges
9  that defendants suppressed the fact that they knew plaintiff was
10 certified disabled and receiving state disability payments and
11 on medical leave when he filed his claim for worker's
12 compensation benefits. Defendants knew this was justifiable
13 evidence that plaintiff was injured and eligible to receive
14 worker's compensation benefits for his injury.

15     43.  Plaintiff is informed, believes and therefore alleges
16 that the defendants Specialty Risk Services on May 2, 2006
17 unjustly denied his claim, and there employer level
18 investigation of his claim failed, as it was incomplete or
19 insufficient in discovering that plaintiff was injured on the
20 job.

21     44.  Plaintiff alleges that defendants knew all details
22 regarding plaintiff's employment with their client Aramark, and
23 knew plaintiff filed complaints against two members of their
24 management staff prior to denying his claim.

25                                                          15
   COMPLAINT FOR DAMAGES, CIVIL RIGHTS

1    45.   Plaintiff alleges that defendants knew or should have
2  known or was negligent at the least and in conscious disregard
3  of plaintiff's rights to his claim, breaching their fiduciary
4  duty to properly investigate plaintiff's claim.

5    46. As a proximate result of defendants' suppression of
6  fact, plaintiff has suffered emotional distress and mental
7  anguish.

8    47.   The aforementioned conduct of defendants was an
9  intentional misrepresentation, deceit, or concealment of a
10  material fact know to the defendants with the intention on the
11  part of the defendants of to deprive the plaintiff of property
12  or legal rights, causing injury, and was despicable conduct that
13  subjected plaintiff to a cruel unjust hardship in conscious
14  disregard of the plaintiff's rights, so as to justify an award
15  of exemplary and punitive damages.

16    Wherefore Plaintiff prays for judgment against Defendants
17  as more fully set forth below.

18                        FIFTH COUNT

19                     SUPPRESION OF FACT

20    48.   Plaintiff realleges and incorporates therein by
21  reference every allegation stated herein.

22    49.   Plaintiff is informed, believes and therefore alleges
23  that defendants suppressed from there parent company the
24  prestigious Hartford Insurance Companies based in Connecticut,

25
   COMPLAINT FOR DAMAGES, CIVIL RIGHTS                          16

1   the fact that they unjustly denied plaintiff's claim for

2   worker's compensation benefits and the fact that they lied to

3   the Worker's Compensation Appeals Board in San Francisco

4   regarding plaintiff's claim.

5       50.   Plaintiff alleges that defendants knew or should have

6   known or was negligent at the least and in conscious disregard

7   of plaintiff's rights to his claim, breaching their fiduciary

8   duty to properly investigate plaintiff's claim.

9       51. As a proximate result of defendants' suppression of

10  fact, plaintiff has suffered emotional distress and mental

11  anguish.

12      52.   The aforementioned conduct of defendants was an

13  intentional misrepresentation, deceit, or concealment of a

14  material fact know to the defendants with the intention on the

15  part of the defendants of to deprive the plaintiff of property

16  or legal rights, causing injury, and was despicable conduct that

17  subjected plaintiff to a cruel unjust hardship in conscious

18  disregard of the plaintiff's rights, so as to justify an award

19  of exemplary and punitive damages.

20      Wherefore Plaintiff prays for judgment against Defendants

21  as more fully set forth below.

22                    SECOND CAUSE OF ACTION

23              Mail Fraud (18 U.S.C. Section 1341)

24      53.   Plaintiff realleges and incorporates therein by

25
    COMPLAINT FOR DAMAGES, CIVIL RIGHTS                        17

1 | reference every allegation stated herein.

2 | 54.   On or around May 2, 2007 Defendants mailed to
3 | Plaintiff by way of his Worker's Compensation Attorney Mary Lou
4 | Williams, the voluntary agreement, which was the execution of a
5 | scheme to defraud plaintiff.

6 | 55.   Title 18 – Crimes and Criminal Procedures, Part 1 –
7 | Crimes Chapter 63 section 1341 Frauds and Swindles States:
8 | Whoever, having devised or intending to devise any scheme or
9 | artifice to defraud, or for obtaining money or property by means
10 | of false or fraudulent pretenses, representations, or promises,
11 | or to sell, dispose of, loan, exchange, alter, give away,
12 | distribute, supply, or furnish or procure for unlawful use any
13 | counterfeit or spurious coin, obligation, security, or other
14 | article, or other article, or anything represented to be or
15 | intimated or held out to be such counterfeit or spurious
16 | article, for the purpose of executing such scheme or artifice or
17 | attempting so to do, places in any post office or authorized
18 | depository for mail matter, any matter or thing whatever to sent
19 | or delivered by the Postal Service, or Deposits or causes to be
20 | deposited any matter or thing whatever to sent or delivered by
21 | any private or commercial interstate carrier, or takes or
22 | receives therefrom, any such matter or thing, or knowingly
23 | causes to be delivered by mail or such carrier according to the
24 | direction thereon, or at the place at which it is directed to be

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                                    18

1 | delivered by the person to whom it is addressed, any such matter
2 | or thing shall be fined under this title or shall be fined under
3 | this title or imprisoned not more than 20 years, or both.
4 | 56.Upon Defendants placing the Voluntary Resignation Agreement
5 | in the Post Office for Mail matter to be sent by the Postal
6 | Service, the Defendants committed Mail Fraud.

7 | <div align="center">FIRST COUNT OF MAIL FRAUD</div>

8 | 56.¶ On or around May 2,2007 upon Defendants mailing the
9 | Voluntary Resignation Agreement to Mary Lou Williams at 4104 24th
10 | Street, San Francisco, CA 94104 constitutes first count of mail
11 | fraud.

12 | <div align="center">SECOND COUNT OF MAIL FRAUD</div>

13 | 57.  On or around May 2,2007 upon Defendants mailing a copy
14 | of the Voluntary Resignation Agreement to Gretchen McCoy at SRS,
15 | at P.O. Box 591, Burbank, CA constitutes second count of mail
16 | fraud, as it was initiated to further the Scheme.

17 | <div align="center">THIRD COUNT OF MAIL FRAUD</div>

18 | 58.  On or around May 2,2007 upon Defendants mailing a copy
19 | of the Voluntary Resignation Agreement to Mark Antoine Foster at
20 | 225 Ellis Street, San Francisco, CA., constitutes a third count
21 | of mail fraud, as it was initiated to further the Scheme.

22 | <div align="center">FOURTH COUNT OF MAIL FRAUD</div>

23 | 59.  On or around July 3,2007 upon Defendants mailing a
24 | copy of the opposition to Plaintiff's Declaration of Readiness

25 |

COMPLAINT FOR DAMAGES, CIVIL RIGHTS

1 | to Proceed to the Worker's Compensation Appeals Board
2 | constitutes a Fourth Count of MAIL FRAUD, as it was initiated to
3 | further the Scheme.

4 | FIFTH COUNT OF MAIL FRAUD

5 | 60.   On or around July 3,2007 upon Defendants mailing a
6 | copy of the opposition to Plaintiff's Declaration of Readiness
7 | to Proceed Mary Lou Williams at 4104 24th Street, San Francisco,
8 | CA 94104 constitutes a Fifth Count of MAIL FRAUD, as it was
9 | initiated to further the Scheme.

10 | SIXTH COUNT OF MAIL FRAUD

11 | 61.   On or around July 3,2007 upon Defendants mailing a
12 | copy of the opposition to Plaintiff's Declaration of Readiness
13 | to Proceed Gretchen Devine at Specialty Risk Services at P.O.
14 | Box 591, Burlingame, CA constitutes a Sixth Count of MAIL FRAUD,
15 | as it was initiated to further the Scheme.

16 | 62.   As a proximate result of defendants' suppression of
17 | fact, plaintiff has suffered emotional distress and mental
18 | anguish.

19 | 63.   The aforementioned conduct of defendants was an
20 | intentional misrepresentation, deceit, or concealment of a
21 | material fact know to the defendants with the intention on the
22 | part of the defendants of to deprive the plaintiff of property
23 | or legal rights, causing injury, and was despicable conduct that
24 | subjected plaintiff to a cruel unjust hardship in conscious

25 |

1 disregard of the plaintiff's rights, so as to justify an award

2 of exemplary and punitive damages.

3     Wherefore Plaintiff prays for judgment against Defendants

4 as more fully set forth below.

5                     THIRD CAUSE OF ACTION

6                     CONSPIRACY TO DEFRAUD

7                  (18 U.S.C. SECTION 1345,1349)

8     64.   Plaintiff realleges and incorporates therein by

9 reference every allegation stated herein.

10    65.   Plaintiff is informed, believes and therefore alleges

11 that between March 9,2007 and May 1, 2007 Defendants and members

12 of Aramark's Management conspired to defraud plaintiff by

13 attempting to cover-up a "would be" Disability Discrimination

14 Claim and wrongful termination Claim pursuant to the ADA, the

15 UNRUH and FEHA.

16    66.   Plaintiff is informed, believes and therefore alleges

17 that Aramark's managers conspired and with defendants to submit

18 and offer the Voluntary Resignation Agreement to plaintiff, on

19 May 2,2007, knowing it was being submitted for fraudulent

20 reasons.

21    67.   Defendants conspiring to defraud plaintiff violated

22 California Civil Codes 1709, 1710 and 1572 and 18 U.S.C. Section

23 1345, and 1349.

24    68.   As a proximate result of the fraudulent conduct of the

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                              21

1  defendants as herein alleged, plaintiff was subjected to fraud
2  and intentional deceit and MAIL FRAUD causing plaintiff
3  emotional distress.

4      69. The aforementioned conduct of defendants was an
5  intentional misrepresentation deceit, or concealment of a
6  material fact know to the defendants with the intention on the
7  part of the defendants of thereby depriving the plaintiff of
8  property or legal rights causing injury, and was despicable
9  conduct that subjected plaintiff to a cruel unjust hardship in
10 conscious disregard of the plaintiff's rights, so as to justify
11 an award of exemplary and punitive damages.

12     Wherefore Plaintiff prays for judgment against Defendants
13 as more fully set forth below.

14                    FOURTH CAUSE OF ACTION

15                         WIRE FRAUD

16                    18 U.S.C. SECTION 1343

17     70.  Plaintiff realleges and incorporates therein by
18 reference every allegation stated herein.

19     71. Plaintiff is informed, believes and therefore alleges
20 that between March 9,2007 and May 2,2007, Defendants and members
21 of Aramark Management utilized emails, the telephone or by fax
22 to further their Scheme to defraud Plaintiff by attempting to
23 cover-up a "would be" disability discrimination claim and
24 wrongful termination Claim pursuant to the ADA, the UNRUH and

25

1 │ FEHA.

2 │     72.   Plaintiff is informed, believes and therefore alleges
3 │ that between March 9,2007 and May 2,2007, Defendants and members
4 │ of Management of Aramark conspired with defendants Gray & Prouty
5 │ and Morgan & Lewis to submit the offer to plaintiff in the form
6 │ of the agreement.

7 │     73.   Defendant's use of the above mentions methods of
8 │ Communication to defraud plaintiff violated Section California
9 │ Civil Codes 1709, 1710 and 18 U.S.C. Section 1343.

10 │     74.   As a proximate result of the Fraudulent conduct or the
11 │ defendants as herein alleged, Plaintiff was subjected to Fraud
12 │ and Intentional Deceit and WIRE FRAUD, causing plaintiff
13 │ emotional distress.

14 │     75.   The aforementioned conduct of defendants was an
15 │ intentional misrepresentation, deceit, or concealment of a
16 │ material fact know to the defendants with the intention on the
17 │ part of the defendants, thereby depriving the plaintiff of
18 │ property or legal rights causing injury to plaintiff, and was
19 │ despicable conduct that subjected plaintiff to a cruel unjust
20 │ hardship in conscious disregard of the plaintiff's rights, so as
21 │ to justify an award of exemplary and punitive damages.

22 │     Wherefore Plaintiff prays for judgment against Defendants
23 │ as more fully set forth below.

24 │                  FIFTH CAUSE OF ACTION

25 │

COMPLAINT FOR DAMAGES, CIVIL RIGHTS         **23**

1 | BREACH OF FUDICIARY DUTY

2 | 76. Plaintiff realleges and incorporates therein by

3 | reference every allegation stated herein.

4 | 77. Defendants, a third party administrator, breached

5 | their fiduciary duty, as a third party administrator, they were

6 | negligent in their duties and behaved in a way that was

7 | despicable due to them being a third party administrator, having

8 | a duty of care to uphold the law, knowing they were helping

9 | break the law. Defendants knew the acts being committed were

10 | being done for fraudulent reasons and still allowed themselves

11 | to conspire with their clients to help defraud plaintiff.

12 | Defendants recognized the risks created by their actions and

13 | Aramark actions and understood what could happen from those

14 | risks taken.

15 | 78. Plaintiff alleges that defendants knew all detail

16 | regarding plaintiff's employment with their client Aramark,

17 | including knowing when plaintiff actually resigned and why.

18 | Defendants knew requesting and coercing plaintiff to sign the

19 | agreement presented on May 2, 2007 was to void out the original

20 | agreement plaintiff signed on March 28, 2006 to help shield

21 | their client Aramark from a possible discrimination claim from

22 | plaintiff.

23 | 79. Plaintiff alleges that third party administrators are

24 | held to a higher standard of care than an ordinary reasonable

25 |

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                                      24

1  person would be. They must behave as a reasonable third party
2  administrator would do so rather than a reasonable person. The
3  perspective of a third party administrator would be different
4  matters in the court. Defendant Specialty Risk Services and
5  their employee Gretchen Devine owe plaintiff a reasonable
6  standard of care.

7      80.  Plaintiff alleges that the defendants' acts breached
8  their fiduciary duty violating section 3300 of the California
9  Civil Code.

10     81.  As a direct and proximate result of said breach,
11 plaintiff has suffered the actual and special and general
12 damages as alleged, and which are incorporated herein by this
13 reference, and seek recovery of the same, and for an award of
14 costs and reasonable attorney fees.

15     82.  Plaintiff alleges that the defendants' breach was
16 committed to defraud plaintiff and was in conscious disregard of
17 plaintiff's rights and was willful, oppressive and malicious;
18 and designed to cause plaintiff to suffer economic and emotional
19 injury. Plaintiff is therefore entitled to an award of exemplary
20 and punitive damages against defendants, in an amount to be
21 determined at trial.

22          INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

23     83.  Plaintiff realleges and incorporates therein by
24 reference every allegation stated herein.

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                           25

1    84.    The fraudulent actions of defendants were outrageous,
2  intentional and malicious and done with reckless disregard of
3  the fact that they would certainly cause plaintiff to suffer
4  severe emotional and physical distress. Defendants knew that
5  defrauding plaintiff in an attempt to deprive from his "would
6  be" Disability Discrimination Claim would certainly cause him to
7  suffer severe emotional and physical distress. Defendants also
8  knew Plaintiff had already suffered psychological injury due to
9  the previous acts of the Aramark while Plaintiff was employed at
10  the Carnelian Room, but still proceeded with their Fraudulent
11  acts after Plaintiff resigned or was constructively Discharged.

12    85. As a proximate result of the acts of defendants,
13  Plaintiff has and will more than likely continue to suffer
14  emotional distress in the form of fear, anxiety, worry, and
15  mental suffering as the injury will have an effect on
16  Plaintiff's future capacity to work and earn income.

17    86. Plaintiff will seek more psychological counseling as a
18  result of the defendants conduct.

19    87.    As a proximate result of Defendants conduct, Plaintiff
20  has suffered general Damages in an amount to be determined by
21  Proof at Trial.

22    88.    Defendants conduct was done knowingly, willfully and
23  with malicious intent and Plaintiff can prove the fraudulent
24  acts of Defendants by "clear and convincing" evidences and

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                                    26

1  therefore Plaintiff is entitled to Punitive Damages in an amount
2  to be determined by Proof at trial.

3              NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

4      89. Plaintiff realleges and incorporates therein by
5  reference every allegation stated herein.

6      90. Plaintiff is informed, believes and therefore alleges
7  that Defendant Specialty Risk Services is negligent in causing
8  plaintiff Emotional Distress, in that Defendant specialty risk
9  services has breached their duty of care by allowing themselves
10  as third party administrators and their client Aramark to
11  intentionally inflict Plaintiff with Emotional Distress causing
12  Plaintiff injury resulting in damages. Defendants' negligence
13  causing of Emotional Distress is not an independent Tort: it is
14  a Tort of Negligence.

15      91. As a proximate result of the fraudulent conduct of the
16  defendants as herein alleged, caused plaintiff emotional
17  distress.

18      Wherefore Plaintiff prays for judgment against Defendants
19  as more fully set forth below.

20                    PRAYER FOR RELEIF

21      WHEREFORE, Plaintiff FOSTER prays for judgment against
22  defendants, and each of them, as more fully set forth below:

23      1. For general damages, including emotional distress,
24          according to proof;

25

1      2. For statutory penalties and all relief allowed by

2         statute according to proof;

3      3. For punitive damages;

4      4. For an award of attorney's fees;

5      5. For pre-judgment interest at the legal rate according to

6         proof;

7      6. For costs of suit incurred;

8      7. For such other and further relief as the court may deem

9         proper.

10   Dated: *February 7, 2008*                    *Mark Antoine Foster*

11                                        Mark Antoine Foster, In Pro Per

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT FOR DAMAGES, CIVIL RIGHTS                                28